## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ISRAEL ALVARADO, STEVEN
BARFIELD, WALTER BROBST,
JUSTIN BROWN, DAVID CALGER,
MARK COX, JACOB EASTMAN,
THOMAS FUSSELL, NATHANAEL
GENTILHOMME, DOYLE HARRIS,
JEREMIAH HENDERSON, ANDREW
HIRKO, KRISTA INGRAM, RYAN
JACKSON, JOSHUA LAYFIELD,
JAMES LEE, BRAD LEWIS, ROBERT
NELSON, RICK PAK, RANDY POGUE,
GERARDO RODRIGUEZ, PARKER
SCHNETZ, RICHARD SHAFFER,
JONATHAN SHOUR, JEREMIAH
SNYDER, DAVID TROYER, SETH
WEAVER, THOMAS WITHERS,
JUSTIN WINE, MATTHEW WRONSKI,
and JERRY YOUNG,

   Plaintiffs,

  vs.

LLOYD AUSTIN, III, in his official
capacity as Secretary of Defense, U.S.
U.S. DEPARTMENT OF DEFENSE,

FRANK KENDALL, in his official
capacity as Secretary of the Air
Force, DEPARTMENT OF THE AIR
FORCE,

CARLOS DEL TORO, in his official
capacity as Secretary of the Navy,
DEPARTMENT OF THE NAVY, and

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.

CLASS ACTION
COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

CHRISTINE WORMUTH, in her          )
official capacity as Secretary of the   )
Army, DEPARTMENT OF THE ARMY,   )
                                                          )
XAVIER BECERRA, in his official    )
capacity as Secretary                      )
U.S. DEPARTMENT OF HEALTH     )
AND HUMAN SERVICES,               )
                                                          )
JANET WOODCOCK, in her official   )
capacity as Acting Commissioner of   )
the U.S. FOOD AND DRUG             )
ADMINISTRATION, and                )
                                                          )
ROCHELLE WALENSKY, in her       )
official capacity as Director,           )
CENTERS FOR DISEASE CONTROL   )
AND PREVENTION,                     )

**Defendants.**

## **INTRODUCTION**

"If even a chaplain cannot practice his or her faith in the military, who can?"

-- Chaplain Captain Ryan Jackson, US Air Force

"Without religious freedom, the chaplaincy could become irrelevant, our sacred US Constitution could lose its cornerstone, and our Army and nation could become ripe for attack. What makes America great is not our technology or vast resources, but our Constitution which has been dearly fought for, for the sake of our people and our freedoms."

-- Chaplain Major Jerry Young, US Army

1.      This Complaint initiates a class action by military chaplains, including chaplain candidates ("Military Chaplains"). Plaintiff Military Chaplains serve as chaplains in the Departments of the Army, Navy and Air

Force (collectively, the "Services"), whether on active-duty or in the Reserves or National Guard, and they represent many faiths. They challenge Department of Defense ("DoD") Secretary Lloyd Austin, III's ("the Secretary") COVID-19 vaccination mandate ("Mandate"), as executed by the Services (together with DoD, the "Military Defendants"), and the Military Defendants' policy of uniformly denying religious accommodations ("No Accommodation Directive"). The Mandate is enforced by threat of disciplinary action for refusing an order to take the COVID-19 vaccine followed by what for chaplains is a punitive discharge.

2.     Plaintiffs allege that the Mandate and Military Defendants' No Accommodation Directive is unconstitutional because these directives violate: (a) the express statutory rights allowing Military Chaplains to follow their conscience as formed by their faith; and (b) statutory protection for chaplains from retaliation and adverse personnel actions related to their decisions based on their conscience. Section 533 of the fiscal year ("FY") FY 2013 National Defense Authorization Act ("NDAA"), Pub. L. 112-239, § 533, 126 Stat. 1632 ("2013 NDAA Amendments"), as amended by section 532 of the FY 2014 NDAA, Pub. L. 113-66, § 532, 127 Stat. 672 ("2014 NDAA Amendment," and collectively "Section 533" or "§ 533") states:

(a) Protection of rights of conscience.

(1) Accommodation. Unless it could have an adverse impact on military readiness, unit cohesion, and good order and discipline, the Armed Forces shall accommodate individual expressions of belief of a member of the armed forces reflecting the sincerely held conscience, moral principles, or religious beliefs of the member and, in so far as practicable, may not use such expression of belief as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment.

(2) Disciplinary or administrative action. – Nothing in paragraph (1) precludes disciplinary or administrative action for conduct that is proscribed by chapter 47 of title 10, United States Code (the Uniform Code of Military Justice) [10 U.S.C.A. § 801 et seq.], including actions and speech that threaten good order and discipline.

(b) Protection of chaplain decisions relating to conscience, moral principles, or religious beliefs.- No member of the Armed Forces may—

(1) require a chaplain to perform any rite, ritual, or ceremony that is contrary to the conscience, moral principles, or religious beliefs of the chaplain; or

(2) discriminate or take any adverse personnel action against a chaplain, including denial of promotion, schooling, training, or assignment, on the basis of the refusal by the chaplain to comply with a requirement prohibited by paragraph (1).

3.     Military Defendants' directives and policies also violate Plaintiffs' religious liberties protected by the First Amendment and the Religious Freedom Restoration Act ("RFRA"). 42 U.S.C. § 2000bb-1, *et seq*. Further, the Defendants' actions violate the Fifth Amendment Due Process Clause, the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*., and the Military Defendants' own rules and regulations and governing religious and medical exemptions.

4

**Military Chaplains' Unique Constitutional Role & Protections**

4. Chaplains are "unique" military officers "involving simultaneous service as clergy or a 'professional representative[]' of a particular religious denomination and as a commissioned … officer." *In re England*, 375 F.3d. 1169, 1171 (D.C. Cir. 2004), *cert denied,* 543 U.S. 1152 (2005). This is necessary because the Constitution requires military religious leaders to meet the military's Free Exercise needs. Plaintiff Military Chaplains as a class thus may raise unique statutory and constitutional religious liberty claims, in addition to the claims for systematic violations of service members' RFRA and First Amendment rights that several courts have recently found Military Defendants likely committed.

5. *Katcoff v. Marsh*, 755 F.2d 233 (2d Cir. 1985), rejected an Establishment Clause claim that the Army Chaplain Corps was unconstitutional. *Katcoff* explained that the chaplaincy was Congress' appropriate and necessary accommodation of competing Constitutional commands. *Katcoff*, 755 F.2d at 234-35, 237. Absent a chaplaincy, military service realities restricted soldiers' ability to exercise their First Amendment Free Exercise rights, causing conflict with the Establishment Clause's mandate that government neither hinder nor establish a religion. Accordingly, the Free Exercise Clause "obligates Congress, upon creating an Army" to establish the chaplaincy "to make religion available to soldiers who have been

moved by the Army to areas of the world where religion of their own denomination are not available to them." *Id.* at 234*; see also id.* at 232 ("by removing them to areas where religious leaders of their persuasion and facilities were not available [the Army] could be accused of violating the Establishment Clause unless it provided them with a chaplaincy"). In other words, the Constitution mandates the Services provide chaplains to allow military personnel to freely exercise their own religion, ensuring that government does not violate the Establishment Clause and remains neutral, rather than hostile, to religion.

6.    In recognition of the Services' failure to acknowledge the unique Constitutional role of Military Chaplains and the Service's responsibility for Free Exercise to service members, Congress enacted specific protections for Military Chaplains in Section 533 and the 2013 and 2014 NDAA Amendments.[1] Section 533 expressly prohibits the Services from discriminating or retaliating against Military Chaplains for refusing to take

---

[1] In 2012, Congress addressed numerous concerns arising out of Congress' or judicial changes to long-established social policies that impacted some denominations and chaplains' religious beliefs, *e.g.*, the repeal of the military ban on homosexual behavior and the Supreme Court's invalidation of the Defense of Marriage Act. Amendments to the fiscal year 2013 NDAA specifically made changes to Title 10 clarifying the rights of all military personnel and chaplains to follow their conscience and protecting chaplains from being forced to participate in practices, rights, and activities that were contrary to their conscience and faith.

certain actions "contrary to the conscience, moral principles, or religious beliefs of the chaplain." Section 533(b)(1). Because the Services failed to implement these protections, Congress reinforced and amplified the protections for Military Chaplains in the 2016 NDAA and again in the 2018 NDAA. The Military Defendants' religious persecution and retaliatory actions against the Plaintiff Military Chaplains and the class as a whole have deliberately violated and trampled their § 533 rights and protections. *See generally infra* Section II & Ex. 1 (Plaintiff Declarations).

7.     The Military Defendants have not obeyed Congress's clear directions honoring and protecting Military Chaplains' conscience and faith, a clear manifestation of contempt for congressional authority, the Constitution's protection of religious liberties, and religious persons like the Military Chaplains. Few chaplains are even aware of § 533's protections, apparently the DoD's desired outcome, contrary to Congress' clear command in the FY 2018 NDAA to develop and implement Religious Liberty training, including RFRA and Section 533's protections. The Secretaries' actions in Mandate planning and implementation show the DoD and Services have trampled on the above protections, retaliating against chaplains for exercising their conscience and faith, protected activities, what § 533 prohibits.

**First Amendment Free Exercise and RFRA Violations**

8.     The Military Defendants' venom against those who assert religious objections and who have submitted religious accommodation requests ("RARs") shows the Secretary's vaccine Mandate's purpose is to **purge** those who (a) believe in the Judeo-Christian concept of a conscience formed by faith that guides our lives, and (b) will not participate in what their conscience considers evil. Upon information and belief, the Military Defendants have given express directives to deny all RARs, *see infra* Sections V & VI.A, an order executed flawlessly thus far throughout the chain of command. The Military Defendants' own data confirm that zero or near zero RARs have been granted. *Id.*

9.     Based on this and similar evidence, several U.S. district courts have found that one or more of the Military Defendants have violated service members' rights under RFRA and the First Amendment.[2] The whole Mandate process appears motivated, permeated and directed by hostility to religion and chaplains and contempt for law. Defendants' open and manifest bad faith is evidenced by Defendants' draconian punishment for those who resist being

---

[2] *See generally Navy SEAL 1 v. Biden*, No. 8:21-cv-2429, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021); *Air Force Officer v. Austin*, --- F.Supp.3d ---, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022) ("*Air Force Officer*"); *U.S. Navy SEALs 1-26 v. Biden*, --- F.Supp.3d ---, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022) ("*Navy SEALs 1-26*"), *stay denied*, --- F.4th ---, 2022 WL 594375 (5th Cir. Feb. 28, 2022) ("*Navy SEALs 1-26* Stay Order"); *Doster v. Kendall*, --- F.Supp.3d ---, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) ("*Doster*").

bullied into giving up their conscience; refusal to accept or acknowledge any alternatives to  vaccination; denial of the military's previous recognition there was a presumption of natural immunity for those who have a previous documented infection; refusal to grant medical exemptions to military personnel who also have religious accommodation requests; and the corruption of the religious accommodation process because Defendants have already determined all RARs will be denied except for service members who also qualify for administrative exemptions and are leaving the Service.

### Establishment Clause and No Religious Test Clause Violations

10.    The Military Defendants' Directives violate the First Amendment's Establishment Clause. Military Defendants seek to establish a secular religion whose main sacrament is abortion, its main doctrine is to not allow or recognize individual conscience, and whose mission is to purge adherents of Judeo-Christian beliefs and faith who follow their conscience.

11.    Further, the Military Defendants deliberate corruption of the RAR process required under their own regulations and RFRA have erected a *de facto* religious test for service in the military contrary to the Constitution's own words. The No Religious Test Clause of the Constitution states that "no religious test shall ever be required as a Qualification to any office or public Trust under the United States." U.S. CONST. ART. VI, § 3

12.    The Military Defendants' Establishment Clause and No Religious Test Clause violations are evidenced by their hostility to Military Chaplains and others who profess historic Judeo-Christian beliefs in the sanctity of life and those who believe they must follow their conscience as formed by their religious faith. The most common ground for opposition to the alleged COVID vaccines concerns the use of stem cells from aborted babies in the development and testing of vaccines. The DoD's new religion rejects and punishes anyone who sees abortion as sin forbidden by God.

13.    The Military Defendants' message to Plaintiffs and the public is very clear: "citizens who believe they must follow their conscience as formed by their faith are not welcome", a forbidden message of religious hostility to Plaintiffs. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 302 (D.C. Cir. 2006).

**Violations of DoD and Service Regulations & Procedures**

14.    The Military Defendants actions violate their own regulations protecting chaplains' conscience and faith showing hostility and intentional discrimination on the basis of religion. In particular, DoD's rule governing religious accommodation, *see* Ex. 2, DoD Instruction 1300.17, *Religious Liberty in the Military Services*, ¶ 2.3.b.(4) (Sept. 1, 2020) ("DoDI 1300.17"), provides that requests for religious accommodation are to be decided at the lowest level. Once the Mandate was promulgated, however, the DoD and Services'

procedure for religious accommodation changed and the approving official are now at the highest level in the Services, either the Surgeon General or a three-star General or Admiral.

15.    "It is a familiar rule of administrative law that an agency must abide by its own regulations." *Stewart Schs. v. FLRA,* 495 U.S. 641, 654 (1990) (*citing Vitarelli v. Seaton,* 359 U.S. 535, 547 (1959); *Service v. Dulles,* 354 U.S. 363, 388 (1957). The Mandate's execution and procedures raise troubling and alarming issues indicating military leaders' open rebellion against the Constitutional requirement the military must follow its own regulations.

### Due Process Violations & Fraudulent Redefinition of Vaccine

16.    Plaintiffs also challenge the Secretary's authority to issue such a mandate. It rests on an erroneous, fraudulent, and unlawful bureaucratic change in September 2021 to the centuries-old definition of a vaccine. Prior to that change, the term "vaccine" meant a medical procedure that immunized the recipient and the public from the identified disease. Specifically, on September 1, 2021, the Centers for Disease Control and Prevention ("CDC") redefined "vaccine" and "vaccination" to mean a medical procedure that merely stimulates the immune system to provide "protection" ("CDC Vaccine Redefinition"), rather than immunity.[3] *See infra* Section VIII.

---

[3] Vice President Harris was "fully vaccinated" with two vaccine shots followed by two additional boosters. She still caught COVID, as have other Administration high-ranking officials regardless of how many boosters they've had. "Joint Chiefs

17.   The new, fraudulent definition of "vaccine" and "vaccination" allows the Military Defendants to claim the experimental COVID-19 treatments are "vaccines," despite the fact that they do not provide immunity to the recipient, or prevent infection, re-infection or transmission. This fraudulent definition of a vaccine is the basis for the Secretary's and the Services' threats and actual punitive and retaliatory actions against Plaintiffs and other service personnel.

18.   The CDC Vaccine Redefinition, and Military Defendants' express reliance on the CDC's actions, violates the APA, the Fifth Amendment Due Process Clause, Separation of Powers and the Major Questions Doctrine, *see, e.g., Nat'l Fed'n of Indep. Bus. v. OSHA*, 142 S. Ct. 661, 667 (2022) ("*NFIB*") (Gorsuch, J. Concurring), the ban on administrative agencies creating laws with punitive consequences without following due process requirements and the ban on administrative officials being given unbridled power over First Amendment activity.

---

Chairman and Marine Corps Chief Have COVID-19. The Joint Chiefs of Staff says Chairman Gen. Mark Milley has tested positive for COVID-19 and is experiencing very minor symptoms." Associated Press (Jan. 17, 2022) https://www.usnews.com/news/politics/articles/2022-01-17/joint-chiefs-chairman-milley-tests-positive-for-covid-19.

### Pattern and Practice of Retaliation for Religious Exercise

19.    The Military Defendants' actions establish a uniform pattern and practice of retaliation and hostility to religious personnel who follow their conscience and the rule of law. The testimony from these Plaintiffs provided in their declarations (attached as Exhibit 1) have one common characteristic: the actions taken against them, including the requirement to justify why they have religious objections to the Mandate, violate their rights under § 533, RFRA and the First and Fifth Amendments.

20.    These actions are retaliation for Plaintiffs' exercise of their rights to the free exercise of religion. This is by design, not by accident. Upon information and belief, the Secretary and Service Secretaries have directed their chain of commands to systematically and uniformly refuse to grant any religious accommodations to the Mandate. The data provided by Defendants in related proceedings confirm that these illegal and unconstitutional orders have been carried out DoD-wide.

21.    Further, special Staff with medical, legal and religious expertise have ignored their respective professional codes and their civic, military and legal duties in following these unlawful orders. On information and belief, the Services and their respective Chaplain Corps have instructed chaplains to ignore their RFRA duties; to discourage and/or recommend disapproval of RARs from service members with sincerely held religious objections to the

Mandate; and to retaliate against chaplains who themselves have religious objections or submit RARs. On information and belief, the Judge Advocate Generals ("JAGs") have provided guidance on how to avoid, rather than obey, Military Defendants' obligations under the Constitution, RFRA, § 533 and other laws. Surgeons General and medical personnel have failed to follow their own regulations concerning natural immunity and adequately research the link between the vaccines and numerous cases of serious medical incidents and injuries and/or death of individuals, including military personnel and their dependents. *See generally infra* Section V. Plaintiffs' reserve the right to name these special staff personnel as individual defendants after discovery

**Class and Sub-Class Definitions and Allegations**

22.    Plaintiffs file this complaint as a class action on behalf of all Military Chaplains who have submitted an RAR ("Military Chaplain Class" or "Military Chaplain Plaintiffs"), as well as three sub-classes.

23.    The first sub-class consists of Military Chaplain Class members who have sufficient time to retire if they chose to do so, do not wish to retire, but are faced with the draconian threat to either retire or forfeit everything that they have worked for their entire careers ("Constructively Discharged Sub-Class" or "Constructively Discharged Plaintiffs"). This sub-class includes Plaintiff Chaplains ("CH") Lee, Lewis, and Snyder.

24.    The second sub-class consists of those class members who have reached or almost reached 18 years of service, entitling them to "sanctuary" until they reach 20 years of service and are eligible for retirement ("Sanctuary Sub-Class" or "Sanctuary Plaintiffs"). Until the COVID Mandate, this was a protected zone in which service personnel could not be discharged except for serious misconduct. Like everything else, the rules changed in order to punish chaplains and others for following their conscience, contrary to § 533. This sub-class includes CHs Eastman, Cox, Snyder, and Wine.

25.    The third sub-class consists of those class members who have natural immunity from a documented previous COVID-19 infection—that provides equal or greater protection than vaccination for the current Omicron variant—and should be eligible either for religious accommodation (*i.e.*, as an alternative, less restrictive means) or a medical exemption under AR 40-562, "Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases." They have been denied a medical exemption due to the Military Defendants' categorical refusal to consider natural immunity ("Natural Immunity Sub-Class" or "Natural Immunity Plaintiffs") despite their own regulations ordering otherwise, an established regulatory presumption.

**Relief Requested**

26.    Plaintiffs file this action seeking a Preliminary Injunction and Declaratory Judgment requesting that this Court:

(1) Certify the Classes and Sub-Classes as defined herein and on behalf of the Named Plaintiffs and all Members of the Certified Classes:

(2) Declare the Mandate and Military Defendants' No Accommodation Policy violates § 533; RFRA; the Constitution's Article VI No "Religious Test" Clause; the First Amendment's Establishment, Free Exercise, Free Speech and Right to Petition Clauses; the Fifth Amendment Due Process Clause, and the No Religious Test Clause;

(3) Enjoin the implementation or enforcement of the Mandate and No Accommodation Policy with respect to the Plaintiffs, the Military Chaplain Class, and the Sub-Classes;

(4) Enjoin any adverse or retaliatory action against the Plaintiffs as a result of, arising from, or in conjunction with the Plaintiffs' RAR requests or denials, or for pursuing this action, or any other action for relief from Defendants' constitutional, statutory, or regulatory violations;

(5) Order Defendants to take necessary actions to repair and restore Plaintiffs' careers and personnel records, and to provide effective guarantees against future retaliation for the exercise of their protected rights through the Services' assignment, promotion and schooling systems;

(6) Find unlawful the CDC Vaccine Redefinition and vacate any Defendant agency actions adopting or relying on this unlawful redefinition; and

(7) Issue an Order declaring the Defendants have acted with bad faith from the beginning of the Mandate and with reckless disregard for the health, safety and welfare of Plaintiffs and the class.

