# Exhibit 8

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ISRAEL ALVARADO, et al.,     :
                     :

      *Plaintiffs,*       :
                     :

         v.           :     **Case No.: 8:22-CV-1149**
                     :

LLOYD AUSTIN, III, et al., : 
                     :

      *Defendants.*       :
                     :

## DECLARATION OF REAR ADMIRAL ERIC JONES

I, REAR ADMIRAL ERIC JONES, hereby declare and state:

1.     I am a commissioned officer serving on active duty in the United States Coast Guard. I have served in the Coast Guard for over thirty years and am currently serving as the Deputy for Personnel Readiness. I have served in this position since April 2022. Immediately prior to this assignment, I served as the Assistant Commandant for Human Resources. My prior assignments include a variety of assignments both afloat and ashore, including command afloat. I make this declaration in my official capacity, based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

2.     As the Deputy for Personnel Readiness, I oversee the recruiting, development and support of the highly capable and diverse workforce that enables Coast Guard mission success. In this capacity, I am responsible for synchronizing the contributions of human resources and force readiness training staffs, as well as the U. S. Coast Guard Academy, in providing a mission-ready workforce of over 57,000 active duty, reserve, and civilian personnel.

3.     On August 24, 2021, the Secretary of Defense directed the "Secretaries of the

Military Departments to immediately begin full vaccination of all members of the Armed Forces under DoD authority on active duty or in the Ready Reserve, including the National Guard, who are not fully vaccinated against COVID-19."[1]  The military services have a joint policy with regard to immunizations to prevent infectious diseases—Army Regulation 40-562 is also Coast Guard Commandant Instruction Manual 6230.4G.  Consequently, the Coast Guard quickly also took steps to achieve full vaccination of its military members.

4.     On August 26, 2021, the Coast Guard mandated all Coast Guard active duty and ready reserve members who were not fully vaccinated to receive the Pfizer-BioNTech COVID-19 vaccine, or to otherwise achieve full vaccination through any vaccine administered under the Food and Drug Administration's (FDA) Emergency Use Authorization (EUA), or a vaccine on the World Health Organization Emergency Use Listing.[2]  The Coast Guard issued supplemental guidance to this mandate in the months following the August 26, 2021 announcement.[3]  Pursuant to this guidance, all Coast Guard commands were directed to counsel all unvaccinated Coast Guard military members regarding the requirement to get vaccinated, the timeline for vaccination, and the process to request medical exemption or religious accommodation and written documentation of this counseling has been produced.

5.     Medical exemptions to vaccination requirements are governed by Army Regulation (AR) 40-562, which is a consolidated Military Services regulation implemented by the Coast Guard through Commandant Instruction Manual 6230.4G (hereinafter "CIM 6230.4G").  Medical personnel are responsible for reviewing and granting medical exemptions, whereas

---

[1] Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members, 24 August 2021.
[2] COVID-19: Mandating COVID-19 Vaccination for Military Members, ALCOAST 305/21.  In this directive, the Coast Guard noted that the "Pfizer-BioNTech COVID-19 was granted license by the Food and Drug Administration (FDA) on 23 Aug 2021."  *Id.* ¶ 3.
[3] ALCOAST 315/21, ALCOAST 352/21, ALCGPSC 104/21, ALCOAST 420/21, ALCOAST 446/21, ALCGPSC 016/22, ALCOAST 078/22, ALCOAST 131/22, ALCOAST 157/22.

non-medical personnel (sometimes with the assistance of advising medical personnel) are responsible for reviewing and granting administrative exemptions. CIM 6230.4G, 2-6. With regard to medical exemptions from the COVID-19 vaccine, the approval authority for temporary exemptions from vaccination is the local military-employed or affiliated Medical Officer. The final approval authority for any permanent medical exemptions to any mandatory vaccine is Commandant, Operational Medicine and Quality Improvement Division (CG-1121). The approval authority for permanent medical exemptions to the vaccine requirements has been centralized to ensure uniformity in the adjudication of requests for exemption. (ALCOAST COMDT Notice 089/21). All requests for medical exemptions are handled on a case-by-case basis. The vast majority of medical exemptions that have been considered and granted with respect to the COVID-19 vaccine are temporary in nature. The duration of these exemptions necessarily vary based on the medical conditions and history of the patient at the time of evaluation, and circumstances under which a temporary exemption could be granted are wide-ranging. However, while individual circumstances may vary, the underlying reason to issue such an exemption is to prevent physical medical harm to the patient if they receive the vaccine. It would not serve the Coast Guard's interests in readiness and health of their members to vaccinate individuals whose health would be harmed by receiving the vaccine.

6. Consistent with the other military services, Coast Guard policy provides for administrative exemptions to vaccination requirements based on requests for departure from policy based on religious beliefs. *See* Commandant Instruction Manual 6230.4G, 2-6(b)(3). Requests for religious exemptions may be granted to accommodate an individual Service member's religious beliefs and are processed on a case by case basis in accordance with Commandant Instruction 1000.15, 11(c)(3). The review of requests for religious accommodation follows a

multi-step process to assess the individual member's request as well as the impact of granting an accommodation on the member's unit and the Coast Guard as a whole.

7.   A member initiates the process of seeking a religious accommodation by submitting a memorandum request through the member's Commanding Officer or Officer-in-Charge (CO/OIC) using an approved template found at CI1000.15, Enclosure 2.   Although not required, some requestors have also included correspondence from clergy or other material to support their request.   The request for religious accommodation requires individual meetings between the requester and both a medical officer and a chaplain in order to determine the specific circumstances of the request.   A medical officer must consult with the requester and provide specific information about the diseases concerned, specific vaccine information, and the potential risks for unimmunized individuals.   *Id.* 12.h.   The chaplain interviews the member and prepares a memorandum memorializing the interview using guidance provided.   *Id.* at Enclosure 3-5. Although there is no required template for the chaplain to use, Enclosure 5 provides two single spaced pages of detailed questions the memorandum should address including: the exception to policy requested, the religious belief underlying the basis for the request and the conflict the belief presents with policy, any alternative means of accommodation discussed, and the chaplain's professional opinion regarding the sincerity of the requester.   *Id.* at Enclosure 5.   The chaplain's interview can be very useful to the various reviewers in understanding the nature of the request since some requests are not clear, *e.g.*, the member simply requests a departure from policy due to a religious belief without specifying the nature of that belief at all.   Also, some requests to depart from policy may not actually be a religious belief (*e.g.*, a political, moral, or claimed scientific belief) or may combine a religious belief with another rationale for departing from policy, *e.g.*, a religious objection to an mRNA vaccine, but not to a vaccine that uses a

weakened or inactivated vaccine to produce the immune response.  In assessing the sincerity of the requester, the chaplain must not base his opinion on the chaplain's personal religious beliefs or his interpretation of what constitutes an appropriate religious or other practice, but must focus instead on the importance of the request to the requester in terms of religious beliefs or principles, given the information provided.  *Id.* A copy of this memorandum is provided to the requester.

8.      Once the interviews are completed, the requester's Commanding Officer or Officer-in-Charge (CO/OIC) will review the request and consider the religious objection of the member balanced against the medical risk to the member and the unit, as well as Coast Guard requirements such as alert status, deployment potential, and availability of the member for reassignment to units requiring full medical readiness.  The CO/OIC is also encouraged to consult with their Servicing Legal office.  The CO/OIC provides a written endorsement that may or may not include a recommendation regarding approval as well as specific command concerns with the request's impact on unit readiness.  For example, a reserve unit may be scheduled to be activated and deploy in the near term and that change in status may significantly change the requester's ability to mitigate the impacts of being unvaccinated by social distancing or may place the requester in an area with high community transmission.

9.      The request is then forwarded to Coast Guard Headquarters, where it is reviewed by several offices before reaching the final approval authority, the Office of Military Personnel Policy, CG-133, or designated alternate.  These offices include the Office of Health Services, CG-112, and the Office of General Law, CG-LGL, for medical and legal review respectively.  Multiple individuals within each office participate in the review.

10.     Given its overall size and interlocking missions, the Coast Guard has centralized its

review of religious accommodation requests to ensure consistency and assess the impact of accommodations Coast Guard wide; however, there is no single policy or practice of approving or denying religious accommodation requests, including with respect to the COVID-19 vaccine. Each request is individually reviewed with regard to the nature and sincerity of the religious belief, the extent to which the vaccine requirement burdens that belief, the impact of an accommodation on the Coast Guard's compelling need for a healthy military force capable of fulfilling its congressional missions, and whether there are less restrictive means available to the individual and their unit to meet that compelling interest.

11.     In the Coast Guard, the designated approval and revocation authority for religious immunization exemptions is Commandant, Office of Military Personnel Policy (CG-133), and all requests must be forwarded through the appropriate chain of command to (CG-133).    The final decision on the request is made by the Chief, CG-133, a senior Coast Guard officer serving in the rank of Captain (O-6) or a designated alternate.

12.     By policy, a member whose request is denied may administratively appeal the denial to the Director of Military Personnel, CG-13.   On December 2, 2021, the Assistant Commandant for Human Resources (CG-1) withheld the authority for religious accommodation appeal requests vaccine mandates.   All COVID-19 religious accommodation appeal requests appeals were adjudicated by either a designated Coast Guard rear admiral or member of the Senior Executive Service.   Service members with pending active requests for religious exemptions are temporarily deferred from immunizations, pending outcome of their request.

13.     The Coast Guard will take no disciplinary action or action towards administratively separating any unvaccinated Coast Guard member who has submitted a request for a medical exemption or religious accommodation from COVID-19 vaccination while that request remains

pending solely on the basis that the member is not vaccinated. Unvaccinated members, however, remain subject to disciplinary action or separation from military service for other reasons, *e.g.*, failure to meet weight standards or a failure to go to the member's place of duty.

14.     If an unvaccinated member's request for medical exemption and/or administrative exemption, including religious accommodation is denied, and the member still refuses to be vaccinated, the member would then be subject to possible disciplinary action or administrative separation from the Coast Guard.

15.     Coast Guard policy provides Coast Guard members with the opportunity to seek medical exemptions or religious accommodations to the COVID-19 vaccination requirement. While such requests are pending, the Coast Guard is not taking adverse administrative or disciplinary actions against members. For Coast Guard members who choose not to pursue an exemption, or have their requests denied, and still refuse to be vaccinated, the Coast Guard has a strong interest in maintaining good order and discipline by adjudicating each refusal on a case-by-case basis and choosing the appropriate administrative and/or disciplinary action. Each Coast Guard member will receive all of the due process associated with any action chosen including a full administrative record of the process leading up to the final agency action.

16.     I understand that one plaintiff in this case, LT Justin Brown, is a U.S. Navy chaplain currently serving with the Coast Guard and assigned to Coast Guard Sector Houston-Galveston. I also understand that there are no other Coast Guard plaintiffs. Although LT Brown's religious accommodation request was processed in accordance with the Coast Guard policy described in this declaration, the Coast Guard will not take administrative or disciplinary action against LT Brown for failure to comply with the COVID-19 vaccination requirement. Instead, LT Brown would be transferred back to the Navy in order for parent service to take the appropriate corrective

action.

I hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing

is true and correct to the best of my knowledge and information.

