IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| ISRAEL ALVARADO, *et al.*, | : | |
| *Plaintiffs,* | : | |
| v. | : | Case No.:  1:22-cv-00876-AJT-JFA |
| LLOYD AUSTIN, III, *et al.*, | : | |
| *Defendants.* | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR RULE 59(e) MOTION FOR RECONSIDERATION**

Dated: December 17, 2022

Respectfully Submitted,

*/s/ Arthur A. Schulcz, Sr.*
Arthur A. Schulcz, Sr.
VA Bar No. 30174
Chaplains Counsel, PLLC
21043 Honeycreeper Place
Leesburg, VA 20175
Tel. (703) 645-4010
Email: art@chaplainscounsel.com

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

NEW EVIDENCE AND CHANGES IN CONTROLLING LAW ....................................... 5

LEGAL STANDARD........................................................................................................... 6

ARGUMENT ....................................................................................................................... 6

I.     THE 2023 NDAA IS A CHANGE IN CONTROLLING LAW. ................................. 6

II.    The NOVEMBER 23 Order IS PREMISED ON CLEAR ERRORS OF LAW
       REGARDING JUSTICIABILITY AND EXHAUSTION. ...................................... 9

   A.   The Court Impermissibly Added a Judicially Created Exhaustion Requirement to
        RFRA. ........................................................................................................................... 9

   B.   The Court Impermissibly Added a Judicially Created Requirement to Exhaust Remedies
        through BCMR for Violations of Religious Liberties and Conscience. ...................... 12

      1.   Governing Military Regulations Do Not Require Service Members to Seek Relief
           Before BCMR. ......................................................................................................... 12

      2.   The Fourth Circuit Does Not Require BCMR Exhaustion for Violations of
           Religious Liberties and Conscience. ........................................................................ 13

      3.   BCMRs Lack Jurisdiction Over Constitutional Challenges. ................................... 14

      4.   BCMRs Lack Jurisdiction To Hear Challenges to Generally Applicable Military
           Policies or Regulations. ........................................................................................... 15

   C.   The Court's Decision Does Not Follow *Mindes'* Legal Analysis................................ 17

      1.   *Mindes'* Justiciability Analysis and Categories of Justiciable Claims.................... 17

      2.   Military Defendants' Actions Are Unconstitutional Actions Beyond Military
           Defendants' Authority. ............................................................................................ 18

      3.   Plaintiffs Raise Establishment Clause Claims That Do Not Require Exhaustion. 19

      4.   Fourth Circuit Precedent Presumes Irreparable Harm from First Amendment
           Violations, Excusing Exhaustion under *Mindes*. ................................................. 20

   D.   APA Claims Do Not Require Administrative Exhaustion. ........................................... 24

   E.   The November 23 Order Improperly Relied on Justice Kavanaugh's Solo
        "Concurrence" and Other District Court Decisions Contrary to Controlling Supreme
        Court Precedent and All Other Circuit Court Decisions............................................. 25

III.   NEW EVIDENCE DEMONSTRATES THAT PLAINTIFFS ARE EXEMPT FROM
       EXHAUSTION BECAUSE MILITARY ADMINISTRATIVE REMEDIES ARE
       INADEQUATE......................................................................................................... 26

IV.    RECONSIDERATION IS REQUIRED TO PREVENT MANIFEST INJUSTICE. .......... 27

   A.   The November 23 Order Relied on DoD Misrepresentations of Service Members'
        Procedural Rights and Protections. ............................................................................. 27

   B.   The November 23 Order Will Result in Irreparable Harm. .......................................... 28

V.     CONCLUSION........................................................................................................... 29

## **TABLE OF AUTHORITIES**

## **CASES**

*Austin v. Navy SEALs 1-26*, 142 S.Ct. 1301 (2022)...................................................24-25

*Bell v. Hood*, 327 U.S. 678 (1946) .......................................................... 17

*Bluth v. Laird*, 435 F.2d 1065 (4th Cir. 1970) ........................................... 18

*BST Holdings, LLC v. OSHA*, 17 F.4th 604 (5th Cir. 2021) .......................... 7

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)...............*Passim*

*Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362 (1982) ........................ 8

*Comm. for Pub. Educ. v. Nyquist,* 413 U.S. 756 (1973) ............................ 23

*Culbreth v. Ingram*, 389 F.Supp.2d 668 (E.D.N.C. 2005) ........................... 11

*Cooksey v. Futrell*, 721 F.23d 226 (4th Cir. 2013)................................... 11

*Darby v. Cisneros*, 509 U.S. 137 (1993) ................................................ 24

*Dep't of Navy v. Egan*, 484 U.S. 518 (1988) ........................................... 9

*Doster v. Kendall*, --- F.4th ---, 2022 WL 17261374 (6th Cir. Nov. 29, 2022) .................3, 26-27

*Elrod v. Burns*, 427 U.S. 347 (1976) .................................................... 21

*Emory v. Sec'y of Navy*, 819 F.2d 291 (D.C. Cir.1987).............................. 6, 29

*Ex Parte Milligan,* 71 U.S. (4 Wall.) 2 (1866) ........................................ 25

*Ford Motor Co. v. NLRB*, 441 U.S. 488 (1979) ........................................ 7

*Giovani Carandola, Ltd. V. Bason*, 3030 F.3d 507 (4th Cir. 2002) ............... 20

*Glines v. Wade*, 586 F.2d 675 (9th Cir. 1978), *rev'd on other grounds sub nom. Brown v. Glines*, 444 U.S. 348 (1980) .......................................................... 15

*Gracepointe Church v. Jenkins*, 2006 WL 1663798 (D.S.C. June 8, 2006) ............... 21

*Guerra v. Scruggs*, 942 F.2d 270 (4th Cir. 1991) ..................................*Passim*

*Harmon v. Brucker*, 355 U.S. 579 (1958) ............................................... 17

*Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554 (4th Cir.2017), *vacated and remanded on other gronuds sub nom. Trump v. Int'l Refugee Assistance Project,* 138 S.Ct. 353 (2017) .... 22

*Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233 (4th Cir.2017), *vacated and remanded on other grounds sub nom. Trump v. Int'l Refugee Assistance Project,* 138 S.Ct. 2710 (2018) .. 22

*Johnson v. Bergland*, 586 F.2d 993 (4th Cir. 1978) .................................................... 21

*Jones v. Mundy*, 792 F.Supp. 1009 (E.D.N.C. 1992) ................................................. 13

*Kentucky v. Biden*, 23 F.4th 585 (6th Cir. 2022) ......................................................... 7

*Laird v. Anderson*, 466 F.2d 283 (D.C. Cir. 1972) *cert. denied*, 409 U.S. 1076 (1972) ............ 26

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............................. 9

*May v. Gray,* 708 F.Supp.716 (1988) .................................................................... 16, 24

*McKart v. United States*, 395 U.S. 185 (1969) ........................................................... 13

*Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) ..................................................*Passim*

*Morse v. Boswell,* 289 F. Supp. 812 (D.Md.1968), *aff'd* ,401 F.2d 544 (4th Cir. 1968) ............ 18

*Nat'l Fed'n of Indep. Bus. v. OSHA,* 142 S. Ct. 661 (2022) ........................................ 25

*Navy SEAL 1 v. Austin*, 2022 WL 1294486 (D.D.C. Apr. 29, 2022)........................................ 25

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) .............. 9

*Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249 (4th Cir. 2003) ................ 20

*Orloff v. Willoughby*, 345 U.S. 83 (1953) ........................................................ 7, 17, 25

*Parisi v. Davidson*, 405 U.S. 34, 39 (1972) ............................................................ 9

*Patsy v. Bd of Regents of Fla.*, 457 U.S. 496, 509-12 (1982) ................................... 11-12

*Roe v. Shanahan*, 359 F. Supp. 3d 382 (E.D. Va. 2019), *Roe v. Dept. of Defense*, 947 F.3d 207 (4th Cir. 2020) .................................................................................*Passim*

*Sloas v. CSX Transp., Inc.*, 616 F.3d 380 (4th Cir. 2010) ............................................... 1

*Standage v. Braithwaite*, 526 F. Supp. 3d 56 (D. Md. 2021) ....................................... 24

*Stone v. Trump*, 280 F.Supp.3d 747 (D. Md. 2017)...................................................... 15

*Stuart Circle Parish v. Bd. of Zoning Appeals of City of Richmond, Va.,* 946 F.Supp.3d 1225 (E.D. Va. 1996) ................................................................................................. 11

