**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| _____ )<br>ISRAEL ALVARADO, *et al.*, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>LLOYD AUSTIN, III, in his official )<br>capacity as Secretary of Defense, U.S. )<br>U.S. DEPARTMENT OF DEFENSE, )<br>*et al.*, )<br> )<br>Defendants. )<br>_____ ) | Civil Action No. 1:22-cv-00876-ATF-JFA |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' RULE 59(e) MOTION FOR RECONSIDERATION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

I.     Factual Background .................................................................................. 2

II.    Procedural Background............................................................................. 3

III.   The Court's Dismissal Order .................................................................. 4

IV.    Subsequent Events .................................................................................. 5

V.     Plaintiffs' Motion .................................................................................... 6

LEGAL STANDARD............................................................................................ 6

ARGUMENT ........................................................................................................ 7

I.     The Enactment of the 2023 NDAA Does Not Justify Reconsideration............................ 7

II.    Plaintiffs Have Identified No Clear Errors of Law that Justify Reconsideration. ............ 10

       A.     Plaintiffs' Arguments About the *Mindes* Exhaustion Doctrine are
              Irrelevant Because the Complaint Raised No Ripe Claims. ................................ 10

       B.     Neither RFRA Nor the Free Exercise Clause Entitles Plaintiffs to
              Declaratory or Injunctive Relief Against the Military Without Exhaustion......... 11

       C.     Plaintiffs Did Not Satisfy any Exception to Exhaustion........................................ 17

              1.     Plaintiffs Identify No Irreparable Injury that Will Result if they
                     Pursue Intraservice Remedies. .................................................................. 18

              2.     That Plaintiffs Raise a Constitutional Claim Does Not Excuse their
                     Failure to Exhaust. .................................................................................... 21

              3.     Plaintiffs' Joinder of an APA Claim Does Not Excuse their Failure
                     to Exhaust their Primary Claims................................................................ 23

       D.     Plaintiffs Have Not Established that the Court Erred in Balancing the
              *Mindes* Factors. ......................................................................................... 23

III.   No New Evidence Justifies Reconsideration. ........................................................ 24

IV.    Plaintiffs Fail to Establish Manifest Injustice in Support of Reconsideration................. 25

CONCLUSION.................................................................................................... 28

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967)............................................................................................. 15

*Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*,
  139 F.3d 419 (4th Cir. 1998) .............................................................................. 15

*Aikens v. Ingram*,
  811 F.3d 643 (4th Cir. 2016) .............................................................................. 14

*Anderson v. Davila*,
  125 F.3d 148 (3d Cir. 1997)................................................................................ 20

*Austin v. U.S. Navy SEALs 1-26*,
  142 S. Ct. 1301 (2022)........................................................................... 9, 16, 23

*Baldwin Metals Co. v. Donovan*,
  642 F.2d 768 (5th Cir. Unit A 1981) ................................................................. 15

*Bard v. Seamans*,
  507 F.2d 765 (10th Cir. 1974) ..................................................................... 15, 23

*Beard v. Stahr*,
  370 U.S. 41 (1962)............................................................................................... 10

*Bois v. Marsh*,
  801 F.2d 462 (D.C. Cir. 1986) ................................................................. 13, 15, 21

*Bond v. United States*,
  572 U.S. 844 (2014)............................................................................................. 13

*Brown v. McNamara*,
  263 F. Supp. 686 (D.N.J. 1967), *aff'd*, 38 F.2d 150 (3d Cir. 1967)................... 13, 14

*Cate v. Oldham*,
  707 F.2d 1176 (11th Cir. 1983) ......................................................................... 18

*Chappell v. Wallace*,
  462 U.S. 296 (1983).............................................................................................. 22

*Christoffersen v. Wash. State Air Nat'l Guard*,
  855 F.2d 1437 (9th Cir. 1988) ...................................................................... 20, 22

*Clements v. Austin*,
  --- F. Supp. 3d ---, 2022 WL 3224604 (D.S.C. July 27, 2022)................................ 22

*Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*,
   709 F.2d 1521 (D.C. Cir. 1983) ................................................................ 15

*CTIA—The Wireless Ass' v. City of Berkeley*,
   928 F.3d 832 (9th Cir. 2019) .................................................................... 18

*Davenport v. Goodyear Dunlop Tires N. Am., Ltd.*,
   1:15-cv-03752-JMC, 2018 WL 833606 (D.S.C. Feb. 13, 2018) ............................ 24

*DeLong v. Thompson*,
   790 F. Supp. 594 (E.D. Va. 1991), *aff'd*, 985 F.2d 553 (4th Cir. 1993).................................. 7

*Doe v. San Diego Unified Sch. Dist.*,
   19 F.4th 1173 (9th Cir. 2021) .................................................................. 19

*Doster v. Kendall*,
   54 F.4th 398 (6th Cir. 2022) .................................................................... 24

*Durkin v. Taylor*,
   444 F. Supp. 879 (E.D. Va. 1977) .............................................................. 7

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006).............................................................................. 16

*EEOC v. Arabian Am. Oil Co.*,
   499 U.S. 244 (1991).............................................................................. 13

*Elrod v. Burns*,
   427 U.S. 347 (1976)........................................................................ 18, 20

*Employment Division v. Smith*,
   494 U.S. 872 (1990).............................................................................. 11

*Ex parte McCardle*,
   74 U.S. (7 Wall.) 506 (1868) .................................................................... 8

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008)........................................................................ 24, 25

*Eye v. Streeval*,
   No. 7:20-cv-00272, 2021 WL 5856146 (W.D. Va. Dec. 8, 2021), *aff'd*,
   2022 WL 1283130 (4th Cir. Apr. 29, 2022) ................................................... 24

*Goldie's Bookstore, Inc. v. Super. Ct. of the State of Cal.*,
   739 F.2d 466 (9th Cir. 1984) .................................................................... 19

*Goldman v. Weinberger*,
   475 U.S. 503 (1986).............................................................................. 20

iii

*Guar. Tr. Co. of N.Y. v. York*,
    326 U.S. 99 (1945) ................................................................................. 14

*Guerra v. Scruggs*,
    942 F.2d 270 (4th Cir. 1991) ................................................................. 18

*Heniford v. Am. Motors Sales Corp.*,
    471 F. Supp. 328 (D.S.C. 1979) ............................................................ 24

*Hodges v. Callaway*,
    499 F.2d 417 (5th Cir. 1974) ........................................................... 21, 23

*Hohe v. Casey*,
    868 F.2d 69 (3d Cir. 1989) .................................................................... 18

*Hutchinson v. Staton*,
    994 F.2d 1076 (4th Cir. 1993) .................................................................. 7

*Khalsa v. Weinberger*,
    779 F.2d 1393 (9th Cir. 1985), *reaff'd*, 787 F.2d 1288 (9th Cir. 1985) ................... 17

*Linfors v. United States*,
    673 F.2d 332 (11th Cir. 1982) ............................................................... 17

*Matthews v. Rodgers*,
    284 U.S. 521 (1932) ............................................................................. 14

*McCarthy v. Madigan*,
    503 U.S. 140 (1992) ....................................................................... 11, 12

*McCurdy v. Zuckert*,
    359 F.2d 491 (5th Cir. 1966) ........................................................... 14, 22

*McMillian v. Clarke*,
    No. 1:17-cv-243 (AJT/MSN), 2018 WL 11463552 (E.D. Va. Jan. 19, 2018) ................. 1, 7, 25

*Mindes v. Seaman*,
    453 F.2d 197 (5th Cir. 1971) ............................................................. 4, 13

*Myers v. Bethlehem Shipbuilding Corp.*,
    303 U.S. 41 (1938) .............................................................................. 14

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) ............................................................................. 10

*Nat'l Treasury Emps. Union v. King*,
    961 F.2d 240 (D.C. Cir. 1992) ............................................................... 12

*Nat'l Treasury Emps. Union v. United States*,
  927 F.2d 1253 (D.C. Cir. 1991) ........................................................................ 20

*Navy SEAL 1 v. Austin*,
  --- F. Supp. 3d. ---, 2022 WL 1294486 (D.D.C. Apr. 29, 2022), *appeal filed*,
  No. 22-5114 (D.C. Cir. May 5, 2022) ................................................. 9, 18, 19, 20

