**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

**ISRAEL ALVARADO,** *et al.,*

    *Plaintiffs,*

       v.

**LLOYD AUSTIN, III,** *et al.,*

    *Defendants.*

Case No.:  1:22-cv-00876-AJT-JFA

## PLAINTIFFS' REPLY BRIEF

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

I.      THE 2023 NDAA IS A CHANGE IN CONTROLLING LAW. ........................... 4

II.     THE MANDATE'S RESCISSION DOES NOT MOOT THE CASE................... 6

  A.      Mootness Is Not Before the Court and Requires Separate Briefing. ..................... 6

  B.      Congress' Rescission Directive in § 525 Does Not Moot Plaintiffs' Religious Liberty Claims or Satisfy Voluntary Cessation Exception to Mootness. .............. 6

  C.      Congress' Rescission of the DoD Mandate Does Not Impact Plaintiffs' Challenge to the Vaccine Re-Definition. .......................................................................... 10

III.    DEFENDANTS MISCHARACTERIZE PLAINTIFFS' CLAIMS AND INJURIES.......... 11

  A.      Plaintiffs Challenge Current and Ongoing Irreparable Harms from Deprivation of Religious Liberty, Not Future Unlawful Discharges. ........................................... 11

  B.      Defendants Actions and Conduct of Their RAR Process Violate the Establishment Clause's Neutrality Mandate.................................................................................. 12

  C.      Congress' Rescission of the DoD Mandate Does Not Provide Plaintiffs with the Relief They Seek nor Preclude the Court from Granting the Relief Requested. ... 14

IV.     DEFENDANTS IGNORE THE COURT'S "CLEAR ERRORS OF LAW" THAT REQUIRE RECONSIDERATION........................................................................ 17

  A.      The Defendants' Rejection of Plaintiffs' Analysis of *Mindes* Exhaustion Depends on a False Understanding of Ripeness. ................................................................ 17

  B.      Defendants' Argument Neither RFRA Nor the Free Exercise Clause Entitles Plaintiffs to Declaratory or Injunctive Relief Against the Military Without Exhaustion Is Meritless and Contrary to Controlling Law. .................................. 18

  C.      Plaintiffs Are Exempt from Exhaustion............................................................... 18

  D.      Defendants' Admission Against Interest in *Doster* Is in Fact New Evidence...... 19

V.      RECONSIDERATION OF THE NOVEMBER 23 ORDER IS REQUIRED TO PREVENT Manifest injustice. ............................................................................... 19

VI.     CONCLUSION .................................................................................................... 20

## TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner*, 387 U.S. 136, 149-150 (1967) ...................................................... 12, 17

*Adair v. England*, 183 F.Supp.2d 31 (D.D.C. 2002) .................................................................. 12

*Austin v. Navy SEALs 1-26*, 142 S.Ct. 1301 (2022)................................................................... 9

*Bois v. Marsh*, 801 F.2d 462 (D.C. Cir. 1986) ........................................................................... 18

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)...............*Passim*

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) ....................................... 13

*City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278 (2001) ........................................ 7

*Doster v. Kendall*, --- F.4th ---, 2022 WL 17261374 (6th Cir. Nov. 29, 2022) .......................... 19

*Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554 (4th Cir.2017) ("*IRAP*"), *vacated and remanded sub nom.*, *Trump v. Int'l Refugee Assistance Project,* 138 S.Ct. 353 (2017) .......... 14

*Jeske v. Brooks*, 875 F.3d 71 (4th Cir. 1989) ............................................................................... 4

*Katcoff v. Marsh*, 755 F.2d 223 (2d Cir. 1985) ................................................................... 12, 13

*Log Cabin Republicans v. U.S.*, 658 F.3d 1162 (9th Cir. 2011) ................................................. 5

*Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) ................................................................*Passim*

*Moore v. City of Asheville, NC*, 290 F.Supp.2d 664 (W.D.N.C. 2003) ........................................ 7

*Ne. Fla. Chapter of Assoc. General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993) ................................................................................................................................. 7, 8

*Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) ............................................................................. 7

*Porter v. Clarke*, 852 F.3d 358 (4th Cir. 2017) ........................................................................ 6, 7

*Reeve Aleutian Airways, Inc. v. U.S.*, 889 F.2d 1139, 1143 (D.C. Cir. 1989)............................... 8

*Rosenstiel  v. Rodriguez*, 101 F.3d 1544 (8th Cir. 1996) ............................................................. 7

*Tandon v. Newsom,*141 S. Ct. 1294 (2021) ................................................................................ 13

*Town of Nags Head v. Toloczko*, 728 F.3d 391 (4th Cir. 2013)) ................................................. 7

*Wall v. Wade*, 741 F.3d 492 (4th Cir. 2014) ............................................................................... 7

## **STATUTES**

Pub. L. No. 111-321, 124 Stat. 3515 ........................................................................ 2, 5

H.R. 7776, Pub. L. No. 117-263, 136 Stat. 2395 (2022) ........................................ *Passim*

## **OTHER AUTHORITIES**

ALCOAST 012/023 ..................................................................................................... 5, 8

BLACK'S LAW DICTIONARY (6th ed. 1990) ............................................................... 4

Dept. of Defense, *Public Affairs Guidance: Rescinding the COVID-19 Vaccination Mandate* (Dec. 23, 2022) .......................................................................................................... 9

DoDI 6205.02 ............................................................................................................. 10

