IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ISRAEL ALVARADO, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. 1:22-cv-876 (AJT/JFA) |
| ) | |
| LLOYD AUSTIN, III, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs have filed a Motion for Reconsideration (the "Motion"), [Doc. No. 88], with respect to the Court's dismissal of this action on November 23, 2022. For the following reasons, the Motion is DENIED.

**I. BACKGROUND**

This action stems from a Complaint by military chaplains surrounding the military's COVID-19 Vaccine Mandate (the "Mandate"). The Court has previously summarized the Mandate and relevant issues, *see* [Doc. No. 86] at 2-6, and in response to Plaintiffs' Motion for a Preliminary Injunction, [Doc. No. 59], issued an Order on November 23, 2022, denying that motion and *sua sponte* dismissing the case for want of subject-matter jurisdiction, [Doc. No. 86] (the "Order").

After the Court's Order, the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("2023 NDAA") was enacted. [Doc. No. 90-1] at 1, 6.[1] Contained within the 2023 NDAA was an express provision, Section 525, requiring the Department of Defense to rescind the Mandate. [Doc. No. 94] at 5. On January 10, 2023, Secretary of Defense Lloyd Austin

---

[1] Exhibit 1 to [Doc. No. 90] is a corrected memorandum submitted by Plaintiffs to correct factual and other errors contained in the original memorandum in support of their Motion to Reconsider filed with the Court, [Doc. No. 89].

1

issued a memorandum rescinding the Mandate (the "Rescission Memo"), ordering that the military update records to remove adverse actions based on prior refusals to vaccinate, and outlining recourse for any servicemembers administratively discharged. [Doc. No. 94-1]. The Secretary also directed that further guidance be issued to ensure uniform implementation of the Rescission Memo. *Id.*

On December 17, 2022, Plaintiffs filed the Motion under Federal Rule of Civil Procedure 59(e), seeking reconsideration of the Court's Order on the grounds that (1) the 2023 NDAA amounted to a change in controlling law; (2) the Court made clear errors of law in dismissing this action; and (3) new evidence emerged and is now available to the Court.[2] [Doc. No. 90-1] at 1.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment within 28 days after judgment is entered. The Fourth Circuit provides three grounds for reconsideration: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). However, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly," *Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quotation and citation omitted), and is "not intended to allow for reargument of the very issues that the court has previously decided," *DeLong v. Thompson*, 790 F. Supp. 594, 618 (E.D. Va. 1991).

---

[2] As discussed, *infra* Sec. III(C), the "new evidence" that Plaintiffs rely on is a statement that Government counsel made in a hearing before the Sixth Circuit, which Plaintiffs did not discover until after the Motion for Preliminary Injunction in this action was adjudicated. [Doc. No. 90-1] at 26-27.

## III. ANALYSIS

For the reasons stated below, reconsideration is not warranted in this case because (a) the 2023 NDAA is not a change in law that affects the basis for the Court's Order and the 2023 NDAA would have resulted in the same *sua sponte* dismissal of this action, had it been in effect when the Court ruled on the preliminary injunction motion; (b) even if the purported "new evidence" was new, it is not material, and (c) there are neither clear errors of law that need to be corrected nor manifest injustice to be prevented.

### A. Enactment of 2023 NDAA

Plaintiffs argue the 2023 NDAA "eliminates entirely the legal basis" for the Mandate and "conclusively demonstrates that Secretary Austin sought and did usurp major policy decisions properly made by Congress." [Doc. No. 90-1] at 7-6 (internal citation and quotation omitted). But Plaintiffs mischaracterize Section 525, which provides:

> Not later than 30 days after the date of the enactment of this Act, the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021, regarding "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members."

[Doc. No. 94] at 5. The 2023 NDAA does not address the legality of the Mandate or otherwise speak to whether Defendants acted outside of their authority by issuing and implementing the Mandate prior to the enactment of Section 525. Rather, Congress simply exercised its authority to make a post-Mandate policy decision with respect to the military. That Congress acted in such a fashion does not in and of itself suggest the Mandate was unlawful or that the Court erred in its legal analysis based on the then-existing facts and law.