(8) Granting attorney's fees for prosecuting this action based on Defendants' bad faith and/or under the Equal Access to Justice Act, 28 U.S.C. § 2412.

27.     Plaintiffs seek this relief pursuant to the APA, 5 U.S.C. §§ 702 and 705; the Federal Declaratory Judgment Act, 28 U.S.C. §§ 1331, 1346, 2201 and 2202; the All Writs Act, 28 U.S.C. § 1651; and 42 U.S.C. § 1983.

## PARTIES

**Plaintiffs**

28.     Plaintiff Chaplain Israel Alvarado is a Lieutenant ("LT") in the US Navy with two years of service. He is domiciled in Kent County, Michigan, and he is stationed at Naval Base, Norfolk County, Norfolk Virginia. LT Alvarado's initial RAR was denied on October 26, 2021, and his RAR appeal was denied on January 25, 2022. LT Alvarado has natural immunity from a previous documented infection in January 2022. Due to his vaccine refusal, he has: received a report of misconduct and an adverse fitness report; been removed from operational duties; and has not received orders for his next duty station. While his appeal was still pending, he was informed he will likely receive a general discharge for misconduct, which will likely prevent him from obtaining future employment as a chaplain in jails or in VA or civilian hospitals.

29.     Plaintiff Chaplain ("CH") Steven Barfield is a Lieutenant Colonel ("Lt Col") in the US Air Force Reserve with 17 years of service on active-duty and now the Reserves. He is domiciled in Boyd County, Kentucky, and he is stationed at Wright-Patterson Air Force Base ("AFB"), Greene County, Ohio. Lt Col Barfield's initial RAR was denied on February 22, 2022, and his RAR

appeal was denied on March 31, 2022. On April 29, 2022, Lt Col Barfield's request for a medical exemption based on his natural immunity from a documented previous COVID-19 infection was denied. He has been counselled on the negative career impacts for being unvaccinated, and while his RAR request was pending, he was denied a career-advancing duty title change to which he should be entitled as the highest-ranking chaplain on staff.

30.     Plaintiff Chaplain Walter Brobst is a Lieutenant in the US Air Force Reserve with eight years of service. He is domiciled in Riverside County, California, and he is stationed at March Air Force Reserve Base in California. Lieutenant Brobst's initial RAR was denied on November 16, 2021, and his RAR appeal was denied on January 28, 2022 (though he was not informed of the denial until February 11, 2022). He has natural immunity from two previous documented infections. Due to his unvaccinated status and/or submission of an RAR request, Lieutenant Brobst was denied attending Basic Chaplain Course; his request for any annual tour was denied; has been forced to be isolated from working on base; received a Letter of Reprimand; and his travel has been restricted.

31.     Plaintiff Chaplain Justin Brown is a Lieutenant in the US Navy with nine years of service. He is domiciled in Galveston County, Texas, and he is stationed with the U.S. Coast Guard for the Galveston Sector, Houston, Harris County, Texas. Lieutenant Brown's initial RAR was denied on March

8, 2022; he submitted his appeal on April 1, 2022, which is still pending. He has natural immunity from a March 2020 infection, and he has repeatedly tested positive for antibodies as recently as January 2022 nearly two years later. Due to his unvaccinated status and submission of an RAR request, Lieutenant Brown has been asked to resign his commission; is subject to travel restrictions; has been reprimanded for referring service members to legal or civil rights for advice on their RARs; and has been told to expect a general discharge for misconduct that will prevent his future employment as a chaplain and result in the loss of VA benefits. He has been informed in writing by his command and Navy Chaplain leadership that no RARs will be approved, but that if any are approved, the servicemembers will still be discharged from service. Lieutenant Brown has spent hundreds of hours in assisting Coast Guard members with their RARs and appeals, counseling those who have been denied, and in some cases those who are suicidal due to the denial; he also officiated the funeral of one Coast Guard member who committed suicide after being denied religious accommodation.

32.    Plaintiff Chaplain David Calger is a Captain in the US Army Reserve with 11 years of service. He is domiciled in Charlotte County, Florida, and he is stationed in Miami, Florida. Captain Calger's initial RAR is still pending. CH Calger has natural immunity from a previous COVID-19 infection in December 2020. Even though his RAR is still pending, Captain Calger has

been counselled and flagged by Brigade so that he cannot take a new assignment, and he has been told appeals of initial RAR denials will not be accepted.

33.   Plaintiff Chaplain Mark Cox is a Commander ("CDR") in the US Navy in which he has served for 18 years, following a 20-year career as civilian minister. He is domiciled in Rhea County, Tennessee, and he is stationed at Navy Reserve Center Chattanooga, Tennessee. LT Cox's initial RAR was denied on January 8, 2022, and he submitted his appeal on March 24, 2022, which is still pending. As a result of not getting vaccinated CDR COX was refused opportunities to return to Active Duty, fulfill his Annual Training, receive orders for Active Duty Training, participate in Funeral Honors or reschedule his Weekend Drills to accommodate his schedule, and was given an Adverse FITREP to sign for misconduct, failure to obey a direct order, regarding the vaccine. Further, CDR COX was forced into the Reserve Volunteer Unit, and he now receives zero compensation from the Navy for Drill Weekends or for the work he does serving our Sailors.

34.   Plaintiff Chaplain John Eastman is a Commander in the US Navy Reserve with 18 years of active-duty service and an additional six years in the Air Force Reserve. He is domiciled in Escambia County, Florida, and he is stationed at Pensacola Naval Air Station, Pensacola, Florida. CDR Eastman's initial RAR was denied on November 22, 2021; he submitted his RAR appeal

on December 21, 2021, which is still pending. CDR Eastman has over 18 years of service which normally would put him in the "sanctuary" zone meaning he cannot be discharged absent grave criminal activity. CDR Eastman is Jewish, he has become a Christian. His father is one of the few surviving Holocaust victims and he believes that his relatives were victims of Nazi medical experimentation, which makes CH Eastman keenly aware and sensitive to coerced, forced medical procedures that are experimental in nature, especially those imposed without consent.

35.    Plaintiff Chaplain Thomas Fussell is a Major in the US Air Force with 14 years of service. He is domiciled in Decatur County, Georgia, and he is stationed at Wright-Patterson AFB, Greene County, Ohio. Major Fussell's initial RAR was denied on April 27, 2022; he submitted his RAR appeal on May 2, 2022, which is still pending. Major Fussell has natural immunity from a previous COVID-19 infection, as confirmed by a positive test in February 2022. Due to his unvaccinated status and/or submission of an RAR, Major Fussell was removed from the Religious Resolution Team ("RRT"), and he is restricted from travel and temporary duty assignments.

36.    Plaintiff Chaplain Nathanael Gentilhomme is a Lieutenant in the US Navy with 13 years of service. He is domiciled in Greenville County, South Carolina, and he is stationed at Marine Corps Air Facility in Quantico, Virginia. Lieutenant Gentilhomme's initial RAR was denied on November 9,

2021; he submitted his RAR appeal on December 2, 2021, which is still pending. He has natural immunity from a previous COVID-19 infection in December 2020. Before the imposition of the Mandate in August 2021, Lieutenant Gentilhomme questioned why one of his commands was penalizing unvaccinated Marines for not getting a shot that was still voluntary. He was "fired" as a chaplain for that unit. After the Mandate was announced, his command prohibited him from interviewing Marines and Sailors for the RAR process (who were instead interviewed by an Army Chaplain) and from performing his ministry duties more generally, resulting in a significant downgrade to his most recent FITREP. He has also received adverse counseling and been informally reprimanded for his attempts to advise Marines and Sailors and encouraging them to submit RARs and for advocating on behalf of those with religious objections.

37.    Plaintiff Chaplain Doyle Harris is a Captain in the US Army with 14 years of service. He is domiciled in Howard County, Indiana, and he is stationed at Kadena Air Base, Okinawa, Japan. Captain Harris submitted his initial RAR on September 13, 2021 (though it was not routed to the Army Office of the Surgeon General until March 8, 2022), which is still pending. On April 13, 2022, he tested positive for COVID-19 and was placed into quarantine for 10 days; he has fully recovered and now has natural immunity. As a result of his unvaccinated status and pending RAR, Captain Harris cannot attend

training or travel with his unit, and he will likely be denied a permanent change of station ("PCS"), which will prevent him from moving on to a new assignment, promotion, or even enrolling his children for the 2022-23 school year.

38.     Plaintiff Chaplain Jeremiah Henderson is a Captain in the US Air Force with over 17 years of service. He is domiciled in Otero County, New Mexico, and he is stationed at Holloman AFB, Otero County, New Mexico. Captain Henderson's initial RAR was denied on March 4, 2022; he submitted his RAR appeal on April 6, 2022, which is still pending. Due to his unvaccinated status and/or submission of an RAR, he has been denied PCS; been informed that he faces a general discharge for misconduct, which will prevent him from future employment as a chaplain and result in the loss of VA benefits; and has been prohibited from attending his Chaplain Endorser-mandated training in violation of Air Force rules. *See* Department of the Air Force Instruction ("DAFI") 52-101, § 3.1.1.5.2.1 and DAFI 52-201, § 1.3.

39.     Plaintiff Chaplain Andrew Hirko is a Captain in the US Army who has served for 14 months and who joined the Army following over 20 years of experience as a civilian minister and leader. He is domiciled in St. John's County, Florida, and he is stationed at Fort Campbell, Kentucky. Captain Hirko initial RAR was denied on February 23, 2022 (though he was not notified until March 15, 2022); he submitted his RAR appeal on March 17, 2022, which

is still pending. Captain Hirko has natural immunity from a previous COVID-19 infection. Due to his unvaccinated status and/or submission of an RAR, he was removed at the last minute from a training exercise, been denied leave, and publicly and privately ridiculed by fellow chaplains.

40.    Plaintiff Chaplain Krista Ingram is a Major in the US Air Force with 15 years of service, and she is one of only 40 female Air Force Chaplains. She is domiciled in Williamson County, Texas, and she is stationed at Wright-Patterson AFB, Greene County, Ohio. Major Ingram submitted her initial RAR on September 16, 2021, which was denied on April 22, 2022. She has natural immunity from a previous infection in January 2022. Due to her unvaccinated status and/or submission of an RAR, she has been denied a new assignment/PCS and professional training scheduled for Summer 2022. If she is discharged due to her vaccination status, she will be rendered unemployable as a civilian minister.

41.    Plaintiff Chaplain Ryan Jackson is a Captain in the US Air Force with 23 years of service. He is domiciled in New Castle County, Delaware, and he is stationed at Whiteman AFB, Johnson County, Missouri. Captain Jackson's initial RAR was denied on February 28, 2022, and his RAR appeal was denied on April 19, 2022. Captain Jackson has been told repeatedly by his leadership that his RAR and appeal will be denied; that his request to separate will be denied; and that he will receive disciplinary action for disobeying a

24

"lawful" order. Due to his unvaccinated status and/or submission of an RAR, he cannot deploy, travel or attend training, and he has had to sign two adverse counseling statements. Further, despite his combined 23 years of service on active duty and the reserves, he does not have enough time on active duty for retirement, and because he cannot rejoin the Air Force Reserves he stands to lose all benefits and receive no retirement compensation; further his discharge status will prevent him from any future employment as a civilian minister.

42.     Plaintiff Chaplain Joshua Layfield is a Captain in the US Air Force Reserve with 12 years of service. He is domiciled in Upshur County, West Virginia, and he is stationed at Wright-Patterson AFB, Greene County, Ohio. Captain Layfield's initial RAR was denied on February 24, 2022, and his RAR appeal was denied on April 25, 2022. Due to his unvaccinated status and/or submission of an RAR, Captain Layfield has been told to prepare for separation; demeaned in front of staff or in private; removed from duty, special schools, and special assignments; had to sign adverse counseling statements; is subject to travel and training restrictions; been singled out for discriminatory treatment or denied same accommodations as other people; and will likely face a general discharge for misconduct that will cause him to lose VA benefits and prevent him from finding future civilian employment as a minister.

43.     Plaintiff Chaplain James Lee is a Colonel in the US Army with 23 years of service. He is stationed at Fort Shafter, Hawaii. Colonel Lee's initial RAR was denied on April 19, 2022; he submitted his RAR appeal on April 24, 2022, which is still pending. He wants to remain on active duty but this is being forced to retire or lose all his work for in his 23 years of service, including his retirement and be given a discharge which will effectively preclude him from further ministry. Due to his unvaccinated status and/or submission of an RAR, he has been denied three separate temporary duty and training trips, including one to attend his Endorsers annual conference (in violation of Army regulations), and his request to PCS for a new assignment has been denied, preventing his family from moving and from making definitive plans regarding school enrollment for his children.

44.     Plaintiff Chaplain Brad Lewis is a Colonel in the US Army with 26 years of service. He is domiciled in Missouri, and he is stationed at US Army War College in Pennsylvania. COL Lee's initial RAR was denied on February 24, 2022 (though he was not notified until March 17, 2022); he submitted his RAR appeal on March 20, 2022, which is still pending. COL Lewis has natural immunity from a previous COVID-19 infection in January 2022. He was denied an exception to policy to PCS after U.S. Army War College, which essentially means he will be warehoused following graduation for an indefinite period.

45.     Plaintiff Chaplain Robert Nelson is Captain in the United States Air Force, who has served for three years. Captain Nelson joined after 18 years of civilian ministry in the United States and Japan, serving in leadership positions and starting multiple ministries. He is domiciled is San Antonio, Bexar County, Texas, and he is currently assigned to the 18 Air Support Operations Group, Air Combat Command, Pope Army Airfield, North Carolina. His RAR was submitted 15 November 2021, which is still pending. Due to his unvaccinated status and/or submission of an RAR, Captain Nelson is subject to training and travel restrictions that prevent him from supporting the geographically separated units to which he is assigned and may prevent him from attending his annual Endorser Conference required for him to maintain his certification and remain an approved Chaplain. Captain Nelson has also been sidelined from his other duties, having been singled out and removed from any involvement in the RAR interview process or to sit on the RRT evaluating RARs because of unfounded allegations that he could not be objective because he had submitted an RAR himself.

46.     Plaintiff Chaplain Rick Pak is a Major in the US Army with 16 years of service. He is domiciled in Pierce County, Washington, and he is stationed at US Army Garrison Grafenwoehr, Bavaria, Germany. Major Pak submitted his RAR on October 4, 2021, which is still pending. He has natural immunity from a previous infection from which he fully recovered in August-

September 2021. Major Pak has repeatedly been informed through his Chaplain chain of command that all RARs will be denied, and he has been informed by medical providers that all medical exemption requests based on natural immunity would be denied. Due to his unvaccinated status and/or submission of an RAR, he is subject to travel and training restrictions; is not permitted to PCS or take a new assignment, forcing him and his family to remain in Germany indefinitely; and faces a general discharge for misconduct, which will cause him to lose VA benefits, prevent him from transferring his GI Bill educational benefits to his children, and will prevent him from obtaining future employment as a minister.

47. Plaintiff Chaplain Randy Pogue is a Major in the US Army Reserve with seven years of service. He is domiciled in Butler County, Missouri, and he is stationed in Jackson County, Missouri. Major Pogue submitted his initial RAR on November 2, 2021, which is still pending. Major Pogue has natural immunity from a previous COVID-19 infection in November 2021 that was confirmed by PCR test. Due to his unvaccinated status and/or submission of an RAR, he has been threatened with a General Officer Memorandum of Reprimand ("GOMOR"), and he faces a general discharge for misconduct, which will cause him to lose VA benefits, and will prevent him from obtaining future employment as a minister

48.    Plaintiff Chaplain Gerardo Rodriguez is Captain in the US Air Force with 15 years of service. Captain Rodriguez he is one of only nine active-duty Jewish Chaplains in the Air Force, and only one of five Orthodox Jewish Chaplains. He is domiciled in Montgomery County, Ohio, and he is stationed at Wright-Patterson AFB, Greene County, Ohio. Captain Rodriguez submitted his initial RAR on December 9, 2021, which is still pending.  Captain Rodriguez was diagnosed with cancer in 2018, which is now in remission. Due to his unvaccinated status and/or submission of an RAR, he is restricted from traveling; was prevented from attending Squadron Officer School, which is required both for his current position and for promotion to Major; was denied a deployment to Saudi Arabia in October 2021; and faces a general discharge for misconduct that will cause him to lose VA benefits and prevent him from obtaining future employment as a civilian minister.

49.    Plaintiff Chaplain Parker Schnetz is a Captain in the US Army with five years of service. He is domiciled in Thurston County, Washington, and he is stationed at US Army Garrison Ansbach, Germany. Captain Schnetz submitted his initial RAR on September 24, 2021, which is still pending. He has natural immunity from a previous documented infection in October, 2021, confirmed by a positive test. Captain Schnetz has been informed by his chain of command that they have been instructed to disapprove such requests, that his request would be denied, and that he should expect to be separated soon.

In fact, even before the announcement of the Mandate when vaccination was still voluntary, he was prevented from participating in training and told by his commander that if he waited to get vaccinated until vaccination was mandatory, he would be reported to the commanding general for failure to provide religious support and instructed that he should return to civilian life. Because he had submitted an RAR, Captain Schnetz was prohibited from performing the chaplain interview for soldiers in his unit seeking religious accommodation; was ordered by his command to parrot the Army position on vaccines; instructed that his responsibility as a chaplain was to assuage any religious concerns soldiers may have regarding the vaccine; and had his religious objections and those of soldiers he counsels ridiculed by his commander. He has also counseled multiple officers and NCOs who were threatened by commanders not to submit RARs. Due to his unvaccinated status and/or submission of an RAR, Captain Schnetz is restricted from performing essential duty requirements; cannot travel or minister to soldiers who are deployed to Eastern Europe to deter Russian aggression; cannot attend the annual required Chaplain training course; cannot PCS, accept a new assignment, or even move back to the United States, which imposes tremendous hardship and uncertainty on his family with five children and another one on the way; and has been threatened with a GOMOR.

50.    Plaintiff Chaplain Richard Schaffer is a Lieutenant in the US Navy with six years of service. He is domiciled in El Dorado County, California, and he is stationed at Camp Lejeune, Onslow County, North Carolina. Lieutenant Shaffer's initial RAR was denied on November 30, 2021; he submitted his RAR appeal on December 20, 2021, which is still pending. He has natural immunity from previous COVID-19 infections in July 2020 and in January 2022.

51.    Plaintiff Chaplain Jonathan Shour is a Lieutenant in the US Navy with 16 years of service. He is domiciled in Kootenai County, Idaho, and he is stationed at Camp Lejeune, Onslow County, North Carolina. Lieutenant Shour's initial RAR was denied on February 6, 2022; he submitted his RAR appeal on February 20, 2022, which is still pending. He has natural immunity from previous COVID-19 infection in August 2021. Lieutenant Shour submitted a request for medical exemption based on a documented previous COVID-19 infection, which was denied. Since entering into the Navy in August 2021, he has faced discrimination and retaliation for his request to abide by his religious beliefs at three separate commands. Among other things, he has been isolated and treated differently in training environments, had his assignment changed simply for seeking exemption, and has been excluded from performing rites and services as a chaplain. His family was effectively made homeless for seven months by the Navy's restrictions on permanent change of station (PCS) moves due to the vaccination mandate. His family was restricted

from completing their PCS while they were already in between assignments. Having already moved out of their last home and their household goods in storage, the Navy told him he would not be able to leave a training assignment to complete their move to North Carolina. He was held over after training for over three months. During this time, his family of five (pregnant wife, three young children, and family dog), effectively homeless, lived in a hotel with no end in sight through most family birthdays, Thanksgiving, and Christmas.

52. Plaintiff Chaplain Jeremiah Snyder is a Major in the US Army with over 20 years of service. He is domiciled in Bell County, Texas, and he is stationed at Fort Polk, Louisiana. Major Snyder has submitted and resubmitted his initial RAR on multiple occasions, from September, 2021 to February, 2022, and his request is still pending. Due to his unvaccinated status and/or submission of an RAR, Major Snyder has been denied and/or removed from special schools and new assignments; received a negative fitness report; told to prepare for separation; demeaned in front of staff or in private; received negative counseling statements and threatened with a GOMOR; and been informed that he faces a general discharge for misconduct, depriving him of VA benefits and preventing him from obtaining future civilian employment as a chaplain.