Dated: July 12, 2022

Rear Admiral
U.S. Coast Guard

COAST GUARD COVID-19 POLICIES INDEX


ALCOAST 305/21                    CGPOL001

ALCOAST 315/21                    CGPOL003

ALCOAST 352/21                    CGPOL005

ALCGPSC 104/21                    CGPOL009

ALCOAST 420/21                    CGPOL013

ALCOAST 446/21                    CGPOL014

ALCGPSC  016/22                   CGPOL016

ALCOAST 078/22                    CGPOL017

ALCOAST 131/22                    CGPOL018

ALCOAST 157/22                    CGPOL019

COMDTINST 1000.15                 CGPOL020
MILITARY RELIGIOUS ACCOMADATIONS

R 262212Z AUG 21
FM COMDT COGARD WASHINGTON DC
TO ALCOAST
BT
UNCLAS FOUO
ALCOAST 305/21
SSIC 6230
SUBJ:  COVID-19: MANDATING COVID-19 VACCINATION FOR
MILITARY MEMBERS
A. SECDEF MEMO DTD 24 AUG 21: Memorandum for Senior Pentagon
Leadership, Commanders of the Combatant Commands, and Defense
Agency and DoD Field Activity Directors
B. DoD Immunization Program, DoDI 6205.02, DTD 23 JUL 19
C. Immunizations and Chemoprophylaxis, COMDTINST M6230.4 (series)
1. In REF (A) the Secretary of Defense determined that mandating the
vaccine against Coronavirus Disease 2019 (COVID-19) for Service
members is necessary to protect the military and defend the American
people. The Secretary of Defense directed the Secretaries of the
Military Departments to immediately begin full vaccination of all
active duty or Ready Reserve members of the Armed Forces, under
Department of Defense (DoD) authority, who are not fully vaccinated
against COVID-19. The Secretary of Defense directed that only
vaccines that have received full licensure from the Food and Drug
Administration (FDA) be used for mandatory vaccination. He also
directed that vaccination requirements be implemented consistent
with REF (B) and that the Military Departments use existing policies
and procedures, to the extent practicable, to manage mandatory
vaccination of Service members.
2. REF (B) applies to the Coast Guard at all times by agreement with
the Department of Homeland Security, and REF (C) is a joint
directive that also applies to the Coast Guard.
3. REF (C) will be updated to reflect the Secretary of Defense's
direction. Consistent with the Secretary of Defense's direction, all
Coast Guard active duty and Ready Reserve members who are not fully
vaccinated, unless they are granted an exemption or accommodation,
are required to receive the Pfizer-BioNTech COVID-19 vaccine as an
initial series, and subsequently as indicated, to comply with
recommended vaccine schedules necessary to achieve full vaccination
against COVID-19. The Pfizer-BioNTech COVID-19 was granted license
by the Food and Drug Administration (FDA) on 23 Aug 2021.
4. Currently, Service members who have already received all required
doses of an FDA licensed vaccine, a vaccine administered under the
FDA's Emergency Use Authorization (EUA), or a vaccine on the World
Health Organization Emergency Use Listing are considered fully
vaccinated two weeks after the last required dose. Service members
who voluntarily receive any of those vaccines after the
establishment of this policy will also be considered fully
vaccinated after having met the vaccine manufacturer's dosing and
timing requirements. Those with previous COVID-19 infection are not
considered fully vaccinated. Service members who are currently
enrolled and actively participating in a COVID-19 clinical trial are
exempt from mandatory vaccination until the trial is complete to
avoid invalidating such clinical trial results. Vaccines are readily

available at Coast Guard clinics, military treatment facilities, and civilian healthcare providers.

5. Further implementation guidance on mandatory vaccination is forthcoming.

6. A fully vaccinated Service will save lives, and we will move ambitiously to fully vaccinate our Service members. Consistent with the Secretary of Defense's guidance, my intention is to use, to the extent practicable, existing policies and procedures to manage the mandatory vaccination of our Service members. We will ensure the expeditious promulgation of policies and procedures where existing guidance is insufficient or incomplete.

7. Commanding Officers shall ensure that all Service members are aware of this message and made available and scheduled for vaccination in coordination with servicing medical personnel. Commanding Officers and leaders shall not commence administrative or disciplinary action based solely on a Service member's decision to decline vaccination until such implementing guidance is promulgated.

8. POC: CDR S.E. Russell, CVIC Incident Commander, 202-372-2404, COVID19@uscg.mil.

9. ADM K. L. Schultz, Commandant (CCG), sends.

10. Internet release is not authorized.

R 072247Z SEP 21
FM COMDT COGARD WASHINGTON DC
TO ALCOAST
BT
UNCLAS
ALCOAST 315/21
SSIC 6230
SUBJ:  COVID-19: MANDATING COVID-19 VACCINATION FOR
MILITARY MEMBERS: UPDATE 1
A. COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
B. Coast Guard Medical Manual, COMDTINST M6000.1 (series)
C. Military Religious Accommodation, COMDTINST 1000.15 (series)
D. Immunization and Chemoprophylaxis for the Prevention of
Infectious Diseases, COMDTINST M6230.4 (series)
1. The Coast Guard has been and continues to focus on mission
and personnel readiness amid the ongoing COVID-19 pandemic.
COVID-19 has negatively impacted both for over 18 months. Data and
modeling also indicate that available vaccines are effective
against severe illness and mortality caused by COVID-19. A fully
vaccinated military force saves lives, protects those we serve
alongside and our loved ones, and ensures our readiness. Commanders,
Commanding Officers, and Officers in Charge shall lead by example,
and act with a sense of urgency to meet this intent as soon as
operations allow, starting immediately.
2. Commanders, Commanding Officers, and Officers in Charge shall
direct unvaccinated active duty and ready reserve members to
initiate the COVID-19 vaccination regimen immediately, and in doing
so shall ensure members are scheduled and made available to receive
the vaccine. Active duty and ready reserve members without approved
exemptions shall get fully vaccinated against COVID-19. Counseling
of unvaccinated members on this requirement, the timeline for
vaccination, and the process to request medical exemption or
religious accommodation shall be documented through Administrative
Remarks Form, CG-3307. Commanders, Commanding Officers and Officers
in Charge shall only use the template provided. The standard
administrative remarks template for this counseling is available at
the COVID Community of Practice Portal Page:
(Copy and Paste URL Below into Browser)

https://cg.portal.uscg.mil/units/cgcpe2/Pages/HomeCOP.aspx?View=%7
B4724ff56-43ee-4941-beaf-5af3500e88f4%7D


3. Given the need to safeguard the workforce, and maintain
readiness, the Coast Guard will determine additional measures
necessary to mitigate health risks to members of the Service and
our communities posed by those who are not yet vaccinated. These
measures may include additional restrictions on official travel,
liberty, and leave, as well as cancellation of "A" and "C" school
orders. Further guidance regarding these measures will be provided
separately.
4. All members shall be provided any vaccine that has received Food
and Drug Administration (FDA) licensure. Currently, the
Pfizer-BioNTech COVID-19 vaccine meets this requirement. Members

CGPOL003

may also choose to receive any COVID-19 vaccine that is fully approved by the FDA, administered under the FDA's Emergency Use Authorization (EUA), or a vaccine on the World Health Organization Emergency Use Listing. Additional quantities of vaccine are being delivered to Coast Guard clinics to accelerate vaccination of the entire workforce and are available for any active duty or ready reserve member. This message does not change the existing authority for Coast Guard clinics to vaccinate Coast Guard civilian employees, contractors, or Coast Guard dependent family members who voluntarily seek vaccination.

5. All military personnel may voluntarily get vaccinated outside of a Coast Guard clinic in accordance with REF (A), but must meet the timeline prescribed by their Commanders, Commanding Officers, and Officers in Charge. Personnel who have TRICARE may receive their vaccination from their Primary Care Provider or from a civilian pharmacy that accepts TRICARE. There is no charge for the vaccine at pharmacies in the Tricare network. A list of CG clinics supporting all units in the CG is available at:
(Copy and Paste URL Below into Browser)

https://www.reserve.uscg.mil/Portals/2/Documents/PDF/HSWL_HRC_list_SELRES%232.pdf?ver=2018-08-17-135417-933

The COVID vaccine is federally funded and may also be available free of charge through state and local health departments.

6. Members shall request and retain the hard copy immunization record from the vaccination clinic site. Those members who get vaccinated outside of a Coast Guard clinic shall provide the following information to their cognizant Coast Guard clinic:
(1) date the vaccine was administered, (2) the vaccine name or code, (3) the manufacturer and lot number, (4) the dose administered, and (5) clinic site. Providing false vaccination information is a violation of Article 107, UCMJ and may also result in administrative and/or disciplinary action.

7. This message constitutes a lawful general order. Failure to comply with any of its provisions is a failure to obey a lawful order punishable under Article 92 of the Uniform Code of Military Justice (UCMJ). It may result in punitive and/or administrative action, including initiation of discharge proceedings.

8. Additional guidance is forthcoming. Updates will provide direction to commands regarding mandatory vaccination documentation and procedures, and additional detail regarding administrative measures for unvaccinated personnel to safeguard the workforce and maintain readiness.

9. POC: S.E. Russell, CVIC Incident Commander, 202-372-2404, COVID19@uscg.mil.

10. RADM K. E. Lunday, Acting Deputy Commandant for Mission Support (DCMS), sends.

11. Internet release is not authorized.

R 271530Z SEP 21
FM COMDT COGARD WASHINGTON DC
TO ALCOAST
BT
UNCLAS
ALCOAST 352/21
SSIC 6230
SUBJ:  COVID-19: MANDATING COVID-19 VACCINATION FOR MILITARY
MEMBERS: UPDATE 2
A. COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
B. COMDT COGARD WASHINGTON DC 072247Z SEP 21/ALCOAST 315/21
C. COMDT COGARD WASHINGTON DC 101731Z SEP 21/ALCOAST 328/21
D. Military Religious Accommodations, COMDTINST 1000.15 (series)
E. Immunization and Chemoprophylaxis for the Prevention of
Infectious Disease, COMDTINST M6230.4 (series)
F. COMDT COGARD WASHINGTON DC 061949Z AUG 21/ALCOAST 285/21
G. SECDEF MEMO DTD 24 AUG 21: Memorandum for Senior Pentagon
Leadership, Commanders of the Combatant Command, and Defense Agency
and DoD Field Activity Directors
1. As the COVID-19 pandemic continues, the safety and welfare of
our entire workforce remains a top priority for ensuring mission
readiness. Through the continued engagement of our leaders,
chaplains, and medical professionals, we now have over 89% of our
Active and Reserve military workforce fully vaccinated or in the
process of completing vaccination. The total number of units in a
status of partial or not mission capable is now at the lowest levels
since the start of the pandemic. Nonetheless, numerous unvaccinated
personnel, military and civilian, have been hospitalized due to
COVID-19 infection and many have been not fit for duty for weeks.
The Delta variant of the virus is particularly concerning because it
is highly transmissible, even more so than the initial strain of
COVID-19. To date, eight members of our Coast Guard Team have lost
their lives to COVID-19; all of the eight (six civilian, two
military) were unvaccinated. Conversely, the very few breakthrough
cases amongst vaccinated members in the Coast Guard have been
relatively minor and have not resulted in hospitalizations. We will
assure workforce mission readiness, and drive down the overall risk
to and from vaccinated personnel, when we achieve our goal of a
100% vaccinated Service.
2. This ALCOAST provides further guidance to implement the
Commandant's direction in REF (A) and updates REF (B). This guidance
also includes additional risk mitigation measures to assist
Commanders, Commanding Officers, and Officers-in-Charge in executing
their responsibility to protect the readiness and safety of our
Service. Additional direction regarding civilian workforce mandatory
vaccinations will be provided SEPCOR.
3. REF (C) provided a template series to standardize Coast Guard
Administrative Remarks (CG-3307) counseling for unvaccinated
members. Commands should continue to counsel members in accordance
with REF (B). When a member has been initially counseled and fails
to seek vaccination, Commanders, Commanding Officers, and
Officers-in-Charge will next document the process by which personnel
who remain unvaccinated will be specifically ordered to a vaccine

administration site, at a particular date and time designated by the command. This order will be documented through use of a CG-3307 PD-41B (Commissioned Officer) or C (Officer-in-Charge), as appropriate. Further, a member's failure to abide by this order will be documented in follow-on CG-3307s PD-41D (Commissioned Officer) or E (Officer-in-Charge), which will result in administrative consequences and may result in further disciplinary action, as appropriate. To assist Commands in conversations with unvaccinated members, the "Mandatory Vaccine Toolkit" is located at: (Copy and Paste URL Below into Browser)

https://cg.portal.uscg.mil/units/cgcpe2/Pages/HomeCOP.aspx?View= %7B4724ff56-43ee-4941-beaf-5af3500e88f4%7D