*Tanzin v. Tanvir*, 141 S. Ct. 486 (2020) ............................................................ 11

*Thorne v. United States DOD*, 916 F. Supp. 1358 (E.D.Va 1996) ......................................... 14-16

*United States v. Stanley,* 483 U.S. 669 (1987) ................................................................... 9

*U.S. ex rel. Brooks v. Clifford*, 409 F.2d 700, *reh'g denied* 412 F.2d 1137 (4th Cir. 1969) .*Passim*

*Walmer v. DOD,* 835 F. Supp. 1307 (D. Kan. 1993)................................................................. 15-16

*West Virginia State Board of Education v. Barnette,* 319 U.S. 624 (1943) ........................... 19-20

*Wooley v. Maynard*, 430 U.S. 705 (1977) ................................................................... 19

## STATUTES & RULES

Fed.R.Civ.P. 59(e) ................................................................................................. *Passim*

2023 NDAA, § 525 ................................................................................................ *Passim*

10 U.S.C. § 1552 .................................................................................................. 14

10 U.S.C. § 1558 .................................................................................................. 14

42 U.S.C. § 1983 .................................................................................................. 11

42 U.S.C. § 2000bb-1 ........................................................................................... 10

42 U.S.C. § 2000cc-2 ........................................................................................... 10

## UNITED STATES CONSTITUTION

U.S. Const. Art. I, § 8, cl. 12-14 ............................................................................ 8

## OTHER AUTHORITIES

AR 600-20.......................................................................................................... 11

AR 635-20.......................................................................................................... 28

BUPERSINST 1730.111A........................................................................................ 11

COMDTINST 1000.15 ............................................................................................. 11

DAFI 52-501 ....................................................................................................... 11

DODI 1300.17...................................................................................................... 11

MILPERSMAN 1730-020 ......................................................................................... 11

**INTRODUCTION**

Plaintiffs move under Fed. R. Civ. P ("Rule") 59(e) for reconsideration and reversal of the Court's November 23, 2022 Order (the "Order"), ECF No. 86, denying Plaintiffs' August 19, 2022 Preliminary Injunction Motion ("PI Motion"), ECF No. 59, and *sua sponte* dismissing the May 18, 2022 Complaint. ECF No. 1. The Fourth Circuit recognizes three grounds for granting reconsideration: (1) a change in controlling law; (2) new evidence not available to the court; and (3) "to correct a clear error of law or prevent manifest injustice." *Sloas v. CSX Transp., Inc.*, 616 F.3d 380, 385 (4ᵗʰ Cir. 2010). All three of these grounds are President.

Congress passed the 2023 National Defense Authorization Act ("2023 NDAA") December 15, 2022. Section 525 of the 2023 NDAA expressly directs Department of Defense ("DoD") Secretary Austin to "rescind" the August 24, 2021 COVID-19 vaccine mandate ("DoD Mandate") within 30 days of the Act's passage (hereinafter the "Rescission"). *See* Ex. 1, 2023 NDAA, § 525 ("Section 525").

The 2023 NDAA is a change in controlling law that eliminates entirely the legal basis for the DoD Mandate and any need for Plaintiffs' to file religious accommodation requests ("RARs"). Section 525 is also both a change in controlling law and new evidence that Plaintiffs' claims are justiciable and reviewable under the "major policy decisions" doctrine and *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) ("*Mindes*"). Further, when the Court considers Plaintiffs' substantive claims upon reversal, Section 525 eliminates Military Defendants' primary defense, *i.e.*, that there is a compelling interest in denying Plaintiff chaplains' RARs and that 100% vaccination without religious exemptions is the least restrictive means for achieving that purpose.[1]

---

[1] The 2023 NDAA Rescission does not moot this case. Neither Section 525 nor any other provision of the 2023 NDAA would remedy or otherwise address Plaintiffs' irreparable harms and other injuries suffered due to Defendants' constitutional and statutory violations.

1

The Rescission also eliminates any claim that refusal to take the alleged vaccine can impact employability. The least restrictive means given CDC's guidance there should be no difference in treatment between vaccinated and unvaccinated persons, is the same treatment they've given Sec. Austin, the President and other military leaders who have caught COVID, as plaintiffs have argued in briefing and at oral argument, is isolation for a short period of time, treatment with accepted medical remedies, and returned to work. "Equal treatment in context of COVID here means equal treatment, especially because the alleged vaccines do not protect their recipients. Congress's Rescission also suggests it agrees with Plaintiffs that "natural immunity" is just as good if not better protection than the DoD's so-called vaccines.

The November 23 Order is also based on multiple clear errors of law regarding exhaustion and justiciability. Each Plaintiff has in fact pursued the only available military remedy the RAR, and many of them fully exhausted this remedy when they received a "final" administrative determinations denying their RAR appeal. The Court misapplied *Mindes* and contravened controlling Fourth Circuit precedent holding that service members are not required to pursue relief through the applicable Board of Correction of Military Records ("BCMR") for violations of their religious liberties and their conscience. The process for requesting religious accommodation requests ("RAR's") and its appeal process for a denial thereof is spelled out in the Defendants' regulations. That process ends when the final authority rejects a servicemember's appeal of the RAR denial.

That is consistent with well-established Fourth Circuit precedent that BCMRs are not empowered to find generally applicable military regulations unlawful or unconstitutional or to grant the relief requested by Plaintiffs, and thus a BCMR is not an "available" military remedy and is necessarily inadequate, which the Court overlooked when it found exhaustion through such

boards was required. The Court's error in the suitability of a BCMR as an available remedy also resulted in contravening controlling Fourth Circuit precedent that excuses Plaintiffs from exhaustion because the alleged First Amendment and RFRA violations presumptively cause irreparable harm.

Plaintiffs also submit that new evidence not available to the Court supports Plaintiffs' arguments for reconsideration regarding exhaustion and justiciability. In an opinion issued November 29, 2022, the Sixth Circuit quoted the government defense counsel's admission in oral argument that military remedies are necessarily futile and inadequate because, in Military Defendants' view, they may freely violate RFRA unless and until told otherwise by a federal court. *See Doster v. Kendall*, --- F.4th ---, 2022 WL 17261374, * 28 (6th Cir. Nov. 29, 2022) ("*Doster*") & *infra* Section III.

Reconsideration is also necessary to prevent manifest injustice due to Defendants' misrepresentations on which the Court relied in the November 23 Order and Defendant actions taken after the closing of the record on the PI Motion. Plaintiff Chaplains in the Navy and Air Force are protected by preliminary injunctions issued on a Service-wide basis, but Army chaplains are not. The Army began denying plaintiff Army chaplains' RARs and their appeals of RAR denials after the September 28, 2022 hearing on Plaintiffs' PI Motion (the "PI Hearing"). Defendants misrepresented the Army plaintiffs' available protections before separation upon which the Court relied in making its decision that separations "take a minimum of several months to complete and do[es] not necessarily conclude with termination." November 23 Order at 3-4.

Since the conclusion of the September 28 Hearing and the closing of the record, Plaintiff Army Chaplain ("CH") Captain Andrew Hirko had his RAR denied and has been told repeatedly he will be separated in a matter of weeks, not months. CH Hirko and any chaplain under six-years

3

time in service ("TIS") is not eligible for a separation board and the other procedural protections on which the Court relied. The Army has consistently stated its desire to separate him as soon as possible up to today. He has also been told that the Rescission will not interfere with that because his rejection of the alleged vaccine occurred before Congress passed the NDAA.

The Army War College originally informed CH Lewis (26-years of service) he would be involuntarily separated by January 19, 2023; he was scheduled to receive a General Officer Memorandum of Reprimand ("G0MOR") Monday, December 12, 2022. With the House's December 8, 2022, passage of the 2013 NDAA and its expected passage in the Senate sometime this week, his local commander wisely withheld presentation until the "smoke cleared" and he received further instructions.

The situations confronting Army Chaplains Hirko and Lewis were briefed to Defendant's counsel in coordinating whether Defendants would oppose this Rule 59 motion and consent to a Rule 82 stay pending appeal or TRO to protect them. Defendants' counsel reported the Army did not plan on taking any action against any plaintiff for 45 days. However, there appears to be a different understanding of the Army's position at the lower levels in CH Hirko's case. He has been consistently told by his chain of command his division's policy is to separate as quickly as possible all unvaccinated soldiers. After the 2013 NDAA's passage by Congress, he again asked if there was a change due to the NDAA's order to DoD resend the mandate. He was told by a JAG in the Division's legal office there was no change in the mandates rescission would not affect those who refuse the vaccine before Congress passed the NDAA.