*Orloff v. Willoughby*,
  345 U.S. 83 (1953) .............................................................................................. 8

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
  148 F.3d 396 (4th Cir. 1998) ............................................................................... 6

*Patsy v. Bd. of Regents of the State of Fla.*,
  457 U.S. 496 (1982) ............................................................................... 11, 12, 16

*Randolph-Sheppard Vendors of Am. v. Weinberger*,
  795 F.2d 90 (D.C. Cir. 1986) ......................................................................... 17, 20

*Reno v. Cath. Soc. Servs., Inc.*,
  509 U.S. 43 (1993) ............................................................................................ 10

*Rhoades v. Savannah River Nuclear Sols., LLC*,
  574 F. Supp. 3d 322 (D.S.C. 2021), *appeal dismissed*,
  2022 WL 17691567 (4th Cir. July 6, 2022) ........................................................ 20

*Roberts v. Roth*,
  594 F. Supp. 3d 29 (D.D.C. 2022) ...................................................................... 10

*Robertson v. United States*,
  145 F.3d 1346 (Table), 1998 WL 223159 (10th Cir. May 1, 1998) ....................... 17

*Rushia v. Town of Ashburnham, Mass.*,
  701 F.2d 7 (1st Cir. 1983) .................................................................................. 18

*Schlesinger v. Councilman*,
  420 U.S. 738 (1975) ........................................................................................... 26

*Sossamon v. Texas*,
  563 U.S. 277 (2011) ........................................................................................... 12

*Steakhouse, Inc. v. City of Raleigh*,
  166 F.3d 634 (4th Cir. 1999) .............................................................................. 18

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) .............................................................................................. 8

*Tanzin v. Tanvir*,
  141 S. Ct. 486 (2020) .................................................................................... 12, 13

v

*Thetford Properties IV Ltd. P'ship v. U.S. Dep't of Hous. & Urb. Dev.*,
    907 F.2d 445 (4th Cir. 1990) ................................................................. 21

*Thorne v. U.S.*,
    *DoD*, 916 F. Supp. 1358 (E.D. Va. 1996) ............................................ 22

*U.S. ex rel. Brooks v. Clifford*,
    412 F.2d 1137 (4th Cir. 1969) ............................................................... 19

*U.S. ex rel. Carter v. Halliburton Co.*,
    866 F.3d 199 (4th Cir. 2017) ................................................................. 25

*United States v. Roof*,
    10 F.4th 314 (4th Cir. 2021), *cert. denied*, 143 S. Ct. 303 (2022) ........... 11

*United States v. Vaughn*,
    No. 3:08-cr-468-HEH, 2015 WL 13711702 (E.D. Va. Mar. 16, 2015) ............... 1, 6

*Von Hoffberg v. Alexander*,
    615 F.2d 633 (5th Cir. 1980) ................................................................. 16

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ................................................................. 14, 15, 16

*Williams v. Wilson*,
    762 F.2d 357 (4th Cir. 1985) ................................................. 11, 13, 22

*Wilt v. Gilmore*,
    62 F. App'x 484 (4th Cir. 2003) ............................................................ 23

*Winck v. England*,
    327 F.3d 1296 (11th Cir. 2003) ............................................. 12, 16, 17

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ................................................................................. 9

**STATUTES**

10 U.S.C. § 1552 ................................................................................. 15, 22

42 U.S.C. § 2000bb ...................................................................................... 11

42 U.S.C. § 2000bb-1 ............................................................................. 12, 15

H.R. 7776, Pub. L. No. 117-263, 117th Cong. (2022), 136 Stat. 2395 ................... 5, 11

**RULES**

Fed. R. Civ. P. 12 ......................................................................................... 5

## UNITED STATES CONSTITUTION

U.S. Const. Art. II §2 ............................................................................................. 9

## OTHER AUTHORITIES

Centers for Disease Control and Prevention, *COVID Data Tracker*,
    https://covid.cdc.gov/covid-data-tracker/#datatracker-home .................................................... 2

Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1360 (3d ed.),
    Westlaw (database updated Apr. 2022) .................................................................................... 11

Edward F. Sherman, Judicial Review of Military Determinations and the Exhaustion of
    Remedies Requirement,
    55 Va. L. Rev. 483 (1969) ...................................................................................................... 14

Sixth Circuit, Court Audio - Recent Hearings,
    https://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.php ........................................... 24

## INTRODUCTION

This Court correctly dismissed this action because Plaintiffs had not exhausted their administrative remedies in the military, and even if they had, Plaintiffs failed to satisfy the Fourth Circuit's four-part test for justiciability of exhausted military claims. *See* ECF No. 86, at 10-18 (hereinafter "Order"). Plaintiffs' Rule 59(e) Motion for Reconsideration presents an amalgam of new arguments and old ones that the Court has already rejected. None of these arguments justifies the "extraordinary remedy" of reconsidering a judgment. *United States v. Vaughn*, No. 3:08-cr-468-HEH, 2015 WL 13711702, at *1 (E.D. Va. Mar. 16, 2015). Only a change in controlling law, new evidence, or clear legal error or manifest injustice can support granting a Rule 59(e) motion. *McMillian v. Clarke*, No. 1:17-cv-243 (AJT/MSN), 2018 WL 11463552, at *1 (E.D. Va. Jan. 19, 2018) (Trenga, J.). Plaintiffs fail to establish any of these grounds.

*First*, the recent enactment of the National Defense Authorization Act for Fiscal Year 2023 ("2023 NDAA"), which directed the Secretary of Defense to rescind his August 2021 memorandum establishing the COVID-19 vaccination mandate, does not disturb this Court's justiciability holding. If anything, the 2023 NDAA bolsters the Court's holding. The 2023 NDAA in no way changes the Court's conclusion that Plaintiffs had failed to exhaust their military remedies, which establishes a nonjusticiable military controversy. The 2023 NDAA separately renders Plaintiffs' claims unripe and makes it likely that Plaintiffs' claims will be moot before they are ever exhausted. Plaintiffs' merits arguments based on the 2023 NDAA are misguided. More importantly, they are irrelevant because this Court lacks subject-matter jurisdiction and because Plaintiffs still raise a nonjusticiable military controversy. Thus, the Court lacks authority to adjudicate the merits of Plaintiffs' claims.

*Second*, Plaintiffs identify no errors of law, let alone clear errors, in the Court's holding that Plaintiffs' claims were not exhausted and were nonjusticiable. The military exhaustion

doctrine is grounded in a court's traditional equitable powers, and applies to all of Plaintiffs' claims.  Plaintiffs fail to establish the applicability of any exception.

*Third*, legal argument from government counsel at an oral argument in another case that occurred (and was published online) a month before the Court issued its Order is not "new evidence" that could support reconsideration.  In any event, Plaintiffs mischaracterize government counsel's remarks in insinuating that the government does not properly apply RFRA.

*Fourth*, Plaintiffs fail to show that reconsideration is necessary to prevent manifest injustice to Army Plaintiffs Capt. Andrew Hirko and Col. Brad Lewis.  Neither Plaintiff has been separated, and the military has now halted separations for refusing to take the COVID-19 vaccine after requesting an exemption.  Plaintiffs' accusation that Defendants misrepresented the procedural protections available to service members is patently false.

## BACKGROUND

### I.     Factual Background

The background of this case is set out in detail in Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, *see* ECF No. 65, at 2-10 ("PI Opp." or "PI Opposition"), and in the Court's dismissal Order, *see* ECF No. 86, at 2-6.  To summarize, COVID-19 is a respiratory disease that can result in death or severe symptoms, which to date has sickened more than 100 million Americans and killed more than 1 million Americans.  *See* Centers for Disease Control and Prevention, *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/#datatracker-home.  At the time of the PI Opposition, COVID-19 had infected more than 400,000 service members and killed 96.  PI Opp. 2.

Vaccines have played a longstanding and important role in America's military readiness. In recent years, the military has required service members to take nine vaccines, with eight others required under certain circumstances when elevated risk factors are present.  *Id.* at 3.  On August

2

24, 2021, Secretary of Defense Lloyd Austin issued a memorandum directing Secretaries of the Military Departments to require that service members become fully vaccinated against COVID-19. *Id.* Each Service issued implementing guidance establishing the COVID-19 vaccination requirement, and each Service also established a process for service members to seek administrative, medical, or religious exemptions to the vaccine requirement. *Id.* at 3-4. Each Service's process for Religious Accommodation Requests ("RARs") includes multiple layers of review and an appeals process; while most RARs have been denied, some have been approved. Order 3; PI Opp. 4.