FRAGO 36 ................................................................................................................. 5, 8

MARADMINS 025/23 ............................................................................................... 5, 8

NAVADMIN 005/23 .................................................................................................. 5, 8

## INTRODUCTION

On December 23, 2022, President Biden signed into law the National Defense Authorization Act of 2023 ("2023 NDAA"), which was enacted by a vote of 83-11 in the Senate and 350-80 in the House, including Section 525 thereof ("§ 525") directing Secretary of Defense Lloyd Austin, III to "rescind" the Department of Defense's ("DoD") August 24, 2021 COVID-19 vaccine mandate ("DoD Mandate"). H.R. 7776, Pub. L. No. 117-263, 136 Stat. 2395 (2022). Congress used the specific term "rescind"—rather than, for example, more typical legislative directives like "repeal", "amend", or "modify"—to express its intent that § 525 has retroactive effect. Section 525 reflects the determination by veto-proof majorities of Congress that Secretary Austin's Mandate was void *ab initio*. Consequently, all adverse personnel actions taken as a result of non-compliance with an order that is now a legal nullity must be undone from the beginning and corrected. Rescission also eliminates any interest, compelling or otherwise, that could have supported Military Defendants' policy to systematically deny any religious accommodation requests ("RARs") (the "Categorical RA Ban").

Secretary Austin's January 10, 2023 Memorandum rescinding the DoD Mandate ("Rescission Memo"), *see* ECF 94-1, acknowledged § 525 applies retroactively by ordering that all separations and discharges resulting solely from non-compliance with the DoD Mandate should be halted and that all adverse personnel actions and paperwork should be corrected. *Id.* at 1. Secretary Austin further directed the Service Secretaries to cease adjudication of religious accommodation requests ("RARs") and medical or administrative exemptions. *Id.*

But Defendants have not rescinded the restrictions on unvaccinated service members adopted pursuant to the DoD Mandate. These restrictions, in particular those regarding travel, training, deployment and many others remain in place and apply to all service members, despite the elimination of the legal basis for these rules. These restrictions have been and will continue to

1

be the cause of ongoing violations of Plaintiff military chaplains' religious liberties; they have been applied to prevent Plaintiffs and all or nearly all other service members from performing their duties and will result in further career injuries and likely failures of selections.

Section I below explains why § 525 is in fact a change in controlling law that expresses Congress' intent to apply § 525 retroactively to make the policy void *ab initio*. This is easily shown by comparing § 525 with that used in the Don't Ask, Don't Tell Repeal Act of 2010, Pub. L. No. 111-321, 124 Stat. 3515 ("Repeal Act"), to repeal that policy on a prospective basis. There cannot be an exhaustion requirement to challenge a law that no longer exists, or the adverse consequences thereof when the DoD itself has acknowledged § 525 should have retroactive effect. Further, Defendants' claim that § 525 is not a change in controlling law is contradicted by their mootness argument made here and in related litigation.

Section II briefly replies to Defendants' argument in its opposition ("Opp"), ECF 94, that Plaintiffs' claims have been mooted by § 525. Plaintiffs respectfully submit that mootness is not properly before the Court on Plaintiffs' motion for reconsideration and must be separately briefed, as the government has requested in several other related actions. But to the extent the Court may consider Defendants' mootness arguments, Plaintiffs' claims are not moot, and Defendants' rescission does not constitute "voluntary cessation", for at least three reasons. First, the DoD and the Armed Services have not, in fact, complied with Congress' § 525 directive. While Secretary Austin has "rescind[ed]" the August 24, 2021 Mandate memorandum, Defendants have not rescinded their implementing orders with restrictions applicable to all or nearly all service members regarding training, travel or deployment. Nor have Defendants rescinded the Categorical RA Ban, *i.e.*, the policies and procedures that resulted in the uniform denial of all or nearly all RARs submitted. Second, Defendants have retained, or enacted new policies, that are substantially

2

similar to those challenged by Plaintiffs that will continue to inflict the same, or substantially similar, violations of religious liberties as Plaintiffs have already suffered. In fact, the new or retained policies will impose precisely the same violations of religious liberties as the rescinded policy memorandum. Third, a case is not moot if a court can remedy an injury. Removing Plaintiffs' bad paperwork does not resolve their injuries from degraded fitness reports, deployment denials, marginalization, and failures of selection for schools and promotions.

Section III exposes Defendants' false claim the case's focus is a "challenge to being discharged" when no such claim appears in the Complaint or in any brief Plaintiffs have submitted. DOD cites Plaintiffs' "constitutional" challenges without once acknowledging Plaintiffs raise Establishment, Free Exercise, Free Speech and Due Process Clause claims, unconstitutional retaliation claims and violation of their rights and protections as chaplains in the 2013 NDAA's Section 533(b) ("§ 533") addressing chaplains' freedom of conscience.

While the January 10, 2023 Memorandum directs that Plaintiffs' adverse personnel actions, or "bad paper", should be corrected or removed, it does not and cannot provide the relief Plaintiffs seek. It will not remove the prejudice to their careers and remedy their injury from the illegal Mandate and its illegal enforcement procedures, *see* Opp at 1, 8 n.2, 9-11 and 22. Defendants, the alleged experts of their promotion, assignments, and career development programs, know that nothing could be further from the truth. They cannot dispute that Plaintiffs' bad or degraded fitness reports following their RARs and/or refusal to accept the vaccine; their consequent inability to transfer to new assignments, to travel to training and attend schools; having another chaplain assigned to the same unit because permanent changes of station ("PCS") were forbidden, or in some cases brought in early to replace a plaintiff, and/or minimize and restate their duties; and not being allowed to deploy has damaged Plaintiffs' careers and illegally and unfairly degraded their

opportunity for selection in the Services' competitive promotion systems.