Plaintiffs further contend that Section 525 "eliminates" a central premise to the Court's *sua sponte* dismissal.[3] [Doc. No. 90-1] at 7. But again, the enactment of the 2023 NDAA did not establish or in any way suggest that the Court erred in concluding that decisions such as whether to require that troops be vaccinated rest outside Article III. If anything, the 2023 NDAA endorses the Court's reasoning as it shows that even absent judicial review, the Mandate was at all times subject to civilian review through the political branches.[4]

The 2023 NDAA and the Rescission Memo also confirm that Plaintiffs have still failed to exhaust their intraservice remedies and their claims are non-justiciable because, *inter alia*, they are not ripe claims. No Plaintiff can now be separated on account of their vaccination status. And to the extent any Plaintiff complains of any other alleged harm stemming from their refusal to vaccinate – *e.g.*, exclusion from certain assignments/training, letters of reprimand, etc. – they have not exhausted their intraservice remedies as to those claims. Additional guidance is forthcoming related to the Rescission Memo, [Doc. No. 94-1], and any harm that Plaintiffs claim to have already suffered may be redressed by that guidance and the Rescission Memo's implementation. Thus, any future or ongoing harm that Plaintiffs allege is entirely speculative, and prospective remedies based on alleged past harm is not yet exhausted in light of new and forthcoming policies.

In sum, the Court did not commit clear error by imposing an exhaustion requirement on Plaintiffs' claims, *see* discussion *infra* Sec. III(B), and even if the Court were to now find that Plaintiffs had previously exhausted their intraservice remedies by seeking religious

---

[3] In that regard, the Court's Order (a) stated that "military decision-making 'rests upon the Congress and upon the President of the United States and his subordinates,'" [Doc. No. 86] at 17 (citing *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953)); (b) noted that Congress had not acted as of the date of the Order, *id.*; and (c) found that, for that reason and others, the military's professional judgment as to the Mandate was non-justiciable, *id.* at 17-18.

[4] Because the 2023 NDAA was signed by President Biden, it was both Article I and Article II actors that ultimately reviewed and rescinded the Mandate.

4

accommodation requests,[5] such requests and any relief therefrom are now stale given the Rescission Memo. While the 2023 NDAA is a change in law, that change may, and likely will, allow Plaintiffs to obtain review of and relief from Plaintiffs' complained-of injuries through forthcoming, post-Rescission Memo intraservice remedies and policies, thereby potentially eliminating any need for litigation. Accordingly, the 2023 NDAA further confirms that Plaintiffs cannot show that they have exhausted their intraservice remedies and that this litigation is premature.

The ongoing implementation of the Rescission Memo also confirms that the Court lacks subject-matter jurisdiction based on lack of ripeness as to any claim for injuries. In that regard, a claim is not ripe for adjudication if it is not fit for judicial intervention. *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) (citation omitted). "A case is fit for adjudication when the action in controversy is final and not dependent on future uncertainties; conversely, a claim is not ripe when it rests upon contingent future events that may not occur as anticipated." *Id.* (quoting in part *Scoggins v. Lee's Crossing Homeowner's Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013)) (internal quotations omitted). Here, the case is not fit for judicial intervention. How and if the military will redress and/or accommodate Plaintiffs in the aftermath of Section 525 and the Rescission Memo is entirely speculative and uncertain. *See Beard v. Stahr*, 370 U.S. 41, 41-42 (1962) (finding a servicemember's suit to enjoin his removal from the active duty list was premature because he had not been removed and, if he were, "adequate procedures for seeking redress will be open to him"); *Roberts v. Roth*, 594 F. Supp. 3d 29, 35-36 (D.D.C. 2022) (holding in a military vaccine case that plaintiff's claims were not ripe because the intraservice corrective process was not complete and

---

[5] To the contrary, the Court explicitly found that Plaintiffs had not exhausted their intraservice remedies. [Doc. No. 86] at 10-14.

finding the action "premature" because the plaintiff was not yet discharged). For these reasons, the case is not ripe for adjudication and must be dismissed for want of subject-matter jurisdiction.