53. Plaintiff Chaplain David Troyer is a Captain in the US Army with 10 years of service. He is domiciled in Okaloosa County, Florida, and he is

stationed in Vicenza, Italy. Captain Troyer's initial RAR was denied on February 4, 2022; he submitted his RAR appeal on February 22, 2022, which is still pending. Captain Troyer has natural immunity based on a positive test result on September 21, 2021. Captain Troyer now faces a general discharge, which will prevent him from obtaining future civilian employments, and he and is restricted from PCS or new assignments, so that he and his family cannot return to the United States.

54.   Plaintiff Chaplain Seth Weaver is a First Lieutenant in the US Army Reserve with four years of service. He is domiciled in Greenville County, South Carolina, and he is stationed in Mecklenburg County, North Carolina. First Lieutenant Weaver's initial RAR is still pending. Due to his unvaccinated status and/or submission of an RAR, he cannot participate in annual training and other training opportunities.

55.   Plaintiff Chaplain Justin Wine is a Captain in the US Air Force Reserve with 18 years of service. He is domiciled in Cabell County, West Virginia, and he is stationed in Goodfellow AFB in Tom Greene County, Texas. Captain Wine's initial RAR is still pending. In March 2022, he was contacted by the Chaplain Corps leadership who pressured him to withdraw the request or resign his position, or else he would face a range of adverse consequences. Captain Wine has natural immunity from a documented previous infection in August 2021. Due to his unvaccinated status and/or submission of an RAR, he

has repeatedly been told to prepare for separation; been demeaned in front of his staff; and his promotion to Captain has not been recognized.

56.   Plaintiff Chaplain Thomas Withers is a Major in the Army National Guard with nine years of service. He is domiciled and stationed in Bexar County Texas. Major Withers submitted his initial RAR on November 14, 2021, which is still pending. Major Withers has natural immunity from a documented previous infection in August 2021. Major Withers was advised against the COVID-19 shot by his medical provider because of the high likelihood of it causing autoimmune injury, but his physician was restricted from writing a memo to that effect because of the CDC restriction on medical professionals issuing anything other than a 90-day exemption. Due to his unvaccinated status and/or submission of an RAR, Major Withers has been classified as non-deployable, and he cannot participate in training or professional education required for next promotion. He was also told by leadership that anyone remaining unvaccinated after June 30, 2022, would be marked AWOL even if they showed up for drill and would not be allowed to be paid, and that would be involuntarily discharged after "missing" three drills.

57.   Plaintiff Chaplain Matthew Wronski is a Lieutenant Junior Grade ("LTJG") in the US Navy with eight years of service. He is domiciled in Autauga County, Alabama. LTJG's Wronski's initial RAR is still pending.

58.     Plaintiff Chaplain Jerry Young is a Major in the US Army with 14 years of service. He is domiciled in Bell County, Texas, and he is stations Richland County, South Carolina. Major Young submitted his initial RAR on October 28, 2021, which is still pending. He has natural immunity from a previous infection in December 2021. Due to his unvaccinated status and/or submission of an RAR, Major Young has been subject to travel and training restrictions; repeatedly been demeaned and publicly singled out based on his vaccination status or characterized as a "refuser"; directed to "comply or get out"; and been subjected to multiple types of intimidation and coercion. Further, his chain of command has identified religious objectors as "extremists"; coached chaplains on how they should overcome "vaccine hesitancy" or assuage service members' religious objections; and informed him that his RAR would be denied resulting inevitably in expulsion.

**Defendants**

59.     Defendant DoD is a Department of the United States Government. It is led by the Secretary of Defense, Lloyd J. Austin, III, who issued the DoD Vaccine Mandate.

60.     Defendant Department of the Air Force is a Department of the United States Government. It is led by the Secretary of the Air Force Frank Kendall.

61.    Defendant Department of the Army is a Department of the United States Government. It is led by the Secretary of the Army Christine Wormuth.

62.    Defendant Department of the Navy is a Department of the United States Government. It is led by Navy Secretary Carlos Del Toro.

63.    Defendant Food and Drug Administration ("FDA") is an agency of the United States Government. It is led by acting Commissioner Janet Woodcock who is sued in her official capacity as Acting Commissioner of the FDA.

64.    Defendant CDC is an agency of the United States Government. It is led by Director Rochelle Walensky who is sued in her official capacity as CDC Director.

65.    Defendant Department Health and Human Services ("HHS") is an agency of the United States Government and oversees the FDA and CDC. It is led by Secretary Xavier Becerra who is sued in his official capacity as head of HHS.

## JURISDICTION AND VENUE

66.    This case arises under federal law, namely the Constitution's Article VI forbidding any "religious test" for an office or public trust; the First and Fifth Amendments of the United States Constitution, U.S. CONST. AMENDS. I & V; the APA, 5 U.S.C. § 551, *et. seq.*; 28 U.S.C. §§ 1331, 1343, 1346,

1361, 2201 & 2202; RFRA, 42 U.S.C. § 2000bb-1, *et seq*.; and 42 U.S.C. § 1983; and the FY 2013 NDAA § 533.

67.     The Mandate, No Accommodation Directive, and CDC Vaccine Redefinition are final agency actions, as they mark the consummation of the agency's decision-making process. Each of these agency actions is an *ultra vires* action in violation of Plaintiffs' federal statutory and constitutional rights, and to the extent these statutes do not create a right of action, Defendants' actions are agency actions for which there is no other adequate remedy in a court that may be brought pursuant to the APA. 5 U.S.C. § 704.

68.     To the extent that Defendants' actions are deemed non-final agency actions that would wholly deprive Plaintiffs of federal statutory rights, the Court has jurisdiction pursuant to its inherent equity powers and federal question jurisdiction under 28 U.S.C. § 2201 and 28 U.S.C. § 1331.

69.     Jurisdiction is proper in this Court under the APA, 5 U.S.C. § 702, and under 28 U.S.C. § 2201, which states that actions involving controversies with federal agencies may be pursued in any United States District Court, and under 28 U.S.C. §§ 1331 and 1346.

70.     Venue is proper in this Court pursuant to 28 U.S.C. §1402 and 28 U.S.C. § 1391(e) because certain Plaintiffs are stationed and/or domiciled in this District, and because a substantial part of the act or omissions giving rise to the claim, have or will occur in this district, unless this Court grants the

relief requested herein. Specifically, in this class action two plaintiffs home of record are within the Middle District, but in different divisions; Chaplain ("CH") Calger resides in Charlotte County, the Fort Myers Division; and CH Hirko's home of record is in Saint John's County, the Jacksonville Division. Two other plaintiffs live or have homes of record in Florida's Northern District, CHs Eastman and Troyer.

71.   Local Rule 1.04 (b) "Division For a Civil Action" states: "A party must begin an action in the division to which the action is most directly connected or in which the action is most conveniently advanced." There is already a similar case in the Tampa Division, *Navy SEAL 1 v. Austin*, No. 8:21-cv-2429-SDM-TGW (M.D. Fla.) ("*Navy SEAL 1* Proceeding"), in which the Court has already addressed some of the issues Plaintiffs raise here. The Tampa division is already familiar with some of the background of the challenged Mandate and specifically raised the issue of "retaliation", which is one of the major issues in this case. Accordingly, the Tampa Division is the division "in which the action is most conveniently advanced."

## STATEMENT OF FACTS & LEGAL BACKGROUND

## I.   MILITARY CHAPLAINS' UNIQUE CONSITUTIONAL ROLE

72.   Chaplains   are   "unique"   military   officers,   commissioned denominational representatives because the Constitution requires military

religious leaders to meet the military's Free Exercise Needs. *See In re England*, 375 F.3d 1169, 1172 (D.C. Cir. 2004).

73.     *Katcoff v. Marsh*, 755 F.2d 233 (2d Cir. 1985) is the leading case reviewing and reaffirming the constitutionality of America's tradition of having military chaplains. In *Katcoff*, plaintiffs initially challenged the Chaplain Corps as an impermissible entanglement of government and religion in violation of the Establishment Clause under the third prong of *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971)'s three-part test. *Katcoff*, 755 F.2d at 229. After admitting that soldiers had a Free Exercise right that could only be met by clergy or religious leaders, the plaintiffs argued that such requirements could be met by civilian chaplain volunteers rather than paid military clergy commissioned as officers. *Id* at 229-30. Only one small denomination volunteered to provide civilian volunteers. *Katcoff* rejected applying *Lemon* because the issue involved other competing Constitutional values: the Free Exercise imperative, the Establishment Clause's mandate for religious neutrality, and Congress's authority over the military. *Id*. at 231-36. After examining the realities of military life and the constitutional requirements discussed below, *Katcoff* found the "plaintiffs' proposal is so inherently impractical as to border on the frivolous." *Id*. at 237.

74.     *Katcoff* held the chaplaincy was Congress' appropriate and necessary accommodation of competing Constitutional commands.  *Id*. at 234-

35, 237. Absent a chaplaincy, military service realities restricted soldiers' ability to exercise their First Amendment's Free Exercise rights, *id.* at 228 ("mobile, deployable nature of our armed forces", Geneva Convention requirements, need for familiarity with military procedures, equipment, and practices), causing conflict with the Establishment Clause's mandate that government neither hinder nor establish a religion.

> It is readily apparent that [the Free Exercise] Clause, like the Establishment Clause, obligates Congress, upon creating an Army, to make religion available to soldiers who have been moved by the Army to areas of the world where religion of their own denominations are not available to them. … Unless the Army provided a chaplaincy it would deprive the soldier of his right under the Establishment Clause not to have his religion inhibited and of his right under the Free Exercise Clause to practice his freely chosen religion.

*Id.* at 234. *See also id.* at 232 ("by removing them to areas where religious leaders of their persuasion and facilities were not available [the Army] could be accused of violating the Establishment Clause unless it provided them with a chaplaincy").

> Indeed, if the Army prevented soldiers from worshiping in their own communities by removing them to areas where religious leaders of their persuasion and facilities were not available it could be accused of violating the Establishment Clause *unless* it provided them with a chaplaincy since its conduct would amount to inhibiting religion. *Everson v. Board of Education,* [331 U.S. 1, 15 (1947)] (the government can neither "force nor influence a person . . . to remain away from church against his will. . . .") **State power is no more to be used so as to handicap religions than it is to favor them.**

*Id.* at 232 (emphasis added) (internal citations and quotation marks omitted).

75.     In other words, the Constitution mandates the Services provide chaplains, *i.e.,* denominational representatives and religious leaders, and therefore a Chaplain Corps, to allow military personnel to freely exercise their individual religion. This keeps the government neutral to religion rather than hostile.

76.     Accordingly, Military Chaplains have standing to raise unique statutory (*i.e.*, Section 533) and constitutional claims (*i.e.*, Establishment Clause and No Religious Test Clause), in addition to the RFRA and First Amendment Free Exercise claims raised by other service members seeking religious accommodations (and which several courts have found have a substantial likelihood of success). *See supra* note 2 & cases cited therein.

## II.    CONGRESS ENACTED UNIQUE PROTECTIONS FOR CHAPLAINS IN THE 2013 AND 2014 NDAA AMENDMENTS.

77.     Congress passed specific protections for chaplains in the FY 2013 and 2014 NDAA Amendments which Defendants have deliberately violated and trampled by their religious persecution and retaliatory actions against these Chaplains and the class. *See* Note 1 *supra*. Section 533 of the FY 2013 NDAA as amended by section 532 of the FY 2014 NDAA now reads:

(a) ACCOMMODATION. Unless it could have an adverse impact on military readiness, unit cohesion, and good order and discipline, the Armed Forces shall accommodate individual expressions of belief of a member of the Armed Forces reflecting the sincerely held conscience, moral principles, or religious beliefs of the member and, in so far as practicable, may not use such expression of belief as the

basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training or assignment.

(b) PROTECTION OF CHAPLAIN DECISIONS RELAT1ING TO CONSCIENCE, MORAL PRINCIPLES, OR RELIGIOUS BELIEFS.—No member of the Armed Forces may—

(1) require a chaplain to perform any rite, ritual, or ceremony that is contrary to the conscience, moral principles, or religious beliefs of the chaplain; or

(2) discriminate or take any adverse personnel action against a chaplain, including denial of promotion, schooling, training, or assignment, on the basis of the refusal by the chaplain to comply with a requirement prohibited by paragraph (1).

78.    The Military Defendants' actions at issue here clearly violate § 533(a) "Accommodation", and (b), "Protection of Chaplain Decisions Relating to Conscience, Moral Principles, or Religious Beliefs", despite its clear protection of "chaplains decisions relating to conscience, moral principles, or religious beliefs" from retaliation and discrimination.

79.    Congress later provided directions and reminders about the importance of chaplains' religious liberty, freedom of conscience and unique skills in the FY 2016 NDAA. *See* Ex. 3, 2016 NDAA, Senate Armed Services Committee Report at 163-64 ("2016 NDAA Senate Report"),

80.    The FY 2018 NDAA again stated Congress's great concern over chaplains' religious liberty. Congress specifically directed the DoD and the Services to provide instruction and/or training on RFRA, chaplains' religious liberty, and § 533. Congress directed this training to be covered in DoD's and

the Armed Forces training courses for Chaplains, Judge Advocates General, and those selected for command.[4]

## III.  DEFENDANTS HAVE WILLFULLY IGNORED AND VIOLATED SECTION 533'S SPECIFIC PROTECTIONS FOR CHAPLAINS EXERCISING THEIR CONSCIENCE AND FAITH.

81.    Military Defendants have consistently failed to implement § 533's protections for Military Chaplains.  Their refusal to obey Congress's directive is a clear manifestation of contempt for congressional authority, the Constitution's protection of religious liberties, and religious persons like Military Chaplains. Few chaplains are aware of § 533, apparently a situation DoD wanted. The Secretaries' actions in planning and implementing the Mandate show the DoD and its Services have trampled on the above protections, retaliating against chaplains for exercising their conscience and faith.

82.    The Associated Gospel Churches ("AGC"), a DoD-approved endorser, which has seven of its endorsed chaplains as plaintiffs in this case, submitted written testimony to the House Armed Service Committee's Personnel Subcommittee for its September 19, 2014, Hearing on chaplains' religious liberty. *See* Ex. 5, AGC, "The Associated Gospel Churches'

---

[4] *See* Ex. 4, 2018 NDAA, Senate Armed Services Committee Report, National Defense Authorization Act for Fiscal Year 2018, Report [to accompany S. 1519], Items of Special Interest (After "Subsection H - Other Matters"), S. Rept. 115-125 at 149-150 (July 10, 2017), "Leadership training" ("2018 NDAA Senate Committee Report").

Perspective on Religious Liberty, Including Military Prayer and Religious Speech Problems" ("AGC Testimony"). That testimony highlighted continuing examples of Military Chaplains' religious speech being suppressed or censored despite § 533's protections. AGC asked for a statutory definition of a chaplain and their rights to make it clear chaplains were commissioned faith group representatives, not government religious officials.

83.    AGC also submitted supplemental testimony reporting incidents that happened immediately after submitting the AGC Testimony. *See* Ex. 6, AGC, "The Associated Gospel Churches' Supplement to its Perspective on Religious Liberty, Including Military Prayer and Religious Speech Problems" ("AGC Supplemental Testimony"). AGC cited incidents where § 533 was clearly violated. One involved a situation where § 533 was cited as a defense in an investigation arising in a Chief of Chaplains mandated chaplains' training session addressing possible scenarios involving same sex couples. The command's JAG recommended § 533 be ignored and the chaplain sanctioned because the chaplain's response reflecting his faith offended someone. The Army Chief of Chaplains' office reported to AGC it warned the command that retaliating against the chaplain would create a firestorm and cited § 533.

84.    The FY 2016 NDAA also had directive language to DoD and the Armed Services emphasizing its continued interest in chaplains' religious liberty and § 533's protections for Military Chaplains conscience and their

ability to accurately represent their denominations and faith. *See generally* Ex. 3.

85.    The above is cited to show the Services were aware of § 533, but chose to ignore it, and they made sure its provisions and protections were not distributed and known throughout the DoD and Armed Services.

86.    The Plaintiffs' identified incidents of retaliation and prejudice resulting from their refusal to take the vaccine based on their conscience and faith, including the denial of their RARs in the interrogation as part of this process are direct violations of § 533.

## IV.    DEFENDANTS HAVE DELIBERATELY IGNORED CONGRESS' CLEAR INSTRUCTIONS TO DEVELOP TRAINING ON CHAPLAINS' RELIGIOUS LIBERTY UNDER RFRA AND SEC. 533 AND PROVIDE SUCH TRAINING TO JUDGE ADVOCATES, COMMANDERS AND CHAPLAINS.

87.    Following a series of incidents in which chaplains were attacked and threatened with career ending retaliation for following their conscience and religious beliefs contrary to the specific provisions and protections of § 533 and RFRA, the 2018 NDAA directed DoD to develop and implement "a comprehensive training program on religious liberty issues for military leadership and commanders" on religious liberty for chaplains, JAGs and commanders' courses (preparing them to take command).

> The committee continues **to recognize the importance of protecting the rights of conscience of members of the Armed Forces**, consistent with the maintenance of good order

and discipline. The Congress has expressed this view in title 42, United States Code, section 2000bb, et seq. and in section 533 of the National Defense Authorization Act for Fiscal Year 2013 (Public Law 112-239) as amended by section 532 of the National Defense Authorization Act for Fiscal Year 2014 (Public Law 113-66). **Complying with this law requires an intentional strategy for developing and implementing a comprehensive training program on religious liberty issues for military leadership and commanders**. The committee urges the Department, in consultation with commanders, chaplains, and judge advocates, to ensure that appropriate training on religious liberty is conducted at all levels of command on the requirements of the law, and to that end **the committee directs the Secretary, in consultation with the Chief of Chaplains for the Army, Navy, and Air Force, to develop curriculum and implement training concerning religious liberty in accordance with the law.** Recipients of this training should include commanders, chaplains, and judge advocates.

Ex. 4, 2018 NDAA Senate Committee Report at 149-150 (emphasis added).

88.     No such instruction has been developed in the intervening five years and no instruction has been provided in the Military Chaplains' various professional development training courses.

89.     The Military Defendants' Mandate, No Accommodation Policy, and their failure to recognize the rights of Military Chaplains and other service members to follow their conscience is a clear demonstration of Military Defendants' contempt for the law, the rights of chaplains, Congress who passed § 533, and the Constitution which they have sworn to uphold.

90.     Congress established specific criteria to comply with Congress' intent in passing § 533: "Complying with this law requires an intentional

strategy for developing and implementing a comprehensive training program on religious liberty issues for military leadership and commanders." *Id.* at 149.

91.    Section 533 was not codified in Title 10. The original House NDAA language stated it would be inserted after § 1034, addressing Whistle Blowers and Retaliation. Its omission suggests intent or gross incompetence.

92.    DoD's deliberate failure to do what Congress clearly intended and instructed, along with Military Defendants' further direct violations of Military Chaplains' rights protected by Section 533 protections, RFRA and the First Amendment based on conscience is deliberate insubordination and dereliction of duty.

93.    The following section details Military Defendants' pattern and practice of violating the religious liberties of Military Chaplains and service members generally.

## V.    DEFENDANTS' PATTERN AND PRACTICE OF RETALIATION AGAINST AND HOSTILITY TO RELIGIOUS EXERCISE.

94.    The Military Defendants' actions establish a uniform pattern and practice of retaliation and hostility to Military Chaplains and religious service members who follow their conscience and the rule of law.

95.    The testimony from these plaintiffs, *see generally* Ex. 1, have one common characteristic: the actions taken against them, including the requirement to justify why they have religious objections to the Mandate,

violate their rights under RFRA, § 533, and the First and Fifth Amendments. These actions are retaliation for Plaintiffs' exercise of their above cited protected rights. This is by design, not by accident.

96.    Special Staff with medical, legal and religious expertise have ignored their respective professional codes and their civic, military and legal duties to respect religious beliefs, identify medical threats to individuals and the force, and operate within the boundaries of the Constitution and law.