Ultimately, a member who fails to abide by this order could be subject to involuntarily separation. CG-3307 templates are available at:

https://www.dcms.uscg.mil/ppc/pd/page7/

4. The Coast Guard is centrally implementing administrative risk mitigation measures to minimize the safety risks presented to and by unvaccinated personnel, and to maximize mission readiness. These administrative risk measures will assist Commanders, Commanding Officers, and Officers-in-Charge achieve the goal of a fully vaccinated military workforce and advance important Coast Guard interests including: (1) preventing or mitigating the threat to readiness posed by a service member's reluctance or refusal to take the vaccine; and (2) ensuring Coast Guard leaders are positioned to employ effective service member engagement strategies to further encourage vaccination. These tools will be implemented no later than 12 OCT 2021.

5. ADMINISTRATIVE RISK MITIGATION MEASURES: Each measure listed in subparagraph 5.a below will be further detailed through applicable subsequent policy updates from COMDT (CG-1), FORCECOM, or PSC. The continued necessity of these measures will be reviewed periodically, but they will remain in place until the threat to mission readiness caused by COVID-19 is negligible. Limited exceptions are detailed in paragraph 7.

  a. Suspension of future attendance at "A" schools, "C" schools, and advanced education programs for all unvaccinated members.

    (1) "A" schools: any unvaccinated member awaiting "A" school will be deferred from attending school. Members who have started the vaccination process will be placed in a medical hold status until they are fully vaccinated. Members who refuse or fail to achieve full vaccination will be permanently removed from the "A" school list when the failure to be vaccinated is documented as outlined in paragraph 3.

    (2) "C" schools: any unvaccinated member slated to attend "C" school will have their orders cancelled and will be unable to request future class convening dates until they are fully vaccinated.

    (3) Advanced education programs (all Duty Under Instruction (DUINs) programs including, but not limited to post graduate

CGPOL006

education (including Senior Education and Fellowship Programs), specialized degrees, flight school, etc.): any unvaccinated member selected to attend, but not currently enrolled in an advanced education program will have their orders cancelled and will be unable to request future class convening dates or apply for programs until they are fully vaccinated.

   b. Manage leave and liberty to local area: commands are encouraged to continue to review and impose limits on leave and liberty to mitigate infection risks to and from unvaccinated personnel. In accordance with REF (F), leave requests for unvaccinated personnel to travel outside the local area shall continue to be approved by the first O6 in a member's chain of command. Earlier guidance in REF (F) allowing the command to define the limit of the local area is cancelled. Local leave and liberty areas for all units is now defined as an area not to exceed 50 miles of a member's home and 50 miles of a member's worksite, although commuting from home to work and back in excess of 50 miles, each way, will remain authorized. This risk mitigation measure shall be implemented immediately. All previously approved leave to travel beyond the local area shall be revisited and approved by the first O6 in the member's chain of command.

6. LEADERSHIP:

   a. The willingness of Commanding Officers, Officers-in-Charge, and senior leaders to support this direction through their own actions is a relevant factor for consideration for continued fitness for command and other positions of leadership. This assessment, and the associated administrative consequences of such an assessment, are within the discretion of commanders in the field, notwithstanding the risk mitigation measures in this message and the withholding of administrative and disciplinary actions described in paragraph 7 of REF (A).

   b. Unvaccinated members will be removed from candidate pools for Commanding Officer, Officer-in-Charge, and Command Senior Enlisted Leader (Gold and Silver Badge) assignments.

7. Members who are awaiting adjudication of a medical exemption or religious accommodation request (as described in REFs (D) and (E)) must comply with the risk mitigation measures in paragraph 5, but will not be subject to the leadership measures in paragraph 6.

8. Members deployed at the time of promulgation of REF (A) will be accommodated so that they receive the COVID-19 vaccination as soon as is practicable upon return to home port/unit. These members will not be subject to measures in paragraph 6.b, until given a reasonable opportunity to receive the COVID-19 vaccine.

9. The administrative exemption from deployment (mobility) immunization for Service members within 180 days of separation or retirement as described in REF (E), chapter 2, section 2-6 (b)(1), does not apply to immunization from COVID-19.

10. The COVID-19 Crisis Action Team (CCAT) continues to receive questions regarding the Pfizer-BioNtech COVID-19 vaccine's relationship to Pfizer's name branded Comirnaty. The Coast Guard's service member vaccine mandate is consistent with the Secretary of Defense's direction in REF (G). The Secretary of Defense has authorized the use of compelled COVID-19 vaccinations in accordance with Food and Drug Administration (FDA) guidance. The FDA's guidance

notes that Pfizer-BioNtech COVID-19 and Pfizer's name branded Comirnaty are identically formulated and are interchangeable for the purposes of vaccine administration.

11. POC: CDR S. E. Russell, CVIC Incident Commander, 202 372-2404, COVID19@uscg.mil.

12. VADM P. F. Thomas, Deputy Commandant for Mission Support (DCMS), sends.

13. Internet release is not authorized.

R 07 OCT 21
UNCLAS //N01500//
ALCGPSC 104/21

SUBJ:  EXECUTION OF COVID-19 ADMINISTRATIVE RISK MITIGATION AND LEADERSHIP
MEASURES

A.    COMDT COGARD WASHINGTON DC 271530Z SEP 21/ALCOAST 352/21
B.    COMDT COGARD WASHINGTON DC 072247Z SEP 21/ALCOAST 315/21
C.    COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
D.    MILITARY ASSIGNMENTS AND AUTHORIZED ABSENCES, COMDTINST M1000.8A


1. This ALCGPSC establishes the implementation guidelines for the administrative
risk mitigation and leadership measures announced in ref (a) to achieve
compliance with the COVID-19 vaccine mandate established in refs (b) and (c).
The unprecedented effect of COVID-19 and commensurate continued health risk
presented to and by unvaccinated personnel predicate the need to implement
these tools. The administrative risk mitigation measures described in
paragraphs 3-5 will remain in place regardless of whether a members request for
religious accommodation or medical exemption is pending or approved. Members
with an approved medical exemption or religious accommodation may, however,
request exceptions to these measures on a case-by-case basis. Members should
make these requests for exceptions through their chain of command, to POCs from
FORCECOM for paragraphs 3-4 and flight school (as noted in paragraph 5), and
PSC for paragraph 5. POCs are listed in paragraph 8.

2. For the purpose of this message, unvaccinated members refers to personnel yet
to commence a COVID-19 vaccination regimen.  Per ref (c), members are
considered fully vaccinated two weeks after the last required dose of a FDA
-approved COVID-19 vaccine, a COVID-19 vaccine administered under the FDA's
Emergency Use Authorization, or a COVID-19 vaccine on the World Health
Organization Emergency Use Listing.

3. Administrative Risk Mitigation Measure  A School Eligibility: Only fully
vaccinated members are permitted to attend A School or permitted to put their
name on an A School list.  PSC-EPM-2 or PSC-RPM-2, as appropriate, will not
issue orders to A School for members who are not fully vaccinated and are
currently on an A School list.  Additionally, PSC-EPM-2 or PSC-RPM-2, as
appropriate, will cancel A School orders for all members who are not fully
vaccinated; commands shall direct these members not to execute orders to A
School. Commands with active duty members who are not fully vaccinated but who
are already en route to A School, will direct these members to return to their
unit.  Commands shall request that PSC-EPM-2 place the returned member into a
medical hold status by sending an e-mail to PSC-EPM-2 at HQS-SMB-CGPSC-EPM
-ASCHOOLREQUESTS@uscg.mil. Commands with Reservists who are not fully vaccinated
and who were en route to A school should likewise order them to return to their
unit. Reservists will not be placed in a medical hold status, because this
requires reserve members to be placed in an active duty pay status awaiting
medical treatment.  Members who have already commenced travel to A School, but
are directed to return to their unit, may use their initial travel order number
to process travel claims for both their departure and return trips.

a. (Active Duty Only) PSC-EPM-2 will query data in the Medical Readiness

Reporting System (MRRS) maintained by Coast Guard clinics to determine the vaccination status of members who are awaiting orders to A School; those members who are not fully vaccinated will be placed in a medical hold status. If a member who is on medical hold becomes fully vaccinated, the command should update their status in MRRS and then request PSC-EPM-2 change their medical hold status by sending an email to PSC-EPM-2 Non-Rate Assignments at HQS-SMB -CGPSC-EPM-ASCHOOLREQUESTS@uscg.mil.

b. (Ready Reserve Only) PSC-RPM-2 will query data in MRRS to determine vaccination status for those members who are awaiting orders to A School. PSC -RPM-2 will cancel A School orders for members who are not fully vaccinated and notify commands of the cancellation.  Ready Reserve members who are not fully vaccinated will not be placed in a medical hold status, because this requires reserve members to be placed in an active duty pay status awaiting medical treatment.  Commands will retain ADCON of these members until provided further direction.

4. Administrative Risk Mitigation Measure  C School Eligibility:  Details in this section apply to all C Schools.

a.  Only fully vaccinated members are authorized to attend C Schools.  Members who are not fully vaccinated will have their orders cancelled by the Education and Training Quota Command (ETQC).  Commands with members who are not fully vaccinated but are already en route to C Schools, will direct those members to return to their unit.  In this case, members who have already commenced travel to C Schools but are directed to return to their unit, may use their initial travel order number to process travel claims for both their departure and return trips.

b.  Updated Restriction of Movement (ROM) Policy: Effective immediately, the FORCECOM Home ROM for Training (HT-ROM) policy no longer applies to CG courses, however members are still required to follow policies prescribed by the Department of Defense or other government agencies when attending training at those facilities.

c. The current status of all FORCECOM Readiness Activities (AIA Activities, Exercise Support Activities, and Class "A" and "C" schools) are updated regularly, and can be found on the ETQC Portal site at: https ://cg.portal.uscg.mil/units/forcecom/ETQC/SitePages/Home.aspx.