Plaintiffs rely on the Defendants' counsel's representations and assume there is a temporary communication problem between the Army's higher echelon that communicated their position with their counsel and the lower echelons and that their counsel's position as represented

4

to Plaintiff's will be communicated to the Army's lower echelons quickly. Plaintiffs retain the option of seeking the Court's protection or intervention if the situation does not change quickly.

<u>**NEW EVIDENCE AND CHANGES IN CONTROLLING LAW**</u>

1.     The U.S. Army began denying RAR Appeals after the briefing for the PI Motion was completed and after the September 28, 2022 hearing ("September 28 Hearing").

2.     CH Captain Hirko was informed that his RAR appeal had been denied on October 3, 2022. *See* Ex. 2, CH Hirko Decl., ¶ 6. On that same date, he received a counseling statement stating that he would be separated per Army Regulation ("AR") 635-20 and that he could receive a "Less Than Honorable Discharge." *Id.* at ¶¶ 3-4 & Hirko Oct. 3, 2022 Counseling Statement, Part III. Because CH Hirko has less than six years of service, he is not entitled to a separation board or the other procedural protections discussed in the November 23 Order. CH Hirko's leadership has informed him they intend to separate him on an expedited basis, and that "they would be shocked if [he] is still in the Army at the end of the 2022 calendar year." *Id.*, ¶ 8. His Army unit maintains that despite the NDAA's command to rescind the mandate and the legal implications that follow from that decision, it will continue to take disciplinary and separation action against him. ¶ 12.

3.     CH (Colonel) Lewis's RAR was denied in accordance with the clear message of hostility the Army provided even before he submitted his RAR. Ex. 4, CH Lewis, ¶ 12. After his RAR appeal was denied, CH Lewis was counseled that he will be involuntarily separated by January 19, 2023. This date is just two weeks before the end of the three-year period of time in grade for him to retire as a Colonel, rather than Lieutenant Colonel. *Id.*, ¶ 12.b.

4.     On December 6, 2022, the United States House of Representatives Committee on Rules issued Rules Print 117-70, showing the text of the proposed James M. Inhofe National

Defense Authorization Act for Fiscal Year 2023 ("2023 NDAA"). Section 525 of the legislation

is titled "Rescission of COVID-19 Vaccination Mandate." In full, Section 525 provides:

> Not later than 30 days after the date of the enactment of this Act, the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021, regarding "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members."

Ex. 1. On December 8, 2022, the House passed the 2023 NDAA, including Section 525. On

December [15], the Senate passed the Senate's version of the 2023 NDAA, with no differences

from the House version, that included identical language in Section 525. On December [16], the

President signed the 2023 NDAA, including Section 525.

## LEGAL STANDARD

Plaintiffs seek reconsideration and reversal of the Court's November 23 Order, ECF No.

86, under Fed.R.Civ.P. 59(e). The Fourth Circuit has explained that:

> [w]hile the Rule itself provides no standard for when a district court may grant such a motion, courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.

*Collison v. Int'l Chem. Workers Union, Loc. 217*, 34 F.3d 233, 236 (4th Cir. 1994) (*quoting*

*Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993)). As explained below, reconsideration

should be granted on all of these grounds.

## ARGUMENT

## I.    THE 2023 NDAA IS A CHANGE IN CONTROLLING LAW.

In Section 525 of the 2023 NDAA, President Biden and Congress direct Secretary Austin

to "rescind" the DoD Mandate within 30 days of the NDAA's passage. *See* Ex. 1, 2023 NDAA §

525. The 2023 NDAA is a change in controlling law that eliminates entirely the legal basis for the

DoD Mandate and therefore any need to seek exemption from an order that is now a nullity.

6

Plaintiffs submit that the enactment of Section 525 of the 2023 NDAA alone provides grounds for reconsideration and complete reversal of the November 23 Order.

Regardless of how Military Defendants implement Section 525's directive,[2] the enactment of Section 525 in itself provides conclusive new evidence supporting Plaintiffs' central PI Motion arguments regarding justiciability, the merits of Plaintiffs' claims and Defendants' defenses, and the balance of equities and public interest factors in the Court's preliminary injunction analysis.

The enactment of Section 525 conclusively demonstrates that Secretary Austin sought to and did "usurp major policy decisions properly made by Congress." *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497 (1979) ("*Ford*") (citation and quotation marks omitted);*OSHA*, 142 S.Ct. at 668 (2022) (Gorsuch, J., concurring) (OSHA Mandate); *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 617 (5th Cir. 2021) ("*BST*") (same); *Kentucky v. Biden*, 23 F.4th 585, 607-608 (6th Cir. 2022) (federal contractor mandate).   *See generally* PI Motion, § I.A, at 15-18 and notes 23-28.

The enactment of Section 525 also eliminates one of the central premises for the Court's *sua sponte* dismissal: "Congress has not enacted legislation related to a COVID-19 vaccination requirement in the military." November 23 Order at 17. Now Congress has spoken to the issue,

---

[2] The DoD Mandate must be rescinded within 30 days of enactment, *i.e.*, by January [15], 2022. Plaintiffs cannot predict how exactly the Military Defendants will implement this statutory directive, what additional policies or orders may be adopted in conjunction with the mandate, or if the Military Defendants will adopt a new mandate in its place. In related litigation, Defendants have stated that this will likely require many additional changes in policy that will absorb the attention of senior leadership at the DoD and the Armed Services. *See* Ex. 2, "Emergency Motion to Stay Proceedings, No. 8:22-cv-1275-SDM-TGW (M.D. Fla. Dec. 9, 2022), ECF No. 252 at 7-8 (explaining that this litigation will "consume the limited time and resources of high-ranking military officials, many of whom would be needed to advise the military on how to implement a new congressional directive").

It would of course be preferable to have the new policies that Military Defendants will implement in place of the challenged actions before the Court in reviewing this Motion, but Rule 6(b)(2) expressly prohibits a district court from "extend[ing] the time to act under Rule[] .. 59(e)." Plaintiffs intend to seek leave of the Court for supplemental briefing on this issue after the DoD implements the congressional directive in Section 525.

eliminating any claim that Plaintiffs would seek to have "judges … running" the military. *Id.* (*quoting Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953)).

Secretary Austin further violated the Major policy Decision doctrine by establishing an irrebuttable presumption that "Mandatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to protect the Force and ensure its readiness to defend the American people", which became the Mandate's compelling purpose, allowing for no less restrictive means. Sec. Austin Memo to Undersecretary of Defense for Personnel and Manpower, ECF No. 74 -1 at 4.

 Seeing the disastrous effects on military readiness, retention and recruiting, and the Mandate's hostile message to people of faith, Congress exercised its "plenary authority" under Article I "'To raise and support Armies'; 'To provide and maintain a Navy'; "and 'To make Rules for the Government and Regulation of the land and naval Forces'" *Chappell v. Wallace*, 462 U.S. 296, 301 (1982) (*quoting* U.S. Const. Art. I, § 8, cls. 12-14) and overruled the Secretary. Congress disagreed that the Mandate served a compelling purpose and vetoed its use as such. The Rescission also bars the Services from using "deployability", "readiness" and "operational requirements" or other alleged factors as constraints or limitations on the use, and assignment of these plaintiffs.

Congress has settled the question of whether the DoD Mandate and other challenged actions are "major policy decisions": they are. Accordingly, Plaintiffs' challenges to these actions are necessarily justiciable and reviewable. Section 525 also settles any questions regarding deference to military judgment or discretion with respect to COVID-19 vaccine mandates: Congress has eliminated it with the expectation that courts will respect the judgment of Congress. Going forward this Court must reject any claims that the Court must defer to Military Defendants on matters of Constitutional or statutory interpretation with respect to the Mandate.

Section 525 also eviscerates the Military Defendants' defenses to Plaintiffs' First Amendment, Religious Freedom Restoration Act ("RFRA"), and 2013 NDAA Section 533 claims. Military Defendants no longer have any interest or authority in imposing COVID-19 vaccine mandates, much less a compelling one. Similarly, the DoD Mandate and the Categorical RAR Ban cannot be the least restrictive means of furthering that interest because Congress has directed Secretary Austin that this means may no longer be used at all.