Service members who refuse a lawful order to vaccinate against COVID-19 — after any exemption requests (and appeals) are denied — may face administrative discharge proceedings. Order 3; PI Opp. 5. "[T]he procedures available in such proceedings vary by Department, rank, time in service, and other factors, but overall enable the member to consult with free defense counsel and present arguments against separation." PI Opp. 5. Even if a service member is discharged, she can request correction to her military record through a Discharge Review Board and/or Board for Correction of Military Records. *Id.*

Service members have filed dozens of cases in other federal courts challenging military COVID-19 vaccination requirements. Although a few courts have preliminarily enjoined certain vaccination requirements, the majority of courts have denied preliminary relief or dismissed such claims. *See* Order 5-6 & n.12; PI Opp. 8-10.

## II.    Procedural Background

Plaintiffs are 42 active duty and reserve military chaplains seeking to represent a class of military chaplains to challenge the military's COVID-19 mandate, asserting nine constitutional and statutory causes of action. Order 2, 5 n.11. Some (but not all) Plaintiffs have had RARs and/or appeals denied, PI Opp. 6-8, but "no Plaintiff has actually gone through separation proceedings[.]"

Order 12.  In this action, Plaintiffs moved for a preliminary injunction seeking to enjoin Defendants from enforcing the military's COVID-19 vaccine mandate or taking any adverse action against Plaintiffs or putative class members for refusal to vaccinate against COVID-19.  ECF No. 59.

## III.   The Court's Dismissal Order

On November 23, 2022, this Court issued an Order denying Plaintiffs' preliminary injunction motion and dismissing the case for lack of subject-matter jurisdiction.  The Court reasoned that "to succeed on their claims, Plaintiffs must exhaust their available remedies within the armed forces."  Order 10.  But Plaintiffs had not done so: "not only are there outstanding intraservice remedies available to all Plaintiffs, but no Plaintiff has actually gone through separation proceedings, a fact which further forecloses a finding of exhaustion. . . . Absent a separation proceeding and final decision, the Court cannot find that Plaintiffs have exhausted their intraservice remedies." *Id.* at 12.  The Court rejected applying a futility exception to the exhaustion doctrine because "some RARs have been granted," and "it is premature to say that such remedies are futile" where "no Plaintiff has fully exhausted available remedies[.]"  *Id.*  The Court also rejected Plaintiffs' argument that the exhaustion requirement did not apply at all to some of Plaintiffs' claims.  *Id.* at 13-14.

Although Plaintiffs' failure to exhaust "alone preclude[d] the Court from granting a preliminary injunction[,]" the Court independently evaluated the justiciability of Plaintiffs' claims under the four-factor test of *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), which applies after a service member Plaintiff has satisfied a threshold requirement of exhaustion.  Order 14.  The Court found that "[o]n balance, each of the four *Mindes* factors weigh against judicial intervention."  *Id.* at 16.  First, "the Court f[ou]nd[] Plaintiffs' claims are not strong and are unlikely to succeed."  *Id.*  "Second, Plaintiffs' injuries are either not yet realized or redressable."  *Id.*  "Third, and most importantly, Defendants assert[ed], and the Court place[d] great weight in

their expert military judgment, that injunctive relief would significantly interfere with military operations as it pertains to troop health and combat readiness." *Id.* "Fourth, significant military expertise and discretion was necessary in crafting DoD's response to the pandemic given the unique training, mobilization, and health needs and dynamics associated with America's Armed Forces." *Id.* Because Plaintiffs had not shown that "their claims are likely justiciable, . . . the claims cannot be likely to succeed." *Id.* Therefore, the Court denied Plaintiffs' Motion for Preliminary Injunction.

The Court also held, based on that same analysis, that Plaintiffs' claims "are, in fact, non-justiciable." *Id.* at 17. The Court noted that Federal Rule of Civil Procedure 12(h)(3) obligates a district court to dismiss an action if it determines, as the Court did here, that it lacks subject-matter jurisdiction. *Id.* at 18. The Court accordingly dismissed the case for lack of subject-matter jurisdiction. *Id.* at 19.

## IV.   Subsequent Events

On December 23, 2022, President Biden signed into law the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("2023 NDAA"), which authorizes funding for the military and DoD. H.R. 7776, Pub. L. No. 117-263, 117th Cong. (2022), 136 Stat. 2395. The 2023 NDAA contains the following provision:

> Not later than 30 days after the date of the enactment of this Act, the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021, regarding "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members."

*Id.* § 525 ("Section 525").

Pursuant to the NDAA, the Secretary of Defense issued a memo on January 10, 2023, rescinding his August 24, 2021 memorandum which required COVID-19 vaccination, and rescinding his November 30, 2021 memorandum which required COVID-19 vaccination for

members of the National Guard and the Ready Reserve.  *See* 1/10/2023 SECDEF Memo ("Rescission Memo") (attached as Ex. 1).  The Rescission Memo prohibits separations based solely on refusal of the COVID-19 vaccine by service members who sought an exemption.  *Id.*  The Rescission Memo further directs the Services to update the records of individuals to remove any adverse actions solely associated with the denial of an accommodation request.  *Id.*[1]

## V.      Plaintiffs' Motion

On December 17, 2022, Plaintiffs filed their Rule 59(e) Motion for Reconsideration.  ECF No. 88; *see also* Plaintiffs' Corrected Memorandum of Law in Support of Their Rule 59(e) Motion for Reconsideration, ECF No. 90-1 ("Mem.").  Therein, Plaintiffs ask the Court to reverse its Order dismissing the case and to grant Plaintiffs' Motion for Preliminary Injunction.  Mem. 29.  Plaintiffs argue: (1) the 2023 NDAA is a change in controlling law that warrants reconsideration, *id.* at 6-9; (2) the Court committed clear errors of law in holding that Plaintiffs' claims were not exhausted and non-justiciable, *id.* at 9-26; (3) remarks made by government counsel at an oral argument in October 2022 constitute "new evidence" that justifies reconsideration, *id.* at 26-27; and (4) reconsideration is required to protect Capt. Hirko and Col. Lewis from manifest injustice, *id.* at 27-29.

## LEGAL STANDARD

"[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly."  *Vaughn*, 2015 WL 13711702, at *1 (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).  "Relief under Rule 59(e) is available only: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not

---

[1] The Coast Guard is part of the Department of Homeland Security, not the Department of Defense.  On January 11, 2023, Coast Guard issued a similar rescission of its COVID-19 vaccination mandate.  *See* ALCOAST 012/23 (attached as Ex. 2).

available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *McMillian*, 2018 WL 11463552, at *1 (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)). "A Rule 59(e) motion is not intended to allow for reargument of the very issues that the court has previously decided[,]" nor is it "intended to give an unhappy litigant one additional chance to sway the judge." *DeLong v. Thompson*, 790 F. Supp. 594, 618 (E.D. Va. 1991) (quoting *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977)), *aff'd*, 985 F.2d 553 (4th Cir. 1993).