Section IV addresses the Court's "clear errors of law" that justify reconsideration, in particular, the misapplication of the military justiciability analysis set forth in *Mindes v. Seaman*, 453 F.2d197 (5th Cir. 1971) and other clear errors of law in the November 23 Order.

Section V replies to Defendants' assertions regarding the impact on individual plaintiffs. Plaintiffs have provided updated declarations confirming that they continue to face adverse consequences despite rescission.

## I.   THE 2023 NDAA IS A CHANGE IN CONTROLLING LAW.

Defendants absurdly claim that the 2023 NDAA is not a change in controlling law, *see* Opp at 7-9, despite the fact that it retroactively eliminates any legal basis for the DoD Mandate and the central defense to Plaintiffs' religious liberty claims, *i.e.*, that the categorical denial of RARs serves a compelling interest and was the least restrictive means. Congress intentionally used the term "rescind", rather than "repeal", to instruct Secretary Austin and the courts that Section 525 must be applied retroactively. "Rescind" is derived from the Latin "rescission", which means "an annulling; avoiding, or making void; abrogation; rescission". BLACK'S LAW DICTIONARY at 1306 (6th ed. 1990). It is normally used in the context of "rescission of contract", which means to "abrogate, annul, avoid or cancel a contract;" "void in its inception"; or "an undoing of it from the beginning." *Id.* "Rescind" thus necessarily has retroactive effect and renders the rescinded contract, policy or rule void *ab initio. See, e.g., Jeske v. Brooks*, 875 F.3d 71, 75 (4th Cir. 1989) (giving retroactive effect to rescission of SEC rule).

This is easily illustrated by comparison with "don't ask don't tell" Repeal Act cases that Defendants have cited in recent briefs. *See, e.g., Col. Fin. Mgmt. Officer v. Austin* No. 8:22-cv-1275 (M.D. Fla. Jan. 18, 2023), ECF No. 275 at 14. Unlike Section § 525, the repealed policy remained in effect until 60 days after the Secretary of Defense received a report recommending

changes to military policy and the President, Secretary of Defense and the Joint Chiefs of Staff had considered the report's recommendations and "were prepared to implement the repeal consistent with military readiness, military effectiveness, and unit cohesion." *Log Cabin Republicans v. U.S.*, 658 F.3d 1162, 1165 (9th Cir. 2011) (*citing* Repeal Act § 2(b)), *overruled on other grounds by Bd. of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195 (9th Cir. 2019). Section 525, by contrast, requires the unconditional rescission of the DoD Mandate with 30 days to implement the rescission.

Secretary Austin's Rescission Memo recognizes the retroactive effect of Section 525 by directing that all separations and discharges resulting solely from non-compliance with the DoD Mandate should be halted and that all adverse personnel actions and paperwork should be corrected. *See* ECF 94-1, Rescission Memo, at 1. Each of the Armed Services that has issued orders implementing § 525 have similarly given the rescission retroactive effect.[1]

That Congress intended the § 525 rescission of the DoD Mandate to have retroactive effect is consistent with the amendments made in Section 524 of the 2023 NDAA ("§ 524"), *see* 2023 NDAA, § 524, which amended Section 736 of the 2022 NDAA ("Section 736"). Pub. L. No. 117-81, 135 Stat. 1541, § 736. Section 736(a) states that:

> During the period of time beginning on August 24, 2021, and ending on the date that is two years after the date of the enactment of this Act, any administrative discharge of a covered member, on the sole basis that the covered member failed to obey a lawful order to receive a vaccine for COVID–19, shall be—
> > (1) an honorable discharge; or
> > (2) a general discharge under honorable conditions.

---

[1] *See* Ex. 1, Dept. of the Army, FRAGO 36, ¶ 1.R & ¶ 33.D.28 (suspension of involuntary separations) ("Army Rescission Order"); Ex. 2, Dept. of the Navy, NAVADMIN 005/23, ¶ 1.b (same) ("Navy Rescission Order"); Ex. 3, Marine Corps, MARADMINS 025/23, ¶3.b ("Marine Corps Rescission Order"). *See also* ECF 94-2, ALCOAST 012/023, ¶ 2 (Coast Guard halting separations in "alignment with DOD")) ("Coast Guard Rescission Order").

Section 524 strikes the phrase "During the period of time beginning on August 24, 2021, and ending on the date that is two years after the date of the enactment of this Act", thereby eliminating the retroactive application of this limitation and making it purely prospective. With the rescission of the DoD Mandate, Congress no longer deems previous discharges due to non-compliance to be pursuant to a lawful order, *i.e.*, because Congress has retroactively eliminated any legal basis for such discharges.