### B. Plaintiffs' Assertions of Clear Errors of Law

Plaintiffs first argue that the Court clearly erred when it added an exhaustion requirement to the Religious Freedom Restoration Act ("RFRA") in derogation of its steadfast duty to resolve cases within its jurisdiction. [Doc. No. 90-1] at 9. Plaintiffs claim the Court contradicted itself and had already recognized that RFRA does not require exhaustion when it noted that Plaintiffs' claims are non-justiciable military judgments "with the possible exception of [RFRA]"). [Doc. No. 90-1] at 10 n.5 (citing [Doc. No. 86] at 10). To the contrary, the Court simply noted in that regard that the RFRA claim was arguably not foreclosed at the outset as a non-justiciable military judgment. *See* [Doc. No. 86] at 10 (stating that "even before confronting the *Mindes* [*v. Seaman*, 543 F.2d 197 (5th Cir. 1971)] test," Plaintiffs' claims are non-justiciable military judgments "with the possible exception of [RFRA]"). The Court went on to rule, however, that the RFRA claim was, in fact, non-justiciable once the Court concluded, as it did, that the *Mindes* test and accompanying exhaustion prerequisite applies to RFRA. *See* [Doc. No. 86] at 10. The Court then distinguished the few cases Plaintiffs cited for the contrary proposition.[6] [Doc. No. 86] at 13; *cf. id.* at 11-12 (citing *Williams v. Wilson*, 762 F.2d 357, 359-60 (4th Cir. 1985) (holding that under *Mindes*, courts "should not review internal military affairs" absent "exhaustion of available intraservice corrective measures")). Because the Court found that Plaintiffs' RFRA claims were not exhausted, the *Mindes* exhaustion requirement, imposed by the Fourth Circuit in *Williams*, was not satisfied;

---

[6] Plaintiffs principally cite *Patsy v. Bd. Of Regents of Fla.*, 457 U.S. 496, 509-12 (1982) for the notion that judicially imposed military exhaustion requirements are inappropriate where a statute already contains an exhaustion requirement. [Doc. No. 90-1] at 10-11. But RFRA has no statutory exhaustion requirement; moreover, *Patsy* was about race and sex discrimination in the civilian (not military) context and decided more than a decade *before* RFRA was enacted.

judicial review of Plaintiffs' claims was, therefore, improper; and the Court was required to dismiss the case for want of jurisdiction.

Plaintiffs similarly challenge the Court's dismissal of their other non-RFRA claims, again arguing that either no exhaustion requirement exists or the requirement was satisfied.[7] But following the Rescission Memo, as detailed above, no claim can now be deemed exhausted. And as to the existence of an exhaustion requirement, Plaintiffs fail to recognize and reconcile the difference between a *statutory* and a *judicial* exhaustion requirement. In that regard, it is undisputed that certain of Plaintiffs' claims do not have a statutory exhaustion requirement. But that a particular claim may lack a statutory exhaustion requirement does not preclude courts from imposing one. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs."). Thus, all of Plaintiffs' claims have a threshold judicial exhaustion requirement imposed by *Williams/Mindes*. And that judicially created exhaustion requirement simply speaks to whether the Court has jurisdiction to hear a particular case *at that time*. *Cf. Nat'l Treasury Emps. Union v. King*, 961 F.2d 240, 243 (D.C. Cir. 1992) ("The doctrine of exhaustion of administrative remedies concerns the *timing*