97.    **Army Chaplain Corps.**  On October 7, 2021, the Army Chief of Chaplains addressed the Chaplain School in a townhall concerning the vaccines. He implied that if you didn't agree with the mandate, you can easily exit the military because it is an all-volunteer Army. The Chief showed no consideration for soldiers and chaplains' free exercise of religion nor the importance of conscience, rather it was framed as "comply or get out." By implication, he also conflated vaccine hesitancy with extremism, which he identified as the number one problem in the military. He said chaplains should be part of the healing, rather than part of the problem and "leaders lead, and leaders don't have RARs." Ex. 1, Young Decl., ¶ 18.h.

98.    On information and belief, the Army Chief initially sought to move all chaplains with RARs to non-deploying units, but this was squashed for legal reasons. The Office of the Chief of Chaplains said on November 15, 2021, that the new "free exercise of religion" actually takes place when the "chaplain

interview memorandum includes a well-written summary of the interview, a thorough, well-written assessment of the religious basis of the request, and a through, well-written assessment of the sincerity of the requester's belief." *Id*. One chaplain requesting a RAR described the interview as "more like an invasive colonoscopy." *Id*

99.   **Air Force & Air Force Chaplain Corps.** On information and belief, the Air Force Chaplain Corps collected and reviewed RARs and provided several "good" samples for those determining how to attack and undermine them as a prelude or pretext to deny RARs at a COVID Summit at the Air Force Academy. This violates § 533 and the Chaplain Corps' very purpose for being.

100.   On October 19, 2021, Air Force leaders attended the CORONA₃ conference, including all MAJCOM commanders, and those who were responsible for adjudicating accommodation requests to the Air Force's vaccine mandate. The 2021 CORONA Conference was held at the United States Air Force Academy.

101.   Whistleblowers have reported that all Chaplains and all persons other than those MAJCOM commanders responsible for adjudicating accommodation requests to the Air Force's vaccine mandate, were asked to leave the room, so that the Secretary of the Air Force's expectations concerning religious accommodation requests could be communicated to Air Force senior

leaders. Upon information and belief, the Secretary of the Air Force and/or his designees, communicated that no religious accommodations could or should be approved for anyone who would be remaining in the Department of the Air Force.

102. Finally, all Air Force members have received "adverse administrative action" of a Record of individual counseling under Air Force Form 174 simply for submitting an RAR. *See* Air Force Instruction 36–2907, *Unfavorable Information File (UIF) Program*, ¶ 2.3.2 (Nov. 26, 2014).

103. **Removal from RRT and RAR Process.** Several Plaintiffs have reported that they were expressly and intentionally excluded from any involvement in the RAR process, removed from RRT, prohibited from counseling servicemembers seeking religious accommodation, and/or otherwise punished for submitting RARs, expressing religious objections or support for service members with religious objections. *See, e.g.,* Fussell Decl., ¶ 12; Gentilhomme Decl., ¶ 14; Nelson Decl., ¶ 11; Schnetz Decl., ¶ 18.

104. **Surgeons General.** The Surgeons General have declared the alleged vaccines are safe, ignoring numerous medical incidents reported through the Military Medical incident reporting system.[5] They have failed to

---

[5] *See* Patricia Kime, *DoD Confirms: Rare Heart Inflammation Cases Linked to COVID-19 Vaccines,* Military.com (June 30, 2021); Sen. Ron Johnson's "Second Opinion" hearing on the damage done by COVID-19 vaccines, suppression of dissent

adequately research the link between the vaccines and numerous cases of serious medical incidents and injuries and/or death of individuals, including military personnel and their dependents. *Id.* The Surgeons General also have failed to follow their own regulations when it comes to "natural immunity."

105. **Judge Advocate Generals.** On information and belief, the Judge Advocate Generals ("JAGs") have provided guidance on how to avoid and violate the Constitution, RFRA, § 533 and other laws rather than obey them, especially in regard to RFRA and religious accommodations, and chaplains' rights and protections.

106. **Establishment of Secular Religion.** The actions of Secretary Austin and the Service Secretaries show they are attempting to establish a secular religion whose main sacrament is abortion, its main doctrine is to not allow or recognize individual conscience, and whose mission is to purge adherents of Judeo- Christian beliefs and faith who follow their conscience. The DoD's new religion rejects and punishes anyone who sees abortion as sin forbidden by God.

107. **Adoption of a Prohibited Religious Test.** DoD and the Service Secretaries' deliberate corruption of the RAR process in violation of the First Amendment, RFRA, and their own regulations amounts to a *de facto* religious

---

on the vaccines' safety and troubling side effects, available at: https://rumble.com/vt62y6-covid-19-a-second-opinion.html.

test for service in the military contrary to the express prohibition in Article VI of the Constitution, which predates the First Amendment.  It is evidenced by their hostility to Military Chaplains and others who profess historic Judeo-Christian beliefs in the sanctity of life and those who believe they must follow their conscience as formed by their religious faith. The most common opposition to the alleged COVID vaccines concerns the use of stem cells from aborted babies in the development and testing of vaccines.

## VI.   MILITARY DEFENDANTS' RFRA AND FIRST AMENDMENT VIOLATIONS.

### A.   Systematic Denial of Religious Accommodations.

108.  The DoD and each of the Armed Services have adopted guidance, procedures, and evaluation criteria for religious accommodation requests.[6] While there are arguably some differences among the Services' respective procedures, the outcome is always the same: no accommodations are granted.

109.  Plaintiffs have attached Defendants' filings in the *Navy SEAL 1* Proceeding, which speak for themselves. *See* Ex. 7, *Navy SEAL 1 v. Austin*, No. 8:21-cv-2429-SDM-TGW (M.D. Fla. Feb. 4, 2022), "Third Notice of Compliance," ECF 73 ("February 4, 2022 Compliance Notice"). Defendants

---

[6] *See generally* Ex. 1, DoD Instruction 1300.17, "Religious Liberty in the Military Services" (Sept. 1, 2020) ("DoDI 1300.17") (DoD-wide procedures). *See also* DAFI 52-201, "Religious Freedom in the Department of the Air Force" (June, 23, 2021) (Air Force); Army Regulation 600-20, "Army Command Policy" (July 24, 2020) (Army); BUPERSINST 1730.11A (Navy and Marine Corps)).

appear to have approved zero requests (or 0.00%) for service members who will continue to serve, and they have approved about a dozen out of over 25,000 (or 0.05%) when those who are will be separating or on terminal leave are included.[7]

**Table 1: Religious Accommodation Requests & Appeals**

| Armed Service | Initial RA Requests | | | RA Appeals | | |
|---|---|---|---|---|---|---|
| | Filed | Denied | Approved | Appeals | Denied | Approved |
| Air Force | 12,623 | 3,180 | 5 | 2,221 | 443 | 1 |
| Army | 3,523 | 391 | 0 | 55 | 0 | 0 |
| Coast Guard | 1,308 | 578 | 0 | 224 | 0 | 0 |
| Marine Corps | 3,539 | 3,458 | 0 | 1,150 | 119 | 3 |
| Navy | 4,095 | 3,728 | 0 | 1,222 | 81 | 0 |
| Total | 25,008 | 11,335 | 5 | 4,872 | 643 | 4 |

110. Relying on similar statistics and claims nearly identical to Plaintiffs, several courts have found that the Military Defendants' religious accommodation process violates both RFRA and the First Amendment. *See supra* note 2 & cases cited therein.

---

[7] *See Navy SEAL 1*, 2022 WL 534459, at *19 (Marine Corps approvals); *Poffenbarger*, 2022 WL 594810, at *13 n.6 (Air Force approvals). More recently, in the May 9, 2022 hearing *Roth v. Austin*, No. 8:22-cv-3038-BCB-MDN (D. Neb.), the transcript for which is not currently available, Air Force counsel again admitted that the Air Force has approved RARs only for airmen at the end of their service who would otherwise qualify for administrative exemptions. *See* Kristina Wong, *Air Force Admits All Granted Religious Accommodations for Vax Were for Airmen Already Leaving Service*, Breitbart News (May 10, 2022), available at: https://www.breitbart.com/politics/2022/05/10/exclusive-air-force-admits-all-granted-religious-accommodations-for-vax-were-for-airmen-already-leaving-service/ (last visited May 17, 2022).

**B.      More Favorable Treatment of Comparable Secular Activity.**

111.   While the Armed Services have categorically denied all or nearly all religious exemptions, they have granted thousands of medical and administrative exemptions. Statistics like those in Table 2 below have led several courts to conclude that Military Defendants have violated RFRA, as discrimination against, and hostility to, religious exercise are the only plausible explanation for the difference in treatment between religious exercise and comparable secular activity (*i.e.*, medical and administrative exemptions). *See, e.g., Air Force Officer*, 2021 WL 468799, at *7 ("At bottom, Defendants simply don't explain why they have a compelling interest in Plaintiff being vaccinated while so many other Air Force service members are not.").

**Table 2: Medical & Administrative Exemptions Granted**

| Armed Service | Medical Exemptions | | Administrative Exemptions | |
|---|---|---|---|---|
| | Permanent | Temporary | Permanent | Temporary |
| Air Force | UNKNOWN | 1,513 | 2,314 | |
| Army | 6 | 2,106 | NOT REPORTED | |
| Coast Guard | 4 | 6 | NOT REPORTED | |
| Marine Corps | 21 | 232 | 321 | 78 |
| Navy | 11 | 252 | 460 | 35 |

**C.      Refusal To Consider Any Alternatives To 100% Vaccination.**

112.   The Secretary's position there are no reasonable alternatives to discharging chaplains and thereby harming the Services is absurd and

illogical. He first argues unvaccinated chaplains (or other non-vaccinated service persons) are potential COVID carriers or a threat to those who are vaccinated and then argues at the same time the vaccinated are a threat to the unvaccinated. That's absurd because the COVID-19 vaccine does not completely protect or vaccinate those who have taken it from future COVID-19 infections nor prevent them from becoming COVID transmitters; protection of the force cannot be a valid compelling government purpose under the circumstances because the vaccines do not prevent the spread of COVID-19 because they cannot prevent infection of, or transmission by, fully vaccinated service members. *See generally infra* Section VIII.

113.   If an unvaccinated chaplain were to get COVID, they would lose at most 5 to 10 days of time at work while in quarantine, but then would be back at work. On its face, that scenario shows treating and keeping such a chaplain is a much more reasonable, rational, cost effective and mission preserving alternative than throwing the chaplain out of the service because the Service has not lost a dedicated chaplain with years of experience, often in highly specialized training in areas for which the Service has great need and will not increase the shortage of chaplains. The Services all report chaplain shortages and difficulty in recruiting. Failure to keep them needlessly degrades the Services' ability to provide chaplains, a constitutional duty.

114.   If the new vaccine does not completely protect, which it does not, the chances of the vaccinated and unvaccinated catching COVID are the same. If the Secretary and other high-ranking officials were not fired for catching COVID, *see supra* note 3*,* but allowed to recover and then resume their duties, and if losing these high ranking leaders for a few days did not imperil the Services, the Secretary is unjustified in not seeing that an unvaccinated chaplain is entitled to the same consideration.

## VII.   PLAINTIFFS' RELIGIOUS ACCOMMODATION REQUESTS

### A.   Plaintiffs' Sincerely Held Religious Beliefs

115.   In their declarations and the religious accommodation requests attached thereto, Plaintiffs have set forth the sincerely held religious beliefs that compel them to oppose the mandate. The primary reason cited is the refusal to participate in the abomination of abortion.[8] Closely related is the

---

[8] *See, e.g.,* Brown Decl., ¶ 9 ("I hold a God given conviction to abstain from any vaccine that utilizes or benefits from fetal cells from murdered (aborted) children in any manner or form.") (*citing* Genesis 1:26, Psalm 139:13-16); Gentilhomme Decl., ¶ 9 ("As a Christian, I believe the murder of babies at any stage of development within a woman's womb is wrong, and using medicine, pills, or vaccines directly or indirectly linked to aborted babies should be avoided at all costs."); Pak Decl., ¶ 9 ("My faith prohibits me from participating in or benefitting from abortion, no matter how remote in time that abortion occurred."); Schnetz Decl., ¶ 8 ("I cannot knowingly or willingly participate in any medical intervention that uses aborted fetal cell lines in any phase of its development or creation."). *See also* Alvarado Decl., ¶ 9; Brobst Decl., ¶ 9; Fussell Decl., ¶ 10; Henderson Decl., ¶ 9; Hirko Decl., ¶ 9; Lewis Decl., ¶ 9; Nelson Decl., ¶ 10; Pogue Decl., ¶ 9; Schnetz Decl., ¶ 8; Troyer Decl., ¶ 10; Weaver Decl., ¶ 9; Young Decl., ¶ 9.b.

objection that it is a sin to go against one's conscience when informed by prayer and contemplation of God's commands.[9]

116. Many Plaintiffs object to the Mandate to take mRNA vaccines because it violates God's commandment to treat the body as a temple.[10] A related objection is that the use of gene therapies like the mRNA vaccines because they alter God's creation, *i.e.*, their genetic codes or immune system, is in violation of God's commandments.[11] Plaintiffs have also cited the

---

[9] *See, e.g.,* Jackson Decl., ¶ 9 ("According to the Word of God, if I went against my conscience after prayer and deliberation with God, it is sin for me. 'If anyone, then, knows the good they ought to do and doesn't do it, it is sin for them,' and 'Each of them should be fully convinced in their own mind.'"); Pak Decl., ¶ 9 (explaining that by participation in or benefitting from abortion he "would be sinning and jeopardizing my relationship with God and violating my conscience."); Young Decl., ¶ 9.a ("I am 100% convinced by a clear word from God (Ephesians 1:17) that my material participation with the current COVAX would be an intentionally sinful act of rebellion against my God. … I cannot compromise in a manner which condemns my soul; this would be spiritual suicide (Mark 8:36)."). *See also* Calger Decl., ¶ 6.b; Cox Decl., ¶¶ 19-21; Shaffer Decl., ¶ 2.c. (explaining that his progressive awareness of vaccine research and development involving fetal cells has caused him to cease taking these products in order to align his behavior with his beliefs); Troyer Decl., ¶9 (same); Wronski Decl., ¶ 9.

[10] *See, e.g.*, Alvarado Decl., ¶ 9 ("My request is based on my religious belief that my body is the temple of the Holy Spirit purchased with the blood of Christ which the Apostle Paul teaches in 1 Corinthians 6:19-20, therefore I am not my own, but belong, body and soul, to my God."); Jackson Decl., ¶ 9 ("'Don't you know that you yourselves are God's temple and that God's Spirit lives in you?' and 'Do you not know that your body is a temple of the Holy Spirit, who is in you, whom you have received from God? You are not your own; you were bought at a price. Therefore, honor God with your body' (1 Corinthians 3:16-17; 6:19-20). These Scriptures tell me I am to treat my own body as a house or resting place for the Almighty God. If I were to receive the new vaccines, knowing the adverse effects and acknowledging the unknown longterm effects to my body, I would be knowingly causing potential harm to my body."). *See also* Brown Decl., ¶ 9; Fussell Decl., ¶ 9; Harris Decl., ¶ 9; Rodriguez Decl., ¶ 9; Wronski Decl., ¶ 9.

[11] *See, e.g.,* Alvarado Decl., ¶ 9; Henderson Decl., ¶9; Hirko Decl., ¶ 9; Wine Decl., ¶ 9;

similarity of the military and civilian vaccine Mandates to the prophecy in Revelation regarding the raising up of a false God or Anti-Christ.[12]

117.  But of perhaps greatest relevance to this Complaint is that the Mandate and DoD's No Accommodation Policy specifically prevent Chaplains from performing their constitutional mission as Chaplains. ¶¶ 71-73.

> One of the main roles of a chaplain is to provide pastoral counsel support to Soldiers of all faiths enabling them through counsel and encouragement, to act according to their conscience, especially when faced with apparent conflicts between doing what is right and following orders. Forcing chaplains to violate their own conscience renders them effectively useless to the men and women who look to them for support in maintaining their moral integrity.

Hirko Decl., ¶ 10. *See also* Calger Decl., ¶ 6.b ("I find it odd that the U.S. Army would desire chaplains and Officers who are willing to violate their consciences for the sake of a mandate."); Jackson Decl. ¶ 9 ("If even a chaplain cannot practice his or her faith in the military, who can?"); Young Decl., ¶ 9.j ("Not only for myself, but for all due to my position, I must uphold the free exercise

---

Young Decl., ¶ 9.c.

[12] *See, e.g.,* Lewis Decl., ¶ 12 ("In the Bible, Revelation 13 and other passages, clearly warn of a future person, entity, or system that will set himself up as a false god and demand worship. That person will use extremely coercive means, including marking followers, to prohibit anyone around the world who will not bow to him from "buying or selling" (see Revelation 13:11-18). He will stop the "unmarked" from travel, commerce, and maintaining a source of income."); Schnetz Decl., ¶ 8 ("To receive the vaccine would be to affirm this public religion and akin to idol worship, thus violating my deeply held Christian beliefs that I am not to engage in idol worship."); Young Decl., ¶ 9.j ("it is sinful for me to receive a vaccine which I do not need in order to appease a newly established religious system which has framed COVAX therapy like a religious sacrament and moral imperative.").

of religion in my *official capacity* as an US Army Chaplain.") (emphasis in original). Because of their adherence to their sincerely-held beliefs, Military Defendants prohibited certain Plaintiffs from participating in the RAR interviews and excluded them from the RRTs. *See, e.g., See, e.g.,* Fussell Decl., ¶ 12; Gentilhomme Decl., ¶ 14; Nelson Decl., ¶ 11; Schnetz Decl., ¶ 18.

### B. COVID-19 Vaccines Are Critically Dependent on, and Could Not Exist but for, the Use of Aborted Fetal Cell Tissue.

118. It is undisputed that HEK-293 and PER.C6 fetal cell lines were used in the development and testing of the three (3) available COVID-19 vaccines. As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine."[13] The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine used the PER.C6 fetal cell line, which "is a retinal cell line that was isolated from a terminated fetus in 1985."[14]

---

[13] *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Oct. 5, 2021) ("NDH                    FAQ"),                    available                    at: https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/ COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Nov. 15, 2021).

[14] La. Dept. of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 21, 2020), available at: https://ldh.la.gov/assets/oph/Center-

119. The same is true of the Moderna and Pfizer-BioNTech mRNA vaccines. The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their mRNA vaccines. *See id.* The North Dakota Department of Health likewise confirms: "Early in the development of mRNA vaccine technology, fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein." *See* NDH FAQ. Multiple Pfizer executives have confirmed both that aborted fetal cells were critical for development, while at the same trying to cover this up this essential fact.[15]

## C. No Compelling Government Interest: Plaintiffs' RARs and Appeals Have Been Denied with Form Letters Reciting "Magic Words," Rather Than Individualized Assessments.

120. Each Plaintiff has submitted an RAR request, most of which have been denied, and many Plaintiffs have had their RAR appeals denied as well, including Plaintiffs Alvarado, Barfield, Brobst, Jackson, and Layfield.

---

PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Nov. 15, 2021).

[15] *See* Project Veritas, PFIZER LEAKS: Whistleblower Goes On Record, Reveals Internal Emails from Chief Scientific Officer & Senior Director of Worldwide Research Discussing COVID Vaccine ... 'We Want to Avoid Having the Information on the Fetal Cells Floating Out There', (Oct. 6, 2021), available at: www.projectveritas.com/news/pfizer-leaks-whistleblower-goes-on-record-reveals-internal-emails-from-chief/ (last visited Feb. 8, 2022).