5.  Administrative Risk Mitigation Measure - Consideration for Advanced Education and Senior Education and Fellowship Programs.

a. Advanced education and senior education and fellowship panels will only consider personnel who are fully vaccinated, or those who will be fully vaccinated (as defined by paragraph 2. above) by 22 November 2021.  For the purposes of this message, advanced education programs include, but are not limited to, post graduate education (including Senior Education and Fellowship Programs), specialized degrees, and flight school.  Reserve Senior Education and Fellowship Programs include, but are not limited to, the Reserve Component National Security Course (RCNSC), the Joint Combined Warfighter School  Hybrid (JCWS-H), and the Reserve Masters of Science in Strategic Intelligence (MSSI).

b. Any active duty or reserve officer or enlisted member who has orders to

CGPOL010

attend, but is not currently enrolled in an advanced education program will have their orders cancelled unless they are fully vaccinated prior to attending, but in any event not later than 22 November 2021.  Members who are not fully vaccinated, or those who will not be fully vaccinated (as defined by paragraph 2. above) by 22 November 2021, and who have not received orders will not be issued orders and will be removed as the primary candidate or from alternate candidate pools, as appropriate. PSC-EPM, OPM, or RPM, as appropriate, will validate a members vaccination status through MRRS. The applicable Assignment Officer will notify members of removal from a program.

c. Orders for Ready Reserve members to participate in education opportunities are typically generated by the local unit.  PSC-RPM-2 will contact Commands to ensure that units know not to create orders for candidates who are not fully vaccinated, or those who will not be fully vaccinated (as defined by paragraph 2. above) by 22 November 2021.

6. Leadership  Commanding Officer, Officer-in-Charge, Full-Time Command Master Chief, Command Senior Chief, and Command Chief (Gold and Silver Badge) positions:

a. Officers requesting assignment to command positions listed in Section 1.F.1.a. of ref (d) must be fully vaccinated against COVID-19.  Prior to issuing orders to command in AY22, PSC-OPM and PSC-RPM, as applicable, will verify the vaccination status of officer applicants in MRRS to ensure that officer applicants are fully vaccinated.  The applicable Assignment Officer will notify officer applicants who have been removed from consideration.

(1) Unvaccinated members who successfully screened for O-6, O-5, and CWO commands, who are not fully vaccinated by 16 November 2021 will be removed from consideration and only allowed to compete for general duty assignments in AY22.  Those who have an approved medical exemption or religious accommodation, or are awaiting the final determination for either, remain eligible for command assignment.

(2) Junior Command Screening Panel (JCSP): OPM will verify a members COVID-19 vaccination status through MRRS prior to JCSP convening, and if applicable, a members request for a medical exemption or religious accommodation. Unvaccinated members who successfully screened for JCSP commands, who are not fully vaccinated by 16 November 2021 will be removed from consideration and only allowed to compete for general duty assignments in AY22. Those who have an approved medical exemption or religious accommodation, or are awaiting the final determination for either, remain eligible for command assignment.

b. Enlisted (Active Duty and Ready Reserve): PSC-EPM-2 or PSC-RPM-2, as applicable, will verify the COVID-19 vaccination status of members in MRRS prior to issuing orders to Officer-in-Charge or full-time Command Master Chief, Command Senior Chief, or Command Chief positions in AY22.  Unvaccinated members who successfully screened for these opportunities, but who are not fully vaccinated by 16 November 2021 will be removed from consideration and only allowed to compete for general duty assignments in AY22.  Those who have an approved medical exemption or religious accommodation, or are awaiting the final determination for either, remain eligible for command assignment.  Members will be notified of their removal from consideration for these assignments by the applicable Assignment Officer.

CGPOL011

7.  Leadership Measures - Relief for Cause (RFC):  Consistent with paragraph 6 of ref (a), the loss of confidence in the judgment and ability of members serving as a Commanding Officer, Officer-in-Charge, or full-time Command Master Chief, Command Senior Chief, or Command Chief is grounds for a temporary and/or permanent RFC due to unsatisfactory conduct.  Officers with temporary RFC authority should consult the appropriate CG PSC division POC before initiating RFC action:  Regular officers - CAPT Catherine Carabine (Catherine.T.Carabine @uscg.mil); Reserve officers and enlisted  LCDR Cecilia Williams (Cecilia.R.Williams@uscg.mil); Regular enlisted - LT Charles Collins (Charles.V.Collins@uscg.mil).

8.  Points of Contact:
  a. PSC-OPM:  CAPT Catherine Carabine, (202) 795-6426, or Catherine.T.Carabine @uscg.mil.
  b. PSC-EPM:  LCDR Mike Deal, (202) 795-6576, or Michael.A.Deal@uscg.mil.
  c. PSC-RPM:  CDR Andy Younkle, (202) 795-6501, or Andrew.R.Younkle@uscg.mil.
  d. FORCECOM: LCDR Mike Thompson, Education and Training Quota Management Center(ETQC) Commanding Officer, (757)756-5340 or Michael.g.thompson @uscg.mil.

9.  Additional information on the execution of administrative risk mitigation and leadership measures for the enlisted workforce can be found on the PSC-EPM -2 Portal Site at PSC-EPM - COVID19 Vaccination Notification (uscg.mil).

10. Released by: RDML Shannon Gilreath, Commander, Personnel Service Center, sends. PSC  The Service Center for our most important resource  Our People.

11. Internet release not authorized.

```
R 151816Z NOV 21
FM COMDT COGARD WASHINGTON DC
TO ALCOAST
BT
UNCLAS
ALCOAST 420/21
SSIC 6230
SUBJ:  COVID-19: MANDATING COVID-19 VACCINATION FOR MILITARY
MEMBERS: UPDATE 3
A. COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
B. COMDT COGARD WASHINGTON DC 072247Z SEP 21/ALCOAST 315/21
C. COMDT COGARD WASHINGTON DC 271530Z SEP 21/ALCOAST 352/21
D. Immunizations and Chemoprophylaxis for the Prevention of
Infectious Disease, COMDTINST M6230.4 (series)
E. Military Religious Accommodations, COMDTINST 1000.15 (series)
F. COMDT COGARD WASHINGTON DC 07 OCT 21/ALCGPSC 104/21
1. The Coast Guard continues to complete the vaccination of the
entire workforce against COVID-19. The significant and dedicated
involvement of leaders, chaplains, medical staff, and human
resource professionals over the past three months has greatly
increased the Service's overall vaccination rate and has helped
safeguard personnel health and unit readiness. Unfortunately,
Coast Guard members (military and civilian), Auxiliarists, and
family members continue to fall victim to COVID-19. Unvaccinated
populations in particular face serious medical complications,
hospitalization, and higher risk of death.
2. This ALCOAST provides additional guidance to supplement the
direction in REFs (A) through (C), and serves as a warning order
that, upon direction from CGHQ, Commanders, Commanding Officers,
and Officers-in-Charge will initiate involuntary administrative
separation for all unvaccinated personnel who do not have a
pending or approved medical exemption or pending or approved
religious accommodation. The characterization of this discharge
will be no less than General under Honorable Conditions.
Notwithstanding paragraph (7) of REF (A), commanders retain the
authority to and should account for vaccine refusal during the
completion of routine administrative actions for those members
who have refused the vaccine but do not have a pending or
approved medical exemption or pending or approved religious
accommodation.
3. COMDT (CG-133) has received and is currently processing requests
for religious accommodation, as described in REFs (D) and (E).
Requests for religious accommodation must be received by
COMDT (CG-133) no later than 30 November 2021. Any requests
received after this date will not be considered unless the member
has established good cause for the delay of their request. Any
request received by COMDT (CG-133) after the above date will be
returned without action unless it is accompanied by a separate
memo from the member to COMDT (CG-133), routed through the
member's command, requesting consideration for good cause.
Good cause requires a demonstration of good faith by the
requestor, who must also articulate some reasonable basis
for noncompliance with this deadline.
4. The administrative risk mitigation and leadership measures
detailed in REF (F) remain in effect.
5. POC: CDR S. E. Russell, CVIC Incident Commander, 202 372-2404,
COVID19@uscg.mil.
6. VADM P. F. Thomas, Deputy Commandant for Mission Support
(CG-DCMS), sends.
7. Internet release is not authorized.
```

Case 1:22-cv-00876-AJT-JFA   Document 39-9   Filed 07/12/22   Page 24 of 48 PageID# 1444

R 081530Z DEC 21
FM COMDT COGARD WASHINGTON DC
TO ALCOAST
BT
UNCLAS
ALCOAST 446/21
SSIC 1000
SUBJ:  COVID-19: ADJUDICATION OF MILITARY RELIGIOUS ACCOMMODATION
REQUESTS
A. COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
B. COMDT COGARD WASHINGTON DC 072247Z SEP 21/ALCOAST 315/21
C. COMDT COGARD WASHINGTON DC 271530Z SEP 21/ALCOAST 352/21
D. COMDT COGARD WASHINGTON DC 151816Z NOV 21/ALCOAST 420/21
E. COMDT COGARD WASHINGTON DC 07 OCT 21/ALCGPSC 104/21
F. Military Religious Accommodations, COMDTINST 1000.15 (series)
G. Title 37, United States Code, Section 303a
H. Immunization and Chemoprophylaxis for the Prevention of
Infectious Disease, COMDTINST M6230.4 (series)
1. As directed by the Commandant in REF (A) and updated in REFs (B)
through (E), vaccination against COVID-19 is mandatory for active
duty and ready reserve members of the Coast Guard. REF (F)
establishes procedures for military members to request religious
accommodations, including those related to mandatory immunizations.
The Office of Military Personnel Policy (COMDT (CG-133)) is
adjudicating each request for religious accommodation and has
started issuing responses. Commands will receive the responses and
then notify the requestor of the outcome according to procedures
provided with the COMDT (CG-133) religious accommodation response
memo. Commands should acknowledge (1) receipt and (2) the date of
notification to the member, via email to
HQSPolicyandStandards@uscg.mil. Members whose requests are granted
must abide by the mitigation direction provided in the response.
Members whose requests are denied are required to receive their
first COVID-19 vaccine dose or act in accordance with section 12.j
of REF (F) within ten (10) business days of notification.
2. Commands shall ensure all appropriate administrative remarks
(CG-3307 P&D-41 (series)) prescribed in REFs (B) and (C) are
completed for all unvaccinated members. Commands should have issued
all unvaccinated members P&D-41A by this point. Commands shall
immediately issue P&D-41B (Officer-in-Charge) or P&D-41C
(Commanding Officer), as applicable, where a member's religious
accommodation request is denied and that decision is final. The
decision is considered final when either (1) ten business days have
passed since the member was notified that their request was denied
and the member has not acted in accordance with section 12.j of
REF (F), or (2) the officer or official in the chain of command or
supervision senior to COMDT (CG-133) takes final action as necessary
and described in section 12.j of REF (F). Should a member fail to
begin the vaccination process after receiving P&D-41B/C, commands
shall promptly issue CG-3307 P&D 41D (Commissioned Officer) or 41E
(Officer-in-Charge), as applicable.
3. In addition to the HQ notification requirements in paragraph 1,
commands are directed to email HQSPolicyandStandards@uscg.mil the
following information for members who remain not fully vaccinated
(as described in paragraphs 3 and 4 of REF (A)) as of the release
date of this message: (1) the date an unvaccinated member receives
or has received their first dose of the COVID-19 vaccine, and
(2) the date of receipt of second dose (if applicable). Commands
shall inform HQ by email of the date of issuance of CG-3307 P&D
41D/E if an unvaccinated member (1) fails to begin the COVID-19

vaccination process or (2) fails to complete the COVID-19 vaccination process.