Plaintiffs submit that Military Defendants' past actions also must be evaluated in light of Section 525. Congress rescinded the DoD Mandate not only because of the by now undisputed fact that the mandated, FDA-licensed vaccines are obsolete and ineffective against the Omicron variant, but also due to the string of court decisions finding that the Military Defendants' systematic violations of service members' religious freedoms and the mounting losses of highly experienced battle-hardened service members and new recruits alike. Military Defendants have long been aware of Congressional concerns and that they had overstepped the bounds of their authority. The Court should view all Plaintiffs' claims and Defendants' actions based on this reassertion of Congressional authority that rejects the Secretary's alleged compelling purpose and authority to change long settled definitions of vaccination and that reinforces and supports those Courts of Appeals' decisions finding the Mandate and its RAR process violate RFRA and the Constitution. The Rescission, in effect, also robs of any authority those District Court decisions disagreeing with the Circuit and district courts rejecting "exhaustion" and justiciability arguments.

## II.     THE NOVEMBER 23 ORDER IS PREMISED ON CLEAR ERRORS OF LAW REGARDING JUSTICIABILITY AND EXHAUSTION.

### A.     The Court Impermissibly Added a Judicially Created Exhaustion Requirement to RFRA.

Courts start with the presumption of a "virtually unflagging" duty to resolve all cases that fall within their jurisdiction. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491

U.S. 350, 359 (1989) (citation omitted). The Supreme Court has reaffirmed that the judiciary lacks a common-law power to create policy-rooted "exceptions" to its jurisdiction. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126–28 (2014) ("*Lexmark*"). Just because "congressionally uninvited intrusion into military affairs by the judiciary is inappropriate," *United States v. Stanley*, 483 U.S. 669, 683 (1987), does not mean that courts may "decline" an invitation that Congress has sent. They should review a claim against the military if Congress has "provided" for that review. *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988); *Parisi v. Davidson*, 405 U.S. 34, 39, 44–46 (1972).

In the November 23 Order, this Court added *Mindes'* judicially created exhaustion requirement that is not present in RFRA and the governing military regulations. The Court did so without citing any Fourth Circuit imposing an exhaustion requirement for RFRA claims, and it ignored the Fourth Circuit precedent pointing in the other direction.[3]

It is undisputed that RFRA itself does not include an exhaustion requirement. RFRA contains a right to sue:

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.

---

[3] The Court appears to concede that military RFRA claims are justiciable, and it repeatedly asserts that Plaintiffs' claims are non-justiciable "with the possible exception of Count III", *i.e.*, the RFRA claim. November 23 Order at 10. *See also id.* (finding that Plaintiffs' claims are non-justiciable "apart from potentially Count III"). Plaintiffs also cited several cases finding military chaplains Establishment Clause claims to be justiciable. *See, e.g., Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 295 (D.C. Cir. 2006) ("*CFGC*") (listing over a dozen cases where military chaplains raised Free Exercise and/or Establishment Clause claims were deemed justiciable).

The Court's findings that the RFRA and Establishment Clause claims are non-justiciable thus appears to rely solely on: (1) the clear error of law regarding exhaustion; (2) its clearly erroneous application of the *Mindes* analysis; and (3) its abuse of discretion and error of law in relying on Justice Kavanaugh's solo concurrence that was contradicted by the majority's holding in *Austin v. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022). Each of these arguments are addressed in the following sub-sections.

42 U.S.C. § 2000bb-1(c). When Congress has imposed procedural limits on RFRA or related statutes, it has done so expressly. For example, when passing RFRA's sister statute, the Religious Land Use and Institutionalized Persons Act of 2000, Congress left intact the express exhaustion requirement for prisoners in the Prison Litigation Reform Act of 1995. *See* 42 U.S.C. § 2000cc-2(e). Where Congress has imposed an express statutory exhaustion requirement, courts should not add an additional implied military-exhaustion requirement. *See Patsy v. Bd of Regents of Fla.*, 457 U.S. 496, 509-12 (1982) ("*Patsy*"). Accordingly, the Fourth Circuit authority relied on by Plaintiffs in the civilian context are not "inapposite," November 23 Order at 14, and the Court has cited no authority for disregarding this controlling Fourth Circuit precedent. *See generally* ECF 67, PL Reply Br., at 9-10 (*discussing inter alia Stuart Circle Parish v. Bd. of Zoning Appeals of City of Richmond, Va.,* 946 F.Supp.3d 1225, 1234 (E.D. Va. 1996) & *Cooksey v. Futrell*, 721 F.23d 226, 240-41 (4th Cir. 2013)).

The Supreme Court's precedent on RFRA strongly counsels against adding judicially created exhaustion requirements. When holding that RFRA allows damages suits against federal officials, it reasoned that 42 U.S.C. § 1983 allowed similar suits before RFRA. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 490–92 (2020). The same reasoning applies here. Before RFRA, § 1983 did not require a plaintiff to exhaust a free exercise claim with a state actor in order to sue that actor. *Patsy*, 457 U.S. at 516. *Accord Culbreth v. Ingram*, 389 F.Supp.2d 668 (E.D.N.C. 2005) (declining to read "judicially imposed exhaustion … [into] § 1983 cases in the military context") (*citing Patsy*, 457 U.S. at 513). The lack of an exhaustion requirement in § 1983 shows that this Court improperly read *Mindes's* exhaustion requirement into RFRA.

**B.**     **The Court Impermissibly Added a Judicially Created Requirement to Exhaust Remedies through BCMR for Violations of Religious Liberties and Conscience.**

**1.**     **Governing Military Regulations Do Not Require Service Members to Seek Relief Before BCMR.**

The military regulations governing RARs and RAR appeals do not require service members to exhaust remedies through an appeal to the BCMR.[4] Instead, the applicable military regulations all describe the denial or grant of an RAR appeal as a "final action" on the request[5] taken by the "final appeal authority."[6] Each Plaintiff has submitted an RAR, the majority of which have been denied, and over a dozen have also had their RAR appeals denied, including CH Hirko and CH Lewis. *See* ECF 72-3 (as of September 30, 2022, 27 of 42 have had their initial RARs denied and 14 have had their RAR appeal denied, not including CH Hirko). Accordingly, at least 15 of 42 Plaintiffs to date have had "final" administrative action taken on their RARs. Basic class action law states if one member of a class has exhausted his/her remedies, here the rejection of an appeal of the RAR denial, all have. [Cite]

---

[4] *See generally* ECF 1-4, DoD Instruction 1300.17, *Religious Liberty in the Military Services* (Sept. 1, 2020) ("DoDI 1300.17"); ECF 67-9, Dept. of the Air Force Instruction, 52-501, *Religious Freedom in the Department of the Air Force* (June 23, 2021) ("DAFI 52-501"); ECF 67-10, Dept. of the Navy, MILPERSMAN 1730-020 (Aug. 15, 2020); ECF 67-11, Dept. of the Navy, BUPERSINST 1730.111A (Mar. 11, 2022); ECF 67-12, COMDTINST 1000.15, *Military Religious Accommodations* (Aug. 30, 2021). ECF 65-4, Decl. COL Mahoney, U.S. Army, ¶¶ 15-17 (RARs are governed by Army Regulation 600-20, Appendix P-2b(1) & FRAGOs 5, 6, and 9).

[5] *E.g.,* ECF 1-4, DoDI 1300.17, at 10 & Table 1 ("Review and Action Timeline for Processing Accommodation Requests").

[6] *E.g.,* ECF 67-9, DAFI 52.201, ¶¶ 13 & 16 (the final appeal authority is the Air Force Surgeon General); ECF 67-11, MILPERSMAN 1730-020, ¶ 12.b (the final appeal authority is the Chief of Naval Operations); ECF 39-7, ¶ 15 (the final appeal authority is Commandant of the Marine Corps); ECF 65-4, Decl. COL Mahoney, U.S. Army, ¶ 18 (the final appeal authority is the Assistant Secretary of the Army for Manpower and Reserve Affairs).

### 2.      The Fourth Circuit Does Not Require BCMR Exhaustion for Violations of Religious Liberties and Conscience.

One of the principal Fourth Circuit cases on which the Court relies on for reading in a BCMR exhaustion requirement into these regulations, *see* November 23 Order at 11 (*citing Guerra v. Scruggs*, 942 F.2d 270 (4th Cir. 1991) ("*Guerra*"), stands for the exact opposite conclusion for service members who have alleged irreparable harm due to violations of their religious liberties and conscience. While the *Guerra* court found that the service member had not exhausted his military remedies through a BCMR for a due process claim, *Guerra*, 942 F.2d at 272-73, the *Guerra* court also explained that such exhaustion is not required where the service member "would have been required to violate his own conscience" while the matter was "litigate[d] administratively". *Id.* at 277 (*citing U.S. ex rel. Brooks v. Clifford*, 409 F.2d 700, *reh'g denied* 412 F.2d 1137, 1141 (4th Cir. 1969) ("*Clifford*")).