## ARGUMENT

### I.  The Enactment of the 2023 NDAA Does Not Justify Reconsideration.

The enactment of the 2023 NDAA does not justify reconsideration on the theory that it changed controlling law.  While the NDAA repealed the challenged policy, it did nothing to alter the law that was applied by the Court in dismissing the case and nothing to undermine the Court's holding that Plaintiffs' claims were nonjusticiable.  In particular, the 2023 NDAA does not alter the Court's conclusion that it "cannot find that Plaintiffs have exhausted their intraservice remedies[,]" given that "no Plaintiff has actually gone through separation proceedings, a fact which further forecloses a finding of exhaustion."   Order 12.   Plaintiffs' failure to exhaust is independently sufficient to show that Plaintiffs' claims are nonjusticiable, even without considering the four-factor *Mindes* test.  *See id.* at 8 n.13 (noting that "[e]xhaustion is" a "threshold requirement that must be satisfied as an initial matter before reaching the four-factor *Mindes* test"); *id.* at 14 (noting that "Plaintiffs' failure to clearly show that they exhausted their intraservice remedies alone precludes the Court from granting a preliminary injunction[,]" but that the Court would also apply the four-factor *Mindes* test "for the sake of completeness").  If anything, the 2023 NDAA *strengthens* the Court's conclusion that Plaintiffs' claims present a nonjusticiable military controversy because Plaintiffs' challenges to the military's COVID-19 vaccination mandate will likely be mooted by rescission of that mandate before Plaintiffs exhaust their administrative

remedies.[2]

Plaintiffs' argument that "[t]he enactment of Section 525 . . . eliminates one of the central premises for the Court's *sua sponte* dismissal," Mem. 7, is also incorrect.  After noting that the Supreme Court has held that "judges are not given the task of running the Army," because "military decision-making 'rests upon the Congress and upon the President of the United States and his subordinates[,]'" this Court explained that Congress had not legislated regarding a COVID-19 vaccination requirement but that the President had acted through his subordinates.  Order 17 (quoting *Orloff v. Willoughby,* 345 U.S. 83, 93-94 (1953)).  But the fact that both political branches (instead of just one) have now acted again only buttresses the Court's conclusion that military decision-making resides with the political branches.   Nor does it change the fact that Plaintiffs have not exhausted their administrative military remedies, which precludes a finding of a justiciable controversy.

Plaintiffs also argue that the 2023 NDAA supports the merits of their claims.  Mem. 7-9.  As an initial matter, this argument is irrelevant.  Once a court holds that it lacks subject-matter jurisdiction, it lacks authority to adjudicate the merits of a lawsuit.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).  But beyond that, the NDAA simply directed DoD to rescind the August 2021 policy, but did not address or purport to resolve the merits of any legal issue in this lawsuit.  Moreover, Plaintiffs' merits argument is incorrect — that military vaccination

---

[2] Plaintiffs assert in a footnote that rescission of the military's COVID-19 vaccine mandate "does not moot this case" because it would not remedy unspecified "irreparable harms and other injuries suffered."  Mem. 2 n.2.  But Plaintiffs fail to articulate how are injured by the military's COVID-19 vaccine mandate now that it has been rescinded.

is a major questions doctrine issue such that the President, acting through military leaders, cannot require vaccination absent clearly expressed congressional authorization.   Mem. 7-8.   The Constitution makes the President the "Commander in Chief" of the military, U.S. Const. Art. II, § 2, cl. 1, which grants the President the "function to command the instruments of national force, at least when turned against the outside world for the security of our society." *Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301, 1302 (2022) (mem.) (Kavanaugh, J., concurring) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 645 (1952) (Jackson, J., concurring)). Military leaders have required vaccination, without express congressional authorization, dating back to General Washington requiring members of the Continental Army to be inoculated against smallpox during the Revolutionary War.   *Navy SEAL 1 v. Austin*, --- F. Supp. 3d. ---, 2022 WL 1294486, at *1 (D.D.C. Apr. 29, 2022), *appeal filed*, No. 22- 5114 (D.C. Cir. May 5, 2022).   The fact that Congress exercised its own authority to enact statutory law on a specific policy does not support or compel the conclusion that the military previously lacked authority to do so.

Congress's decision to direct rescission of the COVID-19 vaccine mandate going forward also does not resolve the RFRA claim in this case.   The NDAA imposed a change in policy that may moot this case but, again, did not purport to decide any controlling issue of law under RFRA or otherwise, such as whether the determination of military leaders that the COVID-19 vaccine mandate was justified by compelling government interests in force health and readiness, nor their individualized determinations that for many service members, requiring vaccination was the least restrictive means of advancing those compelling government interests.   *See* PI Opp. 25-34; Order 12 n.15, 13-14 & nn.17-21.

## II.     Plaintiffs Have Identified No Clear Errors of Law that Justify Reconsideration.

### A.     Plaintiffs' Arguments About the *Mindes* Exhaustion Doctrine are Irrelevant Because the Complaint Raised No Ripe Claims.

Plaintiffs attempt to seek reconsideration based on the argument that the Court committed "clear errors of law" in holding that Plaintiffs had failed to exhaust their administrative remedies. Mem. 9-26.   Plaintiffs are wrong for the reasons stated below, but Plaintiffs' claims are independently nonjusticiable under the ripeness doctrine.   "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction[.]'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).   Here, Plaintiffs are seeking declaratory or injunctive relief to preclude the military from separating them.   *See* Compl., ¶¶ 1, 28-58 & Relief Requested, ECF No. 1.   But this Court correctly found that "no Plaintiff has actually gone through separation proceedings," where the military will have an opportunity to consider their arguments as to why they should be retained.   *See* Order 12.   Even if, at the conclusion of those proceedings, a separation board or other administrative authority were to disagree with a Plaintiff and recommend separation, the Secretary of the relevant military department or her designee has discretion to reject the recommendation and retain the Plaintiff.   *See*, *e.g.*, A.R. 635-200 ¶ 2-12a, 2-12d.   Where the head of the military department had not yet acted on a discharge recommendation from a separation board, the Supreme Court has held that a service member's "constitutional objections" to a discharge were premature.   *Beard v. Stahr*, 370 U.S. 41, 42 (1962) (per curiam).   For the same reasons, Plaintiffs' claims are not ripe.   *See*, *e.g.*, *Roberts v. Roth*, 594 F. Supp. 3d 29, 35-36 (D.D.C. 2022).

Section 525 of the newly enacted 2023 NDAA independently renders Plaintiffs' claims unripe (as well as moot).   Section 525 directs the Secretary of Defense to "rescind the mandate

that members of the Armed Forces be vaccinated against COVID-19 pursuant to [a] memorandum dated August 24, 2021[.]"  2023 NDAA, § 525.  The Secretary executed that direction by rescinding the mandate on January 10, 2023.  *See* Ex. 1.  The policy Plaintiffs seek to challenge has been rescinded by Congress.  Plaintiff cannot bring a ripe challenge to a rescinded policy and, for similar reasons, a continuing challenge to a rescinded policy would be moot.

**B.    Neither RFRA Nor the Free Exercise Clause Entitles Plaintiffs to Declaratory or Injunctive Relief Against the Military Without Exhaustion.**

Plaintiffs also suggest the Court clearly erred as a matter of law by requiring exhaustion in the face of RFRA or Free Exercise claims. Mem. 9-12, 18-19.  There is no merit to Plaintiffs' arguments that Congress enacted RFRA to upend longstanding military nonjusticiability doctrine, including its requirement that plaintiffs exhaust all intraservice corrective measures before obtaining declaratory or injunctive relief in a federal district court.  *See Williams v. Wilson*, 762 F.2d 357, 360 (4th Cir. 1985).  Rather, RFRA was enacted in response to the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), *see* 42 U.S.C. § 2000bb(a)(4) "in effect returning to the pre-*Smith* understanding of the First and Fourteenth Amendments[,]" *United States v. Roof*, 10 F.4th 314, 393 (4th Cir. 2021), *cert. denied*, 143 S. Ct. 303 (2022). Plaintiffs do not explain why *Mindes* would be applicable to constitutional claims but not RFRA claims. Understanding the errors in Plaintiffs' arguments requires an examination of the two sources of exhaustion doctrine in cases where plaintiffs seek declaratory and injunctive relief.

*First*, "'[e]xhaustion is a rule of judicial administration,'" *McCarthy v. Madigan*, 503 U.S. 144 (1992) (quoting *Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496, 518 (1982) (White, J., concurring)), drawn from "the inherent power of a court to regulate actions pending before it[,]" *see* Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1360 (3d ed.), Westlaw (database updated Apr. 2022).  Accordingly, "unless Congress directs otherwise" it is "rightfully

subject to crafting by judges." *McCarthy*, 503 U.S. at 144 (quoting *Patsy*, 457 U.S. at 518 (White, J., concurring)).  Plaintiffs point to nothing in RFRA excusing the application of the exhaustion doctrine.  Mem. 9-15.  They argue that "the judiciary lacks a common-law power to create policy-rooted 'exceptions' to its jurisdiction."   Mem. 9 (citation omitted).   But "[t]he doctrine of exhaustion of administrative remedies concerns the *timing* rather than the jurisdictional authority of federal court decisionmaking[.]"  *Nat'l Treasury Emps. Union v. King*, 961 F.2d 240, 243 (D.C. Cir. 1992).  A court's "'virtually unflagging obligation' to exercise the jurisdiction given them" means that "in some circumstances" a court may decline "to require exhaustion[.]"  *McCarthy*, 503 U.S. at 146 (citation omitted).  But Plaintiffs have not met their burden of showing that any exception to exhaustion applies, *see infra* pp. 17-23, *Winck v. England*, 327 F.3d 1296, 1304 n.6 (11th Cir. 2003), and in this area "strict application of the exhaustion doctrine" is appropriate, *see Winck*, 327 F.3d at 1303 (citation omitted).