## II.   THE MANDATE'S RESCISSION DOES NOT MOOT THE CASE.

### A.   Mootness Is Not Before the Court and Requires Separate Briefing.

Defendants repeatedly contend that the § 525 rescission moots the case. *See, e.g.,* Opp. at 1, 8 n.2, 9-11, 22. This is not true, and in any case this issue is not properly before the Court. It was not addressed in the November 23 Order and is not an issue for which Plaintiffs seek reconsideration. Mootness is a complicated, fact-specific that issue that require a separate briefing for each case in which it is raised. DoD has moved for, and been granted, a separate briefing on mootness in similar class actions, including the proceedings in *Navy SEALs 1-26 v. Austin* (in both the district court and the Fifth Circuit), *Col. Fin. Mgmt. Officer v. Austin*, and *Short v. Berger*.

### B.   Congress' Rescission Directive in § 525 Does Not Moot Plaintiffs' Religious Liberty Claims or Satisfy Voluntary Cessation Exception to Mootness.

Defendants acknowledge "Congress's decision to direct rescission of the COVID-19 vaccine mandate going forward also does not resolve the RFRA claim in this case", Opp at 9, but in the very next sentence asserts that § 525 "may moot this case." *Id.*

Defendants are incorrect. Section 525 does not moot this case, but even if it did, Defendants' implementation of § 525 cannot qualify for the "voluntary cessation" to mootness. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (*quoting*

*Powell v. McCormack*, 395 U.S. 486, 496 (1969)). A challenge to a repealed law or regulation is not mooted where it is replaced or is likely to be replaced by a substantially similar law or regulation. *See, e.g., Moore v. City of Asheville, NC*, 290 F.Supp.2d 664, 672 (W.D.N.C. 2003) (collecting cases on mootness of repealed statutes). Moreover, the case is not moot if a court can provide a remedy or the "new" law or regulation adopts similar restrictions as the old, but only to a lesser degree, *see, NE. Fla. Chapter of Assoc. General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 661 (1993) ("*City of Jacksonville*"), or harms plaintiffs in the same way that the prior rule did. *See Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1548 (8th Cir. 1996).

The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). A defendant asserting voluntary cessation faces a "heavy burden to establish that its allegedly wrongful behavior will not recur", *Porter*, 852 F.3d at 364, a burden that cannot be met where the defendant "retains the authority and capacity to repeat an alleged harm." *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014); *see also Pashby v. Delia*, 709 F.3d 307, 316–17 (4th Cir. 2013) (holding that a governmental entity's change to a challenged policy does not moot an action when the government retains authority to "reassess ... at any time" the change and revert to the challenged policy). This burden also cannot be met where, as here, the defendants expressly state that, "notwithstanding the abandonment of a challenged policy, [they] could return to the contested policy in the future." *Porter*, 852 F.3d at 365 (*citing Town of Nags Head v. Toloczko*, 728 F.3d 391, 394 n.3 (4th Cir. 2013)). Courts have also found that a violation is sufficiently likely to recur, and thus defeat a claim of voluntary cessation, where the defendant continues to defend the legality of the challenged policy and appeals adverse decisions. *See, e.g., Reeve Aleutian Airways, Inc. v. U.S.*, 889 F.2d

1139, 1143 (D.C. Cir. 1989) (finding that there was a reasonable expectation that DOD would continue to violate plaintiffs' rights because "DoD's very defense of the [the] regulations make it more likely that [the plaintiff] will be subject to the procedures.")

The Armed Services' retention of universal or near universal restrictions on unvaccinated service members fail to meet *their* high burden to demonstrate Plaintiffs' claims are moot. Further, all of the foregoing factors courts consider militate against any finding of mootness or voluntary cessation.

First, Defendants have not, in fact, rescinded the DoD Mandate's restrictions on service members. Further, Defendants implementing orders do not rescind any of the other restrictions on the unvaccinated that were adopted pursuant to the DoD Mandate, in particular those regarding the travel, training, deployment, and other restrictions that will preclude unvaccinated service members from performing their duties. All of these restrictions remain in effect.[2] Moreover, Defendants have not even proposed making any changes to the unconstitutional policies on religious accommodations that resulted in systematic violations of religious liberties. Thus, "there is no mere risk that [Defendants] will repeat [their] alleged wrongful conduct; [they] ha[ve] already done so." *City of Jacksonville*, 508 U.S. at 661.

Second, any restrictions or requirements that Defendants have rescinded are likely to be reenacted. Section 525 does not expressly preclude Defendants from adopting the same or substantially similar policies that have been rescinded. Defendants have not disclaimed their

---

[2] *See* ECF 94-1, Austin Rescission Memo, at 2 ("Other standing Departmental policies, procedures, and processes regarding immunization remain in effect", including those regarding deployment and travel); Ex. 1, Army Rescission Order, ¶ 1.R (directing commands to "continue to adhere to other previously published policies regarding the Army's response to COVID-19 pending further guidance"); ECF 90-2 Coast Guard Rescission Order, ¶ 2 (rescinding only the Coast Guard mandate); Ex. 2, Navy Rescission Order (rescinding only Navy Mandate and policies related to separation for non-compliance); Ex. 3, Marine Corps Rescission Order (same).

authority or intention to adopt future COVID-19 vaccination requirements. Instead, Secretary Austin, in response to the question of whether the "the COVID-19 vaccination requirement [could] be reinstated," indicated that the DoD may do so at any time based on "changing public health conditions."[3] Further, Defendants kept the DoD Mandate in place even after a series of court losses imposing nation-wide injunctions; President Biden's July 21, 2022 declaration that the pandemic was over; the CDC's August 11, 2022 guidance directing employers to no longer discriminate against the unvaccinated; and after the Biden Administration's August 16, 2022 decision to no longer purchase or pay for any of the vaccines that the DoD seeks to mandate. *See* ECF No. 60, PL PI Br., at 4-5; ECF No. 67, PL Reply Br., at 4 & n.3