---

[7] In particular, Plaintiffs argue the Administrative Procedures Act ("APA") contains no exhaustion requirement, citing *Darby v. Cisneros*, 509 U.S. 137, 145 (1993) for the proposition that the APA is only subject to exhaustion requirements imposed by statute or agency rule. [Doc. No. 90-1] at 24. But *Darby* involved a suit against the Secretary of Housing and Urban Development – a civilian agency. Whether *Darby* applies in the military context is questionable, particularly given the extraordinary deference that the Supreme Court has repeatedly afforded the military. *See* [Doc. No. 86] at 7 (citing Supreme Court authority); *cf. Bowman v. Brownlee*, 333 F. Supp. 2d 554, 558 (W.D. Va. 2004) ("[S]ince *Darby* involved the interpretation of the APA in the context of an administrative ruling by the Department of Housing and Urban Development, courts across the country have reached different conclusions as to whether *Darby* extends to cases involving military decisions."); Cpt. E. Roy Hawkens, *The Exhaustion Component of the* Mindes *Justiciablity Test Is Not Laid to Rest by* Darby v. Cisneros, 166 Mil. L. Rev. 67, 68 (2000) ("Exhaustion of intramilitary remedies should [] continue to be the rule for APA claims brought by service members."). And the Fourth Circuit has specifically declined to answer this question. *Wilt v. Gilmore*, 72 Fed. App'x 484, 488 (4th Cir. 2003) ("We conclude that we need not address *Darby*'s impact (if any) on our rule requiring exhaustion of military remedies."). Moreover, it is unclear whether *Darby*'s holding with respect to exhaustion requirements for "agency action" would even apply in this case. The APA's definition of "agency" specifically excludes "military authority exercised in the field in time of war or in occupied territory." 5 U.S.C. § 701(b)(1)(G). The Mandate was clearly an exercise of military authority that governed, in part, servicemembers stationed, assigned, or subject to future assignment in occupied territory. Therefore, even if *Darby* applied to military cases, it may be wholly inapplicable regardless on the grounds that the type of "agency action" contemplated does not encompass the Mandate.

rather than the jurisdictional authority of federal court decisionmaking.") (emphasis in original). In other words, the Court's finding with respect to Plaintiffs' failure to exhaust was a determination on the timing of their claims rather than the substance, notwithstanding the general deference that Courts afford to the military in these types of matters, and thus Plaintiffs' cited authority about courts' inherent duty to hear cases within their jurisdiction misses the mark. Because Plaintiffs failed to exhaust their claims, the Court did not commit clear error by finding they were non-justiciable *at that time*.[8]

Plaintiffs also contend that the Court improperly found that Plaintiffs had not pursued relief through the Board of Correction of Military Records ("BCMR") prior to exhausting their claims.[9] [Doc. No. 90-1] at 11. The Court need not address this issue because the Rescission Memo requires that Service Secretaries cease review of religious accommodation requests and appeals, orders that records be updated, and directs that future guidance be given. As detailed above, these requirements necessarily mean that any complained-of injuries, past or present, may be remedied or addressed under the new policy, thereby necessarily making premature any consideration of what remedies the BCMR can provide and whether Plaintiffs are required to seek those remedies to satisfy the exhaustion requirements.

---

[8] The Court also rejects the claim that, even if an irreparable injury exception to exhaustion applies in this Circuit, one exists here. Plaintiffs' injuries are either not yet realized or redressable. Plaintiffs' principle case for such an assertion, *Elrod v. Burns*, 427 U.S. 347 (1976), is distinguishable as a civilian case related solely to a First Amendment case based on political affiliation. And unlike another one of Plaintiffs' cited cases, *U.S. ex rel. Brooks v. Clifford*, 412 F.2d 1137 (4th Cir. 1969), Plaintiffs here are no longer subject to the objected-to requirement (notably, even when the Mandate was in effect, there were no forcible vaccinations). *Brooks* is further distinguishable because it was a habeas proceeding regarding a conscientious objector to military service generally. And any suggestion that allegations of constitutional violations do not require exhaustion does not square with the first *Mindes* prerequisite, which requires *both* a constitutional (or statutory or regulatory) violation *and* intraservice exhaustion. *Mindes*, 453 F.2d at 201. In other words, imposing the dual requirement of exhaustion and a constitutional violation would make no sense if a constitutional violation excused a failure to exhaust, as Plaintiffs contend. *Cf. Thetford Properties IV Ltd. P'ship v. U.S. Dep't of Hous. & Urb. Dev.*, 907 F.2d 445, 448 (4th Cir. 1990) (rejecting "as a generally rule [that] exhaustion is not necessary where administrative litigants raise constitutional challenges").