121. **Form Letters & "Magic Words."** Military Defendants have violated RFRA insofar as they have "rubber stamped" denials on Plaintiffs RAR requests and/or appeals using the same "magic words," formulaic language, and theoretical speculation, without any individualized evaluation "to the person" required by RFRA or consideration of mission impact required by service regulations. *Navy SEAL 1* PI Order, 2022 WL 534459, at *18. A cursory review of the attached denial letters show that the letters issued by each service are nearly identical form letters that include a sentence or two that mentions Plaintiffs' role as a Chaplain, and these sentences are nearly identical for all Chaplains in a given service, just with different names, dates and positions inserted.[16]

122. With respect to the asserted compelling governmental interest, the RAR and appeal denial letters simply recite the same set of interests, in

---

[16] For example the Air Force RAR Denial Letters all include three paragraphs, where the first and third paragraphs are identical, while the second paragraph is nearly identical except that it includes an additional one or two pre-written sentences that reference the applicant's position, but are in fact nearly identical as well. *See* Ex. 1, Barfield, Brobst, Jackson, and Layfield RAR Denial Letter (attached to Declarations). The Navy's RAR denial letters are also nearly identical with the same number of paragraphs and sub-paragraphs, using the same boilerplate language throughout, reciting the same compelling interest and least restrictive means language, and reaching the same conclusion – denial – for all applicants. *Cf.* Alvarado RAR Denial Letter, Cox RAR Denial Letter, Eastman RAR Denial Letter, etc. (all attached to respective declarations).

particular some sequence of military readiness, unit cohesion, and good order and discipline with slight variations for the Air Force,[17] Army[18] and Navy.[19]

123. **Impermissible Criteria.** The denial letters also appear to rely on impermissible criteria prohibited by RFRA, in particular, "the cumulative impact of granting similar requests."[20] Or they are based on pretextual, impermissible, and completely unsupported claims that granting the request would endanger the general public. *See, e.g.,* Brown RAR Denial Letter, ¶ 3. Certain denial letters even go as far as asserting that service members unvaccinated for religious reasons pose a threat to others who are unvaccinated for secular reasons, supporting the conclusion that Defendants deem those unvaccinated for religious reasons to be uniquely dangerous. *See, e.g.,* Brown RAR Denial Letter, ¶¶ 3-4.

---

[17] *See, e.g.,* Barfield RAR Denial Letter, ¶ 2; Fussell RAR Denial Letter, ¶ 2; Jackson RAR Denial Letter, ¶ 3.

[18] *See, e.g.,* Hirko RAR Denial Letter, ¶ 2; Lewis RAR Denial Letter, ¶ 2 ("I find that vaccination is the least restrictive means to further the Department of the Army's compelling government interests, which also includes protecting your health, the health of the force, and ensuring mission accomplishment."); Troyer RAR Denial Letter, ¶2.

[19] *See, e.g.,* Alvarado RAR Denial Letter, ¶ 3 & ¶ 4.a; Cox RAR Denial Letter, ¶ 3 & ¶4.a; Eastman RAR Denial Letter, ¶ 3 & ¶ 4.a; Gentilhomme RAR Denial Letter, ¶¶ 2-3; Shaffer RAR Denial Letter, ¶ 3; Shour RAR Denial Letter, ¶¶ 3 & 4.a.

[20] *See, e.g.,* Alvarado RAR Denial Letter (Navy), ¶ 4.c.; Cox RAR Denial Letter, ¶ 4.c. (Navy); Shour RAR Denial Letter, ¶ 4.c (Navy). *See also* Brobst RAR Appeal Denial Letter (Air Force) ("Your health status as a non-immunized individual … aggregated with other non-immunized individuals … would place health and safety, unit cohesion, and readiness at risk."); Jackson, RAR Appeal Denial Letter (Air Force; same); *See, e.g.,* Brown RAR Denial Letter, ¶ 3 (Coast Guard; same).

**D.     Least Restrictive Means: Military Defendants Refused To Consider Alternative Less Restrictive Measures Than Vaccination.**

124.   The discussion of "less restrictive means" is even more formulaic, and in most cases consists of a single conclusory assertion that denial of exemption requests "is the least restrictive means" to achieve the DoD's compelling interests in "military readiness, mission accomplishment and the health and safety of military Service members" (Navy), *see, e.g.,* Alvarado RAR Denial Letter, ¶ 5.a. *See also* Barfield RAR Appeal Denial Letter (Air Force); Brobst RAR Denial Letter, ¶ 2 (Air Force), or that neither vaccination or non-vaccination alternatives are "100% effective" without any attempt to compare the relative efficacy of alternatives. *See, e.g.,* Alvarado RAR Appeal Denial Letter, ¶¶ 3-4. The denial letters either failed altogether to mention proposed alternatives, or dismissed them without any discussion or explanation. *See, e.g.,* Barfield RAR Appeal Denial Letter (Air Force); Jackson RAR Denial Letter, ¶ 2 (dismissing masking, social distancing and telework as insufficient).

125.   **No Individualized Assessment.** The Military Defendants make no attempt to perform the individualized assessment required by RFRA. Instead, the letters simply cite the respective Plaintiff's role as a Chaplain (and frequently their "leadership role"); assert that it requires some degree of "contact" or "close proximity;" and dismiss any alternative to vaccination as

detrimental to the compelling governmental interests discussed above (*i.e.*, readiness, good order, discipline and unit cohesion).[21]

126. **Measures Successfully Used Prior to Mandate.** Several plaintiffs proposed alternative, less restrictive means and provided evidence that these alternatives had been employed successfully over the past two years, while achieving mission objectives and limiting the spread of COVID-19. *See, e.g.,* Hirko Decl., ¶ 10; Jackson Decl., ¶ 12. Moreover, not a single RAR denial letter recognizes natural immunity, physical fitness, diet, or early treatment as alternative mitigation measures.

127. **Alternative Vaccines.** Several plaintiffs stated that they would be willing to take other vaccines to which they did not have religious objections (*e.g.,* Covaxin or Novavax). *See, e.g.,* Eastman Decl., ¶ 18; Harris Decl., ¶ 9; Layfield Decl., ¶ 9; Shaffer Decl., ¶ 2.e; Snyder Decl., ¶ 9; Withers Decl., ¶ 11. None of their denial letters address their stated willingness or proposal to take these alternative vaccines—despite the fact that alternative vaccines are expressly permitted alternatives by Secretary Austin's August 24, 2021, Memo announcing the Mandate—much less explain why these alternative vaccines

---

[21] *See, e.g.,* Alvarado RAR Appeal Denial Letter, ¶¶ 5. B. (Navy); Barfield RAR Appeal Denial Letter (Air Force); Brobst RAR Appeal Denial Letter (Air Force); Cox RAR Denial Letter, ¶ 5.b (Navy); Fussell RAR Denial Letter, ¶ 2 (Air Force); Henderson RAR Denial Letter at 2 (Air Force); Shour RAR Denial Letter, ¶ 5.b (Navy); Troyer RAR Denial Letter, ¶2 (Army; same).

are not a permitted and less restrictive measure to mandatory injection with an mRNA vaccine.

128. **Natural Immunity.** Most Plaintiffs have natural immunity from previous infections, including a plurality with recent infections from December 2021 through the present with the Omicron variant, which provides protection that is stronger and more durable than the two-dose regimen required by the Mandate. All or nearly all these Natural Immunity Plaintiffs[22] cited their natural immunity in their RARs or RAR appeals, which Military Defendants have failed altogether to consider, or to explain in their denial letters why natural immunity (whether considered alone or in conjunction with other proposed alternative measures) is not a permissible alternative to vaccination.

129. **Mistakes in Denial Letters.** In many cases where denial letters attempt to tie a Plaintiff's specific roles or duties to the conclusion reached, the denials are based on incorrect factual assumptions that can be easily refuted.[23]

---

[22] Natural Immunity Plaintiffs include Plaintiffs Alvarado, Barfield, Brobst, Brown, Calger, Cox, Fussell, Gentilhomme, Harris, Hirko, Jackson, Lewis, Pogue, Schnetz, Shaffer, Shour, Snyder, Troyer, Wine, Withers, and Young.

[23] *See, e.g.,* Jackson Decl., ¶ 12 (explaining that denial letter conclusion regarding the inadequacy of social distancing and that his Chaplain duties require close personal contact was incorrect. "My job never requires me to touch another person or be within 6 feet of them during in-person face-to-face counseling, providing spiritual care, resiliency coaching, or conducting weekly religious services. There is no regulation requiring me to touch another individual or be within 6 feet of them. In reality, over the course of the pandemic, I have indeed operated with adequate distance and completed all my mission taskings successfully, conducting 204 face-to-face counseling sessions, conducting 13 weekly religious services (shared with other chaplains), engaging 6442 Airmen with spiritual care, and leading 160 spiritual

130. Defendants' dismissive treatment of Plaintiffs request to accommodate their sincerely held religious beliefs is consistent with their treatment of tens of thousands of other service members. The statistics provided in the *Navy SEAL 1* Proceeding show that Defendants have granted zero religious accommodation requests, while denying over ten thousand. *See supra* Table 1, while the only requests granted to date appear to be for those who are separating or on terminal leave (*i.e.*, no accommodation at all). These statistics demonstrate that (1) submissions of religious accommodation requests are futile and (2) that the DoD and Armed Services are systematically denying these requests, in violation of their statutory obligations and the constitutional rights of Plaintiffs.

## VIII. DOD VACCINE MANDATE BASED ON CHANGE IN CDC DEFINITION OF "VACCINE" AND "VACCINATION"

131. Plaintiff Military Chaplains also challenge the Secretary's authority to issue such a mandate, because the Mandate itself rests on a fraud, specifically the CDC's decision to change in September 2021 to the centuries-old definition of "vaccine" and "vaccination."

132. On September 1, 2021—roughly one week after FDA approved Pfizer/BioNTech's Comirnaty on August 23, 2021, and the Secretary issued the

---

resiliency events—all while maintaining social distance and without the need to telework.").

Mandate on August 24, 2021—the CDC without any statutory authorization, notice-and-comment rulemaking, or in fact any notice at all, unilaterally changed the centuries old definitions of "vaccine" and "vaccination." The CDC redefined "vaccine" and "vaccination" from a medical procedure that provides immunity to one that merely stimulates the immune system and provides partial protection.

> Before the change, the [CDC's] definition for "vaccination" read, "the act of introducing a vaccine into the body to produce immunity to a specific disease." Now, the word "immunity" has been switched to "protection." The term "vaccine" also got a makeover. The CDC's definition changed from "a product that stimulates a person's immune system to produce immunity to a specific disease" to the current "a preparation that is used to stimulate the body's immune response against diseases." Some people have *speculated* that the unannounced changes were the CDC's attempt to hide the fact COVID-19 vaccines are not 100% effective at preventing coronavirus infection.[24]

133. This "speculation" was subsequently confirmed by the CDC's response to Freedom of Information Act ("FOIA") requests. In contemporaneous internal emails, CDC leadership acknowledged that it changed the definition of "vaccine" and "vaccination" in response to (correct) public criticism and questions that the COVID-19 vaccines did not meet the CDC's then current definitions of "vaccine" and "vaccinations" as providing

---

[24] Katie Camero, *Why Did CDC Change Its Definition for 'Vaccine'? Agency Explains Move as Skeptics Lurk*, MIAMI HERALD (Sept. 27, 2021), available at: https://www.miamiherald.com/news/coronavirus/article254111268.html (last visited May 17, 2022) (emphasis added).

"immunity." *See* Ex. 8, CDC FOIA Response at 2 (CDC Emails from Aug. 13, 2021 - Sept. 1, 2021) ("The definition of vaccine we have posted is problematic and people are using it to claim that the COVID-19 vaccine is not a vaccine based on our own definition."); *see also id.* at 3 ("these definitions are outdated and being used by some to say COVID-19 vaccines are not vaccines per CDC's own definition.").

134.   On information and belief, Plaintiffs further allege that the CDC changed the definition for political reasons when it became obvious the experimental vaccines would not protect, would degrade over time and had unintended medical injuries and consequences. This failure would embarrass President Biden who claimed he would get control of and eliminate COVID. The new definition provided Military Defendants a convenient tool to get rid of those who believed in following their conscience as formed by their religious faith.

135.   The Military Defendants maintain that the COVID-19 "vaccines" are necessary to protect the force from COVID, deceptively relying on the classical meaning of vaccine that people understand as a procedure that immunizes its recipients from the disease, *i.e.*, an impenetrable barrier between the disease and the military force, despite their knowledge that COVID vaccines do no such thing.

136.   The COVID-19 mRNA "vaccines" are in fact moderately effective treatments. These products cannot do what "classic vaccines" have historically done, protect recipients, the Force, and the public from infection and prevent further transmission of the disease. It appears the Secretary wants the public and the military to think he is using vaccine in the classic sense, *i.e.*, protection, when he talks about the compelling need for the vaccine while personally knowing and ignoring the fact the new vaccine fails in its mission to protect or to stop the spread of COVID-19. He is using misleading and deceptive speech, as in false advertising, to deceive the DoD, the public and the courts.

137.   The Secretary's and other high officials' treatment and recovery show DoD's claim there is no less restrictive alternative than punitive disciplinary action and discharge for failure to be vaccinated is blatantly false. He was treated and returned to work after a few days' absence, not thrown out because his vaccination didn't work.

138.   This fraud is compounded by the Military Defendants' refusal, on information and belief, to follow their own regulations (namely, AR 40-562) and "the science" which recognizes the "presumption of natural immunity" following a COVID infection that their medical regulations establish and the science that says taking a vaccine after having had Covid increases the risk of dangerous side effects. That and their refusal to acknowledge and address multiple serious medical incidents following vaccination could result in

criminal and civil consequences for DoD and the special staffs whose duties relate to those issues.

139.   This fraudulent definition of a COVID vaccine is the basis for the Secretary's and the Services' threats and actual punitive and retaliatory actions against plaintiffs and other service personnel.

140.   The CDC and the Military Defendants' adoption of the new definition violates several constitutional limitations on such unfettered power as explained herein, such as the "Major Questions Doctrine, *NFIB*, 142 S. Ct. at 667 (Gorsuch, J. Concurring), the ban on administrative agencies creating "laws with punitive consequences" without following due process requirements and the ban on administrative officials being given unbridled power over First Amendment activity.

## IX.   PLAINTIFFS        WILL        SUFFER        CONCRETE        AND PARTICULARIZED HARM FROM DEFENDANTS' ACTIONS

141.   Plaintiffs have real, substantial, and legitimate concerns about taking experimental COVID-19 treatments in light of and the potential for short- and long-term side effects; adverse reactions; and the deprivations of fundamental constitutional rights and the specific protections for Chaplains in § 533.

142.   All Plaintiffs have already faced adverse employment or disciplinary actions that are not a theoretical or speculative harm. Plaintiffs

are facing training, duty and travel restrictions—including restrictions on attending their Chaplain Endorser-mandated conferences and training (*e.g.,* Plaintiffs Henderson, Lee, and Nelson), in violation of Service regulations—which prevents them from performing their current ministry duties, training to maintain qualifications for their current positions, and/or remaining an approved Chaplain. Due to their vaccination status, all Plaintiffs are prevented from PCS and taking new assignments, leaving them and their families in a state of limbo; in some case, Plaintiffs and their families are stranded outside the United States without the ability to return home (*e.g.,* Plaintiffs Pak, Shour, and Troyer). *See generally supra* ¶¶ 28-58. They will face further actions, up to and including termination, separation, loss of retirement, VA or other post-separation benefits, and permanent damage to their reputation and employment prospects resulting from a court martial and/or dishonorable discharge.

143.   Nearly all Plaintiffs have received negative counseling statements, letters of reprimand (up to and including GOMAR), adverse FITREPs and/or other negative evaluations preventing them from advancement or promotion. Moreover, all or nearly all Plaintiffs face a general discharge, rather than a full honorable discharge, which will deprive them of VA, GI Bill and other retirement benefits to which they are would normally be entitled, and will prevent them from obtaining civilian employment as a chaplain. Further, the

entire Sanctuary Sub-Class, as well as certain Plaintiffs like Chaplain Eastman with a mixture of active and reserve service in excess of 20 years, face the inability to retire or a complete loss of retirement benefits to which they would otherwise be entitled after over 18 years (or over 20 years) of service.

144.    *Chaplaincy of Full Gospel Churches v. England* (*"CFGC"*), 454 F.3d 290 (D.C. Cir. 2006), examined the question whether an allegation the government had established a religious preference could meet the irreparable harm criteria when seeking an injunction. It rejected defendants' argument plaintiffs have to show some chilling effect to invoke the principle of First Amendment rights being violated or threatened, even for a minimal period of time. *CFGC* explained "the Establishment Clause is implicated as soon as the government engages in impermissible action." *CFGC*, 454 F.3d at 302. Here, Military Defendants have violated the Establishment Clause by preferring and/or rejecting one set of religious beliefs, which sends an unconstitutional message of preference. *Id*. Therefore, it results in irreparable harm.

145.    Plaintiffs allege the Secretary's Mandate seeks to establish a state religion and the Services' actions rejecting all RAR's stating their belief that abortion is sin establishes an official religious view preferred by the ruling class on the topic of abortion.

> [W]hen when an Establishment Clause violation is alleged, infringement occurs the moment the government action takes place-without any corresponding individual conduct-then to the

extent that the government action violates the Establishment Clause, First Amendment interests *are* "threatened or in fact being impaired.

*Id* at 303. Thus, the Plaintiffs have and are suffering damages. Several Plaintiffs have been suffered retaliation or discrimination in violation of Section 533, simply for submitting RARs or for advocating on behalf of service members who had done so and had religious objections to the vaccines. Of particular relevance in this regard, several Plaintiffs have been preventing performing their military—and constitutional duties—when removed from RRTs or the RAR interview process due to the expression of their religious beliefs. *See, e.g.,* Fussell Decl., ¶ 12; Gentilhomme Decl., ¶ 14; Nelson Decl., ¶ 11; Schnetz Decl., ¶ 18.

## X.   CLASS ACTION ALLEGATIONS

146. Plaintiffs bring this action on their own behalf and as a class action as representative parties on behalf of all members of the class and subclasses defined herein under the provisions of Federal Rules of Civil Procedure (the Rules) 23(a) and 23(b). Plaintiffs seek declaratory and injunctive relief, and relief incident to and subordinate to it, including costs and attorney fees. A class action is appropriate because, as shown below: (a) the class is so numerous that joinder of all members is impracticable, (b) there are questions of law and fact common to the class, (c) the claims of the Plaintiffs are typical

of the claims of the class, and (d) the representative parties will fairly and adequately protect the interests of the class.

147. **Definition of the Class**.  The class represented by Plaintiffs in this action, and of which Plaintiffs are themselves members, consists of active duty and Reserve chaplains from all military services and all ranks from Chaplain Candidates to Colonels who submitted RARs that were denied by his or her Service. It includes chaplains whose appeal of their RAR denial was rejected and those whose RAR and/or appeal of their denial is still pending. The Services' clear pattern of rejecting all RARs and denying all such appeals thereof makes it clear that submitting a RAR and appealing RAR denials is a useless exercise because the Secretary's and the Services' policy is to not approve any RARs.

148. Plaintiffs allege and the facts will prove Defendants' execution of the Mandate and their attack on chaplains, despite the protections and commands of the Religious Freedom Restoration and § 533 is nothing more than an unconstitutional attempt to purge those who adhere to Judeo-Christian ethics centered on the right to follow one's conscience as formed by their faith. All Plaintiffs have requested and most have been uniformly been denied RARs. This is because the Secretary and the Secretaries of the Armed Services never intended their RAR processes to grant any RARs.

149.   The class also includes those chaplains whose RAR requests and/or their appeals of the denials of their RARs have been submitted but not yet rejected because the whole process is, as numerous district courts have found, merely "theater" or a sham. *Navy SEALs 1-26*, 2022 WL 34443, at *1; *see also Air Force Officer*, 2022 WL 468799, at *1 (same).

150.   **Constructively Discharged Chaplains' Sub-Class.** The first subclass is chaplains in the class who are being constructively discharged. These are chaplains who have accrued sufficient time to retire, *e.g.,* CH (COL) James Lee, or are within months of accruing sufficient time to retire and have been told to either retire or risk being subject to disciplinary action for refusing to be vaccinated by an emergency use only vaccine followed by being discharged with a less than honorable discharge, losing their retirement rights and benefits already accrued by their 20 or more years of service, and other rights including most, if not all, VA benefits. The discharge and punitive disciplinary actions will mar such plaintiffs' reputation for life for following their conscience, a right § 533 protects and for exercising their right to seek a religious accommodation.

151.   This subclass does not wish to retire, have submitted RARs that were denied along with the appeal of their denied RARs but are being forced to retire in response to the Secretary's draconian threat to either retire or forfeit everything that they have worked for their entire careers because they

will be involuntarily discharged and given a General Discharge.[25] A General Discharge forfeits their retirement, their right to separation pay, most Veterans benefits, including G.I. Bill education benefit, and given a false service characterization inconsistent with their record. Such a discharge will destroy their reputation, and greatly hinder if not deny any future career in ministry as civilians because anything less than an "honorable" discharge for officers is an immediate hindrance to successful civilian employment either in religious ministry or secular employment.