4. Military members whose religious accommodation request has been denied with a final action decision and who refuse to become fully vaccinated against COVID-19, are subject to all COVID-19 Administrative Risk Mitigation and Leadership Measures established in REFs (C) and (E), including but not limited to:

  a. Ineligibility for "A" and "C" Schools and advanced education programs (removal from current lists, will not receive orders to future convenings, or both);

  b. Ineligibility for Command, full-time Command Master Chief/Senior Chief, or Reserve Command Master Chief/Senior Chief positions. Members currently serving in these positions may be relieved for cause; and

  c. Previously directed limitations on leave and liberty outlined in REF (C).

5. Military members whose religious accommodation request has been denied with a final action decision, and who refuse to become fully vaccinated against COVID-19, are subject to their command accounting for vaccine refusal in the execution of routine administrative functions (e.g., evaluations, advancement and re-enlistment recommendations, and other similar actions undertaken in the regular course of business), as described in paragraph 2 of REF (D).

6. As established in REF (D), members who are unvaccinated against COVID-19 who are not in receipt of either a religious accommodation, approved medical exemption, or both and who do not get vaccinated are subject to involuntary administrative separation, with a characterization of service no less than that of General (under Honorable Conditions). Members who receive a General discharge may not be entitled to certain veterans' benefits, including access to the use and transferability of the Post 9-11 G.I. Bill. Any member who is involuntarily discharged for failure to receive the COVID-19 vaccine and who has not satisfied an obligated service requirement incurred as a condition of receiving a bonus, incentive pay, educational benefit, and/or advanced training will be subject to monetary recoupment and will be required to repay the United States the amount of the unearned bonus or benefit, as per REF (G).

7. POC: COMDT (CG-133); HQSPolicyandStandards@uscg.mil.

8. VADM P. F. Thomas, Deputy Commandant for Mission Support (DCMS), sends.

9. Internet release is not authorized.

```
R 261519Z JAN 22
FM COMCOGARD PSC WASHINGTON DC
TO ALCGPSC
BT
UNCLAS
26 JAN 22
ALCGPSC 016/22
SUBJ: PCS TRANSFERS FOR MEMBERS UNVACCINATED AGAINST COVID-19
A. ALCOAST 305/21
B. ALCOAST 315/21
C. ALCOAST 352/21
D. ALCOAST 420/21
E. ALCOAST 446/21
F. ALCGPSC 104/21
```

1. As the COVID-19 pandemic continues, the safety and welfare of our entire workforce remains a top priority to ensure mission readiness.  References (a) thru (c) directed the vaccination of all members. References (d) and (e) provided additional guidance regarding the execution of this direction. Reference (f) established the implementation guidelines for the administrative risk mitigation and leadership measures announced in reference (c).  This ALCGPSC establishes administrative risk mitigation measures for Permanent Change of Station (PCS) orders.

2. Subject to needs of the Service, service members who refuse full vaccination are ineligible to execute PCS orders. This direction does not apply to members who are receiving PCS orders based on Separation Authorizations for separations that will be completed by 1 October 2022, or members who have a current COVID -19 vaccination medical exemption or approved religious accommodation.

3.  The term "fully vaccinated" is currently defined in reference (a), but may be updated as the pandemic progresses. Temporary medical exemptions will be considered "current" for purposes of execution of PCS orders as long as they do not expire prior to departure from the unit.

4.  Servicing Personnel Offices and Personnel and Admin Shops are directed to amend all unexecuted PCS orders and include in all future PCS orders the following statement: "Subject to the needs of the Service, service members who refuse full vaccination are ineligible to execute PCS orders."

4. Questions regarding this direction may be addressed to:
A. OPM: CAPT Catherine Carabine (Catherine.T.Carabine@uscg.mil);
B. RPM: LCDR Cecilia Williams (Cecilia.R.Williams@uscg.mil);
C. EPM: LT Charles Collins (Charles.V.Collins@uscg.mil).

5. Released by RDML S. N. Gilreath, Commander, Personnel Service Center. The Service Center for our Most Important Resource - Our People.

6. Internet release not authorized.

R 092217Z MAR 22 MID200001570822U
FM COMDT COGARD WASHINGTON DC
TO ALCOAST
BT
UNCLAS
ALCOAST 078/22
SSIC 1000
SUBJ:  COVID-19: MANDATING COVID-19 VACCINATION FOR MILITARY
MEMBERS: UPDATE 4
A. COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
B. COMDT COGARD WASHINGTON DC 072247Z SEP 21/ALCOAST 315/21
C. COMDT COGARD WASHINGTON DC 271530Z SEP 21/ALCOAST 352/21
D. COMCOGARD PSC WASHINGTON DC 080148Z OCT 21/ALCGPSC 104/21
E. COMDT COGARD WASHINGTON DC 151816Z NOV 21/ALCOAST 420/21
F. COMDT COGARD WASHINGTON DC 081530Z DEC 21/ALCOAST 446/21
G. COMCOGARD PSC WASHINGTON DC 261519Z JAN 22/ALCGPSC 016/22
H. Immunizations and Chemoprophylaxis for the Prevention of
Infectious Disease, COMDTINST M6230.4 (series)
I. Military Religious Accommodations, COMDTINST 1000.15 (series)
1. The Coast Guard is continuing its efforts to combat COVID-19.
REFs (A) and (B) mandated that active duty and ready reserve members
of the Coast Guard be vaccinated against COVID-19. REFs (C) through
(G) clarified Commandant's Intent with respect to military personnel
vaccination and provided amplifying implementation guidance. REF (H)
provides policy direction for the Coast Guard's vaccination program
and REF (I) governs the adjudication of religious accommodation
requests in the Coast Guard.
2. This ALCOAST establishes a new administrative exemption from the
COVID-19 vaccination mandate, for those members with an approved
separation or retirement date no later than 1 October 2022.
3. This exemption only applies for members who execute separation
or retirement orders no later than 1 October 2022. Personnel
considering modifications to approved separations to extend or
reenlist beyond 1 October 2022 are not covered by this exemption.
4. The Coast Guard will take no further action on any request or
pending appeal for a religious accommodation from the COVID-19
vaccination mandate for any military member with an approved
separation or retirement date on or before 1 October 2022. Military
members requesting to separate or retire pursuant to this policy
shall reference this ALCOAST in their separation or retirement
request.
5. Policies and standards in REFs (A) through (I) not specifically
addressed in this ALCOAST remain unchanged.
6. Contact COMDT (CG-1331) at HQSPolicyandStandards@uscg.mil with
questions.
7. RADM E. C. Jones, Assistant Commandant for Human Resources
(CG-1), sends.
8. Internet release is not authorized.

R 071848Z APR 22 MID200001642873U
FM COMDT COGARD WASHINGTON DC
TO ALCOAST
BT
UNCLAS FOUO
ALCOAST 131/22
SSIC 6230
SUBJ:  COVID-19: LEAVE AND LIBERTY RISK MITIGATION FOR
UNVACCINATED MILITARY MEMBERS
A. COMDT COGARD WASHINGTON DC 271530Z SEP 21/ALCOAST 352/21
1. This ALCOAST cancels the risk mitigation guidance in para 5b.
of REF (A) that defines local leave and liberty areas to no more
than 50 miles from member's home or worksite. Effective immediately,
unvaccinated members are no longer subject to these leave or liberty
restrictions. Local commands resume responsibility for defining
geographic leave and liberty areas, and the authority to grant
local leave or liberty requests.
2. POC: COVID-19 Crisis Action Team at COVID19@USCG.mil or
202-372-2403.
3. Dr. D. M. Navarro, Acting Assistant Commandant for Human
Resources (CG-1), sends.
4. Internet release is not authorized.

R 021850Z MAY 22 MID600051770801U
FM COMDT COGARD WASHINGTON DC
TO ALCOAST
BT
UNCLAS
ALCOAST 157/22
SSIC 6230
SUBJ:  COVID 19: UPDATE TO COVID-19 ADMINISTRATIVE RISK MITIGATION
AND LEADERSHIP MEASURES
A. COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
B. COMDT COGARD WASHINGTON DC 072247Z SEP 21/ALCOAST 315/21
C. COMDT COGARD WASHINGTON DC 261519Z JAN 22/ALCGPSC 016/22
D. COMDT COGARD WASHINGTON DC 271530Z SEP 21/ALCOAST 352/21
E. COMDT COGARD WASHINGTON DC 080148Z OCT 21/ALCGPSC 104/21
1. This ALCOAST authorizes unvaccinated members to attend Coast
Guard facilitated training required for their assignments. The
Coast Guard continues to take actions with respect to unvaccinated
members, with due regard for the health and safety of our entire
workforce and the need to preserve mission readiness.
2. For the purpose of this message, "unvaccinated members" refers to
personnel who have not completed a COVID-19 vaccination regimen.
Per REF (A), members are considered fully vaccinated two weeks after
the last required dose of an FDA approved COVID-19 vaccine, a
COVID-19 vaccine administered under the FDA's Emergency Use
Authorization, or a COVID-19 vaccine on the World Health
Organization Emergency Use Listing.
3. Paragraph 5.A(2) of REF (D) and Paragraph 4.A. of REF (E) are
cancelled. The following requirements apply to all unvaccinated
members, regardless of their assignment year status:
   a. Unvaccinated members are authorized to attend "C" Schools
specifically required for their assignment, as necessary to meet
mission readiness requirements. No other "C" School training is
authorized for unvaccinated members. FORCECOM, in consultation
with the appropriate Program, will determine which schools are
required to meet mission readiness requirements. Unvaccinated
members may not be able to attend some required "C" schools if the
entity providing the training prohibits unvaccinated member
attendance.
   b. Unvaccinated members must not obligate additional service,
except as a result of executing PCS orders.
4. The current status of all FORCECOM Readiness Activities (AIA
Activities, Exercise Support Activities, and Class "A" and "C"
schools) are regularly updated, and can be found on the ETQC Portal
site at:
(Copy and Paste URL Below into Browser)

https://cg.portal.uscg.mil/units/forcecom/ETQC/SitePages/Home.aspx

5. All other portions of REF (C), (D), and (E) not previously
addressed remain in effect.
6. This message will be cancelled on 02 May 2023, if not rescinded
sooner by me, my successor, or a superior officer.
7: FC POC is CAPT Adrian West, Chief of Staff, email:
Adrian.L.West@uscg.mil.
8. RADM Eric C. Jones, Deputy for Personnel Readiness (DCMS-DPR),
sends.
9. Internet release is not authorized.