The Fourth Circuit's decision in *Guerra* and *Clifford* remain controlling precedent and reflects the Fourth Circuit's long-standing and "well-established rule" that service members need not seek relief through a BCMR for alleged violations of religious liberty and conscience.[7] It also illustrates the Fourth Circuit's analytical approach for evaluating these claims and is fully consistent with the approach advocated by Plaintiffs in their briefing and the cases cited as persuasive authority. *See generally* ECF 60, PL PI Mem., at 19-21; ECF, PL Reply Br., ECF 67 at 9-10.  The *Clifford* court began its analysis by explaining that:

> Where a statute does not require exhaustion, the rationale of judicial invocation of the doctrine is to avoid premature interruption of the administrative process, thereby preserving the integrity and autonomy of the agency— particularly where

---

[7] *Jones v. Mundy*, 792 F.Supp. 1009, 1011 n.2 (E.D.N.C. 1992) ("It is the well-established rule in this circuit that a serviceman can seek habeas relief as a conscientious objector once the commandant of his respective service has denied his CO application.")(*citing Clifford*). This 1992 case appears to be the last one citing *Clifford*, perhaps because RFRA was enacted in 1993 and thus provided a more effective avenue for relief than a *habeas* petition.

the administrative agency has vested in it discretionary powers or is intended to apply its expertise to the problem before it.

*Clifford*, 412 F.2d at 1139 (*discussing McKart v. United States*, 395 U.S. 185 (1969)). The *Clifford* court found that none of these factors supported exhaustion through the BCMR where, like here, the service member had already pursued their request through the only military procedure available and had received a final denial of their request.

The applicable military regulations governing requests for conscientious objectors in *Clifford* —DOD 1300.6 and AR 635-20 (*i.e.,* a previous version of the AR applicable to Army Chaplains), like here —did not "provide[] for or contemplate an application to the" Army BCMR. *Id.* at 1139. Also, like here, the applicable military regulations stated that the decision received through this procedure was final: "the administrative process was complete and completed, … when his request for discharge as a conscientious objector was denied." *Id.* Accordingly, "the administrative process would neither be interrupted nor its integrity violated" by judicial review after receipt of the final administrative determination. *Id.*

### 3. BCMRs Lack Jurisdiction Over Constitutional Challenges.

Congress has not granted BCMRs the authority to address constitutional claims. The governing statute, 10 U.S.C. § 1552, authorizes the Service secretaries to correct military records through the use of boards of correction.[8]

*Clifford* also found the Army BCMR established under 10 U.S.C. § 1552 likely "does not have jurisdiction to grant relief" *Id.* at 1139. For this reason, the Army BCMR was "not presumed

---

[8] 10 U.S.C. §1558(f) specifically provides for judicial review of selection board actions only after a plaintiff has requested a special board and relief through boards of corrections. However, §1558(g) Existing jurisdiction, states:" Nothing in this section limits— (1) the jurisdiction of any court of the United States under any provision of law to determine the validity of any law, regulation, or policy relating to selection boards." Plaintiffs challenge the validity of regulations and policies but not relating to selection boards.

14

to have any particular expertise in conscientious objection matters, nor would its decision involve the exercise of discretion." *Id.* at 1140. Because the question presented to the court upon review would solely be "one of law", "[j]udicial review would not be aided by the views of the [BCMR] on this question." *Id.* at 1140.

*Thorne v. United States DOD*, 916 F. Supp. 1358 (E.D.Va 1996) ("*Thorne*") collected numerous precedents where exhaustion was excused where litigants raised "substantial constitutional questions." *Id.* at 1363-1364. The *Thorne* court excused exhaustion because "resolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board." *Id.* (*quoting Glines v. Wade*, 586 F.2d 675, 678 (9th Cir. 1978), *rev'd on other grounds sub nom. Brown v. Glines*, 444 U.S. 348 (1980)).

### 4.   BCMRs Lack Jurisdiction To Hear Challenges to Generally Applicable Military Policies or Regulations.

The Court's November 23 Order's decisions on justiciability and exhaustion are also contrary to a distinct line of cases that apply more broadly than violations of religious liberty and conscience, namely, cases challenging a generally applicable military regulation or policy. Plaintiffs' challenge several generally applicable regulations like the DoD Mandate and the Categorical RA Ban.[9]

The Plaintiffs briefed this extensively with respect to the Fourth Circuit's decision finding that the categorical bans on transgender and HIV-positive service members did not require

---

[9] Plaintiffs' arguments that the BCMR lacks jurisdiction to grant the requested relief such that the remedy is futile and inadequate are entirely distinct from Plaintiffs' that the RAR process itself is futile because it is a rigged process that amounts to little more than "theatre". ECF 60, PL PI Mem., at 20 (*quoting Navy SEALs 1-26*, 2022 WL 34443, at *1 (N.D. Tex. Jan. 3, 2022). These claims are addressed in the following section.

exhaustion.[10] In those and other Fourth Circuit cases, exhaustion through the BCMR was found to be both futile and inadequate on jurisdictional grounds:

> [C]annot adjudicate a claim that the [military] policies *themselves* are unconstitutional or otherwise unlawful. That an appeal to the AFBCMR could not address the heart of plaintiffs' claims changes the exhaustion calculus.

*Roe I*, 359 F.Supp.3d at 403 (emphasis in original). The *Thorne* court also excused exhaustion because the Navy had not shown that the Navy's BCMR "has the authority to strike down a military regulation as unconstitutional on its face." *Thorne*, 916 F.Supp. at 1364 (*citing Walmer v. DOD,* 835 F. Supp. 1307, 1310 (D. Kan. 1993) (Government "admitted in oral argument that the [Army BCMR] does not have the authority, except on an as-applied basis, to hold a military policy unconstitutional, and that in fact, it is impermissible for the [Army BCMR] to strike down a military policy on its face."). *See also May v. Gray,* 708 F.Supp.716, 720 (1988) ("Under the defendants' argument the focus then becomes whether the ABCMR is empowered to change the regulation. It is undisputed that the ABCMR is not so empowered.").

Of equal importance, BCMR decisions are merely recommendations to the Service Secretaries executing Secretary Austin's Categorical RA Ban and who may disregard or overrule the BCMR's recommendation.[11] The final appeal authorities whose decisions the BCMRs are reviewing are three-star or four-star flag officers who report directly to the Service Secretary. *See*

---

[10] *See generally* ECF 60, PL PI Mem., § I.A. & (*discussing Roe v. Shanahan*, 359 F.Supp.3d 382, 421 (E.D. Va. 2019) ("*Roe I*"), *aff'd sub nom.*, *Roe v. Dept. of Defense*, 947 F.3d 207 (4th Cir. 2020) ("*Roe II*") (HIV categorical ban); *Stone v. Trump*, 280 F.Supp.3d 747 (D. Md. 2017) ("*Stone I*"), *stay denied pending appeal* 2017 WL 9732004 (4th Cir. Dec. 21, 2017) (transgender categorical ban).

[11] *See* 10 U.S.C. § 552(a)(1) ("The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department."). *See also Hodges v. Callaway*, 499 F.2d, 423 (5th Cir. 1974) ("the Service Secretary *always* has the final say over decisions by … the BCMR[.]") (emphasis added).

16

*supra* note 6. "Nothing suggests that the [BCMRs] would depart from the conclusions" of the Service Secretaries or other senior decisionmakers "and conclude that [their] determinations contained an 'error' to 'correct' or an 'injustice' to 'remove.'" *Roe I*, 359 F.Supp.3d at 403. Accordingly, exhaustion does not require a further appeal to a BCMR before seeking relief in federal court. *Roe I*, 359 F.Supp.3d at 404.

### C.    The Court's Decision Does Not Follow *Mindes'* Legal Analysis

#### 1.    *Mindes'* Justiciability Analysis and Categories of Justiciable Claims.

In adopting the *Mindes* test to determine when a court can review challenges to military decisions, the Fourth Circuit also adopted *Mindes'* two-step analytical approach and the rationale and upon which that test is based. *See generally Williams v. Wilson*, 762 F.2d 357 (4th Cir. 1985). The Court failed to follow either.