*Second*, the exhaustion doctrine and all of the *Mindes* criteria serve to regulate discretionary forms of relief like those Plaintiffs seek.   Because RFRA authorizes only "appropriate relief against a government[,]" 42 U.S.C. § 2000bb-1(c), and Plaintiffs brought this action seeking only prospective declaratory and injunctive relief to preclude their speculative future military discharges, *see* Compl., ¶¶ 1, 28-58 & Relief Requested, "[t]he question then becomes what 'appropriate relief' entails" and whether that text would require the Court to issue pre-exhaustion declaratory and injunctive relief against the military.  *See Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020).  "Without a statutory definition, [the Court must] turn to the phrase's plain meaning at the time of enactment."  *Id*.  "Because this language is 'open-ended' on its face, what relief is 'appropriate' is 'inherently context dependent.'"  *Id*. (quoting *Sossamon v. Texas*, 563 U.S. 277, 286 (2011)).  "[B]ackground presumptions" that "exist[ed] at the time of [RFRA's] enactment" "inform the understanding" of whether suits for pre-exhaustion declaratory or

injunctive relief seek "appropriate relief" under RFRA.  *See id.* at 493; *see also*, *e.g.*, *Bond v. United States*, 572 U.S. 844, 857 (2014) (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)) ("Part of a fair reading of statutory text is recognizing that 'Congress legislates against the backdrop' of certain unexpressed presumptions.").

In the context of suits against the military, courts did not view military service members as entitled to declaratory or injunctive relief to assure determinations of their constitutional rights before exhaustion of military remedies at the time of RFRA's enactment.  To the contrary, just eight years before RFRA, the Fourth Circuit explained that the *Mindes* approach had "become widely accepted by the federal courts[.]" *Williams*, 762 F.2d at 359.[3]  In *Williams*, the court concluded that a plaintiff's "failure to exhaust intraservice administrative remedies" rendered a plaintiff's request for an injunction precluding the military from dismissing him "a nonjusticiable military controversy." *Id.* at 360.  Even outside the majority of circuits that had fully embraced *Mindes*, courts at the time of RFRA's enactment agreed that the "principle 'that a court should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures[,]'" was "well-established[.]" *See Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) (quoting *Mindes*, 453 F.2d at 201).

Nor were Free Exercise Clause claimants clearly entitled to obtain pre-exhaustion injunctive relief against the military in the decades leading up to Congress's enactment of RFRA. For example, in *Brown v. McNamara*, 263 F. Supp. 686 (D.N.J. 1967), the court emphasized that a religious objector "will be able to reinforce the evidence as to the sincerity of their beliefs and

---

[3] That *Mindes* was widely accepted at the time of RFRA's enactment is hardly surprising given that *Mindes* merely "distilled" its conclusions from a "broad ranging . . . view of [already existing] case law[.]"  *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971).

their entitlement to discharge or reassignment" in the context of further military proceedings after denial of religious accommodation requests. *Id*. at 692, *aff'd* 387 F.2d 150 (3d Cir. 1967).

Exhaustion of adequate, alternative intraservice remedies before seeking the type of equitable relief Plaintiffs seek here is deeply rooted in foundational principles of equity. "Equitable relief in a federal court is of course subject to restrictions: the suit must be within the traditional scope of equity as historically evolved in the English Court of Chancery, . . . [and] a plain, adequate and complete remedy at law must be wanting[.]" *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945) (citations omitted). "[T]he extraordinary remedies of equity" are "forbid[den]" "where the right asserted may be fully protected at law." *Matthews v. Rodgers*, 284 U.S. 521, 525 (1932). The Supreme "Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Thus, exhaustion is "a rule governing the exercise of discretion" "in equity where relief by injunction [is] sought." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51 n.9 (1938).

Accordingly, the military exhaustion "concept also played a role in the allocation of jurisdiction between law and equity by requiring the exhaustion of [adequate] legal remedies before equity would take jurisdiction." Edward F. Sherman, Judicial Review of Military Determinations and the Exhaustion of Remedies Requirement, 55 Va. L. Rev. 483, 496 (1969); *see also Aikens v. Ingram*, 811 F.3d 643, 647 (4th Cir. 2016) ("The parties agree that *Mindes* has traditionally applied to actions seeking equitable relief[.]"). *Mindes* exhaustion recognizes that Congress provided service members with an adequate statutory remedy "as a result of which any possible injury could be repaired." *McCurdy v. Zuckert*, 359 F.2d 491, 494 (5th Cir. 1966). Given

this "adequate remedy,"[4] *see Bard v. Seamans*, 507 F.2d 765, 770 (10th Cir. 1974), resorting to

extraordinary equitable relief before pursuing such intraservice remedies would not be

"appropriate relief[,]" 42 U.S.C. § 2000bb-1(c).[5]

Again, Plaintiffs complain that the judiciary should not "create policy-rooted 'exceptions'

to its jurisdiction" and emphasize that RFRA provides them with a cause of action.  Mem. 9-10.

But "[t]he grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute

duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not

mechanically obligated to grant an injunction for every violation of law[.]"  *Weinberger*, 456 U.S.

at 313.  Insofar as *Mindes* and its progeny recognizes policy considerations and constitutional

principles, that is entirely consistent with the obligation of "courts of equity [to] pay particular

regard for the public consequences in employment the extraordinary remedy of injunction."  *Id.* at

312.  "The judicial intervention that [Plaintiffs] seek[] poses a substantial threat to military

discipline essential to the effective functioning of our Nation's Armed Forces."  *Bois*, 801 F.2d at

467; *see* Order 16.  "Under Article II of the Constitution, the President of the United States, not

---

[4] Even assuming that equitable relief "would be *more effective* than" seeking relief from a BCMR, "that does not mean that the remedy provided by Congress" under 10 U.S.C. § 1552 "is *inadequate*."  *See Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1532 (D.C. Cir. 1983).

[5] Plaintiffs' request for declaratory relief does not impact the analysis.  "[T]he declaratory judgment and injunctive remedies are [both] equitable in nature[,]" requiring application of similar principles.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967).  "[A] district court's decision to entertain a claim for declaratory relief is discretionary" and "reviewed for abuse of discretion."  *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998).  *Mindes* exhaustion recognizes that, because Plaintiffs have "an adequate remedy available through" the BCMR, "their need for a declaratory judgment is slight.  On the other hand, granting declaratory relief interrupts the [military] proceedings and forces judicial consideration of constitutional issues which might be mooted by an administrative decision favorable to" Plaintiffs.  *See Baldwin Metals Co. v. Donovan*, 642 F.2d 768, 775 n.17 (5th Cir. Unit A 1981).  "Moreover, granting the relief requested might jeopardize" the military "by enabling" Service Members "to delay [military] proceedings."  *See id*.  Accordingly, Plaintiffs did not show that a pre-exhaustion declaratory judgment remedy is appropriate relief under RFRA.

any federal judge, is the Commander in Chief of the Armed Forces." *U.S. Navy SEALs 1-26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring). "In light of that bedrock constitutional principle," *see id.*, "strict application of the exhaustion doctrine . . . serves to maintain the balance between military authority and the power of federal courts[,]" *Winck*, 327 F.3d at 1303 (quoting *Von Hoffberg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980)), by permitting claims to be addressed without courts "in effect insert[ing themselves] into the [military] chain of command, overriding military commanders' professional military judgments," *U.S. Navy SEALs 1-26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring). In sum, background principles from the time of RFRA's enactment make clear that RFRA does not preclude application of *Mindes*' exhaustion doctrine. "[A] major departure from the long tradition of equity practice should not be lightly implied." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (quoting *Weinberger*, 456 U.S. at 320). Thus, the Court committed no error of law in requiring exhaustion in this case.