Third, the Biden Administration and Secretary Austin have consistently and strongly defended the legality of the DoD Mandate and Categorical RA Bans. Defendants have appealed all adverse rulings in cases challenging the DoD Mandate; despite losing all cases in the Courts of Appeals challenging the grant of an injunction, Defendants have appealed those cases to the Supreme Court. *See, e.g., Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022) (leaving in place nation-wide injunction but partially limiting scope). They also consistently and strenuously opposed § 525, which was eventually enacted with the support of 80% or more in the House and the Senate, and continue to do so, *e.g.*, Secretary Austin assertion after § 525 enactment that "[t]he Secretary has been clear in his support for maintaining the COVID-19 vaccination mandate." *Supra* note 3, Austin Rescission Guidance at 3. The Biden Administration and Secretary Austin similarly opposed 2022 NDAA § 736 in an attempt to preserve their authority to impose the

---

[3] Dept. of Defense, *Public Affairs Guidance: Rescinding the COVID-19 Vaccination Mandate* at 4 (Dec. 23, 2022) ("Austin Rescission Guidance"), available at: https://lc.org/PDFs/Attachments2PRsLAs/2022/122922COVID-mandate-rescission.pdf (last visited Jan. 19, 2023).

harshest possible penalties for non-compliance (including dishonorable discharge, courts-martial and imprisonment).

C.   **Congress' Rescission of the DoD Mandate Does Not Impact Plaintiffs' Challenge to the Vaccine Re-Definition.**

The 2023 NDAA does not address Plaintiffs' challenge to the DoD and the Center for Disease Control and Prevention ("CDC") Vaccine Re-Definition under the Administrative Procedure Act and the Major Policy Decisions doctrine. Compl. ¶¶ 16, 18, § VIII, Count 9 (p.119). Defendants continue to use "vaccination" and "vaccine" as if those terms Defendants redefined on September 1, 2021, had the same meaning when American military began using vaccination as a means to protect its military from disease over 244 years ago. Prior to Sept. 1, 2021, Defendants defined "vaccine" as, "A preparation that contains one or more components of a biological agent or toxin and induces a **protective** immune response against that agent when administered to an individual", and "vaccination" as, "The administration of a vaccine to an individual for inducing immunity." Dept. of Defense Instruction 6205.02, DoD Immunization Program, at 19 and 18 (Glossary) ("DoDI 6205.02") (emphasis added). Some doctors refer to those vaccines as "sanitized vaccines" because they contain a dead "component[] of a biological agent or toxin." That describes vaccines prior to COVID. DoD's new definition of a COVID vaccine, is something that **stimulates** the recipient's immune system without producing immunity and contains no element of a biological agent or toxin despite. It is inconsistent and contrary to the still valid  DoDI 6205.02. The COVID vaccine is not equivalent to historic vaccines as DoD deceptively claims.

DoD and the CDC admit the COVID 19 vaccines at issue do not protect from infection or transmission and in fact, introduce new organisms into our bodies whose effects have yet to be determined. Defendants have not challenged Plaintiffs' arguments in their Complaint, Preliminary Injunction motion ("PI") and at the September 28, 2022, hearing that this change in definition is

10

the modern equivalent of "bait and switch" when DoD equates its non-protective COVID vaccines to the sanitized vaccines which historically provided immunity and protection.

## III.   DEFENDANTS MISCHARACTERIZE PLAINTIFFS' CLAIMS AND INJURIES.

### A.   Plaintiffs Challenge Current and Ongoing Irreparable Harms from Deprivation of Religious Liberty, Not Future Unlawful Discharges.

Defendants erroneously claim the case is a "challenge to their discharge" or separation when no such claim appears in the Complaint or in any Plaintiffs' brief. *See* Opp at 18 ("an injunction against a" military discharge proceeding 'presents a different case' than *Elrod*"); *see also id.* at 3, 4-7, 10, 19-21, 26, 27. Defendants cite many cases addressing discharge challenges. Opp at 10, 14, 17-20. Those arguments and cases are irrelevant, they ignore the fundamental question in this case: Can the Secretary force Plaintiffs to change their allegiance of who directs their conscience from the God of their faith to a bureaucrat. That is a religious liberty issue.

It is Plaintiffs' refusal to surrender their right to seek a religious accommodation that has subjected to them to prejudicial negative personnel and disciplinary actions followed by threat of discharge with a career ending characterization of "general". They challenge Secretary Austin's authority under the major policy doctrine to make such an order requiring them to choose between their conscience and their career. The NDAA has vindicated Plaintiffs' claim by denying Sec. Austin the power to create this "major policy" on his own authority.

The illegality of the RAR process and Categorical RA Ban are the issues here, not a future discharge that may result from the sham RAR process, an action separate from the discharge process. DoD's and the Services' regulations define the RAR process. The senior Service official's final decision completes that process and makes the RAR process ripe for judicial review. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149-150 (1967) (describing "final agency action" allowing for judicial review). Defendants have not identified any further review following denial of a RAR

11

appeal and the legality of that process is beyond BCNRs' authority. *See* below.