[9] Notably, failure to pursue relief through BCMRs was not the sole grounds for the Court's finding that Plaintiffs failed to exhaust intraservice remedies. *See* [Doc. No. 86] at 11-12 (noting, *inter alia*, that "no Plaintiff has actually gone through separation proceedings").

8

Similarly irrelevant is whether the Court committed clear error, as Plaintiffs contend, in the Court's previous assessment of the *Mindes* doctrine's four factors based on the facts of this case. *See* [Doc. No. 86] at 16. That assessment, summary in nature, was not central, or essential, to the Court' decision, since the Court's necessary inquiry with respect to justiciability needed to go no further than its determination that the Plaintiffs had failed to satisfy the *Mindes* prerequisite of exhaustion, thereby eliminating the need to consider the merits of the *Mindes* factors. Whatever the merits of the four *Mindes* factors, the Court's Order was not anchored in them.

Lastly, Plaintiffs argue the Court erred by giving more weight to certain out-of-circuit decisions than others, and for relying on Justice Kavanaugh's concurrence in a similar and recent military vaccine case.[10] [Doc. No. 90-1] at 24-26. The Court declines to find clear error based on its assessment of the existing legal authority.

**C. New Evidence**

Plaintiffs assert that a statement by Government counsel in a hearing before the Sixth Circuit constitutes new evidence. [Doc. No. 90-1] at 26-27. That hearing occurred after the hearing in this case on Plaintiffs' Motion for Preliminary Injunction but prior to the Court's November 23, 2022 Order. It appears that Plaintiffs did not become aware of the statement until sometime after November 29, 2022, which is when the Sixth Circuit opinion was released. Given the statement occurred prior to the Court's Order, it arguably is not "new." But in any event, statements by counsel are not evidence. *See, e.g.*, *Crawford v. Newport News Indus. Corp.*, No. 4:14-cr-130, 2018 WL 4524124, at *6 (E.D. Va. Feb. 26, 2018) ("It should go without saying that statements of attorneys are not evidence, and that only admissible evidence can be considered by the Court in resolving [motions]."). More importantly, having reviewed the recording of oral argument in

---

[10] That case is *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022) (Kavanaugh, J., concurring).

*Doster v. Kendall*, No. 22-3497 (6th Circ. 2022), the Court does not share Plaintiffs' construction of Government counsel's statements, and the statements would not have, in any event, altered the outcome of or analysis in the Court's prior Order in any respect.

### D. Manifest Injustice

Plaintiffs argue that Defendants misrepresented the procedural rights and protections afforded to more junior chaplains, and that those chaplains instead may be discharged without those protections.[11] [Doc. No 90-1] at 27-28. But even assuming *arguendo* that the Court materially relied on the alleged misrepresentation, Chaplain Hirko, who Plaintiffs point to, can no longer suffer the allegedly "irreparable harm" of discharge under the Rescission Memo. Accordingly, for the reasons stated earlier, any other allegations of past or future harm is speculative, unexhausted, not ripe for adjudication at this time, and cannot be said to have resulted in, or present the prospect of, manifest injustice.

### IV. CONCLUSION

For the above reasons, it is hereby

**ORDERED** that Plaintiffs' Motion for Reconsideration, [Doc. No. 88], be, and hereby is, DENIED.

The Clerk is directed to forward copies of this Order to all counsel of record.

Alexandria, Virginia
February 17, 2023

_____
Anthony J. Trenga
Senior U.S. District Judge

---

[11] Defendants dispute any alleged mischaracterization. [Doc. No. 94] at 26-27.