152. The public understands a General Discharge identifies troublemakers and those who have difficulty submitting to authority evidenced by a pattern of discipline problems. A General Discharge for these or any chaplain, is in effect, a punitive discharge whose injury to their reputation and ability to earn a living follows until death, a kiss of death for any effective ministry post-service. This also punishes Plaintiffs' spouses and children who in some cases will literally be thrown out on the streets because the chaplain followed his conscience as required and authorized by § 533.

---

[25] A general discharge is a special category originally created to allow the new volunteer military services to quickly process personnel w after entry into the service exhibited a pattern and practice of indiscipline or behavior p indicating problems with authority. It did not carry the onerous title of an "other than honorable discharge" but it limits the benefits available to those who continue to serve honorably and received honorable discharges , *e.g.*, access to GI Education Bill, medical coverage and some veterans benefits. It was never meant to be a weapon of retribution and retaliation for the exercise of protected rights as DoD is currently using it.

153.   These chaplains in the subclass challenge their forced retirement as a constructive discharge. What is challenged here is unlike a "selective early retirement" ("SER") which is the result of a board of officers examining records to select those best qualified to be involuntarily retired based on their record as compared to other chaplains similarly situated. SER is used to keep the promotion rates competitive due to rank and manpower imbalances or when necessary to reduce officer and strengths due to changes in manpower authorizations. Plaintiffs here are being unlawfully forced to retire or suffer an unjust and illegal punishment that forces them or any other rational person to accept the retirement offer; the whole process here is built on a fraud.

154. The **Sanctuary Sub-Class.** Military Defendants' policies acknowledge the equitable principle of allowing someone who has invested a considerable portion of their lives in the service to be protected from personnel reductions or other manpower programs designed to reduce the force until they can reach retirement. That is no longer the case with the COVID Mandate. For example, CDR Eastman was told following his RAR submission to prepare for separation in June 2022 despite having more than 18 years of honorable service. Other plaintiffs are close to the sanctuary zone and yet the Defendants seek to seize that experience, hard work and sacrifice and illegally make it a nullity.

155.   **Natural Immunity Sub-Class.** The third chaplain subclass with 17 plaintiffs are those who have had COVID yet been denied exemption from receiving the vaccine because of natural immunity, a decision contrary to the DoD policy expressed in all Services' vaccine regulations, AR 40-562. Numerous studies have shown that taking the new vaccine after having COVID increases the risk of dangerous side effects and lowers immunity to the disease.

**Plaintiffs Satisfy FRCP Rule 23(a)**

156.   **Numerosity.** The exact number of the class and subclasses identified above is not known at this time, but the Defendants have that information. Plaintiffs estimate that there are at least 100 or more class members. The class is so numerous that joinder of individual members in this action is impractical.

157.   **Commonality.** There are common questions of law and fact involved in this action that affect the rights of each member of the class and the relief sought is common to the entire class, namely:

a.   Defendants exhibit a long and continuing pattern of violations of the First and Fifth Amendments including: Defendants' open hostility to persons who believe the Constitution allows them to follow their conscious as formed by faith; the Defendants' attempt to establish a secular religion built around (i)  approval of abortion and hostility to

anyone who believes that abortion is religiously "sinful", *i.e.*, opposed to God's word, and morally degrading; (ii) all orders must be obeyed without questioning regardless of their moral, ethical, or legal implications; and (iii) conscience has no role in guiding a military member's decisions, especially when formed by faith;

b. **Section 533 Violations.** The Defendants' conduct shows a willful failure to recognize, honor and obey the "protection of rights of conscience" and "protection of chaplain decisions relating to conscience, moral principles or religious beliefs," clearly established by § 533. Contrary to the clear prohibitory words of § 533(a) and similar language in (b) that "The Armed Forces ... may not use such beliefs [reflecting a conscience, moral principles, or religious beliefs of the member] as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment", *id*. Defendants have done to Plaintiffs exactly what the law prohibits. The evidence suggests it has been done willfully in order to purge Plaintiffs and those with similar beliefs from the military. *See* f. *below*;

c. **First Amendment Violations.** Defendants have violated Plaintiffs' First Amendment rights of non-Establishment, Free Speech, Free Exercise and Right to Petition and their Fifth Amendment right to

expect and to have Defendants follow the Constitution, statutory law and their own regulations. For example, the Defendant's retaliatory actions against Plaintiffs for following their conscience, exercising their right to seek a religious exemption and object to the unconstitutional treatment they have received is contrary to Section 533's specific protections. Military Defendants' actions send a clear but forbidden government message of hostility to Plaintiffs' religious beliefs and the exercise of their conscience contrary to the neutrality mandate of the Establishment, Free Exercise, and Due Process Clauses and the specific statutory "conscience" protections for chaplains;

d. **RFRA Violations.** Defendants have also deliberately violated RFRA and constructed a RAR process that courts have described as "theater", *Navy SEALs 1-26*, 2022 WL 34443, at *1, and established an unconstitutional religious test for the government benefit of continued employment, and for some, retirement. These actions are done deliberately to prejudice Plaintiffs for their religious beliefs which are protected by law;

e. **Retaliation.** Every negative action Defendants have taken against these Plaintiffs in conjunction with the Mandate has been retaliation for the exercise of their protected rights. This violates the

Constitution, RFRA, 42 U.S.C. § 2000bb, § 533, and Department of Defense Instruction (DoD I) 1300.17, and the Service Secretaries' own regulations.  This is manifest bad faith;

f. **Establishment Clause Violations.** The evidence suggests Defendants' actions against Plaintiffs have been done to establish a "secular religion" with a religious test for the purpose of (i) **purging** from the military religious people who believe that their faith must also shape their conscience and (ii) establish the precedent that military personnel must blindly obey all orders without thinking or questioning similar to the German and Japanese Armed Forces before and during World War II;

g. **Due Process and APA Violations.** The Defendants have used a bureaucratic shell game to unlawfully change the centuries' old definition of a vaccine as a procedure that protected the recipient from the targeted disease with ascertainable criteria for measuring its success. The "new vaccine" definition now means a treatment that stimulates the immune system but does not protect with no ascertainable standard, *e.g.*, how many boosters equals full vaccination. This change, affecting all Americans without even "notice and comment" has become the basis for draconian sanctions and penalties for failure to meet Defendants' illegal and ever

changing "fully vaccinated" standard contrary to the "the major questions doctrine." *See NFIB*, 142 S. Ct. at 667 (Gorsuch, J., Concurring). Defendants have perpetrated a fraud through this vaccination shell game and bad faith permeates all their actions;

h. **A "Pattern and/or Practice" of disobeying Congress and their own regulations.** Defendants have established a pattern and practice of willful disobedience to (i) Congress's statutory protections for chaplains establishing their right to follow and make decisions according to their conscience; (ii) specific directions to provide training on religious liberty, including RFRA and § 533's provisions and protections for chaplains, judge advocates and commanders preparing to assume command. *See* ¶¶ 81-86;

i. Defendants' actions seeking to illegally and vindictively destroy these Plaintiffs careers and, in some cases, literally bankrupt them and make them destitute amounts to criminal activity and an illegal seizure and/or destruction of legally established benefits; and,

j. Defendants' special staff, *i.e.*, Surgeons General, JAGs, and the Chaplain Corps, have abandoned their professional codes and their specific staff related duties to further Defendants' unconstitutional and unlawful activities, making them accessories after and before the fact concerning the above criminal activity.

158.   **Plaintiffs' Claims Are Typical of the Proposed Classes.** The claims of the Plaintiffs, who are representatives of the class, are typical of the claims of the class in that the claims of all members of the class, including Plaintiffs, depend on a showing of the Defendants ' acts and omissions giving rise to the Plaintiffs' right to the relief sought. There is no conflict between any individual named plaintiff and other members of the class with respect to this action, or with respect to the claims for relief set forth in this complaint.  The class has similar injuries flowing from the Secretary's and his subordinate Service Secretaries' hostile, unconstitutional and otherwise illegal acts attacking the class with retaliation, systematic and intentional religious prejudice and hostility because of their faith expressed by asking for accommodation of their conscience driven objections based on their religious beliefs.

159.   **Adequacy.** The named Plaintiffs are the representative parties for the class, are able to and will, fairly and adequately protect the interests of the class. The Plaintiffs' declarations in show they adequately represent the various statuses of the class, *i.e.*, all Services, active, reserve, National Guard. The attorneys for Plaintiffs, Arthur A. Schulcz, Sr., and Brandon Johnson from Defending the Republic will actively conduct and be responsible for Plaintiffs' case. J. Andrew Meyer, an experienced class action attorney, will assist them. Mr. Schulcz has had previous experience with a chaplains' class action.  The

named Plaintiffs and their undersigned counsel will fairly and adequately protect the interests of the class.

**Plaintiffs Satisfy FRCP Rule 23(b)(1) and 23(b)(2)**

160. This class action is maintainable under Fed. Rule of Civil Procedure (the "Rules") 23(b) because it satisfies the prerequisites of Rule 23(a) and the following conditions of Rule 23(b):

(1) the prosecution of separate actions by individual members of the class would create a risk of :

(A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the Defendants, all of whom oppose the class; or

(B) adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and/or

(2) the party opposing the class has acted and refused to act on grounds generally applicable to the class, as more specifically alleged below, on grounds which are generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole which this action seeks.

161. The findings required by Rule 23(b)(1) and (2) are supported by the fact there is a large class of chaplains against whom the Secretary and the Armed Forces have operated in a systematic discriminatory manner violating the Constitution, RFRA, § 533, other statutes, and the Defendants' own regulations. The declaratory and injunctive relief sought will affect all persons

who have experienced the alleged retaliation discrimination.  Furthermore, the constitutional and federal questions Plaintiffs raise dominate this action and apply to all members of the class.  If Plaintiffs are successful, any individual relief that is incidental to this action will be determined by statute and require little if any involvement by the Court. Additional considerations that support certification under 23(b)(1) and/or 23(b)(2) include:

a.      Inconsistent or varying adjudications with respect to individual class members could subject Defendants to incompatible standards of conduct;

b.      The Court's adjudication of the claims raised herein on behalf of the Named Plaintiffs alone would, as a practical matter, be dispositive of the interests of the other members not party to such individual adjudications and could leave those other members without the ability to protect their own interests;

c.      The Defendants have acted or refused to act on grounds that apply generally to all members of the proposed Classes such that final injunctive or declaratory relief would be appropriate respecting each of the proposed Classes; and finally,

d.      The issues here are primarily constitutional and statutory which involve no exercise of military discretion or expertise.

## FIRST CAUSE OF ACTION
### DEFENDANTS HAVE WILLFULLY IGNORED AND/OR VIOLATED SECTION 533'S SPECIFIC PROTECTIONS FOR CHAPLAINS EXERCISING THEIR CONSCIENCE AND FAITH
#### 2013-2014 NDAA AMENDMENTS, SECTION 533
#### (All Plaintiffs Against DoD & Service in Which They Serve)

162.   Plaintiffs reallege, as if set forth fully in this Count, the facts in Paragraphs 6-7, Paragraphs 28-58, Sections II-V (Paragraphs 77-93), and Section IX (Paragraphs 141-142).

163. Military Defendants have ignored Section 533's specific protections for Military Chaplains, and they have intentionally willfully violated Section 533 by retaliating against them for exercising their conscience and faith.

> To state an unconstitutional retaliation claim a plaintiff must show (1) he or she engaged in constitutionally protected conduct, here the First Amendment; (2) the defendant took some retaliatory action that adversely impacted the plaintiff; and (3) a causal link between the exercise of the constitutional right and the adverse action taken against him or her.

*Wilkie v. Robbins*, 551 U.S. 537, 558 n.10 (2007).

164.   Congress passed § 533 to specifically address the rights of chaplains to follow their conscience their faith and protect them from retaliation when they did so.

> (a) ACCOMMODATION.-Unless it could have an adverse impact on military readiness, unit cohesion, and good order and discipline, the Armed Forces shall accommodate individual expressions of belief of a member of the Armed Forces reflecting the sincerely held conscience, moral principles, or religious beliefs of the member and, in so far as practicable, may not use such expression of belief as the basis of any

adverse personnel action, discrimination, or denial of promotion, schooling, training or assignment.

(b) PROTECTION OF CHAPLAIN DECISIONS RELAT1ING TO CONSCIENCE, MORAL PRINCIPLES, OR RELIGIOUS BELIEFS.— No member of the Armed Forces may—

(1) require a chaplain to perform any rite, rit1ual, or ceremony that is contrary to the conscience, moral principles, or religious beliefs of the chaplain; or

(2) discriminate or take any adverse personnel action against a chaplain, including denial of promotion, schooling, training, or assignment, on the basis of the refusal by the chaplain to comply with a requirement prohibited by paragraph (1)

165. Paragraphs 6-7 and Section II (Paragraphs 77-80) above provide the background showing that Congress believed it was necessary to "accommodate individual expressions of belief" for members of the "Armed Forces reflecting [their] sincerely held conscience, moral principles or religious beliefs" and prohibit use of "such expression of belief is the basis of any adverse personnel action, discrimination or denial of promotion, schooling, training, or assignment." They also show why was important to protect chaplains and their decisions based on their conscience and faith. This section further shows how Congress continued to emphasize the importance of religious liberty in its FY 2016 NDAA language amidst reports of ignorance of or deliberate violations of the protections of § 533.

166. Section 533(a) of the 2013 NDAA specifically directs the Armed Forces to "accommodate individual expressions of belief of the of a member of

the armed force reflecting a sincerely held conscience, moral principles, or religious beliefs of the member", including these Plaintiffs, and precludes using "such expression of belief is the basis of any adverse personnel action, discrimination or denial of promotion, schooling, training or assignment."

167. The exception to this rule is "conduct that is prescribed" by the UCMJ including actions and speech that threaten good order and discipline.

168.  Chaplain objections to the Mandate cannot be termed or qualify as "speech that threatens good order and discipline" because RFRA, DoDI 1300.17, and the First Amendment authorizes such objections and seeking religious accommodations.

169. Section 533(b). "Protection of chaplain decisions relating to conscience, moral principles, or religious beliefs" specifically protects chaplains from being required to perform any "rite, ritual, or ceremony … that is contrary to the conscience, moral principles, or religious beliefs of the chaplain."

170. Defendants have made taking the vaccine a "rite, ritual and ceremony" celebrating the destruction of chaplains' consciences.

171. The facts and testimony of these Plaintiffs in Paragraphs 28-58 above and their individual declarations in Exhibit 1 show Defendants have initiated adverse personnel actions, *e.g.*, discrimination, schooling, training [and] assignment" against them for the exercise of their protected rights in refusing the vaccine and seeking a religious accommodation in accord with

their conscience and faith. This is retaliation contrary to § 533, RFRA, and the First and Fifth amendments.

172. Section III and IV (Paragraphs 81-93) above further show Congress continued to emphasize the importance of religious liberty in its 2016 NDAA and 2018 NDAA language amidst reports of ignorance or deliberate violations of the protections of § 533. *See generally* Ex. 3 and Ex. 4.

173. The DoD and Armed Services cannot deny they were aware of Congress's specific instructions nor that they refused to obey Congress's clear directions about § 533 instruction; it has not been developed.

174. The Plaintiffs' identified incidents of Defendants' retaliation and prejudice, *e.g.*, threatening all Plaintiffs with discharge, denied travel and schooling, and being bullied, all result and flow from their refusal to take the vaccine based on their conscience and faith, including the denial of their RARs and the interrogation as part of this process are direct violations of § 533 and retaliation for Plaintiffs' exercise of their § 533's protected rights

175. The DoD and Armed Services cannot deny they were aware of Congress's specific instructions nor their refusal to do what Congress ordered.

176. The Plaintiffs' identified incidents of retaliation and prejudice, *e.g.*, being threatened with discharge, denied travel bullied, resulting from their refusal to take the vaccine based on their conscience and faith, including the denial of their RARs in the interrogation as part of this process are direct

violations of § 533 and retaliation for Plaintiffs' exercise of their § 533's protected rights, all of which has been done in bad faith.

177.   These § 533 violations demonstrate religious prejudice and have been done in bad faith since Defendants announced the Mandate.

178.   Defendants' actions result in unconstitutional retaliation.

179.   Plaintiffs seek declaratory and injunctive relief because they have no adequate remedy at law to prevent future injury caused by Defendants' violation of their rights under Section 533.

## SECOND CAUSE OF ACTION
**DEFENDANTS HAVE DELIBERATELY IGNORED CONGRESS' CLEAR INSTRUCTIONS TO DEVELOP TRAINING ON CHAPLAINS' RELIGIOUS LIBERTY UNDER RFRA AND SEC. 533 AND PROVIDE SUCH TRAINING TO JAGS, COMMANDERS, AND CHAPLAINS 2013-2014 NDAA AMENDMENTS, SECTION 533**
**(All Plaintiffs Against DoD & Service in Which They Serve)**

180.   Plaintiffs reallege, as if set forth fully in this Count, the facts in Paragraphs 6-7 and Sections II-IV (Paragraphs 77-93).

181.   It cannot be denied DoD has provided no comprehensive training program on religious liberty issues for military leadership and commanders" despite congresses words in the 2018 NDAA.

> The committee continues **to recognize the importance of protecting the rights of conscience of members of the Armed Forces**, consistent with the maintenance of good order and discipline. The Congress has expressed this view in title 42, United States Code, section 2000bb, et seq. and in section 533 of the National Defense Authorization Act for Fiscal Year 2013 (Public Law 112-239) as amended by section 532 of the National

Defense Authorization Act for Fiscal Year 2014 (Public Law 113-66). **Complying with this law requires an intentional strategy for developing and implementing a comprehensive training program on religious liberty issues for military leadership and commanders**. The committee urges the Department, in consultation with commanders, chaplains, and judge advocates, to ensure that appropriate training on religious liberty is conducted at all levels of command on the requirements of the law, and to that end **the committee directs the Secretary, in consultation with the Chief of Chaplains for the Army, Navy, and Air Force, to develop curriculum and implement training concerning religious liberty in accordance with the law.** Recipients of this training should include commanders, chaplains, and judge advocates.

Ex. 4, 2018 NDAA Senate Committee Report at 149-150 (emphasis added).

182.   No such instruction for Congress's identified categories has been developed in the nearly 10 years since § 533's passage and no instruction has been provided in the Military Chaplains' various professional development training courses. Had it been developed and implemented, this litigation might not be necessary.

183.   The Secretary's Mandate and the Services' uniform rejection of RARs and failure to recognize the rights of chaplains and other service members to follow their conscience is a clear pattern and practice demonstrating the Secretary's and the Service Secretaries' contempt for the law, the rights of Military Chaplains, Congress who passed § 533, and the Constitution which they have sworn to uphold.

184.   Congress established specific criteria to comply with Congress' remedial intent of informing JAGs, chaplains and commanders in passing Section 533. "Complying with this law requires an intentional strategy for developing and implementing a comprehensive training program on religious liberty issues for military leadership and commanders." *Id.*

185.   Defendants have not developed or implemented an intentional strategy addressing religious liberty except to ignore what Congress directed them to do.

186.   The words of § 533 are not found in Title 10. Its omission suggests intent or gross incompetence.

187.   DoD's deliberate failure to do what Congress clearly intended and instructed and its further direct violations of  § 533's protections for chaplains actions based on conscience is deliberate and insubordination and would seem to qualify as a violation of 18 U.S. Code § 2387 - Activities affecting armed forces generally ("intent to interfere with, impair, or influence the loyalty, morale, or discipline of the military or naval forces of the United States [and/or] "advises, counsels, urges, or in any manner causes or attempts to cause insubordination, disloyalty ... or refusal of duty by any member of the military or naval forces of the United States").

188.   Plaintiffs seek declaratory and injunctive relief because they have no adequate remedy at law to prevent future injury caused by Defendants'

violation of their rights under Section 533, which is a direct consequence of the

Military Defendants' failure to follow Congress's clear and repeated directives.

**THIRD CAUSE OF ACTION**
**VIOLATION OF RELIGIOUS FREEDOM RESTORATION ACT**
**42 U.S.C. § 2000bbb, *et seq.***
**(All Plaintiffs Against DoD & Service in Which They Serve)**

189.   Plaintiffs reallege, as if set forth fully in this Count, the facts in

Paragraphs 8-9, Paragraphs 28-58, Section V Defendants' pattern and practice

of retaliation against and hostility to religious exercise.(Paragraphs 94-107),

Section VI (Paragraphs 108-114), Section VII (Paragraphs 115-130), and

Section IX (Paragraphs 141-142).