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

US Coast Guard Stop 7801
2703 Martin Luther King Jr Ave SE
Washington, DC 20593-7801
Staff Symbol: CG-1331
Phone: (202) 475-5382
Fax: (202) 475-5927
Email: HQS-PolicyandStandards@uscg.mil

COMDTINST 1000.15
30 AUG 2021

COMMANDANT INSTRUCTION 1000.15

Subj:   MILITARY RELIGIOUS ACCOMMODATIONS

Ref:   (a)  Coast Guard Medical Manual, COMDTINST M6000.1 (series)
       (b)  Immunizations and Chemoprophylaxis (Joint Publication), COMDTINST M6230.4 (series)
       (c)  Uniform Regulations, COMDTINST M1020.6 (series)
       (d)  Religious Ministries within the Coast Guard, COMDTINST 1730.4 (series)
       (e)  U.S. Coast Guard Civil Rights Manual, COMDTINST M5350.4 (series)
       (f)  Religious Liberty in the Military Services, Department of Defense Instruction 1300.17

1.  <u>PURPOSE</u>.  To promulgate policy and guidance for the accommodation of religious practices within the United States Coast Guard.

2.  <u>ACTION</u>.  All Coast Guard unit commanders, commanding officers, officers-in-charge, deputy/assistant commandants, and chiefs of Headquarters staff elements must comply with the provisions of this Commandant Instruction. Internet release is authorized.

3.  <u>DIRECTIVES AFFECTED</u>.  None.

4.  <u>DISCUSSION</u>.  The Coast Guard values the rights of its personnel to practice their religion of choice, or none at all, when it does not interfere with the ability to safely and effectively accomplish our missions. This Instruction provides the processes for consideration and resolution of requests for religious accommodation. It strives to strike a balance between consideration for the exercise of religion and ensuring military readiness, unit cohesion, good order, discipline, health and safety. This Instruction applies to all Coast Guard active duty and reserve personnel, Coast Guard Academy cadets, and applicants for accession programs. It also applies to other uniformed service members while serving within the Coast Guard. The policies and procedures in this Instruction apply solely to the accommodation of religious practices within the Coast Guard and no other context. Conscientious objectors are not covered by this Instruction and should refer to Conscientious Objectors and the Requirement to Bear Arms, COMDTINST 1900.8 (series).

DISTRIBUTION – SDL No. 170

|   | a | b | c | d | e | f | g | h | I | j | k | i | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X | X | X | X |   | X | X | X | X | X | X |   | X |   | X | X |   |   |   |   |
| B | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| C | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   |   |
| D | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| E | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   |   |   |
| F |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | X | X | X |   |   |   |   |   |   |   |
| G |   | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H | X | X | X | X | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

NON-STANDARD DISTRIBUTION:

CGPOL020

COMDTINST 1000.15

5. <u>DISCLAIMER</u>.  This guidance is not a substitute for applicable legal requirements, nor is it itself a rule. It is intended to provide operational guidance for Coast Guard personnel and is not intended to nor does it impose legally binding requirements on any party outside the Coast Guard.

6. <u>MAJOR CHANGES</u>.  This is the first issuance of this Instruction. There are no prior versions. This Instruction supersedes Flag Voice 412, Religious Accommodation Policy Revision published by Assistant Commandant for Human Resources (CG-1) on 2 Feb 2014. This Instruction establishes uniform procedures and guidelines for processing requests for religious accommodations within the Coast Guard.

7. <u>ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS</u>.

   a. The development of this Instruction and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the Office of Environmental Management, Commandant (CG-47). This Instruction is categorically excluded under current Department of Homeland Security (DHS) categorical exclusion DHS (CATEX) A3 from further environmental analysis in accordance with the U.S. Coast Guard Environmental Planning Policy, COMDTINST 5090.1 and the Environmental Planning (EP) Implementing Procedures (IP).

   b. This Instruction will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment. All future specific actions resulting from the general policy in this Instruction must be individually evaluated for compliance with the National Environmental Policy Act (NEPA) and Environmental Effects Abroad of Major Federal Actions, Executive Order 12114, Department of Homeland Security (DHS) NEPA policy, Coast Guard Environmental Planning policy, and compliance with all other applicable environmental mandates.

8. <u>DISTRIBUTION</u>.  No paper distribution will be made of this Instruction. An electronic version will be located on the following Commandant (CG-612) web sites:  Internet: https://www.dcms.uscg.mil/Directives/, and CGPortal: https://cg.portal.uscg.mil/library/Directives/SitePages/Home.aspx.

9. <u>RECORDS MANAGEMENT CONSIDERATIONS</u>.  Records created as a result of this Instruction, regardless of format or media, must be managed in accordance with the records retention schedules located on the Records Resource Center CGPortal site: cg.portal.uscg.mil/units/cg61/CG611/SitePages/Home.aspx.

10. <u>DEFINITIONS</u>.

   a. Religious Accommodation. A religious accommodation is any adjustment to the work environment that will allow a member or applicant to exercise his or her religious beliefs. The need for religious accommodation may arise where an individual's sincerely held religious beliefs, observances or practices conflict with a specific task or requirement of their position or an application process. Accommodation requests often relate to work

2

schedules, dress and grooming, or religious expression in the workplace. Requests for religious accommodation from a military policy, practice, or duty that substantially burdens a service member's exercise of religion may be denied only when the military policy, practice, or duty furthers a compelling government interest and it is the least restrictive means of furthering that compelling government interest. The Coast Guard has a compelling government interest in mission accomplishment at the individual, unit, and organizational levels, including such necessary elements of mission accomplishment as military readiness, unit cohesion, good order and discipline, and health and safety.

b. Religious Observance. Religious observances include, but are not limited to participating in worship services, daily prayers or following other doctrinal requirements on holy days.

c. Religious Exercise. Any exercise of religion, whether or not compelled by, or central to, a system of religious belief.

d. Religious Practice. An action, behavior, or course of conduct constituting individual expressions of religious beliefs, whether or not compelled by, or central to, the religion concerned.

e. Religious Dietary Observances. Religious dietary observances include doctrinal or traditional requirements on types of subsistence allowed or the means of food preparation.

f. Religious Medical Practices. Religious medical practices include doctrinal or traditional objections to receiving immunizations and providing Deoxyribonucleic Acid (DNA) specimen samples.

g. Religious Apparel. Articles of clothing, jewelry or other such accoutrements worn as part of the doctrinal or traditional observances of the religious faith practiced by the service member. Hair and grooming practices required or observed by religious groups are not included within the meaning of religious apparel.

   (1) Neat and conservative. In the context of the wear of a military uniform, items of religious apparel that:

      (a) Are discreet, tidy, and not dissonant or showy in style, size, design, brightness, or color;

      (b) Do not replace or interfere with the proper wear of any authorized article of the uniform; and

      (c) Are not temporarily or permanently affixed or appended to any authorized article of the uniform.

h. Tradition or Traditional. Recurring practices, ceremonies, customs or obligations that -- whether or not explicitly required by religious doctrine -- have historically been associated with or derived from established religious beliefs and doctrines.

CGPOL022

COMDTINST 1000.15

  i. Pre-accession. The period of time before a prospective service member's participation in a commissioning program, warrant officer program, enlistment (or entry), reenlistment (or reentry), or enrollment in the Coast Guard Academy or College Student Pre-commissioning initiative (CSPI).

11. <u>POLICY</u>.

  a. General. Pursuant to the Free Exercise Clause of the First Amendment to the U.S. Constitution, service members have the right to observe the tenets of their religion or to observe no religion at all. Under Section 2000bb-1 of Title 42, United States Code, also known as "The Religious Freedom Restoration Act," Section 533(a)(1) of Public Law 112-239 and other laws applicable to the accommodation of religious practices, the Armed Forces must accommodate the beliefs of a member of the armed forces reflecting the conscience, moral principles, or religious beliefs of the member and, in so far as practicable, may not use such beliefs as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training or assignment. Coast Guard policy is to provide reasonable accommodations to the observances of the religious faith practiced by individual members when these doctrines or observances will not have an adverse impact on military readiness, individual or unit readiness, unit cohesion, health, safety, discipline, or mission accomplishment. Accommodation of a member's religious practices cannot be guaranteed and is subject to operational necessity. Unit commanders are encouraged to seek input from the unit's Servicing Legal Office and Chaplain to ensure compliance with Section 533(a)(1) of Public Law 112-239, as amended.

   (1) Requests for accommodation based on sincerely held beliefs must not be denied without consultation with the unit's Servicing Legal Office, Civil Rights Service Provider, and Chaplain.

   (2) All requests for accommodation must be reviewed and acted upon by the appropriate approval authority and during the timelines outlined in Enclosure (1), insofar as practicable and as operations allow.

   (3) Pre-accession members must be given the opportunity to route a religious accommodation request prior to departure for a Military Entrance Processing Station.

   (4) All approved requests must be forwarded to the appropriate accession point and Indoctrinating Training Center (Officer Candidate School or Training Center Cape May) before the member executes his or her orders.

  b. Standards of Review for Religious Accommodation Requests.

   (1) The Coast Guard has a compelling government interest in mission accomplishment at the individual, unit, and organizational levels, including such necessary elements of mission accomplishment as military readiness, unit cohesion, good order and discipline, and health and safety. In accordance with the Religious Freedom Restoration Act (RFRA), and Reference (f), the Coast Guard will normally accommodate practices of a service member based on a sincerely held religious belief.

CGPOL023

(2) Accommodation includes excluding a service member from an otherwise applicable military policy, practice or duty. In accordance with RFRA, if a military policy, practice or duty substantially burdens a service member's exercise of religion, accommodation can only be denied if:

  (a) The military policy, practice, or duty is in furtherance of a compelling governmental interest; and

  (b) The policy, practice, or duty is the least restrictive means of furthering that compelling government interest.

  Note: In applying the standard of (a) and (b) above, the burden of proof is placed upon the Coast Guard, not the individual requesting the exemption.

(3) A request for the accommodation of religious practices may be granted in whole or in part. The requestor will be informed in writing of the decision to grant or deny the request, and of any conditions or limitations placed on the grant.

c.  Types of Accommodation Requests.

  (1) Observances of Worship and Holy Days. CO/OICs will accommodate Worship practices, Holy Days, Sabbath or similar religious observance requests except by necessity, consistent with mission accomplishment. These requests can be approved at the local unit level in accordance with operational demands.

  (2) Dietary Practices. CO/OICs should support religious dietary observances to the fullest extent possible, consistent with mission accomplishment.

  (3) Immunizations. While the Coast Guard has a compelling interest in requiring that all members receive immunizations, individual immunization requirements may be waived when requested by the member based on religious objection. The religious objection of the service member must be balanced against the medical risk to the member and the unit, and Coast Guard requirements such as alert status, deployment potential, and availability of the member for reassignment to units requiring full medical readiness, as described in Reference (a). When available, alternative immunization or treatment that does not violate the member's religious objection must be used. This accommodation may be terminated by the CO/OIC, if the individual and/or unit are at imminent risk of exposure to a disease for which an immunization is available. All requirements set forth in References (a) and (b) must be met. Commandant (CG-133) is the approval authority for all requests to be exempt from immunizations, although COs/OICs may give approval for the member to receive an alternate immunization approved by Commandant (CG-112).

  (4) Grooming. A key element of unit cohesion is establishing and maintaining uniform military grooming and appearance standards. Waivers of grooming policy for male members on all duty types to wear unshorn/long hair or beards may be submitted to through CO/OIC to PSC-PSD-mu. Approved beards must be worn in a neat and conservative manner. When a member is authorized to wear a beard of greater than

5

COMDTINST 1000.15

two inches in length, the beard must be rolled, tied and/or otherwise groomed to achieve a length not to exceed two inches when measured from the bottom of the chin.