Citing the complex nature of the conflicting yet interrelated constitutional issues when courts are asked to review military decisions, *Mindes* extracted legal principles from historical practice. *Mindes'* analysis began citing the "teaching of *Bell v. Hood*, 327 U.S. 678 (1946) "that the procedure of rendering a final dismissal for want of jurisdiction should be utilized sparingly" and "[d]ismissal for want of jurisdiction is appropriate only if the federal claim is frivolous or a mere matter of form." *Mindes,* 453 F.2d at 198 (citation omitted). The *Mindes* court held that because the service member's "federal claims are not frivolous, it follows that the court erred in basing its dismissal on lack of jurisdiction." *Id.*

*Mindes* then examined Supreme Court precedent, starting with *Harmon v. Brucker*, 355 U.S. 579 (1958). *Harmon* concluded the Army Secretary had exceeded the scope of his statutory and regulatory powers when he used "pre-induction activities" in characterizing draftees' service upon their discharge. "But more importantly for our purposes, the Court held that the federal courts

may review matters of internal military affairs to determine if an official has acted outside the scope of his powers." *Mindes*, 453 F.2d at 199 (emphasis added). That is clearly this case here.

*Mindes* then examined *Orloff v. Willoughby*, 345 U.S. 83 (1953), a case that this Court gives great weight in its *sua sponte* dismissal of Plaintiffs' complaint. *See* November 23 Order at 17. The *Mindes* court emphasized that "the Court allowed review of this attack although it denied relief to Orloff on the merits." *Mindes* at 199. *Mindes* warned that the *Orloff* Court's statement "the courts would not review duty assignments even if discriminatorily [sic] made ... must be read restrictively" because "this phase of Orloff's case raised no question of deprivation of constitutional rights or action clearly beyond the scope of Army authority." *Mindes* stated the obvious: "The Court could not stay its hand if, for example, it was shown that only blacks were assigned to combat positions while whites were given safe jobs in the [rear]." *Id*.

*Mindes* then noted "numerous cases where courts of appeal have held that review is available where military officials have violated their own regulations", supporting Mindes' argument "it happened to him." *Id. Bluth v. Laird*, 435 F.2d 1065 (4th Cir. 1970), was one of those noted cases, which held that:

> [N]either this Court, nor others to which a similar issue has been presented, has evidenced hesitation in directing the military to comply with its own regulations where it has been shown that a regulation was not followed, and there has been a prima facie showing that a member of the military has been prejudiced thereby.

*Bluth*, 435 F.2d at 1070-1071. *See also Mindes*, 453 F.2d at 200 (*citing Morse v. Boswell*, 289 F. Supp. 812 (D.Md.1968), *aff'd*, 401 F.2d 544 (4th Cir. 1968) (law allowing the President to call up reserve forces reviewed and found constitutional).

### 2.   Military Defendants' Actions Are Unconstitutional Actions Beyond Military Defendants' Authority.

Plaintiffs have alleged that Military Defendants have adopted a series of generally applicable regulations that violate Plaintiffs' religious liberties and conscience and that are beyond

their authority, in particular, the DoD Mandate and the Categorical RA Ban. The 2023 NDAA shows Congress agrees with Plaintiffs and rejects the Secretary's assertion of power to establish major policies that belongs only to Congress and fails to protect Plaintiffs' religious liberty.

### 3. Plaintiffs Raise Establishment Clause Claims That Do Not Require Exhaustion.

The November 23 Order similarly fails altogether to address Plaintiffs' Establishment Clause claims and it cites no Fourth Circuit authority for finding that these claims are not justiciable or that they require exhaustion under *Mindes*. In fact, Plaintiffs could find no case where a non-prisoner Establishment Clause claim was required to go through some administrative process.[12] Because an Establishment violation produces irreparable harm in addition to being an exercise of government power without authority, courts have a duty to compel the government to return to its constitutional limitations. Further, the irreparable harm caused by Establishment Clause violations excuses exhaustion. *See infra* Section II.C.4.

Plaintiffs have argued they are being asked to surrender their conscience as formed by their faith; vaccination in essence becomes a ceremony of denial of who they are spiritually. This is not unlike the government's efforts to force Jehovah's Witnesses to salute the flag and recite the Pledge of Allegiance contrary to their religious beliefs. *West Virginia State Board of Education v. Barnette,* 319 U.S. 624 (1943) established that such action "transcends constitutional limitations on [government] power and invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control." *Id.* at 639. *See also Wooley v. Maynard*, 430 U.S. 705, 714-715 (1977) ("Here, as in *Barnette*, we are faced with a

---

[12] The prisoners are the only exceptions because Congress has specifically required such claims be exhausted through institutional administrative review procedures set up to review such claims. That is an understandable exception based on the unique prison requirements and the special status of prisoners whose rights are necessarily limited and regulated.

state measure which forces an individual, as part of his daily life ... to be an instrument for fostering

public adherence to an ideological point of view he finds unacceptable"). *Barnette* forbids such

government action.

> The very purpose of a Bill of Rights was to withdraw certain subjects from the
> vicissitudes of political controversy, to place them beyond the reach of majorities
> and officials and to establish them as legal principles to be applied by the courts.
> One's right to life, liberty, and property, to free speech, a free press, freedom of
> worship and assembly, and other fundamental rights may not be submitted  to vote;
> they depend on the outcome of no elections.

*Id*. at 638.

Here the Secretary seeks to establish an orthodoxy built on two principles, (1) opposition

to abortion is not welcome and forbidden, and (2), your conscience must be controlled by officials,

not your faith. *Barnette* clearly forbids such actions, explaining that:

> If there is any fixed star in our constitutional constellation, it is that no official, high
> or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or
> other matters of opinion or force citizens to confess by word or act their faith
> therein. If there are any circumstances which permit an exception, they do not now
> occur to us.

*Id*. at 642. When government treats persons differently on the basis of religion, it also violates the

Equal Protection component of the Fifth Amendment. The Due Process Clause places an

affirmative duty on the Secretary and the DoD to treat Plaintiffs as it would treat similarly situated

military personnel and protect Plaintiffs' constitutional rights including their "sphere of intellect

and spirit" and their conscience as formed by their faith. "Much of the vagueness of the due process

clause disappears when the specific prohibitions of the First become its standard [and] it is the

more specific limiting principles of the First Amendment that finally govern this case*." Id.* at 639.

### 4.      Fourth Circuit Precedent Presumes Irreparable Harm from First Amendment Violations, Excusing Exhaustion under *Mindes*.

Fourth Circuit cases applying *Mindes* excuse exhaustion for service members facing

irreparable harm. *See, e.g., Roe II*, 947 F.3d at 218; *May*, 708 F.Supp. at 719-20. Where, as here

First Amendment violations are alleged, the "irreparable harm" alleged by Plaintiffs is "inseparably linked to [the] claims of violation of First Amendment rights." *Giovani Carandola, Ltd. V. Bason*, 3030 F.3d 507, 511 (4th Cir. 2002) (citation omitted). Because these factors are "inseparably linked" for First Amendment claims, "[d]etermination of irreparable harm thus requires analysis of [Plaintiffs'] likelihood of success on the merits." *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 254–55 (4th Cir. 2003). Because the Court denied Plaintiffs' PI Motion and dismissed their Complaint based solely on its erroneous justiciability and exhaustion determinations, it failed to consider the merits or the presumptive harm from violations of Plaintiffs' First Amendment rights.

Plaintiffs have relied on controlling precedent in cases like *Elrod v. Burns* that state in no uncertain terms that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). In the Fourth Circuit, "[v]iolations of first amendment rights constitute per se irreparable injury." *Johnson v. Bergland*, 586 F.2d 993, 995 (4th Cir. 1978). The presumption of irreparable harm applies to violations of the Free Speech and Free Exercise clauses. *See, e.g., Gracepointe Church v. Jenkins*, 2006 WL 1663798, at *3 (D.S.C. June 8, 2006) (citation omitted). Plaintiffs raise both. *See* ECF 60, PL PI Mem., at 2 (Defendants "actions violate RFRA and the First Amendment's Free Exercise, Free Speech"); 13 ("compelled speech supporting government policy and censorship and suppression of religious expression"); 28 ("compelled speech"); 31 (coerced and compelled government speech); 34 ("compel government-endorsed speech promoting vaccination and dismissing religious objections").

The Establishment Clause violations alleged by Plaintiffs also presumptively cause irreparable harm. Plaintiffs argued that *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) ("*CFGC*"), which has been adopted by the Fourth Circuit, controlled this

case because it addressed chaplains seeking to hold the Navy accountable for religious discrimination. The *CFGC* court held that violations of the Establishment Clause also presumptively cause "irreparable harm" necessary to support an injunction. PI at 4. There, the D.C. Circuit held:

> [T]he Establishment Clause is implicated as soon as the government engages in impermissible action. Where, as here, the charge is one of official preference of one religion over another, such governmental endorsement sends a message to nonadherents [of the favored denomination] that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community.