Plaintiffs' other arguments are unavailing. The Supreme Court's decision in *Patsy*, 457 U.S. at 509-12, *see* Mem. 10-11, is of no help to Plaintiffs' arguments, as it did not construe RFRA or a claim against the military. Rather, *Patsy* addressed whether exhaustion of state administrative remedies is a prerequisite to an action under § 1983. Justices there agreed that "considerations of sound policy suggest that a § 1983 plaintiff should be required to exhaust adequate state administrative remedies before filing his compliant." *Patsy*, 457 U.S. at 516 (O'Connor, J., concurring). But the Court emphasized that it was "not writing on a clean slate." *Id*. at 500. "For nearly 20 years and on at least 10 occasions, [the Supreme] Court ha[d] clearly held that no exhaustion of [state] administrative remedies is required in a § 1983 suit," *id*. at 517 (White, J., concurring), which constrained the Court's conclusion, *id*. at 500-01. Here, in contrast, Plaintiffs' effort to have the Court disregard decades of military nonjusticiabiltiy precedent does not establish a clear error justifying Rule 59(e) relief.

16

Finally, Plaintiffs are wrong to suggest that the Free Exercise Clause precludes the Court from applying *Mindes*. Mem. 18-19. Ample authority shows that Free Exercise claims are subject to the same exhaustion requirements as other claims. *See, e.g. Khalsa v. Weinberger*, 779 F.2d 1393, 1398 (9th Cir. 1985), *reaff'd*, 787 F.2d 1288 (9th Cir. 1985) (applying *Mindes* including exhaustion requirement to Free Exercise Clause claim); *Robertson v. United States*, 145 F.3d 1346 (Table), 1998 WL 223159, at *1, 3 (10th Cir. May 1, 1998) (concluding district court "erred in refusing to apply the *Mindes* test" to claim by Air Force chaplain that his involuntary discharge "served as religious censorship in violation of his First Amendment rights").

### C.   Plaintiffs Did Not Satisfy any Exception to Exhaustion.

Plaintiffs also contend that the Court clearly erred in not finding an exception to exhaustion in this case, thus warranting reconsideration. But there is no merit to Plaintiffs' argument that a broad exception to the exhaustion doctrine exists for any service member "alleg[ing] violations of religious liberty and conscience" resulting from military orders no matter the context. *See* Mem. 13. "Generally, 'exhaustion is not required where no genuine opportunity for adequate relief exists, irreparable injury will result if the complaining party is compelled to pursue administrative remedies, or an administrative appeal would be futile.'" *Winck*, 327 F.3d at 1304 (quoting *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982); *see also Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986) ("The other exception to the exhaustion requirement is where irreparable injury would result unless immediate judicial review is permitted."). Plaintiffs argue that they qualify for the irreparable injury exception because they raise constitutional claims, and because they raise an APA claim. Each claim is meritless.

1. *Plaintiffs Identify No Irreparable Injury that Will Result if they Pursue Intraservice Remedies.*

Plaintiffs' arguments that they satisfy the irreparable injury exception to the exhaustion requirement (assuming it applies in this circuit under *Mindes*), Mem. 12-14, 20-23, are meritless because each military action that they seek to preclude is "definitionally reparable." *Navy SEAL 1 v. Austin*, 2022 WL 1294486, at *15. Rather than articulate specifically what injury they face that cannot be redressed by BCMR action, Plaintiffs rely primarily on *Elrod v. Burns*, 427 U.S. 347 (1976), *see* Mem. 21-22, in which a plurality of the Supreme Court found that public employees who showed that they were threatened with discharge solely because of their partisan political affiliation or nonaffiliation had shown irreparable harm based on their First Amendment interests, *Elrod*, 427 U.S. at 349, 373. But "the fact that [Plaintiffs are] asserting First Amendment rights does not automatically require a finding of irreparable injury." *Rushia v. Town of Ashburnham, Mass.*, 701 F.2d 7, 10 (1st Cir. 1983); *see also Steakhouse, Inc. v. City of Raleigh*, 166 F.3d 634, 637 (4th Cir. 1999) (concluding First Amendment claimant did not face irreparable harm).

*First*, "it is clear that an injunction against a" military discharge proceeding "presents a different case" than *Elrod*. *See Rushia*, 701 F.2d at 10. A "higher requirement of irreparable injury should be applied in the military context given the federal courts' traditional reluctance to interfere with military matters." *Guerra v. Scruggs*, 942 F.2d 270, 274 (4th Cir. 1991).

*Second*, *Elrod*'s progeny provides that "it is the 'direct penalization, as opposed to [the] incidental inhibition, of First Amendment rights [that] constitutes irreparable injury.'" *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) (quoting *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983)); *CTIA—The Wireless Ass' v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019) ("'[P]urposeful unconstitutional suppression of speech constitutes irreparable harm for

18

preliminary injunction purposes.") (quoting *Goldie's Bookstore, Inc. v. Super. Ct. of the State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984)).  Here, Plaintiffs argue that they "have alleged irreparable harm due to violations of their religious liberties and consciences."  Mem. 12.  But any harm is indirect (and a result of reparable actions).  The military departments have made clear that "there will be no involuntary (i.e., forcible) immunizations."  *See, e.g.*, Decl. of Kevin J. Mahoney ¶ 9, ECF No. 39-4.  Accordingly, "[n]o government actor is preventing Plaintiff[s] from exercising [their] alleged religious conviction against COVID-19 vaccination" directly.  *Navy SEAL 1 v. Austin*, 2022 WL 1294486, at *16 (D.D.C. Apr. 29, 2022).  Plaintiffs "may exercise [their claimed] religion by declining to receive the vaccination."  *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir. 2021).  Nor can Plaintiffs seriously contend that the military's longstanding vaccination program was put in place with the purpose of precluding them from practicing their religion.  Plaintiffs have not seriously "attempted to prove that the [immunization program] has been intentionally utilized to infringe upon" their religions.  *See Goldie's Bookstore*, 739 F.2d at 472.

Plaintiffs' reliance on *U.S. ex rel. Brooks v. Clifford*, 412 F.2d 1137 (4th Cir. 1969), is misplaced because a direct injury was involved there.  In *Clifford*, a service member had a conscientious objection to military service itself and "failed to apply to the Army [BCMR] for discharge as a conscientious objector before seeking" a discharge in district court.  *Id.* at 1137.  The *Clifford* court emphasized that during BCMR review, the plaintiff's irreparable injury to his conscience would be ongoing due to his objection to military service itself: "during a period of which each hour of each day they are required to engage in conduct inimical to their consciences or be subject to court martial, with the added risk that in the ordinary course of the operations of the military, they may be ordered to a duty even more offensive to them."  *Id.* at 1141.  In this case, "[n]othing in the record" indicates that Plaintiffs "will cease" following their claimed

religious beliefs before an administrative separation board and a BCMR considers their claims that they should be retained. *See Nat'l Treasury Emps. Union v. United States*, 927 F.2d 1253, 1255 (D.C. Cir. 1991) (Thomas, J.). The military would merely request the opportunity to consider whether to retain some Plaintiffs in the context of a non-punitive separation proceeding. "The usual time and effort required to pursue an administrative remedy does not constitute irreparable injury." *Randolph-Sheppard*, 795 F.2d at 108. Despite Plaintiffs' characterizations, "[t]he potential injury [they face] is primarily economic" and entirely reparable. *See Christoffersen v. Wash. State Air Nat'l Guard*, 855 F.2d 1437, 1444 (9th Cir. 1988); *see also Rhoades v. Savannah River Nuclear Sols., LLC*, 574 F. Supp. 3d 322, 346 (D.S.C. 2021) (concluding that vaccination requirement did not impose irreparable harm), *appeal dismissed*, 2022 WL 17691567 (4th Cir. July 6, 2022).

*Third*, in *Elrod*, "the Court concluded that injunctive relief was warranted because the plaintiffs' First Amendment injuries were 'both threatened and occurring at the time of respondents' motion.'" *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997) (quoting *Elrod*, 427 U.S. at 374). Here, the Court correctly found that "Plaintiffs' injuries are either not yet realized or redressable." Order 16. Now that the Secretary of Defense has executed Congress's direction to rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021, Plaintiffs' purported future injuries will likely never be realized.