> Where the legal issue presented is fit for judicial resolution, and where a regulation [or mandated procedure] requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedure Act and the Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstance, neither of which appears here.

*Garner*, 387 U.S. at 153.

The legal issue is whether the RAR process comports with the Establishment, Free Exercise and Due Process Clauses, a constitutional question beyond the capability and authority of a BCMR to address. *See* ECF 90, PL Recons. Mem., at 14-15, § II.B.3, "BMRs Lack Jurisdiction over Constitutional Challenges" and 15-16, § II.B.4, "BCMRs Lack Jurisdiction Challenges to Hear Challenges to Generally Applicable Military Policies or Regulations", and cases cited therein.

Defendants' failure to address this issue or refute the authority of the cases Plaintiffs cite amounts to a waiver of the issue and acknowledgment the case law supports Plaintiffs' claims.

### B.     Defendants Actions and Conduct of Their RAR Process Violate the Establishment Clause's Neutrality Mandate

Defendants' citation to Free Exercise cases that require exhaustion, Opp at 13, 17, 20, willfully ignores Plaintiffs' Establishment Clause challenge. *See Adair v. England*, 183 F.Supp.2d 31, 47-54 (D.D.C. 2002) (discussing the differences in Establishment, Free Exercise and Due Process claims and legal standards thereof).

Plaintiffs' briefing argued that two Circuit Court decisions addressing chaplains and the Free Exercise and Establishment Clauses provided the appropriate legal authority to resolve the religious issues and rights this case raises, including *Katcoff v. Marsh*, 755 F.2d 223 (2d Cir. 1985). *Katcoff* rejected an Establishment Clause challenge to the Army Chaplain Corps while showing the interrelationship and harmony of the two Religion Clauses. Absent a chaplaincy, the military "would deprive the soldier of his right under the Establishment Clause not to have his religion

inhibited and of his right under the Free Exercise Clause to practice his freely chosen religion." *Katcoff*, 755 F.2d at 232.

Plaintiffs allege and the evidence before the Court shows the Defendants treat religious accommodations less favorably than comparable medical and administrative exemptions requests. Plaintiffs' religious beliefs based on their conscience have been almost uniformly rejected by the RAR process sending a message that DoD is hostile to the concept of having one's conscience rule by faith. The issue is not have some RARs been granted, but whether religious exercise is treated differently than comparable secular activity (*i.e.*, medical or administrative exemptions).

*Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021), held California's COVID "regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." The Court went on,

> This is the fifth time the Court has summarily rejected the Ninth Circuit's analysis of California's COVID restrictions on religious exercise. [Citations omitted]. It is unsurprising that such litigants are entitled to relief. California's Blueprint System contains myriad exceptions and accommodations for comparable activities, thus requiring the application of strict scrutiny.

*Id.* at 1297-98. That principle should apply here. *Tandon* emphasized that "That standard 'is not watered down'; it 'really means what it says.'" *Id.* at 1298 (quotation altered from *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546, (1993)). Here, the message is one of hostility to Plaintiffs' religion as expressed through their conscience, a fact Defendants ignore.

Defendants have not addressed Plaintiffs' argument that the controlling case here is *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) ("*CFGC*"), whose logic, rationale, and holding the Fourth Circuit adopted and incorporated. *See* ECF 90, PL Recons. Mem., at 22-23. "[B]ecause of 'the inchoate, one-way nature of Establishment Clause violations,'

they create the same type of immediate irreparable injury as do other types of First Amendment violations." *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 602 (4th Cir.2017) ("*IRAP*"), *vacated and remanded sub nom.*, *Trump v. Int'l Refugee Assistance Project,* 138 S.Ct. 353 (2017) (*quoting CFGC*, 454 F.3d at 303; *see also id.* ("[W]hen an Establishment Clause violation is alleged, infringement occurs the moment the government action takes place . . . .").

Plaintiffs challenge Defendants' RAR process with its preordained denial for most RARs and their appeals, a message of government hostility towards Plaintiffs' religion, a violation of the Establishment Clause's neutrality mandate. *See CFGC*, 454 F.3d at 302. It is also a violation of the Free Exercise Clause, and the Free Speech Cause because Defendants have censored Plaintiffs' religious speech and attempted to compel them to speak the government's message of submission rather than the message their conscience as directed by their faith requires.

Defendants cite Plaintiffs' "constitutional" challenges numerous times without once identifying the specific and detailed Establishment, Free Exercise, Free Speech and Due Process Clause claims, unconstitutional retaliation claims and violation of § 533.

Defendants have not challenged Plaintiffs' Reconsideration claims there are no cases outside of prisoner cases where Establishment Clause claims require exhaustion of some administrative remedy. Plaintiffs challenge the RAR process, including its failure to recognize there are less restrictive means to accomplish protection from COVID, especially when the unvaccinated face the same COVID risks and dangers as the vaccinated.

### C.    Congress' Rescission of the DoD Mandate Does Not Provide Plaintiffs with the Relief They Seek nor Preclude the Court from Granting the Relief Requested.