190.   RFRA was enacted "in order to provide very broad protection for

religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760

(2014) ("*Burwell*"). "Congress mandated that this concept be 'construed in favor

of a broad protection of religious exercise, to the maximum extent permitted

by the terms of this chapter and the Constitution.'" *Burwell*, 134 S. Ct. at 2762

(*quoting* 42 U.S.C. § 2000cc-3(g)).

191.   RFRA states that "Government shall not substantially burden a

person's exercise of religion even if the burden results from a rule of general

applicability." 42 U.S.C. § 2000bb-1(a). The government burdens religion when

it "put[s] substantial pressure on an adherent to modify his behavior and to

violate his beliefs," *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707,

718 (1981), or "prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief." *Davila v. Gladden*, 777 F.3d 1198, 1204 (11th Cir. 2015) (citation and quotation omitted). "That is especially true when the government imposes a choice between one's job and one's religious belief," *Navy SEALs 1-26*, at \*9 (*citing Sherbert v. Verner*, 374 U.S. 398 (1963)).

192.   If the Government substantially burdens a person's exercise of religion, it can do so only if it "demonstrates that application of the burden ***to the person*** – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b) (emphasis added). This means that strict scrutiny must be satisfied both for the "the asserted harm of granting specific exemption to particular religious claimants," and of "the marginal interest in enforcing the challenged government action in that particular context." *Burwell*, 573 U.S. at 726-27. *See also O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 430 (2006) ("*O Centro*") (the Government must "demonstrate that the compelling interest is satisfied through the application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened").

193.   "RFRA expressly creates a remedy in district court," *Navy SEAL 1*, 2022 WL 534459, at \*13, granting a "person whose religious exercise has been

burdened in violation of" RFRA to "assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against the government." 42 U.S.C. § 2000bb-1(c).

194. RFRA applies to Defendants, as they constitute a "branch, department, agency, instrumentality, and official of the United States." 42 U.S.C. § 2000bb-2(1). Further, "RFRA includes no administrative exhaustion requirement and imposes no jurisdictional threshold. No exemption, whether … express or implied, insulates the military from review in the district court." *Navy SEAL 1*, at *13.

195. Plaintiff Military Chaplains have sincerely held religious objections to the mRNA vaccines and the Mandate, in particular, based on their refusal to participate in or benefit from the abomination of abortion. *See supra* ¶¶ 114-118. Military Defendants have substantially burdened Plaintiffs' free exercise rights because the mandate forces Plaintiffs to "decide whether to lose their livelihoods or violate sincerely held religious beliefs." *Navy SEALs 1-26*, at *9. "By pitting their consciences against their livelihoods, the vaccine requirements would crush Plaintiffs' free exercise of religion." *Navy SEALs 1-26* Stay Order, 2022 WL 594375, at *9.

196. Defendants' religious exemption regulation, and implementation thereof, is neither neutral nor generally applicable because it treats comparable secular activity—medical and administrative exemptions—more

favorably than religious exemptions. As shown in Table 1 above, out of roughly 25,000 RARs, somewhere between 0.00% and 0.03% (*i.e.*, eight of over 25,000, and those appear to have been granted only to service members separating from the service), while on the other hand, Table 2 shows that thousands of medical and administrative exemptions have been granted. *See supra* Section VI.A, Table 1 & Section VI.B, Table 2.

197.   Plaintiffs have presented *prima facie*—and undisputable— evidence that Defendants have substantially burdened their exercise of religion, which triggers strict scrutiny where the government bears the burden of proving that its policies satisfy strict scrutiny. *O Centro*, 546 U.S. at 429. "Because the mandate treats those with secular exemptions more favorably than those seeking religious exemptions, strict scrutiny is triggered." *Navy SEALs 1-26*, at *9. RFRA thus presents a "high bar" to justify substantially burdening free exercise, and "[t]his already high bar is raised even higher [w]here a regulation already provides an exception from the law for a particular group." *Navy SEALs 1-26* Stay Order, at *10 (citations and internal quotations omitted). Defendants fail to meet this high bar for either of the two prongs of the strict scrutiny analysis.

198.   While "[s]temming the spread of COVID-19 is unquestionably a compelling interest," *Cuomo*, 141 S. Ct. at 67, "its limits are finite." *Navy SEALs 1-26*, at *10. The government cannot rely on "broadly formulated

interests," like "public health" or "military readiness," and must justify its decision by "scrutinize[ing] the asserted harm of granting specific exemptions to particular religious claimants." *Hobby Lobby*, 573 U.S. at 726-27.

199.   Defendants' "broadly formulated interest in national security," *Navy SEALs 1-26*, at *10, will not suffice. Nor will simply invoking "magic words" like "military readiness and health of the force." *Navy SEAL 1*, at *17 (*quoting Davila*, 777 F.3d at 1206). Instead, Defendants must produce "record material demonstrating that the military considered both the marginal increase, if any, in the risk of contagion incurred by granting the requested exemption and the marginal detrimental effect, if any, on military readiness and the health of the force flowing from the … denial" of the specific Plaintiff's exemption request. *Navy SEAL 1*, at *15.

200.   As in *Navy SEAL 1*, Military Defendants have manifestly failed to demonstrate that they have a compelling governmental interest in denying Plaintiffs' RARs and appeals. Instead, they have relied on "magic words" to "rubber stamp," *see Navy SEAL 1*, *18, in their blanket denials of Plaintiffs' RAR and appeal denial letters, *see supra* ¶¶ 120-123 (summarizing formulaic and deficient analysis in Plaintiffs' RAR and appeal denial letters), just as they have for tens of thousands of other service members. *See supra* Section VI.A, Table 1.

201. Nor have Military Defendants demonstrated that their blanket denials of Plaintiffs' religious exemptions are the least restrictive means of furthering that interest. *See generally supra* ¶¶ 112-114 & ¶¶ 124-130. Military Defendants' RAR denial and RAR appeal denial letters both ignore Military Defendants' own successful use of alternatives to vaccination over the past two years (e.g., masking, testing, quarantine, social distancing), but also those proposed by Plaintiffs that are specifically adapted to their specific role, unit, vessel, or mission and the evidence presented by that these measures have enabled them to successfully perform their missions and roles without vaccination. Similarly, Defendants' assertions that no less restrictive means than vaccination exists because alternative, less restrictive measures "are not 100 percent effective," similarly cannot satisfy strict scrutiny because this "statement [is] equally true of vaccination." *Navy SEAL 1*, *18 & n.10.

202. Further, 17 Plaintiffs have documented previous COVID-19 infections from which they have fully recovered, in many cases, quite recently. *See supra* note 22 (listing Natural Immunity Plaintiffs). Such natural immunity from previous infections provides stronger and longer-lasting protection than the vaccines. Moreover, several Plaintiffs have proposed alternative mitigation measures consistent both with those that have been successfully practiced over the last two years since COVID-19 emerged. For example, Plaintiffs could be subject to regular COVID-19 testing, masking,

social distancing, along with isolation or quarantine for positive tests, as they have been for over a year.

203.   Yet, the Services' denial letters dismiss natural immunity—"reaching disputed medical conclusions without evaluation or citation of medical or legal authority," *Navy SEAL 1*, at *16 & n.10—both on its own or in conjunction with Plaintiffs' proposed less restrictive alternatives that have been successfully employed in the past without acknowledgement or discussion. *See id.* at *18-19. Just as in *Air Force Officer*, Defendants' conclusory assertions fail to show that "COVID-19 vaccine[s] … provide more sufficient protection" than Plaintiffs' "natural immunity coupled with other preventive measures," nor have they shown "vaccination is actually necessary by comparison to alternative measures[ ], since the curtailment of free [exercise] must be actually necessary to the solution." *Air Force Officer*, 2022 WL 468799, at *10 (citation and quotation omitted).

204.   Finally, Military Defendants cannot satisfy either prong of strict security—compelling government interest or least restrictive means—by mandating 100% vaccination with a vaccine that is known to be ineffective and obsolete. The government's strict scrutiny analysis is highly fact intensive, and the individualized assessment prescribed by *Burwell* and *Navy SEAL 1*, require the government to perform a marginal cost vs. benefit analysis that takes into account the current costs and benefits from granting specific

exemptions. Defendants have failed entirely to account for the impact of the Omicron variant, and the minimal and rapidly declining efficacy of the vaccine against it, in performing this assessment.

205.   Plaintiffs seek declaratory and injunctive relief because they have no adequate remedy at law to prevent future injury caused by Defendants' violation of their right under RFRA to the free exercise of religion.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE CONSTITUTION'S ARTICLE VI AND THE FIRST AMENDMENT'S ESTABLISHMENT CLAUSE BY ESTABLISHING A STATE RELIGION THAT EXCLUDES MORAL AND RELIGIOUS OBJECTIONS TO ABORTION AS A REQUIREMENT FOR CONTINUED SERVICE**
**U.S. CONST., ART VI § 3 & U.S. CONST. AMEND. I**
**(All Plaintiffs Against DoD & Service in Which They Serve)**

206.   Plaintiffs reallege, as if fully set forth in this Count, the facts in Paragraphs 10-13, Section I (Paragraphs 72-76), and Section V (Paragraphs 94-107).

207.   ARTICLE VI states that "no religious Test shall ever be required as a Qualification to any office or public trust under the United States. U.S. CONST.

208. The First Amendment's Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. AMEND. I.

209.    Plaintiffs' Third Cause of Action above establishes Defendants have violated the Religious Freedom Restoration Act by denying all Plaintiffs' requests for religious accommodation and all appeals that have been adjudicated to date.

210.    The facts supporting that cause of action have already been described by various courts as "theater" or other descriptions of what is essentially a sham or a fraud. *See Navy* SEALs 1-26, 2022 WL 34443, at *1.

211.    As explained above, Plaintiffs' consistent primary religious objection to the Mandate is the use of stem cells in the development and testing that came from aborted babies. *See supra* ¶ 115. This is based on a theological view as to when life begins in the sacredness of the soul, basic, well-established, historical Judeo-Christian beliefs and religious doctrines.

212.    Defendants started out with and have continued with their deliberate plan of denying all RARs, a plan that rejects abortion as a viable religious belief that guides the conscience of these chaplain Plaintiffs. *See supra* Section V.

213.    Plaintiffs' Third Cause of Action above establishes Defendants have violated Plaintiffs' Free Exercise rights as protected and enforced through RFRA. As in the RFRA case, the free exercise at issue is Plaintiff's belief that life is sacred and that abortion is a sin because it destroys a living being outside of the provisions that God has allowed in his Word for the taking of life.

214.   Defendants' actions in rejecting all RAR's shows a hostility to these chaplains' religion that has constructed a religious test for continued service, *i.e.*, agreeing that it's okay to kill babies in the womb. To these chaplains that is not unlike the worship of the Canaanite god Molec to whom they sacrificed their children.

215.   The common constitutional linkage and mandate between the Establishment and the Free Exercise Clauses is the mandate of government neutrality to religion, it may not prefer one set of religious beliefs over another which is the natural byproduct of preference for one set of religious beliefs and contempt for the other.

216.   The results show Defendants prefer one set of beliefs about abortion over another and in so doing have drawn a dividing line between continued employment or separation and a consequent loss of benefits with the discharge that will mark them for life. This is a clear message of preference for one set of beliefs and contempt for Plaintiffs' beliefs.

217.   That preference establishes a government secular religion and creates a *de facto* religious test for military service. It communicates the twin forbidden messages of government hostility to chaplains who exercise their conscience as formed by faith and who reject abortion while preferring and benefiting those who love abortion.

218. Military Defendants' actions violate well-established precedent that government decisions concerning the award of benefits must be free from religious factors. *See Bd. of Educ. of Kiryas Joel. v. Grume*t, 512 U.S. 687, 698-703 (1994). That is clearly not the case here given the preference for one set of beliefs about abortion and rejection of Plaintiffs' exercise of their conscience based on their religious beliefs.

219. The DoD's unprecedented and medically unjustifiable 100%, vaccination requirement is further proof that Defendants true motivation is to purge the military of people of faith (as well as those who would question the lawfulness of a facially unconstitutional regulation), rather than to promote military readiness or protect the health and welfare of service members.

220. The religious exemption requirement, which Plaintiffs must pass to avoid the vaccine mandate and continue their employment, is itself an unconstitutional religious test in violation of Article IV, § 3 of the U.S. Constitution as applied to those Plaintiffs who have been denied religious exemptions. Moreover, Defendants' denial of Plaintiffs' religious exemption requests, where applicable, is a violation of the No Religious Test Clause.

221. The No Religious Test Clause of the Constitution states that "no religious test shall ever be required as a Qualification to any office or public Trust under the United States." U.S. CONST. ART. VI, § 3. Plaintiffs are

members of the United States military and are thus officers or under the public Trust of the United States.

222.   Upon information and belief, Defendants have implemented their religious exemption policy in order to identify, isolate, and ultimately screen-out and/or punish those with sincerely held religious objections to the COVID-19 vaccines. This is demonstrated, in part, by the hostility in which Defendants have addressed Plaintiffs' religious accommodation request and their blanket refusal to grant any requests submitted to date.

223.   Plaintiffs seek declaratory and injunctive relief because have no adequate remedy at law for Defendants' violation of the Establishment Clause and the No Religious Test Clause of the Constitution.

## <u>FIFTH CAUSE OF ACTION</u>
### VIOLATION OF FIRST AMENDMENT FREE EXERCISE CLAUSE
#### U.S. CONST. AMEND. I
#### (All Plaintiffs Against DoD & Service in Which They Serve)

224.   Plaintiffs reallege, as if fully set forth in this Count, the facts in Paragraphs 8-9, Paragraphs 28-58, Section V Defendants' pattern and practice of retaliation against and hostility to religious exercise.(Paragraphs 94-107), Section VI (Paragraphs 108-114), Section VII (Paragraphs 115-130), and Section IX (Paragraphs 141-142).

225. The First Amendment's Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. CONST. AMEND. I.

226. "Government is not free to disregard the First Amendment in times of crisis." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 69 (2020) ("*Cuomo*") (Gorsuch, J., concurring). "Even in a pandemic, the Constitution cannot be put away and forgotten." *Cuomo*, 141 S. Ct. at 68 (per curiam). Just as "[t]here is no COVID-19 exception to the First Amendment," there is "no military exclusion from our Constitution." *Navy SEALs 1-26*, at *1.

227. Governmental regulations that are not neutral or generally applicable "trigger strict scrutiny" when "they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (emphasis in original) (*citing Cuomo*, 141 S. Ct. at 67-68). "A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021).

228. Plaintiffs submitted religious exemption requests, stating that their religious beliefs prohibited them from receiving the available COVID-19 vaccines because of their sincerely held religious beliefs that, among other things, abortion is an abomination and because the aborted fetal cells were

critical to the development of the vaccines, they refuse to participate or support this evil. *See supra* ¶¶ 115 & 118-119.

229.   Military Defendants have not granted any of Plaintiffs' religious accommodation requests, and every Plaintiff who has received a decision has been denied. Several have also had their appeals have been denied as well. *See* Section VI.A. In issuing these denials, Defendants are unlawfully denied Plaintiffs' requests for accommodation of their sincerely held religious beliefs.

230.   Military Defendants' rules and policies governing religious accommodations—uniformly denying and granting zero exemptions (or close enough to zero to amount to a rounding error—are neither neutral nor generally applicable because they "single out … for harsh[er] treatment," *Cuomo*, 141 S. Ct. at 66, those who choose to remain unvaccinated for religious reasons than those who seek to remain vaccinated for secular treatment. The numbers in Table 1 and Table 2 speak for themselves, with thousands of medical and administrative exemptions granted, compared to a mere handful of religious accommodations for service members who will not remain in the service. Even if the comparison is limited to permanent medical exemptions— which necessarily excludes any administrative exemptions for those on terminal leave or in the separation process—the number of such exemptions is still several times larger than those granted religious accommodations. "No matter how small the number of secular exemptions by comparison, *any*

favorable treatment … defeats neutrality." *Navy SEALs 1-26*, at * 11 (emphasis in original).

231.   Having established that Military Defendants' policies are not neutral and substantially burden Plaintiffs' exercise of religion by treating those seeking exemption from vaccination less favorably than those seeking exemption for secular reasons, the burden of proof switches to Defendants who must demonstrate that their policies satisfy strict scrutiny, meaning that they must be (1) "narrowly tailored" (2) "to serve a compelling [government] interest." *Cuomo*, 141 S. Ct. at 67 (*citing Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993)).

232.   Military Defendants' religious exemption policies fail to satisfy strict scrutiny under the First Amendment for largely the same reasons they fail strict scrutiny under RFRA. *See, e.g., Navy SEALs 1-26*, at *11; *Air Force Officer*, at * 11-12. The DoD Mandate, as a policy and as applied to Plaintiffs, fails to accommodate Plaintiffs' sincerely held religious beliefs. There is no interest, compelling or otherwise, for Defendants to deny Plaintiffs' religious exemptions or threaten not to accommodate Plaintiffs' sincerely held religious beliefs. Nor have Defendants chosen the least restrictive means of achieving any compelling governmental interest, and in fact, have dismissed and uniformly denied Plaintiffs' alternative, less restrictive mitigation measures.

Accordingly, the DoD Mandate, and the Defendants' religious accommodation policies and procedures, cannot survive strict scrutiny.

233.   Plaintiffs seek declaratory and injunctive relief because they have no adequate remedy at law to prevent future injury caused by Defendants' violation of their First Amendment right to the free exercise of religion.

### SIXTH CAUSE OF ACTION
### VIOLATION OF PLAINTIFFS' FIRST AMENDMENT'S FREE SPEECH AND RIGHT TO PETITION CLAUSES
### U.S. CONST. AMEND. I
### (All Plaintiffs Against DoD & Service in Which They Serve)

234.   Plaintiffs reallege, as if fully set forth in this Count, the facts in Paragraphs 188-233 (Third and Fourth Causes of Action for RFRA and First Amendment Free Exercise violations).

235.   The Free Speech Clause restricts the government from censoring speech on the basis of content and viewpoint.

236.   Defendants' rejection of Plaintiffs RARs is based on Plaintiff's view of abortion in the use of stem cells from aborted children in the development of the mRNA vaccines.

237.   The RAR process laid out by RFRA and DoD I 1300.17 are tools to allow Plaintiffs to petition for redress of wrong.

238.   The discussion of Plaintiffs' Third and Fourth Causes of Action establish that the RAR process was theater, a farce, and a fraud. This is a clear violation of the requirement that such petitions for redress must be answered

by answers and decisions that are honest, lawful, effective, and free from religious bias.

239.   Plaintiffs seek declaratory and injunctive relief because they have no adequate remedy at law to prevent future injury caused by Defendants' violation of their First Amendment rights to free speech and to petition the government for redress.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF FIFTH AMENDMENT DUE PROCESS CLAUSE**
**U.S. CONST. AMEND. V**
**(All Plaintiffs Against DoD, CDC & Service in Which They Serve)**

240.   Plaintiffs reallege, as if fully set forth in this Count, the facts in Paragraphs 14-18, Section V (Paragraphs 94-107), and Section VIII (Paragraphs 131-140).

241.   The Fifth Amendment Due Process Clause provides that no person may "be deprived of life, liberty or property without due process of law."  U.S. CONST. AMEND. V.  The DoD Mandate would deprive Plaintiffs of all three.

242.   The CDC Vaccine Redefinition, the Mandate, the No Accommodation Policy and the deprive Plaintiffs of their Fifth Amendment Rights to procedural due process.

243.   The CDC, recognizing that the Pfizer/BioNTech and Moderna COVID-19 treatments do not provide immunity to COVID-19, changed the centuries old definitions of "vaccine" and "vaccination" from a medical

procedure that provides immunity to one that merely provides "protection" or lessens the severity of a symptom (*i.e.*, like any other therapy). *See* Ex. 8, CDC FOIA Responses.  The CDC FOIA Responses confirm that the CDC did so because it recognized that the public was well aware that the Pfizer/BioNTech and Moderna mRNA COVID-19 treatments did not provide immunity, and the redefinition was a transparent attempt to use its authority to deceive the public. *See generally* Ex. 8 & Section VIII.