(5) Deoxyribonucleic Acid (DNA) Specimen Sampling. DNA analysis fulfills the military requirement of quickly and accurately identifying the remains of Coast Guard members under "Using the Armed Forces Repository of Specimen Samples for the Identification of Remains, COMDTINST 6510.1 (series)". DNA sampling is performed on every accession upon arrival at the member's accession point. Analysis of these samples are only conducted when necessary for identification of remains. Therefore, religious accommodations for DNA analysis can only be processed prior to the prospective accession's arrival at his or her respective accession point. The cumulative impact of repeated accommodations of a similar nature and previous treatment of similar requests may set a precedent that could adversely impact other Coast Guard medical policies and programs, including mandatory pre-deployment processing, medical screening activities, Human Immunodeficiency Virus testing and medical surveillance program serum collection. The specimen sample will be destroyed at the request of the member upon completion of service.

(6) Uniforms. When approved, such apparel will be authorized to be worn with the military uniform as long as it does not interfere with the performance of the member's military duties or is otherwise specifically prohibited in this Section. All uniform accommodations must maintain compliance with Reference (c), including maintaining a neat and conservative appearance.

(a) Whether an item of religious apparel interferes with the performance of the service member's military duties depends on the characteristics of the item, the circumstances of its intended wear, and the particular nature of the member's current duties. Factors in determining if an item of religious apparel interferes with the military duties include, but are not limited to, whether the item:

[1] Impairs the safe and effective operation of weapons, military equipment, or machinery;

[2] Poses a health or safety hazard to the service member wearing the religious apparel or to others;

[3] Interferes with the wear or proper function of special or protective clothing or equipment (e.g., helmets, flak jackets, flight suits, camouflage uniforms, gas masks, wet suits, and crash and rescue equipment); and

[4] Otherwise impairs mission accomplishment.

(b) Head Coverings. Religious accommodations for members to wear neat and conservative religious head coverings (including, but not limited to a hijab, turban, kufi, kippah, or yarmulke) may be authorized in accordance with Enclosure (1) and Reference (c). Except in the case of safety or protective headgear required by the member's duties, position or assignment, a member

CGPOL025

granted a religious accommodation for head coverings is not required to wear military headgear in addition to his or her religious head covering if such military headgear would violate his or her sincerely-held religious beliefs.

(c) Jewelry bearing religious inscriptions or otherwise indicating affiliation or belief may be worn subject to the same uniform regulations prescribed for jewelry that is not of a religious nature. The Coast Guard will consider religious accommodation requests to wear jewelry that is not in compliance with uniform regulations in accordance with this policy.

(d) Chaplains may wear any religious apparel required by their religious organizations with the uniform while conducting public worship services and during the performance of rites and rituals distinct to their faith groups.

(e) Service members may wear any required religious apparel distinct to their faith group with the uniform while in attendance at public worship services.

(7) Requests for any other types of religious accommodations can be submitted to the member's command for approval.

(8) Accommodation Duration and Rescission of an Accommodation. An approved request for accommodation will remain in effect during follow-on duties, assignments, or locations, and for the duration of the service member's military career, including after promotions, reenlistment or commissioning, unless and until rescinded in accordance with requirements of this issuance.

(a) An approved accommodation may be subject to review and rescission, in whole or in part, at any time, based upon a determination that the circumstances under which the grant of accommodation was approved have changed (e.g., deployment, new duties, or other material change in circumstances). The Coast Guard, and not the individual member, bears the burden of initiating a proposal to review and rescind an accommodation previously granted.

(b) When a command initiates a proposal to review and rescind an accommodation previously granted, the CO/OIC will forward a written summary of the nature of the materially changed circumstances that require such review and repeal to the member concerned for comment.

[1] The service member will be:

[a] Allotted no fewer than 10 business days to review and comment on the proposed rescission of the accommodation;

[b] Afforded the opportunity to review and comment on any endorsements of this proposal from the chain of command; and

COMDTINST 1000.15

[c] Afforded, subject to security classification requirements, the opportunity to review and comment on any documents or attachments to the proposal or subsequent endorsements.

[2] Any comments submitted by the service member will be forwarded for consideration by the appropriate official authorized to act on the matter.  For example, if a religious accommodation was approved by a commanding officer at a previous unit, the comments must be considered by the commanding officer of the service member's current unit. If a religious accommodation was previously approved by the Office of Military Personnel (CG-133), comments must be considered by Commandant (CG-133).

[3] A proposal to review and rescind a previously approved accommodation must be acted on at the level of authority no lower than that at which the accommodation was granted.

[4] The standard for repealing a previously granted accommodation, in whole or in part, is the same as the standard for denying an initial request for the accommodation of religious practices, and the same factors must be considered, as appropriate.

(9) Accommodation Modification or Suspense Under Exigent Circumstances. Under exigent circumstances and in furtherance of a compelling governmental interest due to operational necessity, when time is of the essence and no less restrictive means of religious accommodation are available, a commander may temporarily modify or suspend accommodations granted, upon notice to the service member concerned and without benefit of appeal. The level of this commander must be no lower than the CO/OIC for a service member who has previously been granted an accommodation of religious practices.

(a) The service member concerned may be required to immediately comply with the modification or suspension of an accommodation, if circumstances so warrant.

(b) The modification or suspension of the accommodation will apply for only the minimum period required by the circumstances.

12. ROLES AND RESPONSIBILITIES.  The following roles and responsibilities apply to current Coast Guard members. New recruits waiting to be accessed must make their requests through their recruiter.

a. Members seeking religious accommodation must submit their request in writing to the proper approval authority in accordance with Enclosure (1). Prior to submitting their request, members are required to consult with their unit's Chaplain. The request must include a notation that the member met with the chaplain, and include the date of the meeting and the name/contact information of the chaplain. Prospective accessions should submit their request through their recruiter, who is required to arrange a consultation with a Coast Guard Chaplain. A sample of a religious accommodation request memorandum can be found in Enclosure (2).

CGPOL027

b.  The memorandum should, at a minimum, describe the specific request the member is seeking and the relation to the sincerely-held belief on which it is based.

c.  CO/OIC/Command Cadre. Commanders will respond to requests in accordance with this Instruction and its timelines and will route each request to the appropriate approval authority, or issue a decision on a request that is properly within their authority to act upon. A copy of the final decision (whether by endorsement or new memorandum) must be provided to the member and any other office as described in Enclosure (1).

(1) If a religious accommodation request is approved, the command must issue a CG-3307 to the member describing the nature of the religious accommodation granted. A service member whose request is granted in part will be informed by CG-3307 of the specific elements of the approval.

(2) In the case of immunization exemptions, the CG-3307 will be issued by the requestor's command based upon the decision memo issued by Commandant (CG-133).

d.  Chaplains. Chaplains are required to interview members requesting a religious accommodation and are responsible for informing the unit commander about such requests. Chaplains are to use the Religious Accommodation Interview Checklist, found in Enclosure (3), in order to assist the command in assessing the member's sincerely-held beliefs. Because this interview is done at the commander's request, the Chaplain must advise the member that the interview is not confidential or privileged, as found in Enclosure (4). Chaplains may use any means of communication available to ensure the interview is conducted promptly and provide commanders with their findings. Chaplains are also required to provide a memorandum or endorsement to accompany the member's request as it is routed up the chain of command. Guidance for the memorandum or endorsement from the Chaplain to the command can be found in Enclosure (5). The Chaplain of the Coast Guard (CG-00A) will annually report to the Coast Guard Commandant (CCG) on religious accommodations requested, approved and/or denied in the Coast Guard.

e.  Servicing Legal Office. The legal office serves to ensure commanders are knowledgeable about and adhere to relevant legal standards. Commands are required to consult with their servicing legal office prior to granting or denying a religious accommodation request.

f.  Civil Rights Service Provider. The Civil Rights Service Provider will advise personnel on the religious accommodation process and the Equal Opportunity complaint process.

g.  Headquarters Offices. Headquarters offices will either serve as final approval or appellate authority, and maintain records of each request and decision. All approval authorities must provide a copy of all approvals/denials to Commandant (CG-133) for submission to the Chaplain of the Coast Guard to be included in its annual report to Coast Guard Commandant (CCG).

CGPOL028

COMDTINST 1000.15

h. Medical Officers. A medical officer must counsel the applicant regarding accommodations for immunizations. The physician should ensure that the member is making an informed decision and should address, at a minimum, specific information about the diseases concerned, specific vaccine information (including product constituents, benefits and risks), and potential risks of infection incurred by unimmunized individuals. The medical officer consult (date of consult, name of consulting medical officer) must be noted in the member's request for the religious accommodation for immunization exemption.

i. Training Centers. All members being accessed into the Coast Guard must be provided with information regarding religious accommodations within the Coast Guard during their initial training by a Coast Guard Chaplain. Training centers, as accession points, must also ensure all requests granted during the accession process are properly adhered to and work with the appropriate assignment officers who are also bound to adhere to such granted requests.

j. Administrative Appeals. Any request for accommodation that is denied, in part or in full, may be appealed as follows:

(1) Unit commanders must inform the requesting member of the right to appeal the decision. Any notice of denial must inform members that they have the right to file an Equal Opportunity complaint by contacting a Civil Rights Service Provider within 45 calendar days of any denial. For complaint processing, see Chapter 5 of Reference (e).

(2) A member who has been denied a religious accommodation, in whole or in part, may submit a written appeal to the official in the chain of command or chain of supervision one level above the officer or official who took the final action on the request. The appeal must be routed through the officer or official who denied the request. The appeal must include the specific basis on which the member believes the initial denial was in error.

(3) The appellate authority will either overturn or uphold the contested decision, in part or in full, within 30 days of the date of appeal for cases arising within the continental United States, and within 60 days for all other cases, if practicable and as operations allow.

13. ACTION.

a. Commandant (CG-1) is responsible for overall policy control and program execution.

b. Commandant (CG-1) will review current regulations governing uniforms and grooming, food service, separate rations, immunizations, and DNA sampling, and revise them as necessary.

c. Commandant (CG-133) will collect, maintain and make available to the Chaplain of the Coast Guard the data related to the approval and denial of requests for religious accommodation.

CGPOL029

COMDTINST 1000.15

    d.  Commandant (CG-133) will ensure implementation of the policies and procedures in this Instruction.

    e.  Commandant (CG-PSC-RC) will provide Instruction of this policy to applicants for commissioning, enlistment, and reenlistment, and upon completion must require the member's signature acknowledging its contents.

    f.  FORCECOM will coordinate with the program office to develop appropriate performance support for commands, judge advocates, chaplains, and similar courses of Instruction and orientation.

    g.  Office of Military Uniforms (CG-PSC-PSD-MU) will ensure the changes reflected herein are properly facilitated and incorporated into the next Uniform Regulations update through the next uniform board. Commandant (PSC-PSD-MU) will also develop processes with Coast Guard Recruiting Command to coordinate the evaluation of requests by prospective accessions.

14. <u>FORMS/REPORTS</u>.  The Chaplain of the Coast Guard will annually report to the Coast Guard Commandant on religious accommodation requests within the Coast Guard. Commandant (CG-1) must collect, maintain and make available to the Chaplain of the Coast Guard (CG-00A) the data related to the approval and denial of requests for religious accommodation. No forms are prescribed nor required by this Instruction.