*CFGC*, 454 F.3d at 302. The constitutional injury "occurs merely by virtue of the government's purportedly unconstitutional policy or practice establishing a religion." *Id.* Sending a forbidden message of preference or hostility is the irreparable harm, without the need for chaplains to make any further showing.

The Fourth Circuit adopted *CFGC* in *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 602 (4th Cir.2017) ("*IRAP*"), *vacated and remanded sub nom.*, *Trump v. Int'l Refugee Assistance Project,* 138 S.Ct. 353 (2017) ("*IRAP II*").[13] In doing so, the Fourth Circuit adopted the

---

[13] The Fourth Circuit's decision in *IRAP* was vacated because it addressed a challenge to Executive Order No. 13,780, which had expired by its own terms when it reached the Supreme Court and thus "no longer present[ed] a live case or controversy." *IRAP II*, 138 S.Ct. at 353. The Supreme Court "express[ed] no view on the merits." *Id.*

A subsequent decision by the Fourth Circuit was also vacated, *see Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233 (4th Cir.2017) ("*IRAP*"), *vacated and remanded sub nom.*, *Trump v. Int'l Refugee Assistance Project,* 138 S.Ct. 2710 (2018), and remanded for further consideration in light of *Trump v. Hawaii*, 138 S.Ct. 2392 (2018). The Supreme Court did so because it found that the Fourth Circuit had incorrectly evaluated the Establishment Clause under strict scrutiny review applicable for claimed violations by U.S. citizens, instead of rational basis review for claims by foreign nationals challenging a Presidential Proclamation governing the entry of foreign nationals. The Supreme Court did not reach the irreparable harm factor. The Supreme Court decision did not cite *CFGC*, nor did it overturn the *IRAP* and *CFGC* presumption that Establishment Clause violations cause irreparable harm.

approach of the D.C. Circuit (*CFGC*), as well as the Second, Fifth, and Seventh Circuits that "have interpreted [*Elrod*] to apply equally to Establishment Clause violations."[14]

The Fourth Circuit has stated its agreement "with these courts that because of 'the inchoate, one-way nature of Establishment Clause violations,' they create the same type of immediate, irreparable injury as do other types of First Amendment violations." *IRAP,* 857 F.3d at 602 (*quoting CFGC*, 454 F.3d at 303; *see also id.* ("[W]hen an Establishment Clause violation is alleged, infringement occurs the moment the government action takes place . . . .").

The argument is also consistent with the *Guerra* and *Clifford* cases addressing service members' claims. The *Clifford* court emphasized that:

> [I]f petitioner's claim of conscientious objection is well-founded (and we have decided that it is), petitioner, and others similarly situated, will be required to litigate administratively during a period of which each hour of each day they are required to engage in conduct inimical to their consciences or be subject to court martial, with the added risk that in the ordinary course of the operations of the military, they may be ordered to a duty even more offensive to them.

*Id.* at 1141. *See also Roe I*, 359 F.Supp.3d at 404 (finding exhaustion was not required where plaintiffs can show irreparable harm and where the process can take as long as 18 months during which time they will continue to suffer harm).

This is precisely the same rationale for finding irreparable harm from denial of RARs and facing a choice between vaccination or violating conscience that has been cited in the RFRA cases granting injunctions. Threatening or punishing Plaintiffs for following their conscience is irreparable harm based on Plaintiffs' religious belief, *i.e.*, faith. "[O]ur cases require [] careful

---

[14] *IRAP*, 857 F.3d at 602 (*citing CFGC*; *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996); *Parents' Ass'n of P.S. 16 v. Quinones*, 803 F.2d 1235, 1242 (2d Cir. 1986); *ACLU of Ill. v. City of St. Charles*, 794 F.2d 265, 274 (7th Cir. 1986)).

examination of any law challenged on establishment grounds with a view to ascertaining whether it furthers any of the evils against which that Clause protects. *Comm. for Pub. Educ. v. Nyquist,* 413 U.S. 756, 794 (1973). The Court's error on exhaustion and justiciability led to overlooking this duty, especially given the irreparable harm caused by DoD's open and blatant sham RAR process, which was verified by the DoD Inspector General, *see* ECF No. 74-1 at 2-3, and erroneously dismissed by the Court. November 23 Order at 12 n.15.

### D.      APA Claims Do Not Require Administrative Exhaustion.

The November 23 Order fails altogether to address Plaintiffs' APA claims (except to recite the phrase in a footnote, *see* November 23 Order at 5 n.11), or to address Plaintiffs' arguments that these claims are justiciable and do not require any further exhaustion of remedies.

The APA does not impose an exhaustion requirement and instead "incorporates exhaustion requirements established by statute or agency rule." *Darby v. Cisneros*, 509 U.S. 137, 145 (1993) ("*Darby*"). Notwithstanding Defendants' assertions to the contrary, there is "no military exception to *Darby*." *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 84 (D. Md. 2021) (*quoting Brezler v. Mills*, 220 F. Supp. 3d 303, 323 (E.D.N.Y. 2016). *See also Ostrow v. Sec'y of Air Force*, 48 F.3d 562 (D.C. Cir. 1995) (per curiam); *Crane v. Sec'y of Army*, 92 F.Supp.2d 155, 161 (W.D.N.Y. 2000) ("Almost without exception, federal courts throughout this country have also declined to create a military exception to the Court's decision in *Darby*.").

The November 23 Order's findings on exhaustion (or non-findings with respect to the APA claims) directly contradicts the Fourth Circuit precedent in *Roe* and other cases that BCMRs do not have jurisdiction to adjudicate claims that the military's "policies *themselves* are unconstitutional or otherwise unlawful." *Roe I*, 359 F.Supp.3d at 403 (emphasis in original). *Accord May,* 708 F.Supp. at 720. Also like the case at bar, exhaustion through the BCMR was not required, because plaintiffs had already pursued available military remedies, and they "presented

their claims to a complex, tiered administrative review process ... culminating in an extensive administrative record and final written decision." *Roe I*, 359 F.Supp.3d at 402.

    **E.**    **The November 23 Order Improperly Relied on Justice Kavanaugh's Solo "Concurrence" and Other District Court Decisions Contrary to Controlling Supreme Court Precedent and All Other Circuit Court Decisions.**

The November 23 Order acknowledges that the Fourth Circuit has not addressed any military vaccine cases. *See* November 23 Order at 6 ("There have no such cases within the Fourth Circuit."). The Court abused its discretion by relying solely on out-of-circuit district court cases and Justice Kavanaugh's solo "concurrence" in a "non-binding, shadow docket decision," *Navy SEAL 1 v. Austin*, 2022 WL 1294486, at * 4 (D.D.C. Apr. 29, 2022) ("*Navy SEAL 1*"), while ignoring decisions by the Fifth and Sixth Circuits cited by Plaintiffs that are consistent with Fourth Circuit precedent and the Plaintiffs' arguments in the briefing, at the September 28 Hearing, and in this Motion.

The November 23 Order's finding that Plaintiffs' claims are not justiciable relies in large part on Justice Kavanaugh's solo "concurrence" in *Navy SEALs 1-26 v. Austin*, 142 S.Ct. 1301 (2022), which is cited or quoted six times. Justice Kavanaugh was only speaking for himself, as no other Justice joined his opinion. The majority's decision left intact the district court's and the Fifth Circuit's determinations that RFRA claims largely identical to Plaintiffs were justiciable under *Mindes*, satisfied any applicable exhaustion requirements, ripe, and met all other requirements for granting a preliminary injunction.

This "non-binding, shadow docket decision," *Navy SEAL 1*, at * 4, did not purport to go beyond the facts of, or specific parties to, the case. Nor did it adopt a broader "military non justiciability" doctrine articulated by Justice Kavanaugh. His solo opinion concluding that "RFRA does not justify judicial intrusion into military affairs in this case", *Austin*, 142 S.Ct. at 1302 (Kavanaugh, J., Concurring), appears to be a dissent because it was contrary to the majority's

decision and his conclusion would have required dissolution of the injunction. Following Kavanaugh's concurrence would require the overruling of clear and binding Supreme Court precedent going back at least as far as the Civil War[15] and controlling Fourth Circuit precedent in cases such as *Guerra, Clifford, Roe II,* and *IRAP*. This Court's decision to rely on a solo dissenting opinion that contravenes Supreme Court and Fourth Circuit precedent is an abuse of discretion that in and of itself requires reconsideration and reversal of the November 23 Order.