*Fourth*, *Elrod* focused on the First Amendment, but the thrust of Plaintiffs' arguments are made under RFRA. "Plaintiff's RFRA claim will not do, . . . as RFRA provides only a statutory right." *Navy SEAL 1*, 2022 WL 1294486, at *16. Moreover, the Supreme Court has held that the military is "under no constitutional mandate to abandon their considered professional judgment" in response to a Free Exercise Clause claimant, *Goldman v. Weinberger*, 475 U.S. 503, 509 (1986),

and this Court has found that granting Plaintiffs injunctive relief "would significantly interfere with military operations as it pertains to troop health and combat readiness" based on "expert military judgment[.]"  Order 16.

2.  *That Plaintiffs Raise a Constitutional Claim Does Not Excuse their Failure to Exhaust.*

Plaintiffs argue further that this Court erred in dismissing the case because petitioning a BCMR would be futile or inadequate since they raise a constitutional claim while incorrectly suggesting that the BCMR lacks jurisdiction to provide them relief.  Mem. 14-16.  As an initial matter, even if Plaintiffs were correct that pursuing post-separation BCMR remedies were not required, they still would not have exhausted their claims because no Plaintiff has been separated or exhausted pre-separation remedies.  *See* Order 12 ("no Plaintiff has actually gone through separation proceedings, a fact which further forecloses a finding of exhaustion").  And now that the military has halted separations for those who sought and were denied exemptions from the COVID-19 vaccine mandate, Plaintiffs will not be separated for failure to take the COVID-19 vaccine.  Accordingly, the Court need not consider Plaintiffs' arguments about BCMR proceedings to reject their reconsideration motion.

Moreover, Plaintiffs are incorrect that exhaustion of BCMR remedies is not properly required.  The Fourth Circuit has squarely "reject[ed the] argument that, as a general rule, exhaustion is not necessary where administrative litigants raise constitutional challenges." *Thetford Properties IV Ltd. P'ship v. U.S. Dep't of Hous. & Urb. Dev.*, 907 F.2d 445, 448 (4th Cir. 1990).  Further, BCMRs are "certainly adequate in that [they] can give appellants what they ultimately seek[.]"  *Id.* at 449.  And "courts must . . . indulge the optimistic presumption that the military will afford its members the protections vouchsafed by the Constitution, by the statutes, and by its own regulations."  *Hodges v. Callaway*, 499 F.2d 417, 424 (5th Cir. 1974); *see also Bois*, 801 F.2d at 467 (former service member's "claims based on the Constitution, executive

21

orders and Army regulations 'could readily have been made within the framework of [the BCMR] intramilitary procedure.'") (quoting *Chappell v. Wallace*, 462 U.S. 296, 303 (1983)).  The BCMRs have broad authority to "correct an[y] error or remove an[y] injustice."  10 U.S.C. § 1552(a)(1).  Despite cursorily claiming futility, Plaintiffs do not explain why the BCMRs may not moot the issues in this case if it were to "reinstate each [plaintiff] in active federal [] status, restore his pay, and order back pay."  *See Christoffersen*, 855 F.2d at 1444; *see also McCurdy*, 359 F.2d at 494 (focusing on whether "as a result of" administrative remedy "any possible injury could be repaired" not whether the reason for the repaired injury would be based on a constitutional analysis).  Nor have Plaintiffs explained why the BCMRs could not remove any denied religious accommodation request from their service records.  Indeed, Plaintiffs specifically seek an order for relief that falls squarely within the duties of the BCMR: that Defendants "take necessary actions to repair and restore Plaintiffs' careers and personnel records[.]"  Compl., Relief Requested, ¶ 5.  Moreover, Plaintiffs' argument that a constitutional claim would render exhaustion unnecessary is irreconcilable with *Mindes* doctrine, which requires "(a) an allegation of the deprivation of a constitutional right . . . and (b) exhaustion" before considering whether a military claim is justiciable.  *Williams*, 762 F.2d at 359.

Plaintiffs have characterized their claims as involving a purported "No Accommodation Directive" to make them appear less individualized.  *See*, *e.g.*, Compl. ¶ 1; *see also* Mem. 14-16 (citing *Thorne v. U.S. DoD*, 916 F. Supp. 1358 (E.D. Va. 1996)).  However, this Court correctly rejected Plaintiffs' contention that such a directive exists.  *See* Order 13-14.  At bottom, each Plaintiff is seeking an individualized exception from the military's longstanding and generally applicable vaccination requirements based on their unique religious beliefs.  *See Clements v. Austin*, --- F. Supp. 3d ---, 2022 WL 3224604, at *1-3 (D.S.C. July 27, 2022).  Those as-applied issues are well within the power of the BCMRs to redress regardless of Plaintiffs' prior grievances

with the RAR process and outcome.[6]  "[I]f the Board can grant [Plaintiffs] the relief [they] seek[],

which . . . it can, it is an adequate remedy, regardless of the ground on which it acts."  *See Bard*,

507 F.2d at 770.

> 3. *Plaintiffs' Joinder of an APA Claim Does Not Excuse their Failure to Exhaust their Primary Claims.*

Finally, Plaintiffs' argument that the Court clearly erred by requiring exhaustion of APA

claims is incorrect.  *See* Mem. 24.  Because "a result favorable to [Plaintiffs]" on their other claims

during administrative proceedings "could render [their] APA claim largely moot, consideration of

the claim in federal court at this point would be imprudent" even if military exhaustion somehow

did not apply to APA claims.  *See Wilt v. Gilmore*, 62 F. App'x 484, 488 (4th Cir. 2003).

### D.   Plaintiffs Have Not Established that the Court Erred in Balancing the *Mindes* Factors.

This Court found that "each of the four *Mindes* factors weigh against judicial intervention."

Order 16.  Plaintiffs' brief appears to attack the Court's weighing of these factors, Mem. 16-18,

but only summarily addresses one aspect of the first *Mindes* factor—the nature and strength of

Plaintiffs' claims—in a short paragraph, *see id*. at 18.  Furthermore, exhaustion is a "threshold

requirement that must be satisfied as an initial matter before reaching the four-factor *Mindes*

test[.]"  Order 8 n.13.  Therefore, Plaintiffs' failure to exhaust would render their claims

nonjusticiable regardless of the application of the four-factor test.  Plaintiffs' motion provides no

basis for the Court to revisit its balancing of the *Mindes* factors.[7]

---

[6] Plaintiffs' argument that BCMR review is futile because they only provide recommendations to Service Secretaries, Mem. 16, has been rejected.  *Hodges*, 499 F.2d at 423. "[T]o base an exception to the exhaustion requirement on the fact that the final administrative decision is subject to the discretionary power of the Secretary would in effect turn the exhaustion doctrine on its head."  *Id*.

[7] Plaintiffs devote four paragraphs to the Court's citation of Justice Kavanaugh's concurring opinion in *U.S. Navy SEALs 1-26*, 142 S. Ct. 1301, which they mischaracterize as a

### III.   No New Evidence Justifies Reconsideration.

Plaintiffs fail to justify reconsideration based on "[n]ew evidence." Mem. 26.  Plaintiffs

point to a statement made by government counsel at oral argument in a Sixth Circuit appeal of an

Air Force vaccine mandate case, *Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022), but this is neither

"new," nor is it "evidence."  "[S]tatements by counsel are not evidence."  *Davenport v. Goodyear*

*Dunlop Tires N. Am., Ltd.*, No. 1:15-cv-03752-JMC, 2018 WL 833606, at *4 (D.S.C. Feb. 13,

2018) (quoting *Heniford v. Am. Motors Sales Corp.*, 471 F. Supp. 328, 337 (D.S.C. 1979)).

Moreover, that argument occurred on October 19, 2022, more than a month before the Court issued

its Order, and the Sixth Circuit makes oral argument recordings publicly available online shortly

after   argument.       *See*   Sixth   Circuit,   Court   Audio   -   Recent   Hearings,

https://www.opn.ca6.uscourts.gov/internet/court_audio/aud1.php (*Doster* argument listed under

"10-19-2022").  If Plaintiffs believed that the *Doster* oral argument supported their claims, they

could have and should have brought that to the Court's attention before the Court issued its ruling.