Section 525's rescission does not "repair and restore Plaintiffs' careers and personnel records", Compl., Relief Requested, ¶ 5, a remedy Defendants acknowledge Plaintiffs specifically requested. Opp at 22. Defendants' speculation that removing Plaintiffs "bad paper" as directed by

the Secretary will remedy the damage injury from the illegal Mandate and its illegal enforcement procedures done is patently false. Defendants, the alleged experts of their promotion, assignments, and career development programs, know that nothing could be further from the truth. They regularly brief their officers on the competitiveness of the promotion process and how important small issues and details are. As the Plaintiffs' declarations point out there are two aspects that influence an officers promotion consideration, their record and reputation. *See* Ex. 4, CH Lewis Decl., ¶¶ 4-9 & CH Lee Decl., ¶¶ 4-10,  They also point out what the Defendants know but have deliberately hidden from the Court, the importance of career enhancing assignments, attending and completing the necessary schooling and mandatory training, how damaging subtle comments are on a report. Rescission of the mandate does not change Plaintiffs low fitness because they're not "team players", does not restore competitiveness to many plaintiffs careers because of missed schooling, training, or inability to execute permanent changes of station.

The Army did not allow Chaplain Doyle Harris to travel to  his units or PCS from Okinawa and sent a replacement chaplain to his Battalion who became the "primary" chaplain with the corresponding duties making Harris a second-class citizen in terms of fitness reports as well as the identified "non-team player." After submitting his RAR, his efficiency reports declined, and he was not selected for Major. *See* Ex. 4, CH Harris Decl., ¶ 6.

 Navy chaplain Gentilhomme, fulfilling his duty as the conscience of the command, asked his Marine squadron commander why he was punishing Marines for not accepting what was a experimental use only vaccine. His reward for doing his duty as an advisor to the commander on moral and ethical issues was the commander ordered him out of his office, fired him as the squadron chaplain and attempted to fire him from the air group which required intervention by the Chaplain of the Marine Corps. The commander prohibited Gentilhomme from ministering to the

Marines of that unit unless they requested it and gave him a fitness report resulting in his non-selection.

Each Service's Chaplain Corps is a small organization. CH Lewis will be eligible for consideration for the Deputy Chief of Chaplains Brigadier General position, yet the board members will know he is "vaccine refuser." The Army Chief or his Deputy alternate as promotion board presidents. The Chief openly expressed his hostility to those who followed their conscience and requested RARs, and a speech to the Chaplain Corps Basic Course and made a video urging chaplains to take the vaccine boosters. Neither Chief nor Deputy have expressed any support or admiration for chaplains who follow their conscience as formed by faith,

Defendants cannot deny Plaintiffs' careers have been harmed by their RARs and/or refusal to accept the vaccine; their consequent inability to transfer to new assignments, to travel to training and attend schools; having another chaplain assigned to the same unit because PCS moves were forbidden, or in some cases brought in early to replace a plaintiff, and/or minimize and restate their duties; and not being allowed to deploy has damaged Plaintiffs' careers and illegally and unfairly degraded their opportunity for selection in the Services' competitive promotion systems.

Exhibit 5 contains extracts from the Plaintiffs' declarations describing their irreparable injuries and damage to their careers resulting from their RAR submissions. The only way these plaintiffs careers can be restored is for the Court to enjoin the respective Services from continuing to retaliate against Plaintiffs. Defendants can meet that standard only when they make the "bad" paper "good" paper by (a) acknowledging publicly Plaintiffs have demonstrated the highest quality and character of officers and chaplains, willing to sacrifice their careers and possibly burden their families by refusing to disobey their conscience as formed by their faith; and (b) ordering selection boards to consider COVID related issues as things to reward.

The Army's operation order concerning the rescission of the mandate clearly states it will continue to retain all the restrictions imposed by the mandate on travel, assignments, meaning remain in place. The 101st Airborne/airmobile Division G-1, the division's personnel officer, clearly indicates in his email to CH Hirko disciplinary actions and use of General Officer Memorandum's of Reprimand will continue the same irreparable harm flowing from Defendants' message of hostility and career destruction of those with the courage and integrity to follow their conscience, the very people the military needs. *See* Ex. 4, CH Hirko Decl., ¶ 8 & its Ex. 2 (email exchange). The 101st Division G-1's summary of the Army's intent and the Army's latest Order clearly portray the hostility against religion that qualifies as an Establishment of religion. *Id.*, ¶ 12. The Army's and other services similar actions send the clear message Plaintiffs are like lepers of old, "unclean", a message of hatred and loathing. *See CFGC*, 454 F.3d at 302.

The Secretary himself has expressed no remorse to Congress or the Army for the damage caused to unit cohesion and trust in the military as indicated by the catastrophic recruiting shortfalls. Only the Secretary has the power to make bad paper good paper and he nor the other military leaders have shown any inclination of acknowledging the integrity or courage of Plaintiffs who risked their careers to follow their conscience as formed by their faith.

## IV. DEFENDANTS IGNORE THE COURT'S "CLEAR ERRORS OF LAW" THAT REQUIRE RECONSIDERATION.

### A. The Defendants' Rejection of Plaintiffs' Analysis of *Mindes* Exhaustion Depends on a False Understanding of Ripeness.

Defendants reject the application of Plaintiffs' analysis of the logic and authority of *Mindes*. Mot. at 17-20. This rejection is based on Defendants' warped understanding of ripeness and his rejection that Establishment Clause precedent controls. The discussion of *Gardner*, 387 U.S. at 149-153, in III.A above concerning ripeness and final action show Defendants are wrong.

**B.      Defendants' Argument Neither RFRA Nor the Free Exercise Clause Entitles Plaintiffs to Declaratory or Injunctive Relief Against the Military Without Exhaustion Is Meritless and Contrary to Controlling Law.**

Defendants' position that RFRA has an exhaustion requirement is unsupported by the statute's language, history and case law. Opp at 11-17. DoD provides no Supreme Court or Circuit Court precedent, nor does it establish such a requirement in the statute's language or history nor consider the competing interests at stake. *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986), a case Defendants cite, Opp at 15, defeats DoD's argument. The *Bois* court found that the plaintiff had failed to make:

> [A]ny showing of the requisite irreparable harm that would justify [her] failure to exhaust [the internal military] process before seeking review in the civilian courts. … For example, exhaustion might not be required if [the plaintiff] were challenging her incarceration by the military or the ongoing deprivation of some other liberty interest.

This case involves "the ongoing deprivation of some other liberty interest," *CFGC*, 454 F.3d at 302, namely, the freedom from government establishment of religion. The Establishment Clause's mandate of government neutrality overrides any other administrative interest or judicially imposed limitations that might undermine the Establishment Clause values at issue.

**C.      Plaintiffs Are Exempt from Exhaustion**

Contrary to the Defendants' assertion, Opp at 17-23, Plaintiffs provided numerous Fourth Circuit precedents that excuses exhaustion and that apply to the facts of this case. DoD's denial of that precedent is based on willful blindness to the law and the fact that it cannot admit it is wrong. Plaintiffs have shown that Fourth Circuit precedent is well-established First Amendment violations result in irreparable harm. *See* ECF 90, PL Recons. Mem., at 12-14, § II.B.2 & 18-24, § II.C.3-4.

Defendants recognize "exhaustion is not required where no genuine opportunity for adequate relief exists, irreparable injury will result if the complaining party is compelled to pursue administrative remedies, or an administrative appeal would be futile.'" Opp at 21 (citations

18

omitted). Defendants' argument that plaintiffs believe they qualify for the irreparable injury exception because they raise constitutional claims, and because they raise an APA claim, Opp at 21-23, flounders on the fact DoD does not cite the specific constitutional issue and interest at issue, non-establishment. *See CFGC*, 454 F.3d. at 302.

D.      **Defendants' Admission Against Interest in *Doster v. Kendall* Is New Evidence.**

Defendants' claim their admission in *Doster v. Kendall*, --- F.4th ---, 2022 WL 17261374 (6th Cir. Nov. 29, 2022), that "RFRA allows [the Air Force] to freely burden a service member's religious beliefs (even for irrational reasons) in its day-to-day operations" and "the statute gets triggered only in judicial proceedings, at which point it must come up with sufficient justifications for its actions under strict scrutiny" is not new evidence. *Doster*, 2022 WL 17261374, at *28. It has no merit. Defendants provide no authority for their assertion that that counsel who are not involved in *Doster* have some sort of duty or obligation to listen to oral arguments or other proceedings on the off chance the defendant's counsel will say something that is very helpful to the plaintiffs. What is important is how the *Doster* court perceived and reported what the government's counsel said. Thus, DoD counsel's statement is admissible evidence under Fed. R. Evid. 804(b)(3), as an admission against interest, or under Rule 804(b)(5). It also seems to qualify as a judicial estoppel.

V.      **RECONSIDERATION OF THE NOVEMBER 23 ORDER IS REQUIRED TO PREVENT MANIFEST INJUSTICE.**

The arguments above clearly show why reconsideration is required to prevent manifest injustice. Plaintiffs' careers have been harmed, if not destroyed because they had the courage and integrity to submit RARs, a permissible request and sanctioned under RFRA and DoD's instructions. The actions taken against them are prima facie examples of retaliation, negative personnel actions as result of the exercise of a protected right, and § 533(b) of the 2013 NDAA, a

19

statute clearly focused on Plaintiffs' right to follow their conscience. Even with the Mandate's rescission, the Secretary and the Armed Services have shown little interest in remedying the damage that they created while violating numerous constitutional and statutory provisions. They keep in place the same travel restrictions despite CDC's guidance distinction between vaccinated and unvaccinated should be removed.

Defendants' argument they did not mislead the Court in describing the opportunities available for those being separated is hard to reconcile with the language that they used. They presented no limitations despite a large number of chaplains with less than six years. Even now, CH Hirko's unit still seems to be pushing to get rid of him and retaliate for his exercise of his rights. The mere threat is in fact irreparable harm.

## VI.    CONCLUSION

This Court should grant Plaintiffs' Motion for Reconsideration.

Dated: January 19, 2023                         Respectfully Submitted,

/s/ Arthur A. Schulcz, Sr.
Arthur A. Schulcz, Sr.
VA Bar No. 30174
Chaplains Counsel, PLLC
21043 Honeycreeper Place
Leesburg, VA 20175
Tel. (703) 645-4010
Email: art@chaplainscounsel.com

/s/ Brandon Johnson
Brandon Johnson
DC Bar No. 491370
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org

/s/ J. Andrew Meyer
J. Andrew Meyer, Esq.
Fla Bar No. 0056766
FINN LAW GROUP, P.A.

8380 Bay Pines Blvd
St. Petersburg, Florida 33709
Tel.: 727-709-7668
Email: ameyer@finnlawgroup.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

On this 19th day of January 2023, Plaintiffs' Brief was e-filed using the CM/ECF system.

Respectfully Submitted,

*<u>/s/ Arthur A. Schulcz</u>*
Arthur A. Schulcz