244.   Further, the CDC changed the definition from that set forth in statutes defining vaccines and recognized in Supreme Court precedents as a significant exception to the fundamental right to refuse medical treatment and against battery more generally.  The US Supreme Court has recognized a "general liberty interest in refusing medical treatment." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278, 110 S. Ct. 2841, 2851 (1990). It has also recognized that the forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty. *Washington v. Harper*, 494 U.S. 210, 229, 110 S. Ct. 1028, 1041, 108 L.Ed.2d 178, 203 (1990), *see also id.* at 223 (further acknowledging in dicta that, outside of the prison context, the right to refuse treatment would be a "fundamental right" subject to strict scrutiny).[26] Thus, in doing so, the CDC sought to

---

[26] Although *Cruzan* was decided under the due process clause of the Fourteenth Amendment, the Supreme Court has long held that the same substantive due process analysis applied to the states under the due process clause of the Fourteenth

circumvent not only the applicable federal laws and regulations defining vaccines and governing the CDC's administrative procedures, but also long-standing Supreme Court precedents that grant the procedural and substantive due process rights to refuse medical treatments by fraudulently treating the COVID-19 mRNA treatment as vaccines.

245.   The CDC did so without any notice-and-comment rulemaking or in fact any procedure at all. *See supra* Section VIII. The CDC's action in concert with the Military Defendants' imposition of the Mandate deprives Plaintiffs of their right to life, liberty and property without due process in violation of the Fifth Amendment. The CDC and Military Defendants' actions also violate the Fifth Amendment Due Process Clause insofar the ban on administrative agencies creating "laws with punitive consequences" without following due process requirements and the ban on administrative officials being given unbridled power over First Amendment activity. *See, e.g., NFIB*, 142 S. Ct. at 667 (2022) (Gorsuch, J. Concurring).

---

Amendment also applies to the federal government under the due process clause of the Fifth Amendment. *See, e.g., Bolling v. Sharpe,* 347 U.S. 497, 500 (1954) ("In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government.") *See also, Adarand Constructors v. Pena*, 515 U.S. 200 (1995)(same).

246. First, the CDC Vaccine Redefinition and the Mandate require Plaintiffs to take a vaccine without their consent and thereby exposes them to a non-negligible risk of death or serious injury.

247. Second, the Mandate and No Accommodation Directive "threaten[] to substantially burden the liberty interests" of Plaintiffs "put to a choice between their job(s) and their jab(s)." *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("*BST*"). Plaintiffs face not only the loss of the current employment, but also will be barred from other federal or private employment as chaplains due to their discharge status and from any employer (including federal agencies or contractors) that have adopted vaccine mandates.

248. Third, the CDC Vaccine Redefinition, the Mandate, and the No Accommodation Directive may result in deprivation of Plaintiffs' protected property interests. Disciplinary action or discharge status will cause Plaintiffs to lose retirement, veterans, and other governmental benefits to which they are entitled. *See, e.g., supra* ¶¶ 31, 38, 42, 46-48, 52 (discharge will result in loss of VA benefits, GI Bill and/or partial or total loss of earned retirement benefits).

249. Further, the Mandate and the No Accommodation Policy deprives Plaintiffs of their fundamental rights, in particular, the free exercise of religion protected by RFRA and the First Amendment. *See BST,* 17 F.4th at 618 n.21 (citations omitted). The Military Defendants' policy of systematic and uniform

denial of 100% of RARs is just as much a deprivation of their Fifth Amendment Due Process rights, U.S. CONST. AMEND. V, as it is of First Amendment Free Exercise rights. Due process requires not only notice and an opportunity to be heard, but also an impartial decisionmaker where, unlike here, the outcome is not "predetermined." *See, e.g., McCarthy v. Madigan,* 503 U.S. 140, 148 (1992). The zero or near zero approval rate shows that the Armed Services have "predetermined the denial of the religious accommodations." *Navy SEALs 1-26*, at *6. This is no accident, but the intended result of a process designed to deny Plaintiffs' free exercise rights; their fate has been sealed before the process begins.

250.   The Defendants have also violated the Due Process Clause insofar as they have modified or amended AR 40-562, the currently effective regulation governing immunization and exemptions—by imposing an entirely new vaccination requirement and categorically eliminated existing exemptions—without any legal authorization or following procedures required by law.

251.   Even if Plaintiffs were to become "fully vaccinated," they would be threatened with the loss of this status (and consequent deprivation of protected life, liberty and property interests), at any time and without fair notice, due to changes in the CDC or FDA approval of booster shots and change to the definition of "fully vaccinated." So would the majority of service members who are currently deemed "fully vaccinated." The rapid decline in efficacy and need

for booster shots demonstrates that there is no scientific consensus on the COVID-19 vaccines' efficacy, protection provided, or even dosage. "As COVID-19 is a new disease, and the vaccines are even newer, the long-term efficacy of immunity derived from vaccination and infection is not proven." *Klaassen*, 2021 WL 3073926, at *12. Accordingly, this fluid and changing classification cannot be used as the benchmark for determining who may serve in the military, or alternatively, for depriving Plaintiffs of their life, liberty, property and other fundamental constitutional rights, including the free exercise of their religion.

252.   As a result of the Defendants' unlawful and unconstitutional actions, Plaintiffs face deprivation of their rights to life, liberty and property without due process. Plaintiffs seek declaratory and injunctive relief because they have no adequate remedy at law to prevent future injury caused by Defendants' violation of their Fifth Amendment rights to due process.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF ADMINISTRATIVE PROCEDURE ACT**
**5 U.S.C. §§ 706(2)(A)-706(2)(E)**
**(All Plaintiffs Against All Defendants)**

253.   Plaintiffs reallege, as if fully set forth in this Count, the facts in Paragraphs 14-18, Section V (Paragraphs 94-107), and Section VIII (Paragraphs 131-140).

254. **Arbitrary & Capricious and Unsupported by Substantial Evidence.** Each of the CDC Vaccine Redefinition and the Mandate is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of 5 U.S.C. § 706(A) and is unsupported by substantial evidence in violation of 5 U.S.C. § 706(2)(E).

255. As far as the CDC Vaccine Redefinition, the CDC simply redefined the centuries old definitions of "vaccine" and "vaccination" in response to public doubts and questions regarding the efficacy of the vaccine and the CDC and other agencies' public admissions that the Pfizer/BioNTech and Moderna COVID-19 vaccines did not provide immunity and could not prevent infection, re-infection or transmission. The CDC did so simply by posting a new definition on its website, and without statutory authority, instituting notice-and-comment rulemaking, or citing any evidence in support of its entirely novel definition. For their part, the Military Defendants blindly and retroactively relied on the CDC's new definition (which in fact was announced *after* the DoD's August 24, 2021 mandate).

256. The entirety of the DOD Mandate is a two-page memorandum from the Secretary of Defense that cites no statute, regulation, executive order or other legal authority. The DoD Mandate is arbitrary and capricious insofar as it imposes an entirely new mandate on over two million active duty and reserve service members without any explanation, justification, legal basis or

authority; any findings of facts or analysis (cost-benefit or otherwise) supporting the directive; seeks to exercise *ultra vires* action in excess of DoD or Secretary Austin's authority and/or that is expressly delegated to another agency; and is based on patent misrepresentations of the law.

257. The DoD Mandate is arbitrary and capricious insofar as its sole justification or explanation is a conclusory statement that the Secretary has "determined that mandatory vaccination against [COVID-19] is necessary to protect the Force and defend the American people." August 24, 2021 SECDEF Memo. Given that the DoD Mandate was issued on the very next day after FDA Comirnaty Approval, it is apparent the DoD blindly relied on the FDA approval and out-of-context FDA statements regarding interchangeability.

258. Military Defendants also purport to rely on the CDC's recommendations in adopting the two-dose regimen but have ignored the CDC's unanimous recommendation that all eligible adults should receive a third booster shot. *See* CDC, *CDC Expands Eligibility for COVID-19 Booster Shots to All Adults,* CDC Media Statement (Nov. 19, 2021), available at: https://www.cdc.gov/media/releases/2021/s1119-booster-shots.html. Such selective picking and choosing of which recommendations to follow, without any explanation, is the essence of arbitrary and capricious decision-making.

259. Finally, Military Defendants' actions are arbitrary and capricious, and unsupported by substantial evidence, insofar as they categorically

eliminated existing exemptions for previous documented infections under AR 40-562, or to consider natural immunity in its religious exemption decisions. *See, e.g., Navy SEAL 1*, at *16 & n.10; *Navy SEALs 1-26*, at *10; *Air Force Officer*, at *10. In doing so, Defendants have "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

260.   **5 U.S.C. § 706(2)(B): Violation of Constitutional Rights.** The CDC Vaccine Redefinition, the Mandate and the No Accommodation Policy are violations of Plaintiffs' constitutional rights for the following reasons. First, these policies result in a deprivation of Plaintiffs' Fifth Amendment rights to procedural due process as set forth in the Seventh Cause of Action. *See supra* ¶¶ 240-252. Second, the No Accommodation Policy deprives Plaintiffs of their First Amendment RFRA rights as set forth in the Third Cause of Action (RFRA), *see supra* ¶¶ 189-205, Fourth Cause of Action (First Amendment Establishment Clause and No Religious Test Clause), *see supra* ¶¶ 206-223, Fifth Cause of Action (First Amendment Free Exercise), *see supra* ¶¶ 224-233, and Sixth Cause of Action, (Free Speech and Right to Petition). *See supra* ¶¶ 234-238.

261.   ***Ultra Vires*/Violation of Statutory Right.** The DoD Mandate and Armed Services' guidance are *ultra vires* actions "in excess of statutory jurisdiction [and] authority," 5 U.S.C. § 706(2)(C), for the reasons set forth

under the Fourth Cause of Action above. The DoD and the Armed Services are departments and agencies of the United States Government. As such, they are agencies created by statute, and "it is axiomatic that an administrative agency's power to promulgate legislative regulations," like the DoD Mandate, "is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, L.Ed.2d 493 (1988) ("*Bowen*"); *see also La. Pub. Serv. Comm'n v. FERC*, 476 U.S. 355, 375, 106 S. Ct. 1890, 90 L.Ed.2d 369 (1986) ("an agency literally has no power to act, …, unless and until Congress confers power on it.").

262.   The CDC and Military Defendants' actions are *ultra vires* in excess of their statutory authority in violation of 5 U.S.C. §706(2)(C) insofar as they have redefined the centuries old definitions of vaccine and vaccinations to extend coverage to COVID-19 treatments that provide "protection" (like any other therapy) rather than immunity, and then making this unproven experimental treatment mandatory, without any statutory authorization whatsoever. *See generally supra* Section VIII.

263.   The Mandate and the Military Defendants' No Accommodation Policy violates Plaintiff Chaplains' statutory rights to free exercise of religion that apply to all service members, as well as their specific rights as Military Chaplains to free exercise and to be free from religious discrimination and retaliation that are set forth in Section 533. The facts and allegations

supporting the claim under 5 U.S.C. § 706(2)(C) are set forth in more detail, and realleged as if set forth in this Count, in the First Cause of Action (Section 533), *see supra* ¶¶ 162-176, and the Second Cause of Action (Section 533), *see supra* ¶¶ 180-187.

264. **5 U.S.C. § 706(2)(D): Without Observance of Procedures Required by Law.** As explained above, neither the CDC nor the Military Defendants followed any procedures whatsoever in announcing the CDC Vaccine Redefinition or the Mandate. They simply announced new policies that had the force of law. The CDC posted a new definition to its website changing the centuries old definition of "vaccine" and "vaccination" from one day to the next. Secretary Austin adopted the Mandate on August 24, 2021, just one day after the FDA approved Pfizer/BioNTech's Comirnaty vaccine.

265. As a result of Defendants' unlawful actions, Plaintiffs will be required either to take an unlicensed vaccine, pursuant to an unlawful directive, or else face the serious disciplinary consequences outlined above that will result in the loss of their livelihoods, benefits, and fundamental rights.

**NINTH CAUSE OF ACTION**
**VIOLATION OF SEPARATION OF POWERS**
**U.S. Const. Art I, § 8**

266. Plaintiffs reallege, as if fully set forth in this Count, the facts in Paragraphs 16-18, Section V (Paragraphs 94-107), and Section VIII (Paragraphs 131-140).

267.  The DoD Mandate and CDC Vaccine Redefinition must be considered as part of a larger effort to impose unconstitutional vaccine mandates on nearly every U.S. citizen or legal resident. The unprecedented federal vaccine mandates have been enacted solely through administrative action, without authorization from Congress. Neither the DoD Mandate nor the CDC Vaccine Redefinition cite any statute, regulation, executive order or action, or other legal basis for their action, and thereby violate the separation of powers and Congress' enumerated powers in Article I, § 8 of the U.S. Constitution. The Secretary of Defense and CDC Director cannot rely on the President's authority as commander-in-chief, both because they do not rely on any executive order or other Presidential action or authorization for this mandate and because such authorization itself would likely violate the separation of powers.

268.  As explained above, the each of the Military Defendants and the CDC is a department or agency of the United States Government. As such, they are agencies created by statute, and "it is axiomatic that an administrative agency's power to promulgate legislative regulations," like the DoD Mandate, "is limited to the authority delegated by Congress." *Bowen*, 488 U.S. at 208.

269.  The DoD Mandate and CDC Vaccine Redefinition violate the separation of powers, and the Congressional delegation of authority, insofar as

it seeks unilaterally "[t]o make Rules for the Government and Regulation of the land and naval forces," U.S. CONST. ART. I, § 8, cl. 14, without congressional authorization. Further, insofar as Secretary Austin's order may result in the expulsion of tens or even hundreds of thousands of service members and devastate military readiness, it interferes with Congress exclusive authority "[t]o raise and support Armies" and "[t]o provide and maintain a Navy." U.S. CONST. ART. I, § 8, cl. 12 & cl. 13. These enumerated powers give Congress, rather than the DoD or even the President, the power to set personnel levels through legislation, in particular the annual National Defense Authorization Acts, and related legislation governing spending, military readiness, and the health and welfare of service members. Similarly, Congress has the plenary and exclusive authority to determine who may serve in the military. *See generally U.S. v. Williams*, 302 U.S. 46, 58 S. Ct. 81 (1937) (affirming Congressional authority for conscription and to set the age and other conditions of eligibility for service).

270.   Congress has not enacted any legislation authorizing the DoD Mandate, nor has it established COVID-19 vaccination as a condition to be eligible to serve in the military, or to systematically exclude those with sincerely-held beliefs. Further, there is no indication that Congress intended to do so given the absence of such authorization in any of the COVID relief legislation or the 2022 NDAA.

271.   The DoD Mandate and the CDC Vaccine Redefinition also violate the "Major Questions" doctrine. The Fifth Circuit struck down the OSHA Mandate, among other things, because "the major questions doctrine confirms that the Mandate exceeds the bounds of OSHA's statutory authority," where there was no evidence that Congress had delegated the agency that authority. *BST*, 17 F.4th at 617. *See also NFIB*, 142 S. Ct. 661 (staying OSHA Mandate).

272.   The Mandate and CDC Vaccine Redefinition, imposed through administrative fiat, are in many ways similar to the CDC's eviction moratorium that the Supreme Court struck down as exceeding the authority granted to the CDC by enabling statute.   Where, as in the CDC eviction moratorium and the OSHA Mandate, "an agency claims to discover in a long-extant statute an unheralded power to regulate a significant portion of the economy," the Court must "greet its announcement with a measure of skepticism."   *See generally Alabama Assoc. Realtors v. HHS*, 141 S.Ct. 2485, 2489 (2021). Further, Congress must "speak clearly when authorizing an agency to exercise vast powers of economic and political significance." *Id.* (internal citation and quotation omitted).

273. The CDC and Military Defendants' actions also violate the Separation of Powers and "Major Questions" doctrine insofar as they would create "laws with punitive consequences" without statutory authorization and

the give unelected officials unbridled power over First Amendment activity. *See, e.g., NFIB*, 142 S. Ct. at 667 (2022) (Gorsuch, J. Concurring).

274.   This Court must therefore reject the efforts of Defendants to bypass Congress and the Constitution, to enact by administrative fiat an unconstitutional vaccine mandate, without any authorization from Congress or the Executive. Plaintiffs have no adequate remedy at law for the Military Defendants' unilateral and unauthorized administrative action imposing new vaccine requirements and elimination of existing medical and/or religious exemptions, or for the CDC's redefinition of "vaccine" and "vaccination" on which the Military Defendants' unlawful actions rely.

## **RELIEF REQUESTED**

**WHEREFORE,** Plaintiffs respectfully ask this Court to:

**(1)**   Certify the Classes and SubClasses defined herein pursuant to Rules 23(b)(1) and 23(b)(2), appoint the Named Plaintiffs as representatives of such Classes and SubClasses, and appoint undersigned counsel as Class Counsel for each Class and SubClass;

**(2)**   Declare that the Military Defendants' No Accommodation Policy violates Section 533; RFRA; the Constitution's Article VI No "Religious Test" Clause; the First Amendment's Establishment, Free Exercise, Free Speech and Right to Petition Clauses; the Fifth Amendment Due Process Clause, and the No Religious Test Clause;

**(3)**   Enjoin the implementation or enforcement of the Mandate and No Accommodation Policy with respect to the Plaintiffs, the Military Chaplain Class, and the two sub-classes;

**(4)**   Enjoin any adverse or retaliatory action against the Plaintiffs as a result of, arising from, or in conjunction with the Plaintiffs' RAR requests or denials, or for pursuing this action, or any other action

for relief from Defendants' constitutional, statutory, or regulatory violations;

**(5)** To order Defendants to take necessary actions to repair and restore Plaintiffs' careers and personnel records, and to provide effective guarantees against future retaliation for the exercise of their protected rights through the Services' assignment, promotion, and schooling systems;

**(6)** Find unlawful the CDC Vaccine Redefinition and vacate any Defendant agency actions adopting or relying on this unlawful redefinition;

**(7)** An Order declaring the Defendants have acted with bad faith from the beginning of the Mandate and with reckless disregard for the health, safety and welfare of Plaintiffs and the class; and

**(8)** Attorney's fees and costs for prosecuting this action based on Defendants' bad faith and/or under the Equal Access to Justice Act, 28 U.S.C. § 2412.

Respectfully Submitted,

*/s/ J. Andrew Meyer*
J. Andrew Meyer, Esq.
Fla Bar No. 0056766
FINN LAW GROUP, P.A.
8380 Bay Pines Blvd
St. Petersburg, Florida 33709
Tel.: 727-709-7668
Email: ameyer@finnlawgroup.com

/s/ Arthur A. Schulcz, Sr.
Arthur A. Schulcz, Sr.
DC Bar No. 453402
Chaplains Counsel, PLLC
21043 Honeycreeper Place
Leesburg, VA 20175
Tel. (703) 645-4010
Email: art@chaplainscounsel.com

Motion for Special Admission Pending

/s/ Brandon Johnson
Brandon Johnson, DC Bar No. 491370
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org

Motion for Special Admission Pending

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 18th day of May, 2022, the foregoing Plaintiffs' Complaint for Declaratory and Injunctive Relief was e-filed using the CM/ECF system, and that I have delivered the filing to the Defendants, as well as the United States Attorney General and the United States Attorney for the Middle District of Florida, by certified mail at the following addresses:

This 18th day of May, 2022.

Respectfully Submitted,

***/s/ Arthur A. Schulcz***
Arthur A. Schulcz

Lloyd J. Austin III
Secretary of Defense
1000 Defense Pentagon
Washington, DC 20301-1000

Carlos Del Toro
Secretary of the Navy
1000 Navy Pentagon
Washington, DC 20350-1000

Xavier Becerra
Secretary
Dept. of Health & Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

Janet Woodcock
Commissioner
Food and Drug Administration
10903 New Hampshire Ave
Silver Spring, MD 20993-0002

Frank Kendall
Secretary of the Air Force
1670 Air Force Pentagon
Washington, DC 20330-1670

Christine E. Wormuth
Secretary of the Army
101 Army Pentagon
Washington, DC 20310-0101

123

Merrick Garland
Attorney General
Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

Rochelle Walensky
Director,
Centers for Disease Control &
Prevention
395 E St SW
Washington, DC 20024

Karin Hoppmann
Acting United States Attorney
U.S. Attorney's Office
400 North Tampa Street, Ste 3200
Tampa, FL 33602