15. <u>REQUEST FOR CHANGES</u>.  Recommendations for changes or improvements are welcome and should be submitted via the chain of command to the Office of Military Personnel, Policy and Standards Division, Commandant (CG-1331), at HQS-PolicyandStandards@uscg.mil.

 

/ERIC C. JONES/
Rear Admiral, U.S. Coast Guard
Assistant Commandant for Human Resources

Encl:  (1) Approval Process and Authorities
       (2) Religious Accommodation Request Memorandum
       (3) Religious Accommodation Interview Checklist
       (4) Advisement About Statements Made During a Religious Accommodation Interview
       (5) Guidance for Chaplain Memorandum

CGPOL030

Enclosure (1) to COMDTINST 1000.15

### Routing & Approval Process for Current Members

| Type of Religious Accommodation | Approval Authority (Route to) | When to Submit | Copy of Final Decision Sent to | Notes |
|---|---|---|---|---|
| Uniform/Apparel & Grooming | To: Commandant (PSC- PSD-mu) Thru: CO/OIC | At any time. | MBR via CO/OIC | |
| Immunizations | To: Commandant (CG-133) Thru: Commandant (CG-112), CO/OIC *CO may approve alternative vaccinations. ** Requires consultation with medical officer | At any time. | CG-00A MBR via CO/OIC | * COs may only approve alternative vaccinations if such vaccination is approved by Commandant (CG-112) as an effective alternate. If no alternative vaccinations are available then route to Commandant (CG-133). |
| Other (Dietary, Religious Observances/Holy Days, etc.) | CO/OIC/Commander | At any time. | MBR | |

### Routing & Approval Process for Prospective Accessions

| | | | | |
|---|---|---|---|---|
| DNA Sampling | To: Commandant (CGRC) Thru: Commandant (CG-PSC-med) Thru: Recruiter | Only during the accession process. | MBR | |
| All others, to include uniforms/grooming, dietary, etc. | To: Commandant (CGRC) Thru: Recruiter | Optional at accession process. | MBR | CGRC will consult with appropriate HQ office as would otherwise approve for current members |
| Immunizations | To: Commandant (CG-133) Thru: Commandant (CG-RC) *CO may approve alternative vaccinations. | Prior to accession. | MBR via Commandant (CG-RC) | *COs may only approve alternative vaccinations if such vaccination is approved by Commandant (CG-112) as an effective |

CGPOL031

Enclosure (1) to COMDTINST 1000.15

| | | | | |
|---|---|---|---|---|
| | | | | alternate. If no alternative vaccinations are available then route to Commandant (CG-133). |

Timelines:

- Requests that are approved by the unit CO/OIC for approval must be executed within 30 days of receipt by the Command, if practicable and as operations permit.
- Requests that are approved by other than the unit CO/OIC must be executed within 30 days (CONUS) and 60 days (OCONUS) from the date received by the decision authority, if practicable and as operations permit.
- Requests for prospective accessions and non-active duty members will be acted on within 45 days of receipt by the decision authority, if practicable and as operations permit.

CGPOL032

Enclosure (2) to COMDTINST 1000.15



[Requesting Member's Command]
United States Coast Guard

[Address Line 1]
[Address Line 2]
[City/State/ZIP]
Staff Symbol:
Phone:
Fax:
Email: I

6230
DD MMM YYYY

From:  I. M. Coastie, SN
To:      [Approval Authority]
Thru:   [CO/OIC, if not approval authority]
           [Chaplain]

Subj:   REQUEST FOR RELIGIOUS ACCOMMODATION

Ref:     (a) Military Religious Accommodations, COMDTINST 1000.15

1. Respectfully request a waiver of policy to accommodate a religious practice based on a sincerely-held religious belief in accordance with Reference (a). I request a waiver to the [immunization/uniform/grooming/etc.] policy, specifically [which part is objectionable].

2. Nature of the request. [Explain service member's waiver request and whether or not the member has previously had this or any other policy waiver request approved or denied].

3. Basis. [Identify the religious beliefs on which the exemption request and how current policy prevents the member from practicing within their beliefs.]

4. [If a request for waiver from immunization, include date of consultation with medical officer and name/contact information of medical officer.]

5. My contact information is [telephone number and e-mail address].

#

PRIVACY ACT STATEMENT

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.

AUTHORITY: 14 U.S.C. § 505

PURPOSE: To obtain information from a person seeking a military religious accommodation in order to identify the free exercise of religion asserted by the member and make a determination that balances the free exercise of religion with military readiness, unit cohesion, and good order and discipline. A Religious Accommodation Interview Checklist will be used by the Chaplain to record information provided by the member during an interview.

CGPOL033

Enclosure (2) to COMDTINST 1000.15

ROUTINE USES: Authorized USCG officials will use this information to determine if a religious accommodation can be approved pursuant to Section 533(a)(1) of Public Law 112-239 (2013), as amended. Any external disclosures of information within this record will be made in accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933 (October 28, 2011).

CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION: Providing this information is voluntary. However, failure to provide this information may delay the administrative process.

CGPOL034

Enclosure (3) to COMDTINST 1000.15

Religious Accommodation Interview Checklist

| Applicant: | Date of Interview(s): |
|---|---|
| Rate/Rank: | Chaplain Interviewer: |
| Phone: | Phone: |
| Email: | Email: |
| Command: | Chaplain's Command: |

| Interview Preliminaries: | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Review COMDTINST 1000.15 on religious accommodation. |
| | | | Notify Applicant that interview is not confidential/privileged and will be used to advise command on request. |
| | | | Obtain Applicant's signed waiver (see attached). |
| | | | Explain to Applicant that confidential support can be obtained through either 1) another chaplain or 2) a separate counseling session. |
| | | | Has the Applicant been granted a policy waiver for this practice previously? |
| | | | Does the Applicant's declared faith group reflect the belief cited in the application? |

| The application is for a waiver from the following: | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Uniform standards |
| | | | Grooming standards |
| | | | Immunization requirements |
| | | | DNA sampling |
| | | | Other |

| Interview Results: | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Applicant communicated his/her beliefs in an honest and sincere manner. |
| | | | Applicant was credible (consistently keeps tenets, practices, etc.). |
| | | | Applicant's demeanor and pattern of conduct are consistent with the request. |
| | | | Applicant participates in activities associated with the belief(s). |
| | | | Persons supporting the claim are credible. |
| | | | Applicant's request is supported by letter(s) of verification or endorsement from an organization espousing the beliefs which are the basis for the claim. |
| | | | Alternate means of accommodating the practice were explored in the interview. |

| Process Checklist: | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Chaplain has prepared a memorandum memorializing the interview, following the guidance, specifically identifying the religious importance of the accommodation to the Applicant. |
| | | | Chaplain reviewed memorandum with Applicant and provided a copy. |
| | | | Chaplain submitted the memorandum and this document to the command. |
| | | | Chaplain referred Applicant to command to process request. |

CGPOL035

Enclosure (4) to COMDTINST 1000.15

ADVISEMENT ABOUT STATEMENTS MADE DURING A
RELIGIOUS ACCOMMODATION INTERVIEW

I, _____, have been advised that statements that
are made during the course of my religious accommodation interview are not confidential and
may be disclosed by Chaplain _____ to further my religious accommodation
request.


_____                    _____
Date                                         Member


_____                    _____
Date                                         Chaplain


## PRIVACY ACT STATEMENT

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS
is requesting the information on this form.

AUTHORITY: 14 U.S.C. § 505

PURPOSE: To obtain information from a person seeking a military religious accommodation in
order to identify the free exercise of religion asserted by the member in order make a
determination that balances the free exercise of religion with military readiness, unit cohesion,
and good order and discipline.

ROUTINE USES: Authorized USCG officials will use this information to determine if a
religious accommodation can be approved pursuant to Section 533(a)(1) of Public Law 112-239
(2013), as amended. Any external disclosures of information within this record will be made in
accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933
(October 28, 2011).

CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION: Providing this information
is voluntary. However, failure to provide this information may delay the administrative process.

1

CGPOL036

GUIDANCE FOR CHAPLAIN MEMORANDUM

**Overview**

When a chaplain learns that a service member perceives a conflict between policy and a practice associated with his or her religious beliefs or sincerely held moral or ethical principles, and would like to seek an accommodation of those beliefs or principles, the chaplain should apprise the member of the process for submitting the request and the information needed to support it. Should the service member wish to submit a waiver request, the chaplain should, as soon as possible, conduct a (non-confidential) interview of the member and submit the memorandum for the record to the chain of command in order to comply with the time requirements of DoD policy.

**Description and Discussion**

The following is a description and discussion of each Paragraph of the memorandum template.

• Paragraph 1 conveys the identity of the requester, the date of the interview, the explanation that confidentiality does not apply to the interview, and that confidential chaplain support is available by referral. It must be written as presented in the template with the correct name and date.

• Paragraph 2 describes the exception to policy which is being requested, to include the nature of the religious or other practice and how it conflicts with applicable policy. It should indicate whether or not policy completely prohibits the practice. Interview questions may include, but are not limited to: Can the practice be partially performed or performed at a later date? Is the prohibition the result of operational status? This Paragraph also indicates whether or not the member has previously had this or any other accommodation request approved or denied.

• Paragraph 3 communicates what the requester understands to be the underlying basis for the request. It includes a description of the religious beliefs or sincerely held moral or ethical principles on which the waiver request is based. It includes how the requester expresses those beliefs or principles in daily life. It also includes what the requester lists as a religious preference. Interview questions may include, but are not limited to: Please tell me about your faith, religion, belief system, or principles. How do you express them in your daily life? Are there regular activities associated with these beliefs or principles? What are they? Do these beliefs or principles inform how you make decisions? Do your beliefs or principles influence how you interact with other people or the environment? If so, how? Please give some examples of how your beliefs or principles impact the way you live. How do you think this practice would help you cope with the challenges of life? How does not being able to use this practice affect you? If you used this practice prior to military service, how did not being able to do so anymore affect you?

• Paragraph 4 indicates what, if any, alternate means of accommodation were discovered in the course of the interview. The chaplain will not unduly influence the requester to accept a

CGPOL037

Enclosure (5) to COMDTINST 1000.15

course of action which is not satisfactory to the requester.  Interview questions might include, but are not limited to: Are there similar practices which do not require a policy waiver? Have you tried other ways of meeting the need addressed by this practice? Is there one which could accomplish the same benefit?

• Paragraph 5 contains a statement as to the chaplain's professional opinion regarding the sincerity of the requester. It should include the chaplain's opinion regarding the importance of the request to the requester in terms of beliefs or principles, given the information provided. The chaplain must not base the opinion on the chaplain's personal religious beliefs or the chaplain's interpretation of what constitutes an appropriate religious or other practice. The chaplain's role is similar to the role played in evaluating the sincerity of members submitting conscientious objection packages. It focuses on the person making the request in order to make an informed report to the commander. Interview questions may include, but are not limited to: Are you a member of a religious or other organization which uses the practice for which you are requesting a waiver? How long have you been a member? What makes the practice for which you are requesting a waiver such an important part of your religion, beliefs, or principles? If this waiver is not granted, how will this decision affect you? How is this practice integral to your beliefs or principles? Did you have this practice when you entered the Service? How and when did you determine that this particular practice was an important part of your overall religious beliefs or principles?

• Paragraph 6 provides the Chaplain's contact information.

A copy of the memorandum is provided to the requester.

CGPOL038