The Court also chose to ignore persuasive precedent from the Fifth Circuit on the Navy mandate in *Navy SEALs 1-26 v. Austin* and the Sixth Circuit in *Doster v. Kendall* that were briefed extensively by Plaintiffs. *See* ECF 60, PL PI Mem., at 20-23 & 29-31; ECF 67 PL Reply Br.,at 8-9 & 17-18.[16] The Court abused its discretion by relying solely on out-of-circuit district court cases and a solo dissent, while ignoring the opinions of sister circuits on this precise issue.

III.   **NEW EVIDENCE DEMONSTRATES THAT PLAINTIFFS ARE EXEMPT FROM EXHAUSTION BECAUSE MILITARY ADMINISTRATIVE REMEDIES ARE FUTILE AND INADEQUATE.**

New evidence not available to the Court supports Plaintiffs' arguments for reconsideration regarding exhaustion and justiciability. In the November 29, 2022 *Doster* opinion, the Sixth Circuit quoted the government defense counsel's admission in oral argument that military remedies are

---

[15]  *See Ex Parte Milligan,* 71 U.S. (4 Wall.) 2, 120 (1866) ("The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances."); *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953) (reviewing Army assignment policies and actions); *Laird v. Anderson*, 466 F.2d 283, 284 (D.C. Cir. 1972) *cert. denied*, 409 U.S. 1076 (1972) (permitting review of mandatory chapel service at Service Academies under Establishment and No Religious Test Clauses without exhaustion requirement).

[16]  The Court also disregarded the clear distinctions between this case and the Washington, DC district court's decision in *Navy SEAL 1* that was cited by the Military Defendants 20 times in their opposition to the PI Motion. *See generally* ECF 67, PL Reply Br., at 2, 8, 17, 20.

necessarily futile and inadequate and that the only remedy available to service members is through

judicial review.

> According to the Air Force, RFRA allows it to freely burden a service member's religious beliefs (even for irrational reasons) in its day-to-day operations. The Air Force says that the statute gets triggered only in judicial proceedings, at which point it must come up with sufficient justifications for its actions under strict scrutiny. Lest there be any doubt, counsel responded "more or less yes" when asked at argument whether the executive branch took the "position that [it does] not have to worry about RFRA until somebody sues." Arg., No. 22-3497, at 18:37–:46. Under this view, even if the Air Force had patently misread RFRA when denying religious exemptions (say, by rejecting all requests on the ground that RFRA does not apply to the military), that universal error provides no basis for class certification. Instead, the Air Force could correct all such systematic errors by later engaging in the proper case-by-case inquiry in court

*Doster*, 2022 WL 17261374, at *28.[17]

This admission by government counsel is binding on the government and directly

contradicts the government's representations in this proceeding. It also directly contradicts this

Court's finding that the military remedies are not futile or inadequate and eliminates any factual

or evidentiary basis supporting this Court's finding.

## IV.   RECONSIDERATION IS REQUIRED TO PREVENT MANIFEST INJUSTICE.

### A.   The November 23 Order Relied on DoD Misrepresentations of Service Members' Procedural Rights and Protections.

The Court's erroneous conclusion that separations "take a minimum of several months to

complete and do not necessarily conclude with termination", Order, ECF 86, at 3-4, is based on

---

[17] There does not appear to be an official transcript that Plaintiffs can file as part of the record. The complete oral argument is available at the following link: https://www.opn.ca6.uscourts.gov/internet/court_audio/aud2.php?link=recent/10-19-2022%20-%20Wednesday/22-3497%20Hunter%20Doster%20v%20Frank%20Kendall%20et%20al.mp3&name=22-3497%20Hunter%20Doster%20v%20Frank%20Kendall%20et%20al (last visited Dec. 16, 2022). The discussion of RFRA's exhaustion requirements this point takes place from roughly 16:00-22:00 at the link, while the statement by government counsel occurs at roughly 18:50.

Defendants' misrepresentations of service members' procedural protections concerning timing of discharge proceedings and opportunities for unvaccinated military personnel to contest government decision to discharge them.  Defendants' arguments in its Opposition to the Plaintiffs' Preliminary Injunction Motion erroneously stated that:

> In *Mark Short*, the court concluded that a Marine Corps officer whose appeal had been denied failed to exhaust administrative remedies because "he still must undergo separation proceedings before any permanent adverse consequences are imposed." 2022 WL 1051852, at *4. Moreover, the officer would have the opportunity to submit a "written rebuttal" during separation proceedings, and four different individuals would consider his separation, "any one of which could decide to close the process upon review of Plaintiff's written submissions." *Id.*

ECF 65, DF Opp'n to PL PI Mot., at 17. These procedures do not apply for service members like CH Hirko who have less than six years of service as CH Hirko explains in his declaration.

> The Defendants are referring to a separation board but failed to inform the Court that all military personnel are not entitled to such a separation proceeding.

> I and others like me do not qualify for a Separation Board because I have less than two years of service. I do not "have the opportunity to submit a "written rebuttal" during separation proceedings, and four different individuals [will not] consider [my] separation." *Id.*  I have exhausted all of my Army administrative means of relief. Absent the Court's intervention my separation from the Army is guaranteed and predetermined.

Hirko, Ex 2,¶¶ 3-4.

Service members with less than six years of service are not entitled to a Separation Board and may be discharged without the procedural protections discussed in the November 25 Order. *See generally* Army Regulation ("AR") 635-20 *See also Guerra*, 942 F.2d at 272 ("Because he had not served in the Army for at least 6 years, Guerra was not entitled to such a hearing." AR 635-200 § 2-2d (1989)).

## B.    The November 23 Order Will Result in Irreparable Harm.

Discharging CH Hirko will take him out of the class and result in irreparable harm because the Army's negative and retaliatory personnel actions against him are motivated by religious

hostility to people who follow their conscience as formed by their faith and the Army's failure to meet its burden under RFRA. *See* II.A *supra*. The Army's continued threats against CH Hirko despite the imminence of the enactment of the 2023 NDAA rescinding the DoD Mandate are further evidence of such prejudice and bad faith. *See* Hirco, Decl. (Ex. 2) at ¶ 12.

CH Lewis's declaration, Exhibit 3, states, "The negative response to my request for a religious accommodation began on 18 October 2021 with a required command counseling from the U.S. Army War College Deputy Commandant", for the outrageous conduct of requesting "a Religious Accommodation which is covered in depth in AR 600-20" and included threats of court-martial, loss of all benefits and possible destruction of the opportunities for post military ministry. ¶¶ 5-6. "The timing is important to consider. These threats, ostensibly triggered by my negative "conduct", were made as part of my initial accommodation request packet before it was even submitted to the "system" for adjudication. This is a clear demonstration of anti-religious bias." *Id.* ¶ 6.

The Army Secretary's language as the basis for Ch Lewis' separation, "Misconduct, Moral or Professional Dereliction", state the characterization of service for an "other than honorable" discharge. *Id.* ¶ 10.  This is another proof of extreme hostility and retaliation for the exercise of a protected right, following one's conscience as formed by faith.

## V.      CONCLUSION

This Court should grant Plaintiffs' Motion for Reconsideration, reverse the November 23 Order, grant the Plaintiffs' PI Motion and allow them to move for partial summary judgment on those areas and claims where the Rescission makes the issues pure questions of law.

Dated: December 17, 2022                    Respectfully Submitted,

                                            */s/ Arthur A. Schulcz, Sr.*
                                            Arthur A. Schulcz, Sr.

VA Bar No. 30174
Chaplains Counsel, PLLC
21043 Honeycreeper Place
Leesburg, VA 20175
Tel. (703) 645-4010
Email: art@chaplainscounsel.com

*/s/ Brandon Johnson*
Brandon Johnson
DC Bar No. 491370
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org

*/s/ J. Andrew Meyer*
J. Andrew Meyer, Esq.
Fla Bar No. 0056766
FINN LAW GROUP, P.A.
8380 Bay Pines Blvd
St. Petersburg, Florida 33709
Tel.: 727-709-7668
Email: ameyer@finnlawgroup.com

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

On this 17th day of December, 2022, the Plaintiffs' Motion was e-filed using the CM/ECF system.

Respectfully Submitted,

*/s/ Arthur A. Schulcz*
Arthur A. Schulcz