"Importantly, Rule 59(e) 'may not be used to relitigate old matters, or to raise arguments . . . that

could have been raised prior to the entry of judgment.'"  *Eye v. Streeval*, No. 7:20-cv-00272, 2021

WL 5856146, at *1 (W.D. Va. Dec. 8, 2021) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471,

---

dissent, but cite no authority for their contention that citing a Supreme Court concurring opinion
as persuasive authority is somehow improper or would support a Rule 59(e) motion.  Mem. 24-25.
Defendants note that Plaintiffs are wrong insofar as they suggest that the Supreme Court's decision
"left intact" any legal conclusions made by the lower courts.  *Id.* at 25.  The Supreme Court granted
all extraordinary relief that the Government requested from the Supreme Court without an opinion.
The Supreme Court's extraordinary relief is entirely consistent with longstanding military
jurisprudence and not consistent with the Fifth Circuit's radical departure from longstanding
principles in this area in the *Navy Seals 1-26* case.

486 n.5 (2008)), *aff'd,* 2022 WL 1283130 (4th Cir. Apr. 29, 2022).[8]

Even if the Court considers the *Doster* oral argument, it does not support Plaintiffs' claims. Plaintiffs blatantly mischaracterize government counsel's remarks in stating that counsel "admi[tted] in oral argument that military remedies are necessarily futile and inadequate and that the only remedy available to service members is through judicial review." Mem. 26. Counsel made no such admission, and Plaintiffs point to no specific language constituting such an admission. Nothing in counsel's colloquy with the Sixth Circuit, in which government counsel expressed the legal view that courts were competent to decide whether a plaintiff was entitled to a religious accommodation under RFRA in the context of a lawsuit, admits or establishes that the Air Force or any other branch of the military is not complying with RFRA. To the contrary, this Court explained that "Defendants have demonstrated through working files and declarations from non-Defendant leaders in the Army, Navy, Marines, Coast Guard, and Air Force that no wholesale denial policy exists and that individualized considerations are given to each RAR and appeal." Order 13-14.

## IV.   Plaintiffs Fail to Establish Manifest Injustice in Support of Reconsideration.

Plaintiffs also fail to establish that reconsideration is necessary to prevent manifest injustice for two specific Plaintiffs: Capt. Hirko and Col. Lewis. *See* Mem. 27-29. Although both Capt. Hirko and Col. Lewis have had their RARs and appeals denied, neither has been separated and both are entitled to multiple steps of additional process before they could possibly be separated, in

---

[8] The Sixth Circuit's decision affirming the district court's preliminary injunction was issued after this Court's Order, but a court decision is legal authority, not "new evidence." *McMillian*, 2018 WL 11463552, at *1. And "an out-of-circuit decision [] cannot constitute controlling law" for purposes of Rule 59(e)'s "controlling law" prong. *U.S. ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 211 (4th Cir. 2017). The *Doster* opinion merely adds to "the *minority* of related military vaccine cases that found similar claims justiciable, which the Court [found] unpersuasive." Order 10 n.14.

addition to post-separation BCMR processes if they were to be separated.  Further, the Secretary of Defense has now halted all separations for failing to take the COVID-19 vaccine after seeking an exemption.  *See* Ex. 1.  The fact that events have intervened to prevent their separation underscores that there is "no injustice" — let alone manifest injustice — "in requiring [a member of the military] to submit to a system established by Congress and carefully designed to protect not only military interests but his legitimate interests as well." *Schlesinger v. Councilman*, 420 U.S. 738, 759-60 (1975).

Regarding Capt. Hirko, Plaintiffs accuse Defendants of "misrepresentations of service members' procedural protections" regarding separation in their prior briefing.  Specifically, Plaintiffs accuse Defendants of making a misrepresentation by stating that some military officers are entitled to separation boards before separation, when other service members (including Capt. Hirko) are not entitled to a separation board.  Mem. 27-28.

Defendants made no misrepresentation.  Defendants accurately stated that for disciplinary proceedings after refusal of a lawful order to vaccinate, "the procedures available in such proceedings vary by Department, rank, time in service, and other factors, but overall enable the member to consult with free defense counsel and present arguments against separation."  PI Opp. 5.  Defendants then cited to three declarations that described those processes in detail.  *See id.* (citing ECF No. 65-4, Decl. of Col. Kevin J. Mahoney, ¶¶ 23-33 (Army) ("Mahoney Decl."); ECF No. 65-7, Decl. of David J. Furness, ¶¶ 30-38 (Marine Corps); ECF No. 65-17, Decl. of Col. Hernandez, ¶¶ 4-17 (Air Force)).  Those declarations supported Defendants' statement that "[t]he administrative process generally takes at least several months and, at numerous levels of review, may result in the decision to retain the member."  *Id.*  Still, Defendants were clear in their briefing and in the supporting declarations that the exact process varies based on several factors, including rank and time in service.  Defendants in no way represented that every service member was entitled

26

to a separation board.

Col. Mahoney accurately described the process available to Capt. Hirko in his declaration. Although Capt. Hirko is not entitled to a separation board as of right because he is an officer with less than six years commissioned service, *see* Declaration of Chaplain (Captain) Andrew Hirko ¶ 4, ECF No. 90-3, he is:

> afforded the following rights prior to any elimination: Notification by the General Officer Show Cause Authority (GOSCA) of the reasons supporting elimination and factual allegations supporting them; [his] right to tender a resignation in lieu of elimination or to apply for retirement if eligible; [his] right to consult with counsel; and [his] right to rebut the reasons for elimination to the GOSCA in writing within thirty calendar days. If the GOSCA finds that elimination is not warranted, they may close the case and retain the officer. If the GOSCA finds elimination is warranted, they will forward the action to the Deputy Assistant Secretary of the Army (Review Boards) (DASA (RB)) who, acting for the Secretary of the Army, may direct retention, discharge, or referral to a Board of Inquiry.

Mahoney Decl. ¶ 30.   Accordingly, Capt. Hirko's statements that he "do[es] **not** have the opportunity to submit a written rebuttal during separation proceedings," and that he has "exhausted **all** of [his] Army administrative means of relief," Hirko Decl. ¶ 4 (citation omitted), are inaccurate. Furthermore, Capt. Hirko's experience is consistent with Defendants' statement that the administrative process for separation "generally takes at least several months."  PI Opp. 5.  Capt. Hirko's RAR appeal was denied October 3, 2022.  Hirko Decl. ¶ 6.  Three months later, he has not been separated (and per the Secretary's memorandum, he will not be separated for refusing the COVID-19 vaccine).

Plaintiffs also fail to show that reconsideration is necessary to protect Col. Lewis from manifest injustice.  Plaintiffs assert that Col. Lewis has experienced "anti-religious bias," Mem. 29 (citation omitted), but they appear to contend only that he has been subject to the generally applicable vaccine mandate and process for resolving RARs.  Further, as a non-probationary officer with more than six years of service, he is entitled to all the pre-separation process that Capt. Hirko is entitled to, plus the additional process of a proceeding before a Board of Inquiry whose

27

"purpose is to give officers a fair and impartial hearing determining if the officer will be retained in the Army."  Mahoney Decl. ¶ 31.  Per the Secretary's memorandum, he also will not be separated for refusing the COVID-19 vaccine.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Rule 59(e) Motion for Reconsideration should be denied.

DATED: January 12, 2023                Respectfully submitted,

                                       JESSICA D. ABER
                                       UNITED STATES ATTORNEY

                                       /s/ *Yuri S. Fuchs*
                                       YURI S. FUCHS
                                       Assistant United States Attorney
                                       Office of the United States Attorney
                                       Justin W. Williams U.S. Attorney's Building
                                       2100 Jamieson Avenue
                                       Alexandria, Virginia 22314
                                       Tel:    (703) 299-3872
                                       Fax:    (703) 299-3983
                                       Email:  yuri.fuchs@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Amy E. Powell*
AMY ELIZABETH POWELL
ANDREW E. CARMICHAEL
Senior Trial Counsel
CATHERINE M. YANG
MICHAEL CLENDENEN
JEREMY S.B. NEWMAN
LIAM C. HOLLAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (919) 856-4013
Fax: (202) 616-8470
Email: amy.powell@usdoj.gov

*Counsel for